

2-2-01
SC

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEWIS JOHNSON,

        Plaintiff,

**FILED**
**HARRISBURG, PA**

FEB 1  2001

MARY E. D'ANDREA, CLERK
Per _____
          Deputy Clerk

        V.

1:00-CV- 1873

Judge Kane

HERSHEL W. GOVER, Acting Secretary of
Veterans Affairs: RODNEY KISCADDEN;
ALICE FIDLER; PEG WINTERS;
IRVIN ERICKSON; RAYMER KENT;
and AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES LOCAL 1966,

        Defendants.

### DEFENDANT PEG WINTERS' AND DEFENDANT AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES LOCAL 1966'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR RULE 12(b)(1) MOTION TO DISMISS

1

# I. Introduction.

As stated in the moving parties' opening memorandum in support of its

motion to dismiss, the responsibility of a federal sector union and its officers, like

the instant defendants, to a federal employee, like the plaintiff, are rooted in 5

U.S.C. Section 7114[1] and a violation of that responsibility is an unfair labor

practice which must be exclusively redressed by the filing of a charge with the

Federal Labor Relations Authority.[2]   A United States District Courts has no

jurisdiction of such a claim.   *Karahalios v. Nat. Fed. Of Federal Emp., Local*

*1263*, 109 S.Ct. 1282, 1287 (1989).   In his response to that motion, plaintiff has

cited several cases for the proposition that his case is essentially a civil rights case

---

[1]  5 U.S.C. Section 7114(a)(1) states in pertinent part that a federal sector union "is responsible for representing the interests of all employees in the unit it represents <u>without discrimination</u> and without regard to labor organization membership." (Emphasis added.)  A violation of this mandate constitutes an unfair labor practice pursuant to 5 U.S. C. Section 7116(b)(1 and (8).  Prevention of unfair labor practices must be sought pursuant to 5 U.S.C. Section  7118.

[2]  After such a charge is filed it will be evaluated by the General Counsel of the Federal Labor Relations Authority.  If cause is found a complaint will issue.  After the successful prosecution of such an unfair labor practice charge, the Federal Labor Relations Authority would, if necessary, be able to file an enforcement action in federal court on behalf of the charging party.  5 U.S.C. Sections 7118 and 7123(b).  The plaintiff here has apparently not filed a charge with the Federal Labor Relations Authority.  None is mentioned in the complaint.

and as such can be brought in this court.  Plaintiff has however ignored the critical

fact that plaintiff is a federal employee and that pursuant to United States Supreme

Court precedent all employment related civil rights cases brought by a federal

employee must be filed administratively pursuant  to 42 U.S.2000e-16. [3]


II.  A Decision of The United States Supreme Court, Which Has Been Explicitly

Affirmed By the Third Circuit,  States That  The  Exclusive  Basis  To  Pursue  A

Claim Of  Racial Discrimination Related To Employment by the Federal

Government, Like The Instant Claim, Is 42 U.S.C. Section 2000e-16.[4]

---

"Brown v. General Services Administration, supra, [425 U.S. 820 (1976)]

held that  Section 717 of the Civil Rights Act of 1964, as added by Section 11 of the

Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261 (codified at 42

U.S.C. Section 2000e-16), is the exclusive remedy available to an individual federal

---

[3]  Furthermore it should be noted that under the statutes cited by the plaintiffs, a federal sector labor organization such as the defendant, is not a covered labor organization and hence cannot be sued.  See Section IV infra.

[4]  42 U.S.C.. Section 2000e-16(b) and (c) and regulations promulgated thereunder require that a federal employee with a race discrimination claim like the plaintiff here,  use the employing agency's administrative mechanism for filing an EEO complaint before filing in Federal Court. The complaint in this matter fails to allege that such mechanism has been utilized.

employee complaining of job-related discrimination.  The Supreme Court stated:

> 'Section 717(c) permits an aggrieved employee to file a civil action in a
> federal district court to review his claim of employment discrimination.
> Attached to that right, however,  are certain preconditions.  Initially the
> complainant must seek relief in the agency that has allegedly discriminated
> against him.   He then may seek further administrative review with the Civil
> Service Commission or, alternatively , he may, within 30 days of receipt of
> notice of the agency's final decision, file suit in federal district court without
> appealing to the Civil Service Commission.

*     *     *     *     *

> This unambiguous Congressional perception seems to indicate that the
> congressional intent in 1972 was to create an <u>exclusive</u>,  <u>pre-emptive</u>
> administrative and judicial scheme for the redress of federal employment
> discrimination.' " (Emphasis added.)[5]

<u>Gissen v. Tackman</u>, 537 F.2d 784, 786 (3rd. Cir. 1976) (en banc)  In accord:  <u>Owen</u>

<u>v. United States et al.</u>, 822 F.2d  408, 410 (3rd Cir.  1978).  <u>Newbold v. United</u>

<u>States Postal Service</u>, 614 F.2d 46 (5th Cir. 1980) (rehearing and rehearing en banc

denied April 18, 1980) ("There was no union or individual defendant in Brown, so it

does not squarely control with respect to suits under Sections 1981, 1983, 1985 or

1986 against Moore [an individual federal employee]  and APWU  [the union].

However,  the Brown court's broad language on preemption and exclusivity

suggests that there is no cause of action against individuals under Section 1981, et

---

[5] The plaintiff has not alleged in his complaint that he filed an administrative EEO
complaint with his employing agency, as required,  before bringing this court action.

seq. ")[6]

III. The Claim Against Union President Peg Winters Must Be Dismissed.

Defendant Peg Winters was identified in paragraph 6 of the complaint as an "adult female who, at [all] times relevant hereto, was President of Defendant AFGE." It has been clearly held however that union officers are not held personally responsible for acts of their union. Atkinson v. Sinclair Refining Company, 370 U.S. 238, 247-49 (1962). This concept has been affirmed by the Third Circuit. See Wilkes-Barre  Publishing Company v. Newspaper Guild of Wilkes-Barre, Local 120, 647 F.2d 372, 377 (3rd Cir. 1981). This principal has also been explicitly extended to officers of federal sector unions such as Peg Winters. Montplaisir v. Leighton, 875 F.2d 1, 8  (1st Cir. 1989). Hence any claim against Peg Winters individually should be dismissed on this basis alone, in addition to the grounds for dismissal mentioned elsewhere in this filing.

---

[6] None of the cases cited by the plaintiff in his memorandum in response to the motion to dismiss involves a claim by an employee of the federal government as is the case here. Hence those cases are not apposite, because they were not barred, as is this case, by Brown v. General Services Administration, supra.

IV. Contrary To The Primary Argument of Plaintiff In His Responsive Brief,

AFGE Local 1966 Is Not Subject To Suit Under 42 U.S.C. Section 2000e-2(c).[7]

It is true that certain actions by "labor organizations" are prohibited under 42

U.S.C. Sections 2000e-2 and 2000e-3.[8]  It is further true that violations of 42 U.S.C.

Sections 2000e-2 and 2000e-3 may be challenged before the Equal Employment

Opportunity Commission (EEOC) or before a United States district court under 42

U.S.C. Section 2000e-5.  However , the term "labor organization," for Title VII

purposes, means a "labor organization engaged in an industry affecting commerce."

42 U.S.C. Section 2000e(d).  In turn, whether a labor organization is deemed to be

---

[7]  In addition to the other grounds for the dismissal of this matter stated in this document it should also be noted as follows with regard to certain statutes referenced only in the caption of the complaint: 1. No violation of 42 U.S.C. Section 1981 has even been alleged since no restriction on Mr. Johnson's right to make a contract, to sue or be a party to a proceeding etc. has even been alleged; 2. No violation of Section 1983 has been alleged since neither the union nor its officer were ever alleged to act under color of state law; 3. No violation of Section 1985 has been alleged since there is no claim that the union and/or Ms. Winters conspired "to prevent by force, intimidation, or threat", any action by or with regard to Mr. Johnson, and 4. No violation of Section 1986 has been alleged by the union or Ms. Waters since there is no assertion that they failed to stop others from committing acts described in Section 1985.  Furthermore since the alleged loss of a promotion by Mr. Johnson occurred in July of 1998, i.e. the accrual of the action, see paragraph 12 of the complaint, and the instant matter was filed on October 24, 2000, such an action cannot "be sustained" by the time constraints contained in Section 1986 itself, which requires that the action be brought within one year..

[8]  A copy of the legal materials referenced in this section is attached as an Addendum hereto.

6

engaged in an industry affecting commerce is determined by the definition set forth

in 42 U.S.C. Section 2000e(e). See H.R. Rep. No. 914 on H.R. 7152, 88th Cong.

2nd Sess. reprinted in [1964] U.S. Code Cong. And Ad. New 2391, 2402 ("Labor

organizations will be covered only if they are engaged in an industry affecting

commerce within the meaning of the title, and [42 U.S.C. Section 2000e(e)]

describes the labor organizations which are so engaged").

Section 2000e(e) indicates that a covered labor organization must generally

either (1) operate a hiring hall or office or (2) have fifteen members and, in addition,

either be certified  under the National Labor Relations Act or Railway Labor Act or

represent employees of employers engaged in an industry affecting commerce.  42

U.S.C. Section 2000e(e)(1)(5).  Federal employee unions, such as AFGE Local

1966, do not operate hiring halls or offices since hiring in Federal employment is

performed by the employer. See 5 U.S.C. Chapters 31 and 33.  Nor is AFGE Local

1966 a labor organization certified under the National Labor Relations Act or

Railway Labor Act in its representation of Department of Veterans Affairs

employees.[9]   AFGE Local 1966 only represents Federal employees working for the

U.S. Department of Veterans Affairs.  Finally, "employer" is defined under Title VII

---

[9] By comparison, unions representing postal employees are arguably certified under the
provisions of the National Labor Relations Act.  See 39 U.S. 1209(a).

to exclude the United States. 42 U.S.C. Section 2000e(b)(1).  Thus, AFGE Local 1966, in its representation of Department of Veterans Affairs employees, is not a representative of employees of an <u>employer</u> engaged in an industry affecting commerce within the meaning of 42 U.S.C. Section 2000e(e)(2)-(5).  Thus AFGE Local 1966 does not meet the definition of a "labor organization engaged in an industry affecting commerce" within the meaning of 42 U.S.C. Section 2000e(d) and (e).  As a result, Title VII does not regulate AFGE Local 1966 and AFGE Local 1966 cannot be held to violate the provisions of Title VII.

Title VII coverage was extended to the United States as an employer in the 1972 amendments.  However, Congress did not extend coverage by amending the definition of "employer" in Title VII, but rather extended coverage by enacting a new section now found at 42 U.S.C. 2000e-16.  See Pub.L. 92-261, sec. 11, 86 Stat. 111 (1972).  Under this new section, only "personnel actions" by Federal agencies are covered.  42 U.S.C. 2000e-16(a).  Moreover, in any civil action under 42 U.S.C. 2000e-16, only "the head of the department, agency or unit, as appropriate, shall be the defendant."  42 U.S.C. 2000e-16(c); White v. General Services Administration, 652 F.2d 913, 916 n.4 (9th Cir. 1981).  Thus, unions representing nonpostal Federal employees are also not regulated by 42 U.S.C. 2000e-16.

V. Non Postal Federal Sector Unions, Such As AFGE Local 1966 Here. Have Always Been Obligated and Are Currently Obligated Not To Engage In, Inter Alia, Racially Discriminatory Treatment Of Their Bargaining Unit Employees, However The Enforcement Of That Obligation Lies Exclusively With the Federal Labor Relations Authority.

---

Two further points about the regulation of unions representing nonpostal Federal employees at the time of the 1972 amendments to Title VII reveal that Congress did not intend Title VII to regulate the activities of those unions. First, in 1972, nonpostal Federal employee unions were not authorized or regulated by any Federal statute. Instead, at that time, the rights and duties of nonpostal Federal employee unions were solely created by, and governed by, Executive Order (E.O.) No. 11491, 3 C.F.R. 1966-70 Comp. pp. 861-75. Since this order was not legislative, there was no role for the courts to play over the activities of nonpostal Federal employee unions. Karahalios, supra, 489 U.S. at 535 and n.3. Any violation of the Order by a labor organization was subject to the remedial powers of the Assistant Secretary of Labor for Labor-Management Relations. E.O. No. 11491, sec. 6(b).

Secondly, every Title VII requirement placed on private sector unions that could arguably apply to Federal employment was already required of nonpostal Federal employee unions in 1972 under E.O. No. 11491.  Unfair employment practices under Title VII by private sector employment unions are set forth in 42 U.S.C. 2000e-2(c) and (d) and in 42 U.S.C. 2000e-3(a) and (b).  Those Title VII provisions relevant to hiring and apprenticeship programs [42 U.S.C. 2000e-2(d) and 42 U.S.C. 2000e-3(b)] were not covered by E.O. No. 11491 simply because the Federal employer controls hiring in Federal employment.  5 U.S.C. Chapters 31 and 33.  Otherwise, every discriminating practice arguably prohibited by Title VII was already prohibited by E.O. No. 11491 at the time of the 1972 amendments.  Under Section 19(b)(5) of E.O. No. 11491, it was an unfair labor practice for a union to "discriminate against an employee with regard to the terms or conditions of membership because of race, color, creed, sex age or national origin."  Under Section 10(e) of E.O. No. 11491, just as under the present 5 U.S.C. 7114(a)(1), a certified union was "responsible for representing the interests of all employers in the unit without discrimination."  Moreover, it was an unfair labor practice under Section 19(b)(1) of E.O. No. 11491 for a union to interfere with an employee rights under the Executive Order and it was an unfair labor practice under Section 19(b)(2) of E.O. No. 11491 for a union to induce management to coerce an employee in the

employee's exercise of rights under the Executive Order.

Even more importantly, every provision in E.O. 11491 that covered arguable acts of discrimination by a union has its counterpart in the current Federal Service Labor-Management Relations Statute.  See 5 U.S.C. Sections 7101 et seq., hereinafter "FSLMRS".  Discrimination in terms of labor union membership is prohibited as an unfair labor practice under 5 U.S.C. 7116(b)(4).  Interference with employee rights by a union is an unfair labor practice under 5 U.S.C. 7116(b)(1) and a union's effort to induce management to discriminate against an employee because of that employee's exercise of rights under the Statute is an unfair labor practice under 5 U.S.C. 7116(b)(2).  Finally, 5 U.S.C. 7114(a)(1) prohibits a certified union from any discrimination in representing the interests of unit employees and a Section 7114(a)(1) violation is an unfair labor practice under 5 U.S.C. 7116(b)(8).  Thus, although Federal employee unions are not subject to Title VII, the provisions of E.O. No. 11491 and the Statute make it clear that discriminatory conduct by unions is prohibited.  The point here is that the exclusive scheme for remedying any acts of discrimination lie under the FSLMRS, not Title VII of the Civil Rights Act.

The fact that unions representing nonpostal Federal employees are not subject to Title VII is further reflected in the regulations of the Equal Employment Opportunity Commission ("EEOC") implementing the provisions of Title VII.

While 29 C.F.R. Part 1601 permits charges to be filed with the EEOC against "labor organizations," the definition of "labor organization" for purposes of 29 C.F.R. Part 1601 is the same definition contained in 42 U.S.C. 2000e(d) and (e).  29 C.F.R. Section 1601.2.  Moreover, 29 C.F.R. Part 1601 is not applicable to Federal employment.  Instead, regulations applying Title VII to Federal employment were found in 29 C.F.R. Part 1613 until October 1, 1992 and are now found in 29 C.F.R. Part 1614.[10]  Nowhere in either the old or new EEOC regulations does the EEOC regulate the conduct of unions representing Federal workers.  Instead, EEOC's regulations addressing discrimination in Federal employment only apply to Federal agencies.  29 C.F.R. 1613.201(b) (1990) and the current 29 C.F.R. 1614.103(b).

Although AFGE Local 1966 is outside the coverage of Title VII, it certainly does not mean that AFGE Local 1966 or any other union representing Federal employees is free to engage in acts of national origin or other discrimination.  To the contrary, 5 U.S.C. 7114(a)(1) makes it plain that a union certified as "exclusive representative is responsible for representing the interests of all employees in the unit it represents  without discrimination." (emphasis added).  The point here is that the obligation of AFGE Local 1966 not to engage in acts of national origin or other

---

[10] Effective October 1, 1992, the EEOC regulations governing discrimination in Federal employment have been amended and moved from 29 C.F.R. Part 1613 to 29 C.F.R. Part 1614. 57 Fed. Reg. 12634 (April 10, 1992).

discrimination is part of its duty of fair representation under the FSLMRS. It is therefore the provisions of the FSLMRS, not Title VII of the Civil Rights Act, which govern plaintiff's claims. As violations of the FSLMRS fall under the exclusive jurisdiction of the Federal Labor Relations Authority, the dismissal of all Title VII claims by Mr. Johnson here against the Union defendants must be upheld.

Similarly, Mr. Johnson cannot avoid the exclusive jurisdiction of the FLRA by asserting that the Union defendants violated the United States Constitution. See for example paragraphs 25 and 32 of the complaint. While Mr. Johnson's response to the to the motion cites three cases involving constitutional principles (Johnson's brief at p.2 ), all of those suits involved actions of public officials and none of those suits involved the representational conduct of a union. The reason why none of the cases cited in Mr. Johnson's brief refer to the representational conduct of a labor union is self-evident. AFGE Local 1966 and other unions are private, non-governmental entities. Conduct prohibited by the U.S. Constitution goes to conduct by governmental entities and not by private parties such as AFGE Local 1966. E.g., Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 936 (1982); Price v. State of Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991), cert. den. 503 U.S. 938 (1992); see also Felton v. Trustees of California State Universities, 708 F.2d 1507, 1510 (9th Cir. 1983) (counterclaim under Fourteenth Amendment against

private individual properly dismissed because Fourteenth Amendment only bars actions by states).

Accordingly, none of Mr. Johnson's theories against the Union defendants undermines the Supreme Court's holding in Karahalios, supra, that a party cannot avoid the exclusive jurisdiction of the Federal Labor Relations Authority.

VI. Conclusion.

For the above reasons the complaint in this matter should be dismissed against the two union defendants pursuant to Rule 12(b)(1).    This court lacks subject matter jurisdiction of the claims alleged against those defendants.

Respectfully Submitted,

Martin R. Cohen
Attorney I.D.  # 14112  (PA)
Assistant General Counsel
AMERICAN FEDERATION OF
    GOVERNMENT EMPLOYEES
Ten Presidential Blvd., Suite 117
Bala Cynwyd, PA 19004
610 660 0316
Counsel for Defendants Peg Winters and
AFGE Local 1966

_Mark D. Roth by me_

Mark D.Roth
General Counsel
AMERICAN FEDERATION OF
   GOVERNMENT EMPLOYEES
80 F. Street, N.W.
Washington, DC 20001
202 639 6415

January 31, 2001.

**ADDENDUM**

## ADDENDUM TABLE OF CONTENTS

|  | Page |
|---|---|
| 5 U.S.C. 7104 . . . . . . . . . . . . | A-1 |
| 5 U.S.C. 7105 . . . . . . . . . . . . | A-2 |
| 5 U.S.C. 7114(a)(1) . . . . . . . . . . | A-4 |
| 5 U.S.C. 7116(a)(3) . . . . . . . . . | A-5 |
| 5 U.S.C. 7116(b)(1) . . . . . . . . . | A-5 |
| 5 U.S.C. 7116(b)(2) . . . . . . . . . | A-5 |
| 5 U.S.C. 7116(b)(4) . . . . . . . . . | A-5 |
| 5 U.S.C. 7116(b)(8) . . . . . . . . . | A-5 |
| 5 U.S.C. 7118(a)(1) . . . . . . . . . | A-6 |
| 5 U.S.C. 7118(a)(4) . . . . . . . . . | A-6 |
| 42 U.S.C. 2000e(b) . . . . . . . . . | A-7 |
| 42 U.S.C. 2000e(d) . . . . . . . . . | A-7 |
| 42 U.S.C. 2000e(e) . . . . . . . . . | A-7 |
| 42 U.S.C. 2000e-2(c) . . . . . . . . | A-8 |
| 42 U.S.C. 2000e-2(d) . . . . . . . . | A-8 |
| 42 U.S.C. 2000e-3 . . . . . . . . . | A-8 |
| 42 U.S.C. 2000e-5(a) . . . . . . . . | A-9 |
| 42 U.S.C. 2000e-16 . . . . . . . . . | A-9 |
| 29 C.F.R. 1601.2 . . . . . . . . . . | A-11 |
| 29 C.F.R. 1613.201 (1990) . . . . . . | A-11 |
| 29 C.F.R. 1614.103 . . . . . . . . . | A-11 |
| Executive Order No. 11491, Section 6(b) . . . | A-12 |

- i -

                                                              **Page**

**Executive Order No. 11491, Section 10(e)** . . .   **A-12**

**Executive Order No. 11491, Section 19(b)** . . .   **A-12**

5 U.S.C. 7104:

## § 7104. Federal Labor Relations Authority

(a) The Federal Labor Relations Authority is composed of three members, not more than 2 of whom may be adherents of the same political party. No member shall engage in any other business or employment or hold another office or position in the Government of the United States except as otherwise provided by law.

(b) Members of the Authority shall be appointed by the President by and with the advice and consent of the Senate, and may be removed by the President only upon notice and hearing and only for inefficiency, neglect of duty, or malfeasance in office. The President shall designate one member to serve as Chairman of the Authority. The Chairman is the chief executive and administrative officer of the Authority.

(c) A member of the Authority shall be appointed for a term of 5 years. An individual chosen to fill a vacancy shall be appointed for the unexpired term of the member replaced. The term of any member shall not expire before the earlier of—

(1) the date on which the member's successor takes office, or

(2) the last day of the Congress beginning after the date on which the member's term of office would (but for this paragraph) expire.

(d) A vacancy in the Authority shall not impair the right of the remaining members to exercise all of the powers of the Authority.

(e) The Authority shall make an annual report to the President for transmittal to the Congress which shall include information as to the cases it has heard and the decisions it has rendered.

(f)(1) The General Counsel of the Authority shall be appointed by the President, by and with the advice and consent of the Senate, for a term of 5 years. The General Counsel may be removed at any time by the President. The General Counsel shall hold no other office or position in the Government of the United States except as provided by law.

(2) The General Counsel may—

(A) investigate alleged unfair labor practices under this chapter,

(B) file and prosecute complaints under this chapter, and

(C) exercise such other powers of the Authority as the Authority may prescribe.

(3) The General Counsel shall have direct authority over, and responsibility for, all employees in the office of General Counsel, including employees of the General Counsel in the regional offices of the Authority.

A–1

5 U.S.C. 7105:

## § 7105.  Powers and duties of the Authority

(a)(1) The Authority shall provide leadership in establishing policies and guidance relating to matters under this chapter, and, except as otherwise provided, shall be responsible for carrying out the purpose of this chapter.

(2) The Authority shall, to the extent provided in this chapter and in accordance with regulations prescribed by the Authority—

(A) determine the appropriateness of units for labor organization representation under section 7112 of this title;

(B) supervise or conduct elections to determine whether a labor organization has been selected as an exclusive representative by a majority of the employees in an appropriate unit and otherwise administer the provisions of section 7111 of this title relating to the according of exclusive recognition to labor organizations;

(C) prescribe criteria and resolve issues relating to the granting of national consultation rights under section 7113 of this title;

(D) prescribe criteria and resolve issues relating to determining compelling need for agency rules or regulations under section 7117(b) of this title;

(E) resolves issues relating to the duty to bargain in good faith under section 7117(c) of this title;

(F) prescribe criteria relating to the granting of consultation rights with respect to conditions of employment under section 7117 (d) of this title;

(G) conduct hearings and resolve complaints of unfair labor practices under section 7118 of this title;

(H) resolve exceptions to arbitrator's awards under section 7122 of this title; and

(I) take such other actions as are necessary and appropriate to effectively administer the provisions of this chapter.

(b) The Authority shall adopt an official seal which shall be judicially noticed.

(c) The principal office of the Authority shall be in or about the District of Columbia, but the Authority may meet and exercise any or all of its powers at any time or place.  Except as otherwise expressly provided by law, the Authority may, by one or more of its members or by such agents as it may designate. make any appropriate inquiry necessary to carry out its duties wherever persons subject to this chapter are located.  Any member who participates in the inquiry shall not be disqualified from later participating in a decision of the Authority in any case relating to the inquiry.

## 5 U.S.C. 7105 (cont.):

(d) The Authority shall appoint an Executive Director and such regional directors, administrative law judges under section 3105 of this title, and other individuals as it may from time to time find necessary for the proper performance of its functions.  The Authority may delegate to officers and employees appointed under this subsection authority to perform such duties and make such expenditures as may be necessary.

(e)(1) The Authority may delegate to any regional director its authority under this chapter—

(A) to determine whether a group of employees is an appropriate unit;

(B) to conduct investigations and to provide for hearings;

(C) to determine whether a question of representation exists and to direct an election; and

(D) to supervise or conduct secret ballot elections and certify the results thereof.

(2) The Authority may delegate to any administrative law judge appointed under subsection (d) of this section its authority under section 7118 of this title to determine whether any person has engaged in or is engaging in an unfair labor practice.

(f) If the Authority delegates any authority to any regional director or administrative law judge to take any action pursuant to subsection (e) of this section, the Authority may, upon application by any interested person filed within 60 days after the date of the action, review such action, but the review shall not, unless specifically ordered by the Authority, operate as a stay of action.  The Authority may affirm, modify, or reverse any action reviewed under this subsection.  If the Authority does not undertake to grant review of the action under this subsection within 60 days after the later of—

(1) the date of the action; or

(2) the date of the filing of any application under this subsection for review of the action;

the action shall become the action of the Authority at the end of such 60-day period.

A-3

## 5 U.S.C. 7105 (cont.):

(g) In order to carry out its functions under this chapter, the Authority may—

(1) hold hearings;

(2) administer oaths, take the testimony or deposition of any person under oath, and issue subpoenas as provided in section 7132 of this title; and

(3) may require an agency or a labor organization to cease and desist from violations of this chapter and require it to take any remedial action it considers appropriate to carry out the policies of this chapter.

(h) Except as provided in section 518 of title 28, relating to litigation before the Supreme Court, attorneys designated by the Authority may appear for the Authority and represent the Authority in any civil action brought in connection with any function carried out by the Authority pursuant to this title or as otherwise authorized by law.

(i) In the exercise of the functions of the Authority under this title, the Authority may request from the Director of the Office of Personnel Management an advisory opinion concerning the proper interpretation of rules, regulations, or policy directives issued by the Office of Personnel Management in connection with any matter before the Authority.

## 5 U.S.C. 7114(a)(1):

(a)(1) A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit. An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership.

A–4

<u>5 U.S.C. 7116(a)(3) and (b)(1), (2), (4) and (8):</u>

## § 7116.    Unfair labor practices

(a) For the purpose of this chapter, it shall be an unfair labor practice for an agency—

\*        \*        \*        \*

(3) to sponsor, control, or otherwise assist any labor organization, other than to furnish, upon request, customary and routine services and facilities if the services and facilities are also furnished on an impartial basis to other labor organizations having equivalent status;

\*        \*        \*        \*

(b) For the purpose of this chapter, it shall be an unfair labor practice for a labor organization—

(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

(2) to cause or attempt to cause an agency to discriminate against any employee in the exercise by the employee of any right under this chapter;

\*        \*        \*        \*

(4) to discriminate against an employee with regard to the terms or conditions of membership in the labor organization on the basis of race, color, creed, national origin, sex, age, preferential or nonpreferential civil service status, political affiliation, marital status, or handicapping condition;

\*        \*        \*        \*

(8) to otherwise fail or refuse to comply with any provision of this chapter.

## 5 U.S.C. 7118(a)(1) and (4):

### § 7118.    Prevention of unfair labor practices

(a)(1) If any agency or labor organization is charged by any person with having engaged in or engaging in an unfair labor practice, the General Counsel shall investigate the charge and may issue and cause to be served upon the agency or labor organization a complaint. In any case in which the General Counsel does not issue a complaint because the charge fails to state an unfair labor practice, the General Counsel shall provide the person making the charge a written statement of the reasons for not issuing a complaint.

\*      \*      \*      \*

(4)(A) Except as provided in subparagraph (B) of this paragraph, no complaint shall be issued based on any alleged unfair labor practice which occurred more than 6 months before the filing of the charge with the Authority.

(B) If the General Counsel determines that the person filing any charge was prevented from filing the charge during the 6-month period referred to in subparagraph (A) of this paragraph by reason of—

(i) any failure of the agency or labor organization against which the charge is made to perform a duty owed to the person, or

(ii) any concealment which prevented discovery of the alleged unfair labor practice during the 6-month period,

the General Counsel may issue a complaint based on the charge if the charge was filed during the 6-month period beginning on the day of the discovery by the person of the alleged unfair labor practice.

## 42 U.S.C. 2000e(b), (d) and (e):

§ 2000e. Definitions

For the purposes of this subchapter—

\*    \*    \*    \*

(b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

\*    \*    \*    \*

(d) The term "labor organization" means a labor organization engaged in an industry affecting commerce, and any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization.

(e) A labor organization shall be deemed to be engaged in an industry affecting commerce if (1) it maintains or operates a hiring hall or hiring office which procures employees for an employer or procures for employees opportunities to work for an employer, or (2) the number of its members (or, where it is a labor organization composed of other labor organizations or their representatives, if the aggregate number of the members of such other labor organization) is (A) twenty-five or more during the first year after March 24, 1972, or (B) fifteen or more thereafter, and such labor organization—

(1) is the certified representative of employees under the provisions of the National Labor Relations Act, as amended [29 U.S.C. 151 et seq.], or the Railway Labor Act, as amended [45 U.S.C. 151 et seq.];

(2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or

(3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or

(4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or

(5) is a conference, general committee, joint or system board, or joint council subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection.

## 42 U.S.C. 2000e-2(c) and (d):

**(c) Labor organization practices**

It shall be an unlawful employment practice for a labor organization—

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

**(d) Training programs**

It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.

## 42 U.S.C. 2000e-3:

**§ 2000e-3. Other unlawful employment practices**

**(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings**

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

**(b) Printing or publication of notices or advertisements indicating prohibited preference, limitation, specification, or discrimination; occupational qualification exception**

It shall be an unlawful employment practice for an employer, labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for employment by such a labor organization, or relating to any classification or referral for employment by such an employment agency, or relating to admission to, or employment in, any program established to provide apprenticeship or other training by such a joint labor-management committee, indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment.

A-8

## 42 U.S.C. 2000e-5(a):

§ 2000e-5. Enforcement provisions

(a) Power of Commission to prevent unlawful employment practices

The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title.

## 42 U.S.C. 2000e-16:

§ 2000e-16. Employment by Federal Government

(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage

All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of title 5, in executive agencies as defined in section 105 of title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

(b) Equal Employment Opportunity Commission: enforcement powers; issuance of rules, regulations, etc.; annual review and approval of national and regional equal employment opportunity plans; review and evaluation of equal employment opportunity programs and publication of progress reports; consultations with interested parties; compliance with rules, regulations, etc.; contents of national and regional equal employment opportunity plans; authority of Librarian of Congress

Except as otherwise provided in this subsection, the Equal Employment Opportunity Commission shall have authority to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. The Equal Employment Opportunity Commission shall—

(1) be responsible for the annual review and approval of a national and regional equal employment opportunity plan which each department and agency and each appropriate unit referred to in subsection (a) of this section shall submit in order to maintain an affirmative program of equal employment opportunity for all such employees and applicants for employment;

(2) be responsible for the review and evaluation of the operation of all agency equal employment opportunity programs, periodically obtaining and publishing (on at least a semi-

A-9

## 42 U.S.C. 2000e-16 (cont.):

annual basis) progress reports from each such department, agency, or unit; and

(3) consult with and solicit the recommendations of interested individuals, groups, and organizations relating to equal employment opportunity.

The head of each such department, agency, or unit shall comply with such rules, regulations, orders, and instructions which shall include a provision that an employee or applicant for employment shall be notified of any final action taken on any complaint of discrimination filed by him thereunder. The plan submitted by each department, agency, and unit shall include, but not be limited to—

(1) provision for the establishment of training and education programs designed to provide a maximum opportunity for employees to advance so as to perform at their highest potential; and

(2) a description of the qualifications in terms of training and experience relating to equal employment opportunity for the principal and operating officials of each such department, agency, or unit responsible for carrying out the equal employment opportunity program and of the allocation of personnel and resources proposed by such department, agency, or unit to carry out its equal employment opportunity program.

With respect to employment in the Library of Congress, authorities granted in this subsection to the Equal Employment Opportunity Commission shall be exercised by the Librarian of Congress.

(c) Civil action by employee or applicant for employment for redress of grievances; time for bringing of action; head of department, agency, or unit as defendant

Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

(d) Section 2000e-5(f) through (k) of this title applicable to civil actions

The provisions of section 2000e-5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder.

(e) Government agency or official not relieved of responsibility to assure nondiscrimination in employment or equal employment opportunity

Nothing contained in this Act shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government.

## 29 C.F.R. 1601.2:

### § 1601.2 Terms defined in Title VII of the Civil Rights Act and the Americans with Disabilities Act.

The terms *person, employer, employment agency, labor organization, employee, commerce, industry affecting commerce, State* and *religion* as used in this part shall have the meanings set forth in section 701 of title VII of the Civil Rights Act of 1964. The term "disability" shall have the meaning set forth in section 3 of the Americans with Disabilities Act of 1990.

## 29 C.F.R. 1613.201 (1990):

### GENERAL PROVISIONS

### § 1613.201 Purpose and applicability.

(a) *Purpose.* This subpart sets forth the regulations under which an agency shall establish a continuing affirmative program for equal opportunity in employment and personnel operations without regard to race, color, religion, sex, or national origin and under which the Commission will review an agency's program and entertain an appeal from a person dissatisfied with an agency's decision or other final action on his complaint of discrimination on grounds of race, color, religion, sex, or national origin.

(b) *Applicability.* (1) This subpart applies:

(i) To military department as defined in section 102 of title 5, United States Code, executive agencies (other than the General Accounting Office) as defined in section 105 of title 5, United States Code, the U.S. Postal Service, and the Postal Rate Commission, and to the employees thereof, including employees paid from nonappropriated funds, and

(ii) To those portions of the legislative and judicial branches of the Federal Government and the government of the District of Columbia having positions in the competitive service and to the employees in those positions.

(2) This subpart does not apply to aliens employed outside the limits of the United States.

## 29 C.F.R. 1614.103:

### § 1614.103 Complaints of discrimination covered by this part.

(a) Individual and class complaints of employment discrimination and retaliation prohibited by title VII (discrimination on the basis of race, color, religion, sex and national origin), the ADEA (discrimination on the basis of age when the aggrieved individual is at least 40 years of age), the Rehabilitation Act (discrimination on the basis of handicap) or the Equal Pay Act (sex-based wage discrimination) shall be processed in accordance with this part. Complaints alleging retaliation prohibited by these statutes are considered to be complaints of discrimination for purposes of this part.

(b) This part applies to:

(1) Military departments as defined in 5 U.S.C. 102;

(2) Executive agencies as defined in 5 U.S.C. 105;

(3) The United States Postal Service, Postal Rate Commission and Tennessee Valley Authority; and

(4) All units of the legislative and judicial branches of the Federal Government having positions in the competitive service, except for complaints under the Rehabilitation Act.

(c) Within the covered departments, agencies and units, this part applies to all employees and applicants for employment, and to all employment policies or practices affecting employees or applicants for employment including employees and applicants who are paid from nonappropriated funds, unless otherwise excluded.

(d) This part does not apply to:

(1) Uniformed members of the military departments referred to in paragraph (b)(1) of this section;

(2) Employees of the General Accounting Office;

(3) Employees of the Library of Congress;

(4) Aliens employed in positions, or who apply for positions, located outside the limits of the United States; or

(5) Equal Pay Act complaints of employees whose services are performed within a foreign country or certain United States territories as provided in 29 U.S.C. 213(f).

## Executive Order ("EO") No. 11491, Sec. 6(b):

*Sec. 6. Assistant Secretary of Labor for Labor-Management Relations.* (a) The Assistant Secretary shall—

&   *   *   *   *   *

(b) In any matters arising under paragraph (a) of this section, the Assistant Secretary may require an agency or a labor organization to cease and desist from violations of this Order and require it to take such affirmative action as he considers appropriate to effectuate the policies of this Order.

## EO No. 11491, Sec. 10(e):

(e) When a labor organization has been accorded exclusive recognition, it is the exclusive representative of employees in the unit and is entitled to act for and to negotiate agreements covering all employees in the unit. It is responsible for representing the interests of all employees in the unit without discrimination and without regard to labor organization membership. The labor organization shall be given the opportunity to be represented at formal discussions between management and employees or employee representatives concerning grievances, personnel policies and practices, or other matters affecting general working conditions of employees in the unit.

## EO No. 11491, Sec. 19(b):

(b) A labor organization shall not—

(1) interfere with, restrain, or coerce an employee in the exercise of his rights assured by this Order;

(2) attempt to induce agency management to coerce an employee in the exercise of his rights under this Order;

(3) coerce, attempt to coerce, or discipline, fine, or take other economic sanction against a member of the organization as punishment or reprisal for, or for the purpose of hindering or impeding his work performance, his productivity, or the discharge of his duties owed as an officer or employee of the United States;

(4) call or engage in a strike, work stoppage, or slowdown; picket an agency in a labor-management dispute; or condone any such activity by failing to take affirmative action to prevent or stop it;

(5) discriminate against an employee with regard to the terms or conditions of membership because of race, color, creed, sex, age, or national origin; or

(6) refuse to consult, confer, or negotiate with an agency as required by this Order.

A-12

Certificate of Service

A copy of the aforegoing and/or enclosed Reply Memorandum in Support of Motion To Dismiss was served by first class mail postage prepaid by the undersigned on this date on the following:

> Andrew J. Ostrowski
> Suite 201
> 2080 Linglestown Road
> Harrisburg, PA
> 17110-9670

A copy of the Motion to Dismiss of Defendants' Peg Winters and AFGE Local 1966, the memorandum in support thereof, the proposed order with regard thereto and the Reply Memorandum in Support of The Motion To Dismiss was served by first class mail postage prepaid by the undersigned on this date on the following:

> Jose Lopez
> Office of Regional Counsel
> VA Medical Center
> 3900 Woodland Ave.
> Philadelphia, PA 19104

date:
01/31/01

_____
Martin R. Cohen

16