

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEWIS JOHNSON,                                          :
    Plaintiff                           :    No. 1:CV-00-1873
                                        :
    v.                                  :    (Judge McClure)
                                        :
ANTHONY PRINCIPI, Secretary of Veterans Affairs;  :
RODNEY KISCADDEN; ALICE FIDLER;         :    **FILED**
PEG WINTERS; IRVIN ERICKSON;            :    HARRISBURG, PA
RAYMER KENT; and AMERICAN    FEDERATION  :
OF GOVERNMENT EMPLOYEES LOCAL 1966,     :    JUN 1 2 2002
    Defendants                          :
                                        :    MARY E. D'ANDREA, CLERK
                                        :    Per _____
                                        :    Deputy Clerk

## FEDERAL DEFENDANTS' RECORD IN
## SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT:

### VOLUME II

THOMAS A. MARINO
Assistant U.S. Attorney

KATE L. MERSHIMER
Assistant U.S. Attorney
228 Walnut St., 2nd Fl.
P.O. Box 11754
Harrisburg, PA 17108-1754
717-221-4482

Date: June 12, 2002

# INDEX

**Volume I**

Declaration of Raymer A. Kent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Declaration of Suzette A. Flashel Umlauf . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Declaration of Joseph R. Stuckey, Jr. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Excerpt of Master Agreement between the Department of Veterans
      Affairs and the American Federal of Government Employees . . . . . . . 30

Winters Deposition (excerpts) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Exhibit 9 of Winters Deposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Fidler Deposition (excerpts) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

Housekeeping Aid list of Eligibles & Selection . . . . . . . . . . . . . . . . . . . . . . 93

Fidler Notes of Ratings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

Rating Panel's Cutoff list . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

EEO Affidavit of Barbara Kohr . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98

EEO Statement under Oath of Margaret Cromer . . . . . . . . . . . . . . . . . . . . 108

EEO Affidavit of Wanda Miller . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115

EEOC Hearing Testimony of Randall Houck . . . . . . . . . . . . . . . . . . . . . . . 122

Johnson Deposition (excerpts) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

Erickson Deposition (excerpts) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 155

Kiscadden Deposition (excerpts) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 176

10/19/99 Voluntary Witness Statement of Irvin Erickson . . . . . . . . . . . . . 185

10/19/99 Voluntary Witness Statement of L. Chandler . . . . . . . . . . . . . . . 186

10/19/99 Voluntary Witness Statement of Barbara Yeich . . . . . . . . . . . . . . 187

10/18/99 Report of Contact by Johnson . . . . . . . . . . . . . . . . . . . . . . . . . . . 188

VA Police Report excerpt dated 10/19/99 . . . . . . . . . . . . . . . . . . . . . . . . . 190

10/18/99 Report of Contact by Kiscadden . . . . . . . . . . . . . . . . . . . . . . . . . 191

10/20/99 Counseling Statement to Erickson . . . . . . . . . . . . . . . . . . . . . . . 192

Letter, 11/16/99, Johnson to McGuigan . . . . . . . . . . . . . . . . . . . . . . . . . . . 193

Letter, 11/17/99, Kiscadden to Johnson . . . . . . . . . . . . . . . . . . . . . . . . . . . 194

EEO (Office of Resolution Management) Initial Referral Form . . . . . . . . . . 195

Letter, 11/17/99, Closing Informal Counseling . . . . . . . . . . . . . . . . . . . . . . 196

Letter, 11/17/99, Notice of Right to File a Discrimination Complaint . . . . . . 198

EEO Formal Complaint of Employment Discrimination [200H-1532]
        (Hostile Work Environment) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 201

5/9/99 Final Agency Decision on EEO Complaint 200H-1532
        with Appeal Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 205

## Volume II

Claim for Worker's Compensation, Phone/Contact Notes . . . . . . . . . . . . . . 213

10/26/99 Acceptance of Light-Duty Certification Notice . . . . . . . . . . . . . . . 221

10/26/99 Rights and Benefits Certification Notice . . . . . . . . . . . . . . . . . . . . 222

10/26/99 Injured Employee's Notification of Responsibilities . . . . . . . . . . . . 223

Fax Cover Sheet, 11/1/99, of filing of CA-1 Claim . . . . . . . . . . . . . . . . . . . 224

Johnson's CA-1 Application (Employee's Notice of Traumatic Injury
        and Claim for Compensation) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 225

Letter, 11/1/99, Stuckey to Claims Examiner re Johnson's CA-1 Claim
        and materials accompanying the claim . . . . . . . . . . . . . . . . . . . . . . . . 228

Materials accompanying the CA-1 Claim and Stuckey's 11/1/99 Letter . . . . 229

Fax Transmission, 10/21/99, Sivley to Kent . . . . . . . . . . . . . . . . . . . . . . . . . 252

Letter, 11/8/99, Stuckey to Claims Examiner providing CA-20 form . . . . . . 254

Attending Physician's Supplemental Report . . . . . . . . . . . . . . . . . . . . . . . . 255

Letter, 11/30/99, Stuckey to Dr. Pakola requesting medical information . . . 257

Letter, 12/3/99, Stuckey to Claims Examiner . . . . . . . . . . . . . . . . . . . . . . . 258

Philhaven Discharge Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 259

12/15/99 Dept. of Labor, OWCP Notice of Decision and Appeal Rights . . . 261

Fax Transmission, 12/28/99, Stuckey to Philhaven . . . . . . . . . . . . . . . . . . 265

Authorization for Release of Information . . . . . . . . . . . . . . . . . . . . . . . . . . 266

Fax Transmission, 12/30/99, Stuckey to Dept. of Labor of
    Johnson's CA-2 Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 267

Letter,12/29/99, Stuckey to Claims Examiner re CA-2 Claim . . . . . . . . . . . 268

Johnson's CA-2 Claim (Notice of Occupational Disease and Claim for
    Compensation) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 270

Materials accompanying CA-2 Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 275

7/7/00 Dept. of Labor, OWCP, Notice of Disallowance of Claim
    and Notice of Appeal Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 338

7/7/00 Dept. of Labor, OWCP Findings of Fact
    with Attached Memorandum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 340

Letter, 1/31/02, Copy of OWCP Transcript of Hearing . . . . . . . . . . . . . . . 343

Transcript of OWCP Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 344

4/10/01, Dept. of Labor/OWCP: Decision of the Hearing Representative . . 372

2/15/00 EEO Initial Interview Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 376

3/10/00 EEO Notice of Rights and Responsibilities . . . . . . . . . . . . . . . . . . . 379

Negotiated Grievance Procedures Notice . . . . . . . . . . . . . . . . . . . . . . . . . 381

Permission to Extend Counseling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 382

Role and Responsibilities of the EEO Counselor . . . . . . . . . . . . . . . . . . . . 383

3/30/00 Letter Closing the Informal Counseling . . . . . . . . . . . . . . . . . . . . . 384

Letter, 4/6/00, Resolution request change . . . . . . . . . . . . . . . . . . . . . . . . . 388

Johnson's Revised Resolution request . . . . . . . . . . . . . . . . . . . . . . . . . . . . 390

EEO Formal Complaint of Employment Discrimination [200H-1663]
    (retaliation re Workers Compensation claim) . . . . . . . . . . . . . . . . . . . . . 391

4/10/00 Final Agency Decision EEO Complaint and Appeal Rights
    in 200H-1663 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 397

Letter, 8/4/00, Request for Medical Information . . . . . . . . . . . . . . . . . . . . . 403

Letter, 8/16/00, Dr. Pakola to Kiscadden,
    attaching 2/17/00 Dr. Pakola letter . . . . . . . . . . . . . . . . . . . . . . . . . . . 408

Letter, 10/24/00, Proposed Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 412

11/13/00 Report of Contact with Johnson's attorney . . . . . . . . . . . . . . . . . 415

Johnson's 11/14/00 Request for LWOP . . . . . . . . . . . . . . . . . . . . . . . . . . . 416

Letter, 11/17/00, Removal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 417

# CLAI ● FOR WORKERS' CC ● ENSATION

| DATE OF INJURY: | INJURY: | | CASE#: |
|---|---|---|---|
| 10-18-99 | Mental Stress | | 03-0246931 |

| NAME: Lewis W. Johnson | DOB: 7-4-56 | SSN: 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 |
|---|---|---|

| HOME ADDRESS | 1025 Harmony Hill Drive Lebanon Pa 17046 | HOME PHONE: 270-0454 WORK EXT: 4659 |
|---|---|---|

| SERVICE: OPERATIONS | SUPERVISOR: Rodney Kincaden | EXT: 4665 |
|---|---|---|

| PAY RATE: | COP DAYS USED: | TOTAL COSTS: $ |
|---|---|---|

| DATE | REMARKS |
|---|---|
| 10-26-99 | Employee reported incident of 10-18-99 and benefits were reviewed. |
| 11-1-99 | Claim FAXED To OWCP W/ CONTROVERT |
| 11-30-99 | Call from Lewis asking about CA-7 form. I informed Lewis that the case is being controverted and that he is currently out on sick leave and annual leave and not COP. Also informed Lewis that timekeeper informed me Nov 24 that Lewis will be out of AL and will have to use LWOP. I suggested Lewis speak with product line for information. Sent letter to Phil Hoven requesting additional medical. Going to ~~theta~~ therapy once a week and still unable to return to duty. |
| 12-8-99 | Received CA-7 from William Dumas for Lewis, also dropped off a disability form for LFCU. Faxed CA-7 to OWCP. Attempted to call claims examiner, left voice mail. |

PRIVACY ACT STATEMENT: Title 5, USC, Section 301; Title 10, USC, Section 3012 authorizes collection of this information. This information will be used to record data on Compensation injuries. Disclosure of SSN is authorized by Executive Order 9397. Furnishing information on this form, including SSN, is voluntary, however, nondisclosure will result in delay in filing period.

G-0419

R.213

## CLAIM FOR WORKERS' COMPENSATION

| DATE OF INJURY: | INJURY: | | CASE#: |
|---|---|---|---|
| 10-18-99 | Mental Stress | | 03-0246931 |
| NAME: Lewis W. Johnson | | DOB:<br>7-4-56 | SSN:<br>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 |

| DATE | REMARKS |
|---|---|
| 12-9-99 1400 | left voice mail with Anthony McFeeley |
| 12-10-99 1440 | left voice mail with Debbie Ross (215) 596-5736 |
| 12-13-99 | Visit from Mr. Johnson & Mr. Dumas. provided copies of information |
| | that was not previously held by Mr. Johnson. Mr. Dumas questioned |
| | why Mr Johnson was not informed of the controversion of this |
| | claim. I responded that I informed Mr Johnson when I met |
| | with both gentlemen on 11-30-99. Mr Dumas questioned if a letter |
| | or notification is provided to the employee and I stated that |
| | I normally do not send a letter as an official notification |
| | but normally notify claimant during telephone conversation |
| | or personally if the claimant is providing information |
| | needed to process the claim. I did not receive medical |
| | Documentation to support claim and have requested |
| | information about treatment from Phildovan. |
| 12-13-99 1620 | attempted to contact claims examiner, left voice mail, |
| | also called Debbie Ross and left voice mail concerning |
| | claim |
| 12/14/99 | Spoke with Mr. McFeeley concerning claim. He will |
| | review and make a decision.             **G-0418** |
| 12/15/99 | Call to CEO from Mr Dumas, Mr Kent telephone him at 5:05 P. |
| 12-20-99 | Meeting scheduled with Mr Kent, Mr Dumas, Mr Johnson, myself |
| | Discussed addition information provided concerning U.S. Cla |
| | notified his OWCP. Claim of CA-1 has been denied. Claimant |

# CLAIM FOR WORKERS' COMPENSATION

| DATE OF INJURY: | INJURY: | | CASE#: |
|---|---|---|---|
| 10-18-99 | Stress | | 03-0246931 |

| NAME: | | DOB: | SSN: |
|---|---|---|---|
| Lewis Johnson | | 7-4-52 | 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 |

| DATE | REMARKS |
|---|---|
| 12-21-99 10:00 | Attempted to call Mr. Johnson at his residance to inform him that Mr. Kiscadden is on leave the rest of the week and narritive needs to be reviewed before he signs CA-2 for submission. |
| 12-21-99 11:00 | Return call from Mr Johnson, informed him that Mr. Kiscadden is going to be on AL after today until 12-28-99. I asked Mr. Johnson if the narritive is ready for review by the Supervisor because of the above. I informed Mr. Johnson that we are not trying to rush him to get this information but are attempting to get this processed as Soon as possible for him. |
| 12-21-99 11:10 | another call to Mr Johnson to inform him that Mr. Kiscadden will not be back until 12-28-99 and I would like him to review narritive before we send in CA-2. Mr Johnson will try to get narritive to us today and he sees his doctor tonight @ 5:40 and hopes to provide that information tommorrow |
| 12-21-99 12:30 | Spoke with Mr Kiscadden concerning claim. Requested he review narritive and provide statement to the correctness of the narritive. |
| 12-22-99 0800 | visit by Mr Dumas & Mr Johnson. CA-2 has not been completed by Mr Kiscadden. Informed Mr Johnson of this.  ... with Mr Kent informed to call Mr Kiscadden at |

G-0417 (R.215)

# CLAIM FOR WORKERS' COMPENSATION

| DATE OF INJURY: | INJURY: | CASE#: |
|---|---|---|
| 10-18-99 | STRESS | 03-0246931 |

| NAME: Lewis Johnson | DOB: 7-4-52 | SSN: 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 |
|---|---|---|

| DATE | REMARKS |
|---|---|
| 0925 12-22-99 | Left voice mail for Mr Johnson informing him that I have called Mr. Kisiadden in to complete form. Asked Mr. Johnson to phone when he gets in. |
| 10:00 12-23-99 | Call to Mr. Johnson - left voice mail |
| 1:30 PM | Voice mail from Mr. Johnson that he would be in around 2:30 to sign the CA-2. I left all paperwork with Mr. Augustine for Mr Johnson signatures: including a release of information from Philhaven. |
| 12-27-99 07³⁰ | Spoke with Mr. Augustine, Mr Johnson refused to sign CA-2 because it does not contain the statement of supervisor as attachment. Refused to sign release of information or for medical records from Philhaven. |
| 12-28-99 | Release of information letter signed by Mr Johnson - Faxed request to Phil Haven @ 9:20 AM. |
| 1:00 PM | Notified by Phil Haven that medical records were available for pick-up. Drove to Phil Haven to pick up records. |
| 12-29-99 | Notified Mr Johnson that CA-2 is ready for his signature. |
| 12-30-99 | Visit by Mr. Johnson & Mr Dumas - Mr Johnson signed CA-2 but Mr Dumas was not satisfied with cover letter that will be sent to owcp of with CA-2. Spoke with Mr Kent concerning cover letter. Claim will be faxed with cover letter to owcp |

G-0416        R-216

# CLAIM FOR WORKERS' COMPENSATION

| DATE OF INJURY: 10-20-99 | INJURY: Stress | | CASE#: 03-0248172 |
|---|---|---|---|
| NAME: Lewis Johnson | | DOB: 7-4-52 | SSN: 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 |

| HOME ADDRESS | 1025 Harmony Hill ~~East~~ Drive Lebanon Pa. 17046 | HOME PHONE: 270-0454 |
|---|---|---|
| | | WORK EXT: 4659 |

| SERVICE: OPERATIONS | SUPERVISOR: R. Kiscadden | | EXT: 4665 |
|---|---|---|---|
| PAY RATE: | COP DAYS USED: | | TOTAL COSTS: $ |

| DATE | REMARKS |
|---|---|
| 12-30-99 | See notes of Lewis Johnson, CA-1, Case # 03-0246931. |
| 12-30-99 1215 | Attempted to FAX 71 page, CA-2 to Dept of Labor. Disconnected after 16 pages sent. |
| 1509 | Another attempt to Fax 71 page CA-2 - disconnect after 22 pages sent. Attempted to phone ower to see if they received. unable to speak with anyone. |
| 1-3-00 9:00 | Attempted to call ower to inquire if they received FAX. Telephone lines busy, will try later. |
| 1145 | Spoke with Kellyann Conway concerning claim. Case # 03-0248172 assigned, claims examiner Rosilyn Harris. Kellyann will leave message for Rosilyn. |
| 1200 | Attempted to contact Rosilyn Harris, left voice mail requesting return call. |
| 1-4-00 1425 | Left voice mail with Rosilyn Harris concerning claim |

PRIVACY ACT STATEMENT: Title 5, USC, Section 301; Title 10, USC, Section 3012 authorizes collection of this information. This information will be used to record data on Compensation injuries. Disclosure of SSN is authorized by Executive Order 9397. Furnishing information on this form, including SSN, is voluntary, however, nondisclosure will result in delay in filing period.

G-0501

R.217

CLAIM FOR WORKERS' COMPENSATION

270-0454

| DATE OF INJURY: 10-20-99 | INJURY: | CASE #: 03-0248172 |
|---|---|---|
| NAME: Lewis Johnson | DOB: 7-4-52 | SSN: 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 |

| DATE | REMARKS |
|---|---|
| 1-5-00  1000 am | Another attempt to contact Claim examiner. Left voice mail |
| 1-6-00  11:20 am | Another call to R. Harris, left voice mail, attempted to call Debbie Ross. (Liason) with no success. |
| 1-7-00  10:40 | Call from Mr Johnson, he has new CA-20, will bring in today, we will complete a CA-8 for period of 1-2-00 to 1-15-00. |
| 1-7-00  1150 | Call to R. Harris, no answer; attempted to ~~the~~ call Debbie Ross, no answer, left voice mail |
| 1-7-00  1:20 | FAXED CA-8 for period of 1-2-00 thru 1-15-00. |
| 1-10-00  800 | Spoke with Debbie Ross, at DOL Explained situation, she will check into it and get back to me. |
| 1240 | D Ross called back and informed me that she spoke with R. Harris and she did not get claim for Mr Johnson - Suggest that I mail CA-2 to her. —— G-0500 |
| 1-11-00 | Overnight expressed CA-2 to OWCP |
| 1-19-00  1100 | Spoke with R. Harris concerning claim. She has received it and will review claim. It will take some time before she renders decision. Informed her of another claim # that was given to Lewis because I attempted to fax twice. She will review that information and make determination. |
| 2-4-00  1105 am | left message on answering machine for Lewis to call about CA-8 completion |
| 2-8-00  3:10 pm | FAXED CA-8 for period of 1-16-00 thru 2-12-00. Also gave several CA-8's to Mr. Johnson and requested he return them every two weeks for submission. |

R. 219

# CLAIM FOR WORKERS' COMPENSATION

270-0454

| DATE OF INJURY: | INJURY: | | CASE#: |
|---|---|---|---|
| 10-20-99 | | | 03-0248172 |

NAME: Lewis Johnson   DOB: 2-4-52   SSN: 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

| DATE | REMARKS |
|---|---|
| 2-28-00 | FAXED CA-8 for 2-13-00 to 2-26-00 and CA-20A. |
| 3-3-00 | MR JOHNSON & MR DUMAS HERE TO REVIEW FILE AND PICKUP FORM CA-7, CA-7A & CA-7B. PROVIDED FORMS AND EXPLAINED SUBMISSION PROCESS. |
| 3-23-00 ²⁵⁰ | Called Mr Johnson to ask him to stop out to review leave buyback |
| 3-24-00 ⁺³⁵ | FAXED LEAVE BUYBACK TO DOL |
| 5-2-00 ²³⁰ | Call to DOL. left voice mail with Rosilyn Harris concerning claim |
| 5-3-00 ¹²⁴⁵ | Return call from Rosilyn Harris. Will make determination in next 2 to 3 weeks. |
| 5-5-00 ¹²³⁰ | left message with female @ Mr. Johnson's home to see if he received forms he requested |
| 5-8-00 | Spoke with Lewis about applying for disability retirement and he informed me that he is not going to give up his job with the federal government and he has someone working on his workers' comp claim. Gave a CA-8 |
| ⸜ | for period of 4-23-00 to 5-6-00.    G-0499 |
| 5-23-00 | Received CA-8 for 5-7-00 to 5-20-00 plus CA-20A - Faxed to Dec |
| 6-6-00 | Received CA-8 for ~~6-6-00~~ 5-21-00 thru 6-3-00. FAXED to DOL |
| 6-14-00 | Spoke to Debbie Ross to inquire about adjudication |
| 6-16-00 | Returned Call (left voice mail) from R. Harris, will make decision in 1 to 2 weeks - has enough information to make a decision, do not send anything else. |

R. 219

# CLAIM FOR WORKERS' COMPENSATION

270-6454

| DATE OF INJURY: 10-20-99 | INJURY: Stress | | CASE#: 03-0248172 |
|---|---|---|---|
| NAME: Lewis Johnson | | DOB: 7-4-52 | SSN: 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 |

| DATE | REMARKS |
|---|---|
| 6-20-00 | FAXED CA8 for period of 6-4-00 to 6-17-00 |
| 6-23-00 | Contacted by Rosilyn Harris that she will make a decision in the next week. |
| 7-14-00 | left voice mail with Ms. Harris on status of Claim |
| 7-14-00 | Return call from Ms. Harris, claim has been denied she will fax decision |
| 7-14-00 3:30 | Attempted to phone William Dumas to offer assistance in submitting a Disability Retirement Application. Mr Dumas was on another line, he will return my call. |
| 7-17-00 11:45 | Another call to Mr. Dumas, left message asking Mr. Dumas to contact me. |
| 7-18-00 | Mr. Kent contacted Mr. Dumas, Mr. Johnson not going to apply for Disability Retirement at this time, will be talking to us after doctors visit. |
| 12-22-00 | Notified of hearing on 1-24-01 |
| 1-24-01 | Rodney Kiscadden and myself attended hearing. |
| 4-16-01 | Decision on Claim received |

G-0498

R.220

## Outside Employment Certification

## Acceptance of Light-Duty Certification

I understand all medical restrictions must be followed both at work and outside of work.  I will furnish the Lebanon VA Medical Center compensation office a description of any form of outside employment engaged in while on continuation of pay, compensation and/or light-duty.

I also agree to notify the compensation office if I participate in national guard or reserve component training or active duty.

I understand that the Lebanon VA Medical Center has light-duty available and I agree to return to such duty as soon as I am able to perform any type of light work.  I agree to advise my physician on the availability of light-duty and to actively seek return to such work.


Employee's Signature

10/26/99
Date


Compensation Specialist Signature

10-26-99
Date


**G-0495**

R.221

ORIENTATION AND ELECTION OF PHYSICIAN

he basic four benefits available for on-the-job injuries are medical care, disability,
enefits relating to disability and death.  The first two will be discussed since they are t
rimary benefits immediately available for you.  The original forms completed by you will be
orwarded to OWCP for approval or disapproval. Lebanon VA Medical Center has no authority f
djudication of any claim and has little control over the time frame involved in the
pproval/disapproval by OWCP.  This office continues to forward medical and other bills unti
uch time as OWCP advises the disposition.  You, as the recipient of the medical services, m
eceive late and/or threatening notices.  The Compensation Specialist will advise medical
roviders of the problems being encountered at OWCP and ask for their patience.  Once approv
s received, all medical expenses will be paid providing they have been obtained in complian
ith proper guidelines and are substantiated.

- **INJURIES**
  - **Traumatic Injury (CA-1)**    **B. Occupational Illness (CA-2)**    **C. Recurrence (CA-2a)**
    - Definition..........___    Definition..........___    Definition.......___
    - Filing date.........___    Filing date..........___    Filing date.....___
    - COP-45 days.........___                           COP-45 days.....___
      - 90 days...........___                             90 days.......___
      - Calendar days.....___                           Calendar days..___
    - On-the-job Injury...___    On-the-job Illness....___    On-the-job Injury___

- **Compensation**
  - Use of sick/annual leave........___
  - First 3-days (waiting period)...___
  - Up to 14-days LWOP..............___
  - Beyond 14-days LWOP.............___
  - Rate of compensation............___
    - 66 2/3% or 75% tax free....___
  - LWOP (FEGLI/health benefits)....___

  - Leave buy-back & accruals.........___
  - Adjusted W-2 for tax purposes.....___
    - (current year only).........___
  - Scheduled awards..................___
  - Loss of wage earning capacity.....___
  - Vocational Rehabilitation.........___

- **Medical Care**
  - Physician......................___
  - Hospital/surgery...............___

  - Prescriptions/prosthetics........___
  - Travel costs.....................___

- **Hearing, Reconsideration and Appeal**
  - Employee is responsible for supporting evidence and/or new information........___

- **Penalty**
  - Falsification has a penalty of $10,000 or 5 years imprisonment or both........___

- **Election of Physician**
  I choose to elect _Dr. Brinser_ as the treating physician for an injury

  sustained to my _Mental Stress_ on _10-18-99_ .

  G-0494

- **Certification**
  I hereby certify that I understand my rights and benefits under the Federal
  Employees' Compensation Act.  I hereby release any medical information pertaining
  to the above injury to Human Resources Management Service at Lebanon VA Medical
  Center for appropriate processing of my workers' compensation claim.

  R.222

_Lewis W. Johnson_
Employee's Signature       Date

_Joseph R. Stuchey Jr._
Compensation Specialist Signature

## ...ed Employee's Notification of Respons.. ...s

An Employee who sustains an on-the-job injury is responsible for:

1. Reporting on-the-job injury to supervisor immediately.

2. Obtain and complete the following forms from the supervisor:

    a. For Traumatic injury, Form CA-1, Federal Employee's Notice of Traumatic Injury, - **or** -
    b. For Occupational illness or disease, Form CA-2, Federal Employee's Notice of Occupational Disease, **-and-**
    c. For any accident resulting in occupational illness or injury, VA Form 2162.

3. Report to Employee Health Clinic with your supervisor. Regardless of severity of the injury, you must report to the Employee Health Clinic for an initial evaluation in order to file an OWCP claim. If an employee does not report to Employee Health it may/will jeopardize the claim and payment of benefits. You must return the completed Medical Capabilities form to your supervisor immediately after receiving medical treatment.

4. Hand carry the following forms to the OWCP Specialist in Human Resources Management Service (HRMS) VA-2162, CA-1/CA-2 or CA-2a during administrative shift. Failure to do so may result in a delay of receipt of benefits. Compensation may be denied if notice of injury or occupational disease is not submitted within 30 days of injury. During nonadministrative shift, leave forms in the Employee Health Clinic.

    a. Upon your reporting to the OWCP Specialist with completed forms, OWCP benefits will be explained. At this time you will select your Attending Physician and obtain authorization (Form CA-16) BEFORE you go for medical treatment to a non-VA provider. Except for emergency care, authorization may not be issued retroactively for past treatment.

    b. The physician must be located within a 25 mile radius of your home or worksite.

    c. Prior approval from OWCP must be obtained for non-emergency surgery.

    d. Chiropractors are excluded from treating work incurred injuries except in very limited circumstances. If you wish to seek treatment from a chiropractor, obtain guidance from HRMS. (If the chiropractor is excluded, the government will not pay medical expenses incurred or lost time from work.)

    e. To change physicians, a written request must be submitted to the Office of Workers' Compensation Program (OWCP). Only OWCP can approve a change of physicians except where your physician has referred you to another doctor.

    f. The first treatment or examination by the Employee Health Physician or treatment by the Medical Officer of the Day (MOD) is not considered a selection of an attending physician.

    g. If you have been examined and/or treated by the MOD, you must report to the Employee Health Clinic the next administrative workday for examination and report to the OWCP Specialist for instruction on OWCP regulations and official selection of an attending physician.

5. Promptly provide medical documentation from a private physician. Payment of medical expenses and continuation of pay (COP) is not authorized without medical documentation. Returning the CA-16 with the physician's section completed properly will give the necessary medical documentation. Other valid medical documentation are a completed CA-20, the physician's narrative statement, copies of progress notes, etc., which indicate the relationship of the medical condition to the work injury claimed and the work status of the employee, including any physical limitations imposed.

6. Employee must keep the supervisor and OWCP Specialist informed of their duty status and any physical limitations imposed by the physician. YOU ARE OBLIGATED TO RETURN TO FULL OR LIGHT DUTY WORK AS SOON AS YOUR DOCTOR ALLOWS YOU TO DO SO. Failure to report as directed will result in loss of compensation benefits.

7. Contact the OWCP Specialist in Bldg. 1, Room 32 or extension 4060 for information regarding policies, procedures and problems.

NOTE: Reimbursement for medical expenses and time lost is dependent upon acceptance of the claim by OWCP. If the claim is not accepted, the employee is responsible for payment of medical bills. All medical bills submitted to OWCP must be filed on an OWCP Form 1500.

I certify that on this date I have received a copy of "Injured Employee's Notification of Responsibilities." I hereby release any medical information pertaining to the above injury to Human Resources Management Service at Lebanon VA Medical Center for appropriate processing of my workers' compensation claim.

**G-0496**

*Laura M. Johnson*
NAME

<u>10/26/99</u>
DATE

R.223

**HUMAN RESOURCES MANAGEMENT SERVICE COPY**

## Human Resources Management Service
## VA Medical Center, Lebanon, PA  17042

# F A X

### FAX# (717) 228-5925

**DATE** *Nov. 1, 1999*

**TO** *"CASE CREATE"*

**ADDRESS** *U.S. Dept. of Labor, Office of Workers' Comp. Program*

**FAX#** *215  596-0718*

**FROM** *Joseph R. Stuckey Jr.*

**NO. OF PAGES INCLUDING COVER SHEET:** *24*

**COMMENTS** *CA-1 for Lewis Johnson, DOI: 10/18/99,*

*SSN: 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.*

*Thank You.*

## Workers' Compensation

Joseph R. Stuckey, Jr.
Personnel Management Specialist
VA Medical Center
1700 South Lincoln Avenue
Lebanon, PA 17042

G-0466

R. 224

(717) 272-6621, ext. 4060    OR    FTS (700) 592-4060

# Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation

# U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs

**Employee:** Please complete all boxes 1 - 15 below. Do not complete shaded areas.
**Witness:** Complete bottom section 16.
**Employing Agency (Supervisor or Compensation Specialist):** Complete shaded boxes a, b, and c.

## Employee Data

| 1. Name of employee (Last, First, Middle) JOHNSON, LEWIS W | 2. Social Security Number 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 |
|---|---|

| 3. Date of birth Mo. 07 Day 04 Yr. 56 | 4. Sex ☒ Male ☐ Female | 5. Home telephone (717) 270-0454 | 6. Grade as of date of injury Level 2  Step 03 |
|---|---|---|---|

| 7. Employee's home mailing address (Include city, state, and ZIP code) 1025 Harmony Hill Drive<br><br>Lebanon, PENNSYLVANIA  17046 | 8. Dependents ☒ Wife, Husband ☒ Children under 18 years ☐ Other |
|---|---|

## Description of Injury

9. Place where injury occurred (e.g. 2nd floor, Main Post Office Bldg., 12th & Pine)

1-3a

| 10. Date injury occurred Mo. 10 Day 18 Yr. 99 | Time 10 : 20 ☒ a.m. ☐ p.m. | 11. Date of this notice Mo. 10 Day 26 Yr. 99 | 12. Employee's occupation housekeeping aid |
|---|---|---|---|

13. Cause of injury (Describe what happened and why)

a physicial assault caused by another employeein bldg.1-3a on oct.18@10:20 which

caused stress and strain.

| a. Occupation code |
|---|

14. Nature of injury (Identify both the injury and the part of body, e.g., fracture of left leg)

traumatic mental stress and strain.

| b. Type code 700 | c. Source code 028Φ |
|---|---|

OWCP Use - NOI Code

*Lewis W. C Johnson*    10/26/99

## Employee Signature

15. I certify, under penalty of law, that the injury described above was sustained in performance of duty as an employee of the United States Government and that it was not caused by my willful misconduct, intent to injure myself or another person, nor by my intoxication. I hereby claim medical treatment, if needed, and the following, as checked below, while disabled for work:

☒ a. Continuation of regular pay (COP) not to exceed 45 days and compensation for wage loss if disability for work continues beyond 45 days. If my claim is denied, I understand that the continuation of my regular pay shall be charged to sick or annual leave, or be deemed an overpayment within the meaning of 5 USC 5584.

☐ b. Sick and/or Annual Leave

I hereby authorize any physician or hospital (or any other person, institution, corporation, or government agency) to furnish any desired information to the U.S. Department of Labor, Office of Workers' Compensation Programs (or to its official representative). This authorization also permits any official representative of the Office to examine and to copy any records concerning me.

Signature of employee or person acting on his/her behalf                    Date

Any person who knowingly makes any false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by the FECA or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment or both.

Have your supervisor complete the receipt attached to this form and return it to you for your records.

## Witness Statement

16. Statement of witness (Describe what you saw, heard, or know about this injury)

see attached

G-0467

R.225

| Name of witness barbara yeich | Signature of witness | | Date signed |
|---|---|---|---|
| Address | City | State | ZIP Code |

Form CA-1
Rev. Sept. 1993

Official Supervisor's Report: Please complete information requested below:

## Supervisor's Report

**17.** Agency name and address of reporting office (Include city, state, and ZIP code)

VAMC Lebanon

1700 s. Lincoln Ave.

Lebanon, PENNSYLVANIA

ZIP Code 17042

OWCP Agency Code **4265**

OSHA Site Code

**18.** Employee's duty station (Street address and ZIP code)

Same

ZIP Code

**19.** Regular work hours    From 06:00 ☒ a.m. ☐ p.m.    To 02:30 ☐ a.m. ☒ p.m.

**20.** Regular work schedule ☐ Sun. ☒ Mon. ☒ Tues. ☒ Wed. ☒ Thurs. ☒ Fri. ☐ Sat.

**21.** Date of injury    Mo. 10  Day 18  Yr. 99

**22.** Date notice received    Mo. 10  Day 26  Yr. 99

**23.** Date stopped work    Mo. 10  Day 20  Yr. 99    Time : ☐ a.m. ☐ p.m.

**24.** Date pay stopped    Mo. 10  Day 20  Yr. 99

**25.** Date 45 day period began    Mo. 10  Day 20  Yr. 99

**26.** Date returned to work    Mo.  Day  Yr.    Time : ☐ a.m. ☐ p.m.

**27.** Was employee injured in performance of duty? ☒ Yes  ☐ No (If "No," explain)

**28.** Was injury caused by employee's willful misconduct, intoxication, or intent to injure self or another? ☐ Yes (If "Yes," explain)  ☒ No

**29.** Was injury caused by third party?
☐ Yes  ☒ No
(If "No," go to item 31.)

**30.** Name and address of third party (Include city, state, and ZIP code)

**31.** Name and address of physician first providing medical care (Include city, state, ZIP code)

Dr. Brinser

405 Cumberland ST.

Lebanon, PENNSYLVANIA 17042

**32.** First date medical care received    Mo. 10  Day 20  Yr. 99

**33.** Do medical reports show employee is disabled for work? ☒ Yes  ☐ No

**34.** Does your knowledge of the facts about this injury agree with statements of the employee and/or witness? ☒ Yes  ☐ No (If "No," explain)

**35.** If the employing agency controverts continuation of pay, state the reason in detail.

**36.** Pay rate when employee stopped work

$          Per

## Signature of Supervisor and Filing Instructions

**37.** A supervisor who knowingly certifies to any false statement, misrepresentation, concealment of fact, etc., in respect of this claim may also be subject to appropriate felony criminal prosecution.

I certify that the information given above and that furnished by the employee on the reverse of this form is true to the best of my knowledge with the following exception:

**G-0468**

Name of supervisor (Type or print)
KISCADDEN,RODNEY

Signature of supervisor
/ES/ KISCADDEN,RODNEY          *Rodney Kiscadden*

Date
Oct 26, 1999@09:33:29

Supervisor's Title
Acting Manager

Office phone
4656

**38.** Filing instructions

☐ No lost time and no medical expense: Place this form in employee's medical folder (SF-66-D)
☐ No lost time, medical expense incurred or expected: forward this form to OWCP
☒ Lost time covered by leave, LWOP, or COP: forward this form to OWCP
☐ First Aid injury

R-22C

Form CA-1
Rev. Sept. 1993



# DEPARTMENT OF VETERANS AFFAIRS
## Medical Center
### 1700 South Lincoln Avenue
### Lebanon, PA 17042

November 1, 1999

In Reply Refer To: 595/121

United States Department of Labor
Office of Workers' Compensation Program
3535 Market Street
Philadelphia PA 19104

Dear Claims Examiner:

Enclosed please find a claim for a Traumatic Injury being submitted by Mr. Lewis Johnson, SSN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, that was alleged to have occurred on September 18, 1999. The cause of injury provided on the CA-1 alleges that Mr. Johnson was "physically assaulted by another employee who caused stress and strain". This claim is being controverted based on the information obtained during a review of the incident.

This incident was reported to the supervisor on October 18, 1999, and a Report of Contact was initiated. In an effort to defuse the situation, Mr. Rodney Kiscadden immediately assigned the two employees involved to separate areas of the medical center. Mr. Kiscadden also counseled the employee involved and ordered the employee not to have any contact with Mr. Johnson. A witness statement that has been provided indicates that a confrontation had occurred and words were exchanged between Mr. Johnson and another employee, but does not indicate that an assault occurred. An official police investigation was conducted concerning the incident and there was no evidence found to support that an actual assault had occurred during the confrontation. I have enclosed a copy of the police report for your review.

On October 22, 1999, Mr. Johnson spoke with Mr. Raymer Kent, Human Resources Manager, about the incident. During the meeting, Mr. Kent informed Mr. Johnson that the supervisor had ordered the other employee involved in the incident to refrain from making any contact with Mr. Johnson. Mr. Kent also assured Mr. Johnson that the other employee would not be assigned to work in proximity to Mr. Johnson's assigned area.

On the date of the incident, Mr. Johnson requested and was granted Annual Leave for the remaining two and a half-hours of his shift. Mr. Johnson returned to work the following day, October 19, 1999, and worked a full 8-hour day without incident. On the following day

G-0469    R-227

Wednesday, October 20, 1999, Mr. Johnson reported for duty and it was reported that Mr. Johnson was sitting in his vehicle in the parking lot refusing to report to his assigned workplace. When police officers arrived, they concluded that this was an administrative matter and contacted the appropriate personnel. A meeting was held with Mr. Johnson and product line management and Mr. Johnson was reassured that the situation was neutralized. At the conclusion of this meeting Mr. Johnson requested and was granted Annual Leave after working three hours of his assigned shift. Mr. Johnson did not request Sick Leave after either of these incidents.

Later the same day on October 20, 1999, Mr. Johnson made an appointment with his primary care physician, Earl Brinser, DO who excused him from work until Monday October 25, 1999. Written on a prescription slip submitted by Mr. Johnson, Dr. Brinser recommended counseling for Mr. Johnson. There has been no medical information provided from Dr. Brinser's office to support that Mr. Johnson sustained a traumatic injury causally related to the incident at the medical center.

On October 22, 1999, Mr. Johnson was admitted to the Acute Partial Day Hospital Program at Philhaven Hospital. Mr. Johnson provided a letter from Richard Pakola, MD, stating that he was enrolled in this program and will be unable to report to work until further notice. Mr. Johnson has failed to provide medical documentation to support his allegation of a traumatic injury. Any additional medical documentation will be processed immediately to facilitate easy adjudication of this claim.

After a review of the information provided, it can not be concluded that there is a causal relationship between the incident that occurred and the counseling that Mr. Johnson is undergoing. Therefore it would be suggested that this claim for Traumatic Injury would be denied.

If I can be of further assistance or additional information is needed I may be contacted at (717) 272-6621, Extension 4060.

Sincerely,

JOSEPH R. STUCKEY, JR.
Personnel Management Specialist

Enclosures

**G-0470**

R.228

DEPARTMENT OF VETERANS AFFAIRS                    Page   1
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

VA Facility                              Date/Time Printed
LEBANON, PA                              OCT 19, 1999@12:25
Automated VA Form 10-1393


DATE/TIME RECEIVED: OCT 19, 1999@09:30
DATE/TIME OF OFFENSE: OCT 13, 1999@08:00
ENDING DATE/TIME OF OFFENSE: OCT 18, 1999@10:40
LOCATION: 1-2C ELEVATOR LOBBY
WEAPON USED: NONE
INVESTIGATING OFFICER: SABOL, STEPHEN J JR
METHOD OF OPERATION:

CLASSIFICATION CODE: DISTURBANCE/DISORDERLY CONDUCT

* * * * * * * * * * * * * * * VICTIM DATA * * * * * * * * * * * * * * * * *

VICTIM NAME: JOHNSON, LEWIS W
SEX: MALE            RACE: BLACK
STATUS: EMPLOYEE
DRIVER'S LICENSE & STATE: 18726256 PENNSYLVANIA
HOME ADDRESS: 2020 SPRUCE PARK
              LEBANON, PENNSYLVANIA 17042

HOME PHONE:
WORK ADDRESS: 1700 SOUTH LINCOLN AVENUE
              LEBANON, PENNSYLVANIA 17042

WORK PHONE: 4661
MEDICAL TREATMENT:


* * * * * * * * * * * * * * * OFFENDER DATA * * * * * * * * * * * * * * * *

OFFENDER NAME: ERICKSON, IRVIN D
SSN: 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        DOB: NOV 21, 1948         AGE: 50
SEX: MALE               RACE: CAUCASIAN           HEIGHT:
WEIGHT:                 HAIR COLOR: BROWN         EYE COLOR:
SKIN TONE:              SCARS/MARKS:
STATUS: EMPLOYEE
DRIVER'S LICENSE & STATE:
PERSONAL DESCRIPTION:

HOME ADDRESS: PO BOX 253
              JONESTOWN, PENNSYLVANIA 17038

HOME PHONE:
WORK ADDRESS: 1700 SOUTH LINCOLN AVENUE
              LEBANON, PENNSYLVANIA 17042

WORK PHONE: 4661
OFFENSE COMMITTED: DISORDERLY CONDUCT 1.218(b) VA REG 11
DISPOSITION: RELEASED/NO FURTHER ACTION  CHARGING DOCUMENT:

G-0471

R.229

DEPARTMENT OF VETERANS AFFAIRS                          Page    2
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

VA Facility                              Date/Time Printed
LEBANON, PA                              OCT 19, 1999@12:25
Automated VA Form 10-1393


* * * * * * * * * * * * * * WITNESS  DATA * * * * * * * * * * * * * * * * *

WITNESS NAME: STECKBECK, DEAN C
HOME ADDRESS: 1816 PLAZA APT.
              LEBANON, PENNSYLVANIA 17042
HOME PHONE: 717-279-0788
WORK ADDRESS: 1700 SOUTH LINCOLN AVENUE
              BUILDING 2-G
              LEBANON, PENNSYLVANIA 17042
WORK PHONE: 4004

* * * * * * * * * * * * * * WITNESS  DATA * * * * * * * * * * * * * * * * *

WITNESS NAME: YEICH, BARBARA J
HOME ADDRESS: 345 SOUTH SIXTEENTH STREET
              APT#G-04
              LEBANON, PENNSYLVANIA 17042
HOME PHONE: 273-0326
WORK ADDRESS: 1700 SOUTH LINCOLN AVENUE
              BUILDING 1-2A
              LEBANON, PENNSYLVANIA 17042
WORK PHONE: 4368

* * * * * * * * * * * * * * WITNESS  DATA * * * * * * * * * * * * * * * * *

WITNESS NAME: CHANDLER, LOUIS C
HOME ADDRESS: 251 NORTH RAILROAD STREET
              PALMYRA, PENNSYLVANIA 17078
HOME PHONE:
WORK ADDRESS:
WORK PHONE:

* * * * * * * * * * * * * * WITNESS  DATA * * * * * * * * * * * * * * * * *

WITNESS NAME: BURKHOLTZ, CHARLES R. JR.
HOME ADDRESS: 911 MILLER STREET
              LEBANON, PENNSYLVANIA 17046
HOME PHONE: 717-274-5263
WORK ADDRESS: 1700 SOUTH LINCOLN AVENUE
              POLICE DEPARTMENT
              LEBANON, PENNSYLVANIA 17042
WORK PHONE: 4005


WAS CIP WEAPON USED? NO
WAS POLICE BATON USED? NO                    G-0472    R.230

DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

Page    3

VA Facility
LEBANON, PA
Automated VA Form 10-1393

Date/Time Printed
OCT 19, 1999@12:25

OTHER AGENCY NOTIFIED

U.S. ATTORNEY NOTIFIED

* * * * * * * * * * * * * * * * * NARRATIVE * * * * * * * * * * * * * * * * * *

ORIGIN:

SGT. BURKHOLTZ RECEIVED A CALL FROM L. JOHNSON RE: RACIAL HARASSMANT.

INITIAL OBSERVATION:

NONE

INVESTIGATION:

ON 10-19-99 AT 0930 HOURS SGT BURKHOLTZ RECEIVED A CALL FROM EMS
EMPLOYEE L. JOHNSON #8509 STATING THAT EMS EMPLOYEE IRV ERICKSON #5663 WAS
MAKING RACIAL STATEMENTS AND HARASSING HIM. SGT BURKHOLTZ REQUESTED THAT L.
JOHNSON COME INTO THE POLICE STATION FOR AN INTERVIEW.
ON 10-19-99 AT 0945 HOURS I INTERVIEWED EMPLOYEE JOHNSON CONCERNING
THIS MATTER. JOHNSON STATED THAT ON 10-13-99 AT 0800 HOURS HE WAS IN BLDG#
1 SECOND FLOOR ELEVATOR LOBBY WHEN IRV ERICKSON APPROACHED HIM AND STATED "
HEY LOU, DO YOU WANT TO KNOW WHAT PEOPLE ARE SAYING ABOUT YOU ". JOHNSON
REPLIED BY SAYING "NO". ERICKSON AT THIS TIME CALLED FOR L.  CHANDLER TO
COME OVER AND LISTEN WHILE HE TOLD JOHNSON WHAT PEOPLE ARE SAYING. ERICKSON
SAID " LEWIS, THEY SAY YOU ARE A WHITE MAN IN BLACK SKIN ". JOHNSON STATED
THAT THIS MADE HIM SICK AND HE BEGAN TO SHAKE.  JOHNSON STATED THAT HE
DEPARTED THE AREA. JOHNSON THEN STATED THAT ON 10-18-99 AT 1025 HOURS HE
WAS IN BLDG# 1 THIRD FLOOR A SIDE THAT ERICKSON APPROACHED HIM AND SAID "
HEY LEWIS, I WANT TO TALK TO YOU". JOHNSON STATED THAT HE SAID " I DON'T
WANT TO TALK TO YOU ". JOHNSON SAID THAT HE BEGAN TO WALK AWAY BUT ERICKSON
CONTINUED TO FOLLOW HIM ASKING HIM TO TALK TO HIM. JOHNSON SAID THAT
ERICKSON BUMPED UP AGAINST HIM IN THE SHOULDER AREA AND CONTINUED TO FOLLOW
HIM STATING " WHY WON'T YOU TALK TO ME ".  JOHNSON STATED AT THIS TIME HE
WENT BEHIND THE NURSES STATION AND LOCKED HIMSELF IN THE BATHROOM. REPORT
OF CONTACTS ARE ATTACHED TO THIS REPORT.
ON 10-19-99 AT 1025 HOURS I INTERVIEWED BARB YEICH THE WITNESS OF
THE 10-18-99 INCIDENT ON 1-3A. YEICH STATED THAT SHE OBSERVED ERICKSON
APPROACH JOHNSON ON 1-3A. YEICH STATED THAT ERICKSON SAID "HEY LEWIS, I
WANT TO TALK TO YOU". JOHNSON REPLIED "I DON'T WANT TO TALK TO YOU". YEICH
DID OBSERVE ERICKSON FOLLOW AND CONINUE TO ASK JOHNSON TO TALK TO HIM.

R.231

**Veterans Administration**

# VOLUNTARY WITNESS STATEMENT

Statement of _Ivin Erickson_ , Date of Birth _____

and Social Security Number _____ . Given on _____

to _____ , at _____

in reference to Uniform Offense Report Number _____

10-13-99 Lewis Johnson came down to 1-2B where Tom Chandler and I were doing waxing. He had no reason to be down there, so all three of us were kidding around, and as he was leaving I said to him what his own brother say about him. I did not tell him that as my point of view, only what his own brothers say about him. I have no ill feeling against Johnson. I do not stalk him.

As far as 10-13-99 I approached Mr. Johnson to explain what I said, as he walked away from me we slightly bumped into each other. No Mallace was intended. I just wanted to explain to him what was said.

I have read each page of this statement consisting of _____ pages(s) and I certify that the information given is true to the best of my knowledge.

**G-0474**

_Ivin Erickson_
(Declarant) Signature

_10-20-99_
Date

R-232

_____
(Witness) Signature

_____
Date

**Veterans Administration**

# VOLUNTARY WITNESS STATEMENT

Statement of _YEICH, BARBARA_ , Date of Birth _12/04/41_

and Social Security Number _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_ . Given on _OCT. 19, 1999_

to _OFFICER SABOL_ , at _____

in reference to Uniform Offense Report Number _____

On October 18, 1999 @ approx. 1025, I was sitting @ my desk on 1-3A. Lewis Johnson approached my desk to speak with me and at that time was approached by Isv Erickson who came up to the side of Lewis and said, "I want to talk to you", at that point Lewis said, "I don't have anything to say to you" and started to walk away from the desk with Isv following and the same statements were made again by both parties. Lewis turned to come down the hall with Isv following him and the same statements were made again by both parties. Lewis came to the opening at my desk with Isv following and both statements were made again. Lewis went into the bathroom and locked the door. Isv stood at the opposite end of my desk and said something to the effect - just because one of your brothers made a remark, and then he left.

I have read each page of this statement consisting of ___1___ pages(s) and I certify that the information given is true to the best of my knowledge.

**G-0475**

_Barbara J. Yeich_
(Declarant) Signature

_10/19/99_
Date

_____
(Witness) Signature

_____
Date

R-233

DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

Page    4

'A Facility
EBANON, PA
utomated VA Form 10-1393

Date/Time Printed
OCT 19, 1999@12:25

YEICH STATED THAT JOHNSON WALKED BEHIND THE NURSES STATION AND LOCKED HIMSELF IN THE BATHROOM. WITNESS STATEMENT IS ATTACHED TO THIS REPORT.

ON 10-19-99 AT 1042 HOURS I APPROACHED IRV ERICKSON IN BLDG# 1 FIFTH FLOOR IN HIS OFFICE AREA. BEFORE ANY STAEMENTS WERE MADE I INFORMED ERICKSON OF HIS RIGHTS, TO WHICH HE FULLY UNDERSTOOD. I BEGAN TO INTERVIEW ERICKSON CONCERNING THIS MATTER. ERICKSON STATED THAT ON 10-13-99 AT 0800 HOURS HE CALLED JOHNSON OVER ONLY TO TELL HIM WHAT PEOPLE WERE SAYING ABOUT HIM. ERICKSON STATED THAT THIS WHAT NOT HIS PERSONAL FEELINGS BUT ONLY WHAT PEOPLE WERE SAYING. ERICKSON STATED THAT HE DID SAY "HEY LEWIS, THEY ARE SAYING THAT YOU ARE A WHITE MAN IN BLACK SKIN". ERICKSON SAID THAT EMS EMPLOYEE L. CHANDLER WAS THERE TO WITNESS THESE STATEMENTS.    ERICKSON STATED THAT JOHNSON, CHANDLER AND HIMSELF WERE JOKING AROUND EARLIER THAT MORNING. ERICKSON STATED THAT ON 10-18-99 AT 1025 HE DID IN FACT APPROACH JOHNSON ON 1-3A ONLY TO CLEAR UP THE MISUNDERSTANDING BETWEEN THEM ON THE STATEMENTS MADE. ERICKSON STATED THAT HE NEVER PUSHED HIS SHOULDER INTO JOHNSON OR MADE ANY PHYSICAL CONTACT WITH JOHNSON. HE JUST WANTED TO TALK TO JOHNSON TO CLEAR THINGS UP. SEE VOLUNTARY STATEMENT ATTACHED TO THIS REPORT.

ON 10-19-99 AT 1150 HOURS I INTERVIEWED L. CHANDLER CONCERNING THIS MATTER. CHANDLER STATED THAT ERICKSON WAS ONLY TELLING JOHNSON WHAT OTHER PEOPLE WERE SAYING ABOUT HIM. CHANDLER STATED THAT ERICKSON WASN'T VIEWING HIS OWN PERSONAL FEELINGS ABOUT JOHNSON. SEE VOLUNTARY STATEMENT ATTACHED TO THIS REPORT.

AFTER HEARING THE TESTIMONY OF ALL INVOLVED AND MY INVESTIGATION, I FIND THAT THE COMPLAINT FILED BY L. JOHNSON AGAINST I. ERICKSON IS UNFOUNDED. NO FURTHER POLICE ACTION REQUIRED AT THIS TIME.


DISPOSITION:


CASE CLOSED.



STEPHEN J JR SABOL    # 2987
INVESTIGATING OFFICER

G-0476

R.234

On our Abaf 3:00pm on 10/13/99 in Old. 1
2nd floor lobby I was racially Harassed
by Eru Eerckione.

As I was walking threw the lobby, I passed
Louis Chandler heading for the freight Elevator, I
was now approaching Eru E. Who was Standing
near the doors of the OR. Eru started in
on me by saying this statment "Hey Lewis
do you want to hear what people are saying
About you." I put up my left hand And said
"No." "I don't want to hear it." I was about
5ft from him when I said that. He then called
call for Louis C, by saying "Hey Lou, Hey Lou"
"Listen, I going to tell Lewis what people are
saying about him." He then put his Arm and hand in
my path to slow my movment.
When he slow me down by blocking my path, he
the said, "Lewis, people calling you a white guy in
black skin." After hearing that statment, I went
threw the doors leading to the freight elevator. I felt
sick, I started to shake. This man has been
harassing me since I been in EMS. I starting to

**G-0477**

P-235

feel very fear-ful of losing my job. So I need something done to stop this racial harassment.

Lewis W. Johnson
10/15/97

**G-0478**

R.236

Page 1

**VA**  Department of Veterans Affairs

## REPORT OF CONTACT

*(NOTE: This form must be filled out in ink or on typewriter, as it becomes a permanent record in veterans' folders.)*

| | VA OFFICE | IDENTIFICATION NOS. (C, XC, SS, XSS, V, K, etc.) |
|---|---|---|

LAST NAME - FIRST NAME - MIDDLE NAME OF VETERAN *(Type or print)*
Johnson Lewis

DATE OF CONTACT
10/18/99

ADDRESS OF VETERAN

TELEPHONE NO. OF VETERAN *(Include Area Code)*

PERSON CONTACTED
Erickson Irvin

TYPE OF CONTACT *(Check)*
☒ PERSONAL  ☐ TELEPHONE

ADDRESS OF PERSON CONTACTED

TELEPHONE NO. OF PERSON CONTACTED *(Include Area Code)*

BRIEF STATEMENT OF INFORMATION REQUESTED AND GIVEN

On or about 10:25 AM, 10/18/99 on ward 1-3A I was harassed by Irvin Erickson.

I was walking up the hall to my Hac closet when I was approach by Irvin Erickson. He said "Hey, Lewis I want to talk to you." I said to Irvin "I don't want to talk to you" I turned around to walk the other way and he followed me. Then he started to say as I walked pass the nurse's station. "Why don't you want to talk to me." After I passed the nurse station he caught up to me and bump me with his shoulder. saying "why don't you want to talk to me." I said "I just don't want to." So I change direction to get him off my shoulder, but he stay on me, and kept repeating the same words, "why don't you want to talk to me. He continue to ride my

DIVISION OR SECTION

EXECUTED BY *(Signature and title)*

G-0479

R.237

Page 2

**VA** Department of Veterans Affairs

## REPORT OF CONTACT

*(NOTE: This form must be filled out in ink or on typewriter, as it becomes a permanent record in veterans' folders.)*

| VA OFFICE | IDENTIFICATION NOS. (C, XC, SS, XSS, V, K, etc.) |
|---|---|

LAST NAME - FIRST NAME - MIDDLE NAME OF VETERAN *(Type or print)*
Johnson Lewis

ADDRESS OF VETERAN

DATE OF CONTACT
10/18/99

TELEPHONE NO. OF VETERAN *(Include Area Code)*

PERSON CONTACTED
Erickson, Irvin

ADDRESS OF PERSON CONTACTED

TYPE OF CONTACT *(Check)*
☒ PERSONAL    ☐ TELEPHONE

TELEPHONE NO. OF PERSON CONTACTED *(Include Area Code)*

BRIEF STATEMENT OF INFORMATION REQUESTED AND GIVEN
"Continue"

Shoulder until I reach the opening in the nursing station. I then kept quiet and went in the restroom and lock myself in. Barbra Yaich was sitting at the nursing station when all this was going on.

G-0480

R-238

DIVISION OR SECTION

EXECUTED BY *(Signature and title)*
Lewis W. Johnson  Housekeeping Aid

**Veterans Administration**

# VOLUNTARY WITNESS STATEMENT

Statement of _L. Chandler_, Date of Birth _____

and Social Security Number _____. Given on _10-19-99_

to _Officer SABOL_, at _Police office._

in reference to Uniform Offense Report Number _99-10-19 @ 0930_

I heard Irv state that he heard that Someone said that he was "A white man in black skin." This was not a personal opinion against L. Johnson.

I have read each page of this statement consisting of _____ pages(s) and I certify that the information

given is true to the best of my knowledge.

**G-0481**

_Laura Chandler_
(Declarant) Signature

Date _10-19-99_

R.239

(Witness) Signature

Date

*Mrs. M C _____*

DEA # _____

**EARL H. BRINSER, D.O.**
405 CUMBERLAND STREET
LEBANON, PA 17042
717-272-7321
PA LIC. No. OS004430-L

NAME _____

ADDRESS _____ DATE 60/20/9g

R̸

Examine 2/ Oct 99

thru 2 4 Oct 99

RTW 25 Oct 99.

Unable to _____

REFILL _____ TIMES PRN NR _____

SUBSTITUTION PERMISSIBLE _____ D.O.

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED,
THE PRESCRIBER MUST HANDWRITE BRAND NECESSARY OR
BRAND MEDICALLY NECESSARY IN THE SPACE BELOW.

_____

01/10/97                                        01-K00946656

G-0482

R.240

DEA # _____

**EARL H. BRINSER, D.O.**
405 CUMBERLAND STREET
LEBANON, PA 17042
717-272-7321
PA LIC. No. OS-04430-X

NAME _____

ADDRESS _____ DATE 60/20/88

℞

Busprin 53 # 30

Sig Tab B5

REFILL _____ TIMES PRN NR

SUBSTITUTION PERMISSIBLE _____ D.O.

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED,
THE PRESCRIBER MUST HANDWRITE BRAND NECESSARY OR
BRAND MEDICALLY NECESSARY IN THE SPACE BELOW.

01/10/97                                    01-K00948656

G-0483

R.241

DEA # _____

**EARL H. BRINSER, D.O.**
405 CUMBERLAND STREET
LEBANON, PA 17042
717-272-7321
PA LIC. NO. OS-04430-L

NAME _____

ADDRESS _____  DATE _____

R:

*Counseling Re*
*stress, Strain*
*fear, work related*
*issues*

REFILL ____ TIMES PRN NR

SUBSTITUTION PERMISSIBLE _____ D.O.

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED,
THE PRESCRIBER MUST HANDWRITE BRAND NECESSARY OR
BRAND MEDICALLY NECESSARY IN THE SPACE BELOW.

01/10/97                    01-K00946656

G-0484

R.242

DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

Page   5

A Facility
EBANON, PA
utomated VA Form 10-1393

Date/Time Printed
OCT 19, 1999@13:37

OLLOW-UP NOTES:

ON 10-19-99 @ 0945 I WITNESSED OFFICER SABOL INTERVIEW EMPLOYEE LEWIS
JOHNSON ON HIS COMPLAINT AGAINST EMPLOYEE IRVIN ERICKSON FOR HARASSING,
RACIAL STATEMENTS AND HARASSMENT.

JOHNSON STATED THAT HE WAS AFRAID OF ERICKSON AND WHAT HE MIGHT DO.
JOHNSON ALSO PROVIDED US A COPY OF TWO  STATEMENTS HE HAD PROVIDED TO THE
EEO OFFICER.

ON 10-19-99 AT 1025 HOURS I WITNESSED OFFICER SABOL INTERVIEW EMPLOYEE
BARB YEICH. YEICH TOLD OFFICER SABOL ON 10-18-99 THAT SHE OBSERVED ERICKSON
APPROACH JOHNSON ON 1-3A AT WHICH TIME SHE OVER HEARD ERICKSON SAYI WANT TO
TALK TO YOU". YEICH SAID SHE HEARD LEWIS SAY "I DO NOT WANT TO TALK TO YOU".
SHE ALSO SAID SHE OBSERVED ERICKSON CONTINUE TO FOLLOW JOHNSON AND ASK
JOHNSON TO TALK TO HIM. YEICH SAID JOHNSON WALKED BEHIND THE COUNTER AND
LOCKED HIMSELF IN THE BATHROOM. YEICH WAS ASKED TO PROVIDE US WITH A
STATEMENT REGARDING HER OBSERVATION. WHICH IS ATTACHED TO THIS REPORT.

10-19-99 AT 1042 HOURS OFFICER SABOL AND MYSELF WENT TO 1-5A TO SPEAK
WITH ERICKSON. OFFICER SABOL APPROACHED ERICKSON ON 1-5 IN HIS OFFICE AREA
AND ASKED IF WE COULD TALK TO HIM. BEFORE ANY QUESTIONS WERE ASKED OF
ERICKSON OFFICER SABOL ADVISED ERICKSON MIRANDA RIGHTS ERICKSON SAID HE
FULLY UNDERSTANDS HIS RIGHTS AND WAS WILLING TO TALK TO US ABOUT THIS
INCIDENT. ERICKSON WAS COOPERATIVE. ERICKSON SAID HE WAS KIDDING AROUND AND
STATED THAT HE DID NOT MAKE ANY RACIAL SLURS. ERICKSON ALSO SAID THIS MAKES
NO BECAUSE HE WORKS WITH LEWIS CHANDLER, A BLACK MAN WHO IS HIS PARTNER.
ERICKSON ALSO STATED HE NEVER PUSHED OR MADE PHYSICAL CONTACT WITH JOHNSON.
ERICKSON ALSO PROVIDED US WITH A VOLUNTARY STATEMENT.

ON 10-19-99 AT 1145 HOURS I OBSERVED EMPLOYEE L.CHANDLER IN BLDG 17 AND
ASKED HIM IF HE WOULD GO SEE OFFICER SABOL IN POLICE STATION. I TOLD HIM
THAT OFFICER SABOL WOULD EXPLAIN WHAT WE NEEDED DUE TO CROWDED HALWAYS.

DEAN C STECKBECK    # 2683
FOLLOW-UP INVESTIGATOR

G-0485

R. 243

DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

PAGE:    1

A Facility
EBANON,PA
utomated VA Form 10-1393

Date/Time Printed
OCT 20, 1999@09:45

OLLOW-UP NOTES:

ON 10-19-99 @ 0945 I WITNESSED OFFICER SABOL INTERVIEW EMPLOYEE LEWIS
JOHNSON ON HIS COMPLAINT AGAINST EMPLOYEE IRVIN ERICKSON FOR HARASSING,
RACIAL STATEMENTS AND HARASSMENT.
    JOHNSON STATED THAT HE WAS AFRAID OF ERICKSON AND WHAT HE MIGHT DO.
JOHNSON ALSO PROVIDED US A COPY OF TWO  STATEMENTS HE HAD PROVIDED TO THE
EEO OFFICER.
    ON 10-19-99 AT 1025 HOURS I WITNESSED OFFICER SABOL INTERVIEW EMPLOYEE
BARB YEICH. YEICH TOLD OFFICER SABOL ON 10-18-99 THAT SHE OBSERVED ERICKSON
APPROACH JOHNSON ON 1-3A AT WHICH TIME SHE OVER HEARD ERICKSON SAYI WANT TO
TALK TO YOU".YEICH SAID SHE HEARD LEWIS SAY "I DO NOT WANT TO TALK TO YOU".
SHE ALSO SAID SHE OBSERVED ERICKSON CONTINUE TO FOLLOW JOHNSON AND ASK
JOHNSON TO TALK TO HIM.YEICH SAID JOHNSON WALKED BEHIND THE COUNTER AND
LOCKED HIMSELF IN THE BATHROOM. YEICH WAS ASKED TO PROVIDE US WITH A
STATEMENT REGARDING HER OBSERVATION. WHICH IS ATTACHED TO THIS REPORT.
    10-19-99 AT 1042 HOURS OFFICER SABOL AND MYSELF WENT TO 1-5A TO SPEAK
WITH ERICKSON. OFFICER SABOL APPROACHED ERICKSON ON 1-5 IN HIS OFFICE AREA
AND ASKED IF WE COULD TALK TO HIM. BEFORE ANY QUESTIONS WERE ASKED OF
ERICKSON OFFICER SABOL ADVISED ERICKSON MIRANDA RIGHTS ERICKSON SAID HE
FULLY UNDERSTANDS HIS RIGHTS AND WAS WILLING TO TALK TO US ABOUT THIS
INCIDENT. ERICKSON WAS COOPERATIVE.ERICKSON SAID HE WAS KIDDING AROUND AND
STATED THAT HE DID NOT MAKE ANY RACIAL SLURS.ERICKSON ALSO SAID THIS MAKES
NO BECAUSE HE WORKS WITH LEWIS CHANDLER,A BLACK MAN WHO IS HIS PARTNER.
ERICKSON ALSO STATED HE NEVER PUSHED OR MADE PHYSICAL CONTACT WITH JOHNSON.
ERICKSON ALSO PROVIDED US WITH A VOLUNTARY STATEMENT.
    ON 10-19-99 AT 1145 HOURS I OBSERVED EMPLOYEE L.CHANDLER IN BLDG 17 AND
ASKED HIM IF HE WOULD GO SEE OFFICER SABOL IN POLICE STATION. I TOLD HIM
THAT OFFICER SABOL WOULD EXPLAIN WHAT WE NEEDED DUE TO CROWDED HALWAYS.


DEAN C STECKBECK   # 2683
FOLLOW-UP INVESTIGATOR


FOLLOW-UP NOTES:

ON 10-20-99 AT APPROXIMATELY 0820 HOURS I RECEIVED A TELEPHONE CALL FROM
EMPLOYEE ROBERT DENNIS INFORMING ME THAT EMPLOYEE LEWIS W. JOHNSON WAS

G-0486    R.244



DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

PAGE:    2

A Facility
EBANON,PA
utomated VA Form 10-1393

Date/Time Printed
OCT 20, 1999@09:45

SITTING IN LOT #23 IN HIS VEHICLE REFUSING TO REPORT TO HIS WORK PLACE
BECAUSE EMPLOYEE IRVIN D. ERICKSON WAS ASSIGNED TO THE SAME BUILDING.
MYSELF AND OFC. ROYAL WENT OVER TO BUILDING #23 AND OFFICER ROYAL ESCORTED
JOHNSON. BECAUSE THIS IS AN ADMINISTRATIVE MATTER I CONTACTED CAROLYN
MCGUIGAN, EMS SUPERVISOR WHO IN TURN CALLED FACILITIES MANAGER, IRV MURITZ.
A MEETING INVOLVING MCGUIGAN, MURITZ, EMS SUPERVISOR, RODNEY KISCADDEN,
SGT. BURKHOLTZ, MYSELF, & LEWIS WAS HELD IN BUILDING #2,15A.   PER HIS
REQUEST OF LEWIS, HE WAS GRANTED A/L AND THE. NO FURTHER POLICE
INTERVENTION IS REQUIRED AND IS BEING HANDELED BY LEWIS'S SUPERVISORS
ADMINISTRATIVELY......

ONALD E GUY JR #780
FOLLOW-UP INVESTIGATOR

**G-0487**

R.245

# Philhaven

283 South Butler Road
P.O. Box 550
Mount Gretna, PA 17064
(717) 273-8871
(717) 270-2452 FAX

October 22, 1999

Veteran's Administration Medical Center
1700 South Lincoln Avenue
Lebanon, PA 17042

RE: Lewis Johnson

To Whom It May Concern:

Lewis Johnson was admitted to the Acute Partial Day Hospital
Program at Philhaven on October 22, 1999.  He will attend Monday
through Friday, 9:00 a.m. to 3:00 p.m.  During this time, he will
be unable to report to work.  As his discharge date approaches,
you will be notified again, by letter, when he will be able to
return to work.

If you have further questions, please feel free to call staff
Monday through Friday, 8:00 a.m. to 4:30 p.m. at (717) 270-2405.

Thank you for your consideration of this client.

Sincerely,

Richard S. Pakola, M.D.
Staff Psychiatrist

efh

**G-0488**

R-246

PAGE 1

**Department of Veterans Affairs**

## REPORT OF CONTACT

(NOTE: This form must be filled out in ink or on typewriter,
as it becomes a permanent record in veterans' folders.)

| | VA OFFICE | IDENTIFICATION NOS. (C, XC, SS, XSS, V, K, etc.) |
|---|---|---|

LAST NAME - FIRST NAME - MIDDLE NAME OF VETERAN (Type or print)
Johnson Lewis

DATE OF CONTACT
10/18/99

ADDRESS OF VETERAN

TELEPHONE NO. OF VETERAN (Include Area Code)

PERSON CONTACTED
Erickson Irvin

TYPE OF CONTACT (Check)
[X] PERSONAL  [ ] TELEPHONE

ADDRESS OF PERSON CONTACTED

TELEPHONE NO. OF PERSON CONTACTED (Include Area Code)

BRIEF STATEMENT OF INFORMATION REQUESTED AND GIVEN

On or about 10:25am, 10/18/99 on ward 1-3A I was
harassed by Irvin Erickson.

I was walking up the hall to my Hac closet
when I was approach by Irvin Erickson. He said
"Hey, Lewis I want to talk to you." I said to
Irvin "I don't want to talk to you." I
turned around to walk the other way and he
followed me. Then he started to say as I
walked pass the nurse's station. "Why don't
you want to talk to me." After I passed
the nurse station he caught up to me and bump
me with his shoulder. saying "why don't you want to
talk to me." I said "I just don't want to." So
I change diriction to get him of my shoelder, but
he stay on me, and kept repeating the same words, "why
don't you want to talk to me. He continue to ride my

DIVISION OR SECTION

EXECUTED BY (Signature and title)

G-0489

R-247

PAGE 2

**Department of Veterans Affairs**

# REPORT OF CONTACT

*(NOTE: This form must be filled out in ink or on typewriter, as it becomes a permanent record in veterans' folders.)*

| VA OFFICE | IDENTIFICATION NOS. (C, XC, SS, XSS, V, K, etc.) |
|---|---|

LAST NAME - FIRST NAME - MIDDLE NAME OF VETERAN *(Type or print)*
Johnson Lewis

DATE OF CONTACT
10/18/99

ADDRESS OF VETERAN

TELEPHONE NO. OF VETERAN *(Include Area Code)*

PERSON CONTACTED
Erickson, Irvin

TYPE OF CONTACT *(Check)*
☑ PERSONAL    ☐ TELEPHONE

ADDRESS OF PERSON CONTACTED

TELEPHONE NO. OF PERSON CONTACTED *(Include Area Code)*

BRIEF STATEMENT OF INFORMATION REQUESTED AND GIVEN
" Continue "

Shoulder until I reach the opening in the nursing Station. I then kept quiet and went in the restroom and lock myself in. Barbra Yaich was sitting at the nursing Station when all this was going on.

G-0490

R.248

DIVISION OR SECTION

EXECUTED BY *(Signature and title)*
Lewis N. Johnson   Housekeeping Aid

VA FORM
EXISTING STOCK OF VA FORM 119 JUL 1977

On our Multi Room on 10/13/99 in Bld. 1 2nd Floor lobby I was mentally Harassed by Eric Frechione.

As I was waiting (As I was) heading Louis Chiller heading for the Freight Elevator I passed I was now approaching Eric E. who was Standing near the doors of the OR. Eric started on me by saying this statement. "Hey Louis do you want to hear what people are saying about you." I put up my left hand and said "NO". "I don't want to hear it." I was about 5ft from him when I said that. He then called call for Louis C, by saying "Hey Lou Hey Lou, Listen I going to tell Louis what people are saying about him." He then put his arm and hand and

to slow my movements by blocking my path, he When he slow me down the said, "Louis, people calling you a white guy in black skin." After hearing that statement, I went threw the doors leading to the Freight Elevator. I felt sick, I started to shake. This man has been harassing me since I been in EMS. I starting to

step in my path"

G-0491    R.249



Feel very fear-ful of losing my job. So I need something done to stop this racial harassment.

Laura W. Johnson
10/5/97

G-0492

R.250

Rodney
Lewis
CX

1-3A        10/18/99 - 10:45 am

Lewis called Office of Resolution Mgt

Irv Erickson

Reported problem to Rodney about 2 months
ago re: donuts after an award —
setting outside w/ group — included
a Chaplain & several other employees

10/15    with in blk skin — occurred 10/13
Lou may have heard

reported incident to Rodney — write down
Fred Lewis to
incident

10/18 — Barb Gfeah — See 1-3A is
witness —
Rubbed shoulders, etc

Unwelcome, unwarranted

Called Tony — report of contact w/ Irv Erickson
+ all witnesses. See Tony with reports
of contact.

G-0493

R.251

OCT-21-1999  11:22    FROM

# Fax Transmission From:

Philhaven Lebanon
204 Hathaway Park
Lebanon, PA 17042      Telephone: 717-274-9777      Fax: 717-274-9815

Date/Time: _10/21/99_

To: _MR. Koot_

# of pages to follow cover sheet:

*Confidential Yes* __X__      No_____

Special Instructions: Please list documents being faxed.

_VA - HR_
**Organization**

_____
**Fax Number**

_____
**Telephone Number**

From: _John Swley_

Philhaven Lebanon
204 Hathaway Park
Lebanon, PA 17042      Telephone: 717-274-9777
Fax: 717-274-9815

* * *

The information contained in this facsimile message is privileged and confidential information intended for the use of addressee listed above. If you are neither intended recipient or the employee or agent responsible for delivering information to the intended recipient, you are hereby notified that nay disclosure, copying, distribution, taking of any in reliance on the content of this telecopied information is strictly prohibited.

Please call sender as soon as possible at the telephone number indicated above to verify receipt of the fax or to report problems with the transmission.

If you have received this copy in error, please immediately notify the sender by telephone at the number indicated above, arrange for destruction of the documents.

G-0455

R.252

OCT-21-1999 11:22 FROM-

  Philhaven 

283 ____ utler Road
P.O. ___ ___0
Mt. Gretna, PA 17064
(717) 273-8871

## AUTHORIZATION FOR RELEASE OF INFORMATION

I do hereby consent and authorize Philhaven to receive from/disclose to:

Name _VA Hospital Raymer Kent_
Address _Miss McWiggins X 466_
Phone Number _272-6621_    Fax Number _____

information from my medical record(s) related to my identity, diagnosis, prognosis and treatment (including diagnosis and/or treatment for mental health, drug/alcohol abuse and/or HIV-related information). The specific information to be received/disclosed includes:

(Please mark and X in the correct column for each document)

| Receive | Disclose | | Receive | Disclose | |
|---------|----------|---|---------|----------|---|
| ☐ | ☐ | Discharge Summary | ☐ | ✔ | Initial Evaluation/Admission Note |
| ☐ | ☐ | Social History | ☐ | ☐ | Psychological Evaluation/Summary |
| ☐ | ☐ | Immunization Record | ☐ | ☐ | Homebound Instruction Report |
| ☐ | ☐ | History & Physical | ☐ | ☐ | Patient Data Form |
| ☐ | ☐ | Outpatient Treatment Summary | ☐ | ☐ | Referral/Treatment Summary |
| ☐ | ☐ | Discharge Instructions | ☐ | ☐ | Psychiatric Evaluation/Summary |
| ☐ | ☐ | Alcohol and Other Drug Consult | ☐ | ☐ | Laboratory Reports |
| X | X | Other (list specific items): _Verbal/written communication, testing results_ | | | |

I understand this information is to be used for the purpose of: (check as many as apply) ☐ Diagnosis ☐ Continuity of care ☐ Treatment planning ☐ Discharge planning ☐ Other: _____

*This information is being disclosed from records whose confidentiality may be protected by Pennsylvania Law, Act 63, and/or Pennsylvania P.L. 817, and/or Federal Public Law 93-282, and/or Code of Federal Regulations, 42 (Drug and Alcohol treatment records), and/or Act 148, (Confidentiality of HIV-related Information Act). I understand the nature of this release and understand that I have the right to inspect material that is to be released. I understand that I may revoke this authorization at any time by notifying Philhaven.*

*This authorization shall be effective immediately and shall expire in one year from the date hereof or on _____, 20__ and is valid for all medical record documentation during the effective period.*

I understand that I have the right to request a copy of this authorization and that I may revoke my consent at anytime by written notice t_ Philhaven. Check one: ☐ patient accepted copy   ✔ patient declined copy

X _Lewis W Johnsen_
Patient's Signature
(or parent/guardian for child under 14 years of age)

X _10/21/99_
Date

X _self_
Relationship to Patient (to be completed only when parent/guardian or person with Power of Attorney authorizes release for the patient)

X _John Snyder_
Signature of Witness

X _10/21/99_
Date

### THIS PORTION TO BE COMPLETED WHEN PATIENT IS UNABLE TO GIVE WRITTEN CONSENT

We, the undersigned, do verify that the above authorization has been read to the patient and that he/she understands the nature ___ the release and freely gives his/her verbal consent for release of the above information. The patient has also been informed th___ he/she may verbally revoke this authorization at any time.

_____
Signature of Witness/Date

_____
Signature of Witness/Date

Auth. for Release of Info.
PC-135A    01-99

G-0456

Patient Name: _Lewis Johnson_
Patient Number: _124 287_
Date of Birth: _____

R. 253



**DEPARTMENT OF VETERANS AFFAIRS**
Medical Center
1700 South Lincoln Avenue
Lebanon, PA 17042

November 8, 1999                                                      In Reply Refer To:  595/121

Office of Workers' Compensation Program
U.S. Department of Labor
3535 Market Street
Philadelphia PA 19104

SUBJ: Attention Claims Examiner

Name:      Johnson, Lewis W.
SSN:        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
Case#:      03-0246931
DOI:         10/18/99

The following documents are forwarded for processing by your Agency:

Form CA-1_____        Form CA-2A_____        Form 20A __X__

Form CA-2_____        Form CA-3 _____        Form CA-7_____

Form CA-8_____        Form CA-16 _____       Employee Health Records _____

COP granted on _____ thru _____          Bill from:

Comments:

Questions:  I may be contacted at **(717) 272-6621, Ext. 4060**.

Sincerely,

*Joseph R. Stuckey Jr.*

JOSEPH R. STUCKEY, JR.
Personnel Management Specialist

Enclosure

G-0451

R.254

Attending Physician's Supplemental Report

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

**For Instructions See Reverse Side**

OMB No. 1215-0103
Expires:    09-30-96

**1. Name of injured employee (Last, first, middle)**
Johnson Lewis

**2. OWCP File Number, if known**

**3. Home mailing address (Include Zip code)**
1025 Harmony Hill Dr.
Lebanon Pa. 17046

**4. Social Security Number**
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

**5. Date and hour of injury (Mo., day, year)** Felt continuous harrassment
by co-worker since 10/20/99. When began his current position all of co-workers have not done anything to combat it.

**6. Period compensation is claimed as a result of pay loss (Mo., day, year)**
From: 10/20/99    Through: Unknown

**7. Date of most recent examination (Mo., day, year)**
11/5/99

**8. Is employee's present condition due to the injury for which compensation is claimed?**
☐ Yes   ☐ No
Condition is preexisting but aggravated by perceived harrassment at work

**9. Is employee totally disabled for usual work?**
☑ Yes   ☐ No
- both physically and verbally

**10. Describe nature of present impairment**
Depressive D/O NOS
Work related stressors

**11. State diagnosis**
Depressive
D/O NOS

**11a. ICD-9 Code**
DSM IV
311

**12. What treatment is employee receiving and how often is it given?**
Daily Acute Partial Program
Medication
Individual & Group
Therapy

**13. What permanent effects, if any, are anticipated?**
not known

**14 Describe any concurrent disability employee has which is not related to this injury**
None

**15. Will disability for regular work continue for 90 days or longer?**
☐ Yes   ☐ No   Unknown
If no, approximately what date will employee be able to return to work? (Mo., day, year)   Unknown

**16. If employee is able to resume regular work, has he or she been advised?**
☐ Yes   ☐ No
If Yes, show date employee was informed (Mo., day, year)

**17. If employee is only partially disabled, show date he or she was able to perform some work and describe specific work restrictions. (i.e. limitations in stooping, bending, lifting, etc.)**
He should not work i same co-worker when he returns to work or there may be
harassing, crying, losing his temper, etc.

**18. If employee has been referred to another physician for consultation or treatment, give physician's name & address.**
will he advised to continue
out pt. therapy upon discha...

**19. Recommendations and Prognosis**
Richard S. Pakola M.D.
283 So. Butler Rd.
Mt. Gretna, Pa. 17064
- He needs continued psychiatric treatment
- Return to work when planned should be grad...
and should start in a different setting with differe...
or in bore if possible.
- He is not ready to return to work at this...

**20. Address (Include Zip code)**

**21. If you specialize, indicate specialty**
Psychiatry

**22. Signature of Physician. I certify that the statements on the reverse apply to this report and are made a part hereof.**
Reviewed & Partial Program  Nurse & Therapist
Richard S. Pakola M.D.

**23. Date of Report (Mo., day, year)**
11/5/99

G-0452

R-255

**Public Burden Statement**

We estimate that it will take an average of 30 minutes to complete this collection of information, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding these estimates or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Office of IRM Policy, U.S. Department of Labor, Room N1301, 200 Constitution Avenue, N.W., Washington, D.C. 20210; and to the Office of Management and Budget, Paperwork Reduction Project (1215-0103), Washington, D.C. 20503.

**DO NOT SEND THE COMPLETED FORM TO EITHER OF THESE OFFICES**

Form CA-20a
Rev. June 199...

QUESTION #5

1).  Felt continuous harassment from co-worker since August,
     1997 when he began his current position and felt supervisors
     have not done anything to correct it.

2).  He felt a co-worker was assaultive on 10/18/1999, both
     physically and verbally.

QUESTION #8

     Condition is preexisting, but aggravated by perceived
     harassment.

QUESTION #17

     He should not work with same co-worker when he returns to
     work or there may be risk for his becoming angry, losing his
     temper, etc.

QUESTION #19

-    He needs continued psychiatric treatment.

-    Return to work, when planned, should be gradual and should
     start in a different setting with different co-workers, if
     possible.

-    He is not ready to return to work at this time.

G-0453

R.256

 

**DEPARTMENT OF VETERANS AFFAIRS**
**Medical Center**
**1700 South Lincoln Avenue**
**Lebanon, PA 17042**

November 30, 1999                                    In Reply Refer To: 595/121

Philhaven
Attn: Richard S. Pakola, M.D.
283 South Butler Road.
P.O. Box 550
Mount Gretna, PA 17064

Dear Doctor Pakola:

Mr. Lewis Johnson, an employee of the Lebanon VA Medical Center, is currently receiving treatment at Philhaven. Mr. Johnson has filed a workers' compensation claim with the U.S. Department of Labor.

In an effort to evaluate the progress of treatment of Mr. Johnson, updated medical information is required. I have enclosed a Release of Information that has been signed by Mr. Johnson during a review of his benefits under the Federal Employees' Compensation Act (FECA).

Please provide the medical records of Mr. Johnson's treatment so that this information may be processed to the Department of Labor. At the present time Mr. Johnson's claim is under development and a prompt request in providing this information would expedite the adjudication of his claim.

I have also enclosed a form CA-20A, Attending Physician's Supplemental Report, requesting information on the diagnosis as well as the prognosis of Mr. Johnson's treatment.

If you have any questions concerning the aforementioned request, I may be contacted at (717) 272-6621, extension 4060.

Sincerely,

JOSEPH R. STUCKEY, JR.
Personnel Management Specialist

Enclosures

G-0454

R.257



# DEPARTMENT OF VETERANS AFFAIRS
## Medical Center
### 1700 South Lincoln Avenue
### Lebanon, PA 17042

December 3, 1999                                    In Reply Refer To: 595/121

United States Department of Labor
Office of Workers' Compensation Program
Attn: Mr. Anthony McFeeley
3535 Market Street
Philadelphia PA 19104

Dear Mr. McFeeley:

On November 1, 1999 a CA-1 was submitted for Mr. Lewis Johnson, Case #03-0246931. A letter outlining the alleged incident as well as other documentation was also submitted with the claim.

Mr. Johnson presented the enclosed Discharge Instructions to my office on December 2, 1999. After a review of those discharge notes, it appears as if Mr. Johnson has had psychiatric concerns that have been ongoing and are far beyond the scope of the alleged work related incident.

Mr. Johnson has signed a release of information and I have requested a copy of the medical records from Philhaven. I will process those records to your office as soon as they are received. I am sure that when all of the records are presented it will provide a clear picture of Mr. Johnson's ongoing personal and family problems that are non-work related.

If I can be of further assistance, I may be contacted at (717) 272-6621, extension 4060.

Sincerely,

*Joseph R Stuckey*

JOSEPH R. STUCKEY, JR.
Personnel Management Specialist

Enclosure

**G-0448**

R-25B



Philhaven

283 S.     B___ Road
P.O. Box 550
Mt. Gretna, PA  17064
(717) 273-8871

## Discharge Instructions

\* Please take this document to your aftercare appointments

| Program: Adult Partial | Admit Date: 10/22/99 | Discharge Date: 11/12 |
|---|---|---|

**Presenting Problem:** Lewis was referred to the Adult Partial program w/ DDX issues by Dr. Brinser due to stress, tension, and work related issues, evidenced by increased agitation w/ homicidal thoughts, moodswings, irritability, panic attacks, excessive worrying, and explosive anger, as well as depressive symptoms.

**Course of** — Lewis participated in all scheduled groups and activities. He identified stressors due to work related issues, family conflict, and self concept issues. He was able to address issues of self esteem, anger, fears, rejection, and addiction. Lewis was able to give constructive feedback & receive support from others. Marital session addressed issues of poor communication skills and family dynamics.

**Discharge Type:** ☑ Regular    ☐ Against Medical Advice    ☐ Outpatient Commitment

**Discharge Recommendations:** Lewis' mood has improved significantly. He still struggles w/ self esteem and anger issues. Lewis should continue on medication as prescribed and follow up w/ physician for med. management & adopt therapy to continue address self concept and family issues.

**Discharge To:** self

**Allergies & Reactions:** NKDA

| Name | Dosage | Directions | Date Rx. Given | # | Refills |
|---|---|---|---|---|---|
| Celexa | 20 mg, | 1 tab p.o. HS | 11/5/15 | 1 | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Blood Levels Medication: | Date Drawn: | Value: | Date Due: |
|---|---|---|---|

Medication supervision required    Yes    No

Discharge Instructions
PC-240      01-99
G:\USERS\FORMS\PC-240.WPD

**G-0449**

Patient Na___      Johnson, Lewis W.
Patient Nu___      124287
Admissio___      Date Of Birth: 7/4/1956
                         Admission Date: 10/22/1999
Patient Ac___
Patient Ph___

R. 259

Special Instructions:

☐ Special Diet: _____

☐ Avoid driving until given permission by your physician.

☒ Avoid alcohol and drug use due to serious interactions with your medications.

☐ You may return to work/school. Letter provided    ☐ Yes    ☐ No    ☐ N/A

Providers marked with an "X" below participated in an interagency meeting regarding aftercare.

**A F T E R C A R E**

**P L A N S**

Primary Therapist: _Elaine Howell_    Phone: _273-8871_

Address: _Philhaven / Mt Gretna_    Appt. Time/Date: _11/17/99  6 Pm_

Discharge letter/Summary to follow:    ☒ Yes ☐ No

Comments: _____

Medication Management: _Richard Yakola MD_    Phone: _273-8871_

Address: _Mt Gretna / Philhaven_    Appt. Time/Date: _11/23  2:15_

Discharge letter/Summary to follow:    ☒ Yes ☐ No

Comments: _____

Primary Care Physician: _____    Phone: _____

Address: _____    Appt. Time/Date: _____

Discharge letter/Summary to follow:    ☐ Yes ☐ No

Comments: _____

**S C H O O L**

Contact Person: _____    Phone: _____

School: _____

Address: _____    Discharge letter/Summary to follow:    ☐ Yes ☐ No

Ed Therapy Summary: Contract was made with school personnel regarding discharge plans and recommendations. A copy of the educational recommendations will be sent in the educational therapist's report to: _____

Name: _____    Phone: _____

Address: _____    Appt. Time/Date: _____

Discharge letter/Summary to follow:    ☐ Yes ☐ No

Comments: _____

If you have a problem contact _____ at _____

In an emergency contact Crisis Intervention at _____

| | | |
|---|---|---|
| *The above instructions, including the effects of medications, have been reviewed with me and I understand them.* | Patient Signature: _Lewis M. Johnson_ | Date: _11-10-99_ |
| | Parent or Legal Guardian Signature: | Date: |
| | Staff Signature: _Elaine Howell_ | Date: _11/10/99_ |
| | Staff Signature: _Denis N Junns_ | Date: _11/12/99_ |

Discharge Instructions
PC-240        01-99
G:\USERS\FORMS\PC-240.WPD

G-0450

Johnson, Lewis W.
124287
Date Of Birth: 7/4/1956
Admission Date: 10/22/1999

R-260

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
3535 MARKET STREET RM 15100
PHILADELPHIA PA 19104
Phone: (215) 596-1457

December 15, 1999

File Number:    030246931
Date of Injury: 10/18/1999
Employee:      Lewis Johnson

Lewis W. Johnson
1025 Harmony Hill Drive
Lebanon, PA 17046

Dear Mr. Johnson:

<div align="center">NOTICE OF DECISION</div>

Your claim for compensation has been denied as the medical evidence was not sufficient to establish that your condition was caused by the claimed incident of 10/18/99.

To establish "causal relationship" the medical evidence must show how the accident, event, or employment factor caused or contributed to your medical condition. Causal relationship is a medical issue which requires your physician to explain how he or she believes that the accident, event, or employment factor caused or affected your condition, and the objective findings that support that conclusion.

The initial evidence of file was insufficient to establish the relationship between the medical condition and the incident of 10/18/99.

You were advised of this by letter dated 11/5/99, and afforded the opportunity to provide supportive evidence.

Evidence received consisted of your statement of what occurred as well as a CA-20a completed by Dr. Pakola dated 11/5/99. Dr. Pakola states that your psychiatric condition was "preexisting." In response to the question whether your condition was caused by your federal employment, Dr. Pakola responded with a question mark. This was not sufficient because you have not submitted a well reasoned medical opinion regarding your condition and how it was caused by your federal employment. .

Therefore, based on these findings, your claim is denied as you have not met the requirements for establishing that your condition was caused by the incident of 10/18/99.

If you disagree with this decision you may pursue one of the courses of action listed on the enclosed sheet. Please be aware that there are time frames associated with exercising your appeal rights.

Sincerely,

Claims Examiner
Reviewed by:

Supervisory Examiner

VETERANS ADMINISTRATION
LEBANON VETERANS HOSPITAL

V.A. MEDICAL CENTER
LEBANON, PA 17042

<div align="right">G-0424</div>

<div align="right">R. 261</div>

Enclosure:  Appeal Rights

**G-0425**

R.262

## FEDERAL EMPLOYEES' COMPENSATION ACT APPEAL RIGHTS

READ THIS NOTICE CAREFULLY AND DECIDE WHAT ACTION YOU WISH TO REQUEST:  HEARING (Oral or Written); RECONSIDERATION; or REVIEW BY THE EMPLOYEES' COMPENSATION APPEALS BOARD (ECAB).

Be sure to send your request to the right address.
You may not request more than one form of appeal at a time.

### HEARING

If your injury occurred on or after July 4, 1966, and you have not requested reconsideration (see below), you may request one of the following actions:

ORAL HEARING.  You will be able to present oral and written evidence in further support of your claim.  The hearing will be informal and will be held in your area.  Any person whom you authorize in writing may represent you at the hearing.

REVIEW OF THE WRITTEN RECORD.  You may submit written evidence but you will not be asked to attend or give oral testimony.  You will have this review instead of an oral hearing.  Any additional written evidence you want to submit must be sent with your request for review.

OWCP hearing representatives conduct both oral hearings and reviews of the written record.  To request an oral hearing or a review of the written record, you must write to:

> Branch of Hearings and Review
> Office of Workers' Compensation Programs
> P.O. Box 37117
> Washington, D.C.  20013-7117

State clearly whether you want an oral hearing or a review of the written record.  Your request must be postmarked within 30 days of the date of this decision.

You will have the right to request reconsideration or ECAB review of the hearing representative's decision if you disagree with it.

You are not required to request a hearing as the first step in the appeal process.  However, if you request reconsideration, you will not be entitled to an oral hearing or review of the written record (see 5 U.S.C. 8124(b)(1)).

8/96

G-0426

R. 263

## RECONSIDERATION

If you have more evidence or legal arguments which you believe apply to your case, you may ask the OWCP district office to reconsider this decision. Such a request must be made in writing within one year of the date of this decision. The request should clearly state your grounds for requesting reconsideration. It should also include evidence not submitted before, such as medical reports or sworn statements, or legal arguments. The new evidence or legal argument should apply directly to the issue addressed by this decision.

Send your request for reconsideration and your new evidence or arguments to the district office at the address shown on the letter conveying this decision. So that your new evidence is independently evaluated, your case will be reconsidered by OWCP staff other than those who made this decision.

## REVIEW BY EMPLOYEES' COMPENSATION APPEALS BOARD (ECAB)

If you believe that all available evidence has been submitted, you have the right to appeal to the Employees' Compensation Appeals Board for review of the decision. The ECAB will review only the evidence of record, and no new evidence may be submitted.

Any request for review by the ECAB should be made within 90 days from the date of this decision. Send it to:

> Employees' Compensation Appeals Board
> 200 Constitution Avenue, N.W. Room N-2609
> Washington, D.C. 20210

The ECAB may waive failure to file within 90 days if you request review within one year of the date of this decision and show a good reason for the delay.

If you request a hearing or reconsideration as described above, you may still request review by the ECAB. The 90-day period for requesting review by the ECAB will begin on the date of the hearing or reconsideration decision.

8/96

G-0427

R.264

## Human Resources Management Service
## VA Medical Center, Lebanon, PA 17042

# F A X

### FAX# (717) 228-5925

DATE _December 28, 1999_

TO _Philhaven    ATTN: Sonya Keil, Medical Records_

ADDRESS

FAX# _270·2455_

FROM _Joe Stuckey_

NO. OF PAGES INCLUDING COVER SHEET: _2_

COMMENTS _Per our earlier conversation, please provide the requested documents. If you give me a call when they are ready, I would like to pick them up. Thank you_

_Joe Stuckey_

## Workers' Compensation

**Joseph R. Stuckey, Jr.**
**Personnel Management Specialist**
**VA Medical Center**
**1700 South Lincoln Avenue**
**Lebanon, PA 17042**

G-0421

**(717) 272-6621, ext. 4060    OR    FTS (700) 592-4060**

R.265

12-22-99 12:20PM  FROM PHILHVN MED RECORDS  TO 92285925    P002/002



Philhaven

283 South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

## AUTHORIZATION FOR RELEASE OF INFORMATION

I do hereby consent and authorize Philhaven to receive from/disclose to:

| | |
|---|---|
| Name | Joe Stuckey, VA Medical Center |
| Address | 1700 S Lincoln Ave., Lebanon, PA 17042 |
| Phone Number | 272-6621, X 4060                    Fax Number    228-5925 |

information from my medical record(s) related to my identity, diagnosis, prognosis and treatment (including diagnosis and/or treatment for mental health, drug/alcohol abuse and/or HIV-related information). The specific information to be received/disclosed includes: (Please mark and X in the correct column for each document)

| Receive | Disclose | | Receive | Disclose | |
|---|---|---|---|---|---|
| ☐ | ☒ | Discharge Summary | ☐ | ☒ | Initial Evaluation/Admission Note |
| ☐ | ☐ | Social History | ☐ | ☐ | Psychological Evaluation/Summary |
| ☐ | ☐ | Immunization Record | ☐ | ☐ | Homebound Instruction Report |
| ☐ | ☐ | History & Physical | ☐ | ☐ | Patient Data Form |
| ☐ | ☐ | Outpatient Treatment Summary | ☐ | ☐ | Referral/Treatment Summary |
| ☐ | ☐ | Discharge Instructions | ☐ | ☒ | Psychiatric Evaluation/Summary |
| ☐ | ☐ | Alcohol and Other Drug Consult | ☐ | ☐ | Laboratory Reports |
| ☐ | ☒ | Other (list specific items): | | | Progress Notes; any and all records (inpatient, outpatient, day hospital) |

written/verbal communication

I understand this information is to be used for the purpose of: (check as many as apply)  ☐ Diagnosis ☐ Continuity of care ☐ Treatment planning ☐ Discharge planning ☒ Other: Workman's compensation claim

*This information is being disclosed from records whose confidentiality may be protected by Pennsylvania Law, Act 63, and/or Pennsylvania P.L. 817, and/or Federal Public Law 93-282, and/or Code of Federal Regulations, 42 (Drug and Alcohol treatment records), and/or Act 148, (Confidentiality of HIV-related Information Act).  I understand the nature of this release and understand that I have the right to inspect material that is to be released.  I understand that I may revoke this authorization at any time by notifying Philhaven.*

*This authorization shall be effective immediately and shall expire in one year from the date hereof or on _____, 19___ and is valid for all medical record documentation during the effective period.*

I understand that I have the right to request a copy of this authorization and that I may revoke my consent at anytime by written notice to Philhaven.    Check one: ☐ patient accepted copy    ☐ patient declined copy

X _Lewis W Johnson_    X _12-28-99_    X _____
Patient's Signature    Date    Relationship to Patient (to be completed only when
(or parent/guardian for child under 14 years of age)    parent/guardian or person with Power of Attorney
authorizes release for the patient)

X _Joseph R Stuckey_    X _12-28-99_    G-0422
Signature of Witness    Date

| THIS PORTION TO BE COMPLETED WHEN PATIENT IS UNABLE TO GIVE WRITTEN CONSENT |
|---|
| We, the undersigned, do verify that the above authorization has been read to the patient and that he/she understands the nature of the release and freely gives his/her verbal consent for release of the above information.  The patient has also been informed that he/she may verbally revoke this authorization at any time. |

Signature of Witness/Date                    Signature of Witness/Date

Auth. for Release of Info.    Patient Name:  Lewis Johnson

PC-135A    01-99    Patient Number:  124287

Date of Birth:  7/4/56

R-266

## Human Resources Management Service
## VA Medical Center, Lebanon, PA 17042

# FAX

**FAX# (717) 228-5925**

DATE  December 30, 1999

TO  "CASE CREATE"

ADDRESS  U.S. Dept. of Labor, Office of Workers' Comp. Program

FAX#  215  596-0718

FROM  Joseph R. Stuckey Jr.

NO. OF PAGES INCLUDING COVER SHEET:  71

COMMENTS  A CA-2 for Lewis Johnson, SSN 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

DOI: 10-20-99.

Thank you.

# Workers' Compensation

**Joseph R. Stuckey, Jr.**
**Personnel Management Specialist**
**VA Medical Center**
**1700 South Lincoln Avenue**
**Lebanon, PA 17042**

G-0709

(717) 272-6621, ext. 4060    OR    FTS (700) 592-4060

R-267



**DEPARTMENT OF VETERANS AFFAIRS**
**Medical Center**
**1700 South Lincoln Avenue**
**Lebanon, PA 17042**

December 29, 1999                                                    In Reply Refer To: 595/121

United States Department of Labor
Office of Workers' Compensation Program
3535 Market Street
Philadelphia PA 19104

Dear Claims Examiner:

On October 26, 1999, a CA-1, Notice of Traumatic Injury was submitted by Mr. Lewis Johnson, SSN 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. The case number assigned to this case was 03-0246931. On December 15, 1999, Mr. Johnson received a Notice of Decision that the claim for Traumatic Injury was denied, as the medical evidence was not sufficient to establish that his condition was caused by the claimed incident. We have attached a copy of that decision for your review.

There was some confusion in communication at the time the initial claim was filed. Mr. Johnson contends that this claim should have been filed as a CA-2, Notice of Occupational Disease. Therefore we have assisted him in the completion of the attached CA-2.

We have also provided copies of the witness statements of all the individuals involved, as well as a copy of the police report that was conducted concerning the incidents on October 13, 18, and 19, 1999. After a review of Mr. Johnson's narrative and that of the witness statements, it appears as if there are some inconstancies as to what actually occurred during these incidents.

We have asked Mr. Johnson on several occasions to provide the medical documentation of the treatment that he received at Philaven. On November 30, 1999, a letter was sent to Philaven requesting this medical information. On December 21, 1999, a second request via telephone was made to Philaven. I was referred to medical records and informed that the records could not be released without a consent form and that it is preferred that it be a Philaven Release of Information Form. A form was requested and on December 23, 1999, a request was made of Mr. Johnson to sign this release in order to obtain the necessary medical records. On December 28, 1999, I again explained the reason for the requested medical records and Mr. Johnson signed the Release of Information. I have forwarded these medical records for your review.

**G-0710**

R.268

A thorough review of the medical information strongly suggests that Mr. Johnson has a background of preexisting non-work related issues. These issues and concerns are addressed in the attached medical information.

We contend that a "causal relationship" between Mr. Johnson's current medical condition and the work environment are not supported by the medical information provided by the treating physician.

If additional information is required, I may be contacted at (717) 272-6621, extension 4060.


Sincerely,

JOSEPH R. STUCKEY, JR.
Personnel Management Specialist

Enclosures

**G-0711**

R.269

**Notice of Occupational Disease
and Claim for Compensation**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

Employee: Please complete all boxes 1 - 18 below. Do not complete shaded areas.
Employing Agency (Supervisor or Compensation Specialist): Complete shaded boxes a, b, and c.

## Employee Data

| 1. Name of employee (Last, First, Middle) | 2. Social Security Number |
|---|---|
| JOHNSON,LEWIS W | 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 |

| 3. Date of birth  Mo.  Day  Yr. | 4. Sex | 5. Home telephone | 6. Grade as of date |
|---|---|---|---|
| 07  04  56 | Male | (717) 270-0454 | of last exposure  Level 2  Step 03 |

7. Employee's home mailing address (Include city, state, and zip code)

1025 Harmony Hill Dr.

Lebanon, PENNSYLVANIA

Zip Code
17046

8. Dependents
☒ Wife, Husband
☒ Children under 18 years
☐ Other

## Claim Information

9. Employee's occupation

housekeeping aid

a. Occupation code

WG 3566

10. Location (address) where you worked when disease or illness occurred (Include city, state, and zip code)

leb.pa. vamc    1700 so. lincoln ave.

lebanon, PENNSYLVANIA 17042

11. Date you first became
aware of disease
or illness
Mo.  Day  Yr.
10  20  99

| 12. Date you first realized the disease or illness was caused or aggravated by your employment   Mo.  Day  Yr.  10  20  99 | 13. Explain the relationship to your employment, and why you came to this realization |
|---|---|

please see attached narrative.

14. Nature of disease or illness

stress, strain,fear, and depression.

OWCP Use - NOI Code

| b. Type code | c. Source code |
|---|---|

15. If this notice and claim was not filed with the employing agency within 30 days after date shown above in item #12, explain the reason for the delay

G-0712

16. If the statement requested in item 1 of the attached instructions is not submitted with this form, explain reason for delay.
notice was given, however ca-1 was filed erroneously on 10-18-99 as claim
no. 03-0246931.

17. If the medical reports requested in the item 2 of attached instructions are not submitted with this form, explain reason for delay.

## Employee Signature

18. I certify, under penalty of law, that the disease or illness described above was the result of my employment with the United States
Government, and that it was not caused by my willful misconduct, intent to injure myself or another person, nor by my intoxication.
I hereby claim medical treatment, if needed, and other benefits provided by the Federal Employees' Compensation Act.

Signature of employee or person acting on his/her behalf   /ES/ JOHNSON,LEWIS W   Date  Dec 20, 1999   12-30-99

Have your supervisor complete the receipt attached to this form and return it to you for your records.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud to obtain
compensation as provided by the FECA or who knowingly accepts compensation to which that person is not entitled, is subject to felony
criminal prosecution and may, under appropriate provisions, be punished by a fine or imprisonment, or both.

R.270

CA-2
(3/86)

Official Supervisor's Report of Occupational Disease: Please complete information requested below

**Supervisor's Report**

19. Agency name, and address of reporting office (Include city, state, and zip code)

Lebanon VAMC

OWCP Agency Code
4265

OSHA Site Code

1700 S. Lincoln Ave.

Lebanon, PENNSYLVANIA

Zip Code
17042

20. Employee's duty station (Street address and zip code)

Zip Code

Same as above   ,

| 21. Regular work hours | From 06 : 00 ☒ a.m. ☐ p.m.   To 02 :30 ☐ a.m. ☒ p.m. | 22. Regular work schedule ☐ Sun. ☒ Mon. ☒ Tues. ☒ Wed. ☒ Thurs. ☒ Fri. ☐ Sat. |
|---|---|---|

23. Name and address of physician first providing medical care (Include city, state, zip code)

Dr. Earl Brinser

405 Cumberland St.

Lebanon, PENNSYLVANIA   17046

24. First date medical care received   Mo.  Day  Yr.
10 | 20 | 99

25. Do medical reports show employee is disabled for work?   ☒ Yes  ☐ No

| 26. Date employee first reported condition to supervisor  Mo. Day Yr. 10 | 20 | 99 | 27. Date and hour employee stopped work  Mo. Day Yr. 10 | 20 | 99  Time 9 : 00  ☒ a.m. ☐ p.m. |
|---|---|

| 28. Date and hour employee's pay stopped  Mo. Day Yr. 10 | 20 | 99  Time 9 : 00 ☒ a.m. ☐ p.m. | 29. Date employee was last exposed to conditions alleged to have caused disease or illness  Mo. Day Yr. 10 | 20 | 99 |
|---|---|

30. Date returned to work  Mo.  Day  Yr. _____ Time  : ___ ☐ a.m. ☐ p.m.

31. If employee has returned to work and work assignment has changed, describe new duties

32. Was injury caused by third party?
☐ Yes  ☒ No
If "No," go to item 34.

33. Name and address of third party (Include city, state, and zip code)

**Signature of Supervisor**

34. A supervisor who knowingly certifies to any false statement, misrepresentation, concealment of fact, etc., in respect to this claim may also be subject to appropriate felony criminal prosecution.

I certify that the information given above and that furnished by the employee on the reverse of this form is true to the best of my knowledge with the following exception:

Please see attached .

G-0713

Name of Supervisor (Type or print)
KISCADDEN,RODNEY

Signature of Supervisor
/ES/ KISCADDEN,RODNEY   *Rodney Kiscadden*

Date
12/22/99

Supervisor's Title
EMS Acting Manager

Office phone
4656

R.271

CA-2

<div align="center">

**Narrative As Provided by**
**Lewis W. Johnson**

</div>

### Wednesday, October 13, 1999

8:00 AM   Johnson (black male) meets Chandler (black male) and Erickson (white male) in the hallway of building #1.  Erickson stated to Johnson, " Hey Lewis, let me tell you what people are saying about you. "  Johnson responds I don't want to hear it."  Erickson then places his body in Johnson's path to prevent him passing, shouts to Chandler, " Hey Lou, I'm going to tell Lewis what people are saying about him. "  Chandler does not respond in any manner. Erickson then stated to Johnson, " People are saying you are a white man in a black man's skin. " Johnson shoves his way past Erickson and walks quickly away.  As Johnson leaves he hears Erickson loudly laughing.

2:00 PM   Near the Environmental Management Services ( EMS ) office, Johnson meets Chandler in one of the tunnels.  Johnson stated to Chandler, " I am going to make a complaint on what Erickson said to me. "  Chandler replied, " You got to do what you got to do, I understand."  Johnson then stated, " Someone will probably talk to you. "  They then parted, going in different directions.

### Thursday, October 14, 1999

(7:30 AM)  During the morning Johnson met his supervisor, Rodney Kiscadden, near the EMS office.  Johnson inquires what forms were needed to make a complaint on a fellow employee.  Kiscadden indicated he did not know but would find out and let Johnson know, during the course of the day.

(1:30 PM)  Kiscadden informed Johnson that he would need a ' Point of Contact ' form to file a written complaint on an employee.

(2:00 PM)  Johnson obtained a ' Point of Contact ' form from the Nursing Station in building 1-3A.

### Friday, October 15, 1999

(2:30 PM)  Johnson met with Kiscadden in the EMS office.  Johnson explained the nature of the complaint and told Kiscadden he had a 'rough draft' that needed to be typed. Kiscadden then left the office at which time Glenn Definbach ( a Housekeeping Aid ), who had been sitting in an adjacent office, came out and asked Johnson, " What's going on with you, Irv and Louis and this racial remark? "  Johnson asked Definbach, " What did you hear? "  Definbach explained to Johnson, he had over heard a conversation between Erickson, Chandler and Ms. Lynette Brady ( EEO personnel ), concerning a racial remark made toward Johnson.

**G-0714**

### Monday, October 18, 1999

(8:30 AM)  While at his assigned work location, Johnson telephoned the Office of Resolution Management ( ORM ) and explained  to Ms. Mitchell, who answered  the telephone, the incident concerning the racial remark by Erickson, which occurred on October 13, 1999.  Ms. Mitchell stated she would forward the complaint to a Counselor, who would contact Johnson.

(10:20 AM)  Johnson was in building #1, ward 3A, his assigned work location, standing at the Nursing Station, holding a conversation with Ward Clerk, Barbara Yeich.  Erickson entered

the area and from about twenty feet away shouted, " Hey Lewis. I want to talk to you. " Johnson responded, " I don't want to talk to you. " Johnson began walking in the opposite direction from Erickson. A few seconds later, Johnson felt a slight blow to the middle of his back. Glancing over his shoulder, Johnson realized Erickson had caught up to him and was using his shoulder to cause these blows to Johnson's back. Each blow to Johnson's back caused him, Johnson to stumble. Again, over and over, Erickson repeated, " I want to talk to you and tell you what they are saying. " Each time Johnson responded, " Leave me alone, I don't want to hear it. " This occurred approximately fifteen feet in one direction and fifteen feet in the opposite direction, until they again arrived at the Nursing Station. On arriving again at the Nursing Station, Johnson ran through the opening to the Nursing Station, to a nearby bathroom and locked himself in. After an unknown amount of time, Johnson existed the bathroom, figuring Erickson had left the area. On realizing Erickson was no longer in the area, Johnson telephoned Carolyn Mcguigan, his department chief and was told by her secretary to report to Mcguigan's office at 10:45 AM. After speaking to this secretary, Johnson called ORM and explained he had just been assaulted. Ms. Mitchell told Johnson someone would contact him.

(10:45 AM) Johnson met with Mcguigan and explain everything that had occurred with Erickson from October 13, 1999 up to that point. Mcguigan summoned Kiscadden into her office and Kiscadden confirmed previous complaints from Johnson regarding Erickson. Mcguigan completed a ' Point of Contact ' form and Johnson left the office.

### Tuesday, October 19, 1999

(8:15 AM ) Johnson reported to his assigned work area, building #1, ward 3A. Johnson and Yeich discussed what occurred the previous day. Yeich, during this conversation stated she had seen everything that had occurred including Erickson hitting Johnson. Yeich went on to explain to Johnson that she was extremely upset due to a conversation she had with Kiscadden. Yeich stated the first thing asked her by Kiscadden was, " So, whose side are you taking? "

(9:30 AM) Erickson appeared in building #1, ward 3A, Johnson's assigned work location. Erickson looked directly at Johnson, stopped and smiled very broadly. Erickson then went into the work closet assigned to Johnson. Erickson existed the work closet, smiled again at Johnson and went into the shower room. Johnson went over to close the door to the work closet, which had been left open by Erickson. Erickson then came out of the shower, again smiled broadly at Johnson and left the area. Johnson noticed something in Erickson's hand but did not see what it was. Johnson immediately called the Veterans Administration Police and reported all that had occurred. Johnson was instructed to come to the police station in order to make a full report.

(9:45 AM) Johnson arrived at the VA police station and gave a full report as to every thing that had occurred, beginning October 13, 1999.

**G-0715**

### Wednesday, October 20, 1999

(7:45 AM) Johnson arrived at work and was informed he was assigned to building #1, ward 3, ICU. He was also informed that Erickson was assigned to the same building and was moving furniture from floor to floor. Johnson stated that's not right or words to that affect and began to cry. Johnson stated he felt sick and requested sick leave in order to go home. Kiscadden stated to Johnson, " Sit and calm down and I'll go talk to the chief about you going home on sick leave. " As Kiscadden left, Definbach, who was in the next room, came out and inquired if Johnson was okay. Kiscadden returned and told Johnson it was okay for him to go home on sick

leave but "they" wanted to talk to him first.  Johnson asked to be allowed to wait in his van.  Prior to going to his van, Johnson called Robert Dennis, union steward, and asked him to meet him at his van because he, Johnson needed help.  A few minutes later, Dennis arrived at Johnson's van, at which time Johnson explained that his supervisors were forcing him to work in the same location as Erickson.  Dennis stated to Johnson he would go talk with them.  Dennis returned and stated senior management had informed him that Erickson would not bother him again.  At that point a VA police officer arrived at the van; the officer and Dennis escorted Johnson to building #1, ward 3-ICU.  As the police officer and Dennis began to leave, Johnson was told Erickson would be coming to his assigned area to remove furniture.  Johnson began to shake and asked the two men not to leave.  Johnson then observed Dennis use the telephone.  However, he was not made aware to whom the call was made.  Nor did Johnson hear the conversation.  After the telephone conversation,  Dennis instructed Johnson to return with him to building # 2, where they were met by Chief of Police Dennis Herb, Chief of Operations Muratits, Chief of Support Carolyn Mcguigan and Kiscadden.  Kiscadden explained to the group, in detail, what had been occurring between Erickson and Johnson, since October 13, 1999.  Johnson was told the incidents were very serious but however, Erickson would not bother him, Johnson again.  Johnson was told he could be assigned to another building, if he so desired.  Mcguigan stated to Johnson, " You can go home on sick leave but when you return I want you to sit with Mr. Erickson, talk about this, shake hands and make up."

(3:30 PM)  Johnson visited his doctor, Earl Brinser, 405 Cumberland Street, Lebanon, PA 17042.  After this session with Dr. Brinser, Dr. Brinser, referred Johnson to Phil Haven Mental Health Facility.  Further, Dr. Brinser gave Johnson three prescription slips, dated October 20, 1999, with his medical instructions, to wit:

1. Excused from work from October 21, 1999 through October 24, 1999 and to return to work on October 25, 1999. This slip had a notation, " Unable to work " It was signed by Dr. Brinser.

2. A prescription for medication, dated October 20, 1999,  to include two refills.  This was signed by Dr. Brinser.

3. A statement dated October 20, 1999, suggesting treatment, his findings and the cause. The statement as written by Dr. Brinser, " Counseling.  Re: stress, tension, fear, work related issues."

**Thursday, October 21, 1999**
(5:30 AM)  Telephoned EMS ( employer ) and reported off as per doctors instructions.
(10:00 AM)  Went to Phil Haven Outpatient Clinic per Dr. Brinser's, his physician, instructions.  An initial evaluation was prepared by the Outpatient Department and faxed to Raymer Kent, Human Resources Manager, Lebanon, V. A.

G-0716

**Friday, October 22, 1999**
( 9:00 AM)  Entered Day Hospital program at Phil Haven Mental Health Facility. Johnson instructed by Dr. Pakola, his treating physician, at Phil Haven, not to return to work, in particular at the Lebanon Veterans Administration Medical Center.  Treatment to be on going.

Lewis W. Johnson                    12-21-99

R. 274

**PHILHAVEN BEHAVIORAL HEALTH CARE SERVICES**
283 South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

**DISCHARGE SUMMARY**

Adult Intensive Day Hospital

The following summary is taken from the medical records of this hospital:

Name of Patient:        Johnson, Lewis W. - 124287

Address:        1025 Harmony Hill Drive
                Lebanon, PA 17046

Admission Date: 10/22/1999                    Discharge Date: 11/12/1999

Age: 43                        Gender: Male        Marital Status: Married

Occupation: House Keeping Aid, VA Medical Center        Type of Admission: 201 Voluntary

Discharge Diagnosis:

<u>DSM-IV</u>

Axis I        Depressive disorder, not otherwise specified
              Impulse control disorder, not otherwise specified
              Alcohol dependence
              Cocaine dependence

Axis II       Personality disorder, not otherwise specified

Axis III      No diagnosis

Axis IV       Psychosocial and Environmental Problems:  Job stress, homicidal thoughts toward co-worker, little
              support.

Axis V        Current (Admission) GAF: 57
              Highest GAF Past Year: 68
              Discharge GAF: 62

**G-0717**

<u>REASON FOR TREATMENT</u>:

Lewis is a 43-year-old married African-American male who is currently living with his spouse and two
stepchildren.  He was referred to the Adult Partial Program with dual diagnosis issues by Dr. Brinser, due to
increased stress, tension, and work-related issues evidenced by increased agitation with homicidal thoughts, mood
swings, irritability, panic attacks, excessive worrying, intermittent explosive anger, decreased concentration, and
depression.  The patient reported that the main stressors in his life include: family conflicts and work.

***** C O N F I D E N T I A L ****
For Professional Use Only

"The confidentiality of the information contained in this document is protected by State statute. Further disclosure of R. 2 75
this information without prior written consent of the person whom it concerns is prohibited."

DISCHARGE SUMMARY
Johnson, Lewis W. - 124287
11/12/1999
Page 2

COURSE OF TREATMENT:

Clinical Course:

Lewis was seen for individual therapy twice a week by his primary clinician, Elaine Howell, B.S. He was assigned to the following groups and activities: group therapy, goals group, coping skills, cooperative challenge, spiritual issues, psychodrama, discharge planning, relaxation group, weekend planning, dual diagnosis and medication education. Overall, he was active in all groups and activities. During groups he tended to be insightful, verbal and involved. He appeared comfortable with sharing his issues intellectually with the group and was able to give and receive constructive feedback. Lewis was also able to connect with group members and demonstrate empathy and set clear boundaries in groups. However, Lewis seemed to have difficulty with connecting with his feelings and emotions. He tended to be more intellectual and avoid the emotional material as he disclosed his issues and difficulties. He presented as strong and self-assured, but under his tough exterior he tended to be insecure, self-condemning, perfectionistic, and paranoid of other's view of him, and over compensatory to make others like and respect him. He received much support and made good connection with peers in the program. He participated in psychodrama group, volunteering to do work as the role of the angry father figure. Lewis was able to identify with his role and indicated that he is currently struggling with how not to be as angry as his alcoholic father.

During individual sessions, Lewis was able to make progress in addressing his tendency to feel insecure and inadequate. He also addressed issues of anger and rejection. He addressed several areas in which his life needs more balance, including his need to increase self-care, setting clear and defined boundaries with his wife, family, and co-workers. He also made progress in increasing his coping skills, including developing specific plans to increase his accountability and facilitate his return back to work. Lewis was able to gain increased control of his homicidal ideation and became more empowered by building a support system to help him cope with the conflicts at work. He gained insight into the issues about dysfunctional thoughts and the need to be perceived as perfect. A marital session was conducted, during which Lewis and his wife discussed how they need to communicate more with each other, and be able to express their needs in the marriage, and how they play mind games in the relationship.

Medical Course:

The client was seen by Richard Pakola, M.D. and the following medications were ordered: Wellbutrin SR 150 mg 1 b.i.d. with eight or more hours between doses, increase BuSpar to 15 mg 1 tablet PO b.i.d., also have the patient sign a safety contract for homicidal ideation toward co-worker. The client was seen again on 10/25 for a medication check by Dr. Pakola. He reported a long history for being hyper, "okay" energy, reduced activity, reduced enjoyment, poor appetite, stable weight, improved sleeping, denies suicidal ideation, admits homicidal ideation. Despondent about the person who assaulted him, is fearful of facing him as he feels he may get into a fight with this person and really want to hurt him." Indicates he plans to defend himself if this person provokes me, says something stupid or nasty about the way I plan to get at him, trying to shoot him, I confronted him that if he did this he would lose his job, get arrested and he said "I know the consequences." The patient was given the standard hazardous activity warning related to the use of medications. The client was seen again on 10/29 by Richard Pakola, M.D. for a medication check. We requested for him to see his primary care physician for a general physical examination with laboratory work. He insisted on this even though we reviewed it with Dr. Brinser's office (his primary care physician). The client was seen again on 11/5 by Richard Pakola, M.D. for a medication check. We reviewed with nursing and therapist the Workmen's

"The confidentiality of the information contained in this document is protected by State statute. Further disclosure of this information without prior written consent of the person whom it concerns is prohibited."

**DISCHARGE SUMMARY**
Johnson, Lewis W. - 124287
11/12/1999
Page 3

Compensation form, and completed it with their assistance. We also reviewed the psych testing note on 11/3. (First day reported missing work on Wednesday, 10/20/99. We reviewed with the patient our responses to his questionnaire. He approved of the way the form was completed. He reports having a second job slant, currently not work anywhere). He reported doing pretty good in the program, persistent nervousness, depression, preoccupation of what happened with a co-worker who he felt had physically and verbally assaulted him on 10/18/99, low energy, decreased enjoyment, normal appetite, five-pound weight gain in the past month, early morning awakening and middle insomnia, denies suicidal ideation, continues to sport anger, homicidal ideation, with dreams of trying to kill co-worker. He wants to avoid any confrontation, that is why he is coming for help "but I can't get past the thoughts." He noted he was on Wellbutrin for smoking and it didn't work for him and his primary care physician discontinued this. We decided to begin a trial on Celexa and he was given the standard hazardous activity warning. He was advised to discontinue this if he gets any serious side effects or results in increased anger. On 11/5 the order was written that Wellbutrin SR was discontinued on 11/2/99 and Celexa 20 mg 1 tablet PO h.s. was begun. The client was seen on 11/12/99 for discharge by Francis Sparrow, M.D. The chart was reviewed, discussed care with R.N., met with patient, and the patient's major complaint at this time is sleep. He still feels unable to return to work. The patient reports feelings safe. He was discharged and we completed a disability form. Prescriptions were not needed and staff will arrange his aftercare appointments.

DISCHARGE CONDITION:

At the time of discharge, Lewis reported decreased symptoms of anxiety and homicidal ideation. He reported feeling that he made significant progress and was ready to leave the program. He has worked to develop a specific plan for future coping including prioritizing his own mental self-care, confronting his feelings in an open and honest manner, and establishing a different relationship with his wife and family. He plans to continue in outpatient therapy to further address anger and self-esteem issues as well as ACOA issues. He recognizes that he needs to continue to build health social supports and develop and/or define independent interests and activities.

**G-0719**

PATIENT/FAMILY INSTRUCTIONS AND AFTERCARE:

| M E D I C A T I O N | **Discharge Medications** (include number of refills):<br>Celexa 20 mg 1 tablet PO h.s. | |
|---|---|---|
| | **Allergies:** None known | |
| | **Special Instructions:** | |
| | Medication Management: Richard S. Pakola, M.D.<br><br>Address:          Philhaven/Mt. Gretna<br><br>Comments: | Phone: 273-8871<br><br>Appt. Date/Time: 11/23/99, 2:15 p.m.<br>Discharge Letter: Yes x   No ☐ |

***** C O N F I D E N T I A L ****
For Professional Use Only

"The confidentiality of the information contained in this document is protected by State statute. Further disclosure of this information without prior written consent of the person whom it concerns is prohibited."

R.277

**DISCHARGE SUMMARY**
Johnson, Lewis W. - 124287
11/12/1999
Page 4

| | | Name: Elaine Howell, B.S. | Phone: 273-8871 |
| | | Address: Philhaven/Mt Gretna | Appt. Date/Time: 11/17/99, 6:00 p.m. |
| | | | Discharge Letter: Yes x   No ☐ |
| | | Comments: | |

Pat Hafzer, R.N.C
Nurse Manager, II

Elaine Howell BS
Elaine Howell, B.S.
Psychology Intern

Edward R. Weaner, M.A.R., C.A.C.
Coordinator of AID/AOD Services

12/22/99
Richard S. Pakola, M.D.
Staff Psychiatrist

PH,EH:nas

Dictated:        11/26/99, 11/22/99
Received:        11/26/99, 12/20/99
Transcribed:     12/01/99, 12/20/99 (c)

G:\TRANSCPT\DCSUMM\12428710.229

G-0720

***** C O N F I D E N T I A L ****
For Professional Use Only

"The confidentiality of the information contained in this document is protected by State statute. Further disclosure of this information without prior written consent of the person whom it concerns is prohibited."

R.279



Philhaven

263 South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

| Date | Time | REMARKS |
|------|------|---------|
| 11/10/99 | 15:30 | Psychology: Pt was seen for 30 minutes. Pt shared struggles he has been having w/ his wife and step-children. He feels that his wife steps on his feelings and hides critical information about family matters from him. He stated that he leaves the home to avoid physical aggression, especially towards son. Will try to have a family session. —Eleni Howe |
| 11/12/99 5:45 | | Dchg note — Chart reviewed — devised care to u/l — met c̄ pt. Pt's main complaint at this time is sleep — still feels unable to return to work — Pt reports feeling safe Plan #1 Dchg today #2 completed neurology form #3 Rx if needed #4 Staff to arrange appt c̄ Dr Phale |
| 11/12 | 15:30 | Nursing: Discharge Client was discharged from AT program. Aftercare was in place and no prescriptions needed. |

Johnson, Lewis W.
124287
Date Of Birth: 7/4/1956
Admission Date: 10/22/1999

12.279



Philhaven



283 South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

| Date | Time | REMARKS |
|------|------|---------|
| 11/5/99 | 12/10/99 | Subsequent Care – Reviewed c̄ Nursing/Therapist – Was compensation from a completed it with their assistance. Also Reviewed Psych. Testing Note on 11/5/99. 1st day reported missing work was Wed Oct. 20, 99. Reviewed c̄ Pt. my responses to the questionnaire. He approved of the way the form was completed. (He reports having a secondary felt short symmetry not matching question.) Reports doing "pretty good" in the program, persistent nervousness, depression, preoccupation of what happened c̄ a co-worker who he felt was physically & verbally assaultive on 10/18/99, low energy, decreased normal appetite, 5 lb. wt. gain in past month, early AM awakening & initial insomnia, denies SI – continues to report anger, homicidal ideation c̄ dreams of trying to kill Ervin Eriksson, awaking him from sleep. Denies plans or intentions of harming him, but is fearful of everything because doesn't know what he would do. He wants to avoid any confrontation, that's why he is coming for help "but I can't get past the thoughts." Reviewed his meds & ↑ Wellbutrin to 400 mg/day he noted he was on Wellbutrin for smoking & it doesn't work for his – PCP stopped it. We decided to begin a Celexa trial – Gave him my Std. hazardous act. warning, advised him to stop it if he gets any serious side effects or results in anger. |
| 11/9/99 | 9:00 | Psychology. Pt. was seen for 50 minutes. Discussed test results and explored ways to cope w/ feelings. Lewis seemed to accept results and shared that he struggles w/ feeling rejected/unaccepted by others.  Elaine Howell, ___ |

Patient Na: 
Patient Nu 

Johnson, Lewis W.
124287
Date Of Birth: 7/4/1956
Admission Date: 10/22/1999

R. 280



**Philhaven**

263 South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

| Date | Time | REMARKS |
|------|------|---------|
| 11/3/99 | 8:00 | Psychology Continued: resentful, and irritable. He ___ his features indicating the presence of a chronic + serious affective disorder. Results indicate that ___ is presently experiencing noticeable distress. A ch___ state of stimulus overload exists which may impair his capacity for control + makes him quite vulnerable to impulsiveness and/or disorganization. Scores suggest the P___ is a rather negative person, probably an angry person. He is not very consistent in his problem solving or decision making behaviors. Also results indicate that he is subj___ to episodes of ETOH & drug abuse, periods that unfold at t___ of frustration, disappointment, + resentment. He is unable to restrain his intense + unstable emotions. He is likely ___ become stormy + destructive during times of substance ___. Complete report will be submitted ———— Elaine Howell___ |
| 11/4/99 | 14:00 | Psychology: Lewis and his wife was seen toda___ for 50 minutes. Couple shared marital difficul___ Both struggle w/ communication skills. Kathy tends ___ be controlling, demanding, and has a very sharp ton___ Lewis tends to be passive aggressive and resentful. Confronted both about communication style and lack of attentiveness. Encouraged both to see therapy ___ further explore their issues — marital + individual. The marriage appears to be in severe emotion___ distress. ———— Elaine Howell___ |

G-0723

Johnson, Lewis W.
124287
Date Of Birth: 7/4/1956
Admission Date: 10/22/1999

R.281

 *Philhaven* 

243 South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

| Date | Time | REMARKS |
|------|------|---------|
| 11/2/99 | 12:00 | Psychology: Pt was seen for 30 minutes. He reported that he feels impulses to use drugs to help him w/ the emotions he has been feeling. Expressed feeling highly agitated and irritable. He stated that the administrators on his job are doing nothing to mediate or resolve the conflict he has been having w/ co-workers. He also stated that if he "goes back to work under the same conditions he knows & believes that he will hurt the co-worker w/ intensions on killing him". Lewis reports that he continues to have nightmares about killing his co-worker. He said that his nightmares include stabbing the co-worker in the chest w/ an object or beating him unmercifully. Lewis was able to contract for safety. He has contacted an attorney and EEOC to help him resolve this conflict. However, at this time the situation at his job remain unchanged. We explored how Lewis' anger affects his decision making and processing skills as well as his ability to remain drug free. ————— Elaine Howell |
| 11/3/99 | 8:00 | Psychology: Pt was given the Rorschach, MMPI-2, and the MCMI-III to assist w/ diagnosis. Test results were valid and are probably a good indicator of his present level of personality and psychological functioning. Test suggest that Pt may've quite aggressive w/ others, tends to be very impulsive, and acts out his problems. He tends to be very hostile continue |

G-0724

Johnson, Lewis W.
124287
Date Of Birth: 7/4/1956
Admission Date: 10/22/1999

R-282


_Philhaven_


463 South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

| Date | Time | REMARKS |
|------|------|---------|
| 10/25/99 | 10:00 | Psychology: Lewis was seen for 50 minutes. He shared his past experiences at work. Lewis has been having conflict w/ a co-worker who berates + ridicules him w/ racial slurs. Lewis shared that he has thoughts of harming this person, but does not have a plan. He completed Pt's tx plan and explored ways he could cope w/ his anger. Lewis lacks insight regarding his difficulties. ———— Elaine Howell |
| 10/29/99 | 12:30 | Wrote on a Prescription sheet the request to See his PCP for a the general medical exam ō labs as he requested he have it in writing. Lifted pa the even though we reviewed it ō Dr Brubaker's office (his PCP). _[signature]_ |
| 10/29/99 | 15:00 | Psychology: Lewis was seen for 50 minutes. He stated that his employer has been frustrating him w/ his complaints about co-worker. He also reported that he feels overwhelmed w/ having to defend himself. Lewis stated that he is struggling w/ maintaining his sobriety bc he is under a lot of stress him his job. He also stated that he has been having nightmares about killing a co-worker who constantly taunts him w/ racial + demeaning comments. Lewis stated that he sometimes have homicidal thoughts w/out a plan about co-worker. He stated that he has an appt w/ EEOC on Monday to file a claim. ———— Elaine Howell B.S. |

Johnson, Lewis W.          R.28
124287
Date Of Birth: 7/4/1956
Admission Date: 10/22/1999

Patient N_
Patient N_
Admiss_



**Philhaven**

South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

| Date | Time | REMARKS |
|------|------|---------|
| 10/21/99 | | Met ō Pt. to complete BN - (our PIE not yet completed left I was able to review the PIE & eval by John Smily on _White_ |
| 10/20/99 | 1300 | Pt. signed contract not to harm co-workers _PitKennanc_ |
| 10/22/99 | 1659 | Clinical Note: Met w/ client for 3/4 hr for admission, orientation, treatment planning and PIE update. Client struggling w/ HIV and anger problem. Open to dual Dx. treatment _Oliver D Nelson_ |
| 10/25/99 | 10:00 | Psychology: |
| 10/25/99 | 1215 | Subsequent Prog - Regrets being by for keeper so another we proposed to him needing a note for work ō dr (opened to BN / therapist) - being nervous - depressed "ok" energy reduced activity, reduced enjoyment, poor appetite, stable wt, improved sleeping, denies SI, admits HI → being dependent about the person who "assaulted" him, is fearful of seeing him in public may get into a fight ō this person & when gets in a fight ō someone, "really wants to hurt him." Indicates he plans to defend himself - that if this person "provokes me, says something stupid, nasty in the way" "I plan to get at him, try to shit him" → I confronted him that if he did this he would lose his job, get arrested & he said - "I know the consequences." Continue Pt. on std. breakfast & adj. worsening related to use of meds. _J White_ |

Johnson, Lewis W.
124287
Date Of Birth: 7/4/1956
Admission Date: 10/22/1999

R.284



$\mathcal{P}$hilhaven

283 South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

## Discharge Instructions

* Please take this document to your aftercare appointments

| Program: Adult Partial | Admit Date: 10/22/99 | Discharge Date: 11/12/99 |
|---|---|---|

**Presenting Problem:** Lewis was referred to the Adult Partial program w/ DDX issues by Dr. Drinser due to stress, tension, and work related issues evidenced by increased agitation w/ homicidal thoughts, moodswings, irritability, panic attacks, excessive worrying, and explosive anger, as well as depressive symptoms.

**S U M M A R Y**

**Course of:** Lewis participated in all scheduled groups and activities. He identified stressors due to work related issues, family conflict, and self concept issues. He was able to address issues if self esteem, anger, fears, rejection, and addiction. Lewis was able to give constructive feedback & receive support from others. Marital session addressed issues of poor communication skills and family dynamics.

**Discharge Type:** ☑ Regular   ☐ Against Medical Advice   ☐ Outpatient Commitment

**Discharge Recommendations:** Lewis' mood has improved significantly. He still struggles w/ self esteem and anger issues. Lewis should continue on medication as prescribed and follow up w/ physician for med. management & accept therapy to continue address self concept and family issues.

**Discharge To:** self

**Allergies & Reactions:** NKDA

**M E D I C A T I O N S**

| Name | Dosage | Directions | Date Rx. Given | # | Refills |
|---|---|---|---|---|---|
| Celexa | 20 mg. | 1 tab p.o. HS | 11/5 | 15 | 1 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

**Blood Levels**
Medication: | Date Drawn: | Value: | Date Due:

Medication supervision required    Yes    No

Patient Na⌐ Johnson, Lewis W.
Patient Nu⌐ 124287
Admission Date of Birth: 7/4/1956
Admission Date: 10/22/1999

R.285

Patient Ac⌐

Special Instructions:

- ☐ Special Diet: _____
- ☐ Avoid driving until given permission by your physician.
- ☑ Avoid alcohol and drug use due to serious interactions with your medications.
- ☐ You may return to work/school. Letter provided   ☐ Yes   ☐ No   ☐ N/A

**A F T E R C A R E   P L A N S**

Providers marked with an "X" below participated in an interagency meeting regarding aftercare. *(11/2*

Primary Therapist: *Elaine Howell*    Phone: *273-8873*

Address: *Philhaven / Mt Gretna*    Appt. Time/Date: *11/17/99  6pm*

Discharge letter/Summary to follow: ☑ Yes ☐ No

Comments: _____

Medication Management: *Richard Yakala MD*    Phone: *273-8871*

Address: *Mt Gretna / Philhaven*    Appt. Time/Date: *11/23  2:15*

Discharge letter/Summary to follow: ☑ Yes ☐ No

Comments: _____

Primary Care Physician: _____    Phone: _____

Address: _____    Appt. Time/Date: _____

Discharge letter/Summary to follow:   ☐ Yes ☐ No

Comments: _____

**S C H O O L**

Contact Person: _____    Phone: _____

School: _____

Address: _____    Discharge letter/Summary to follow:   ☐ Yes ☐ No

Ed Therapy Summary: Contract was made with school personnel regarding discharge plans and recommendations. A copy of the educational recommendations will be sent in the educational therapist's report to:

Name: _____    Phone: _____

Address: _____    Appt. Time/Date: _____

Discharge letter/Summary to follow:   ☐ Yes ☐ No

Comments: _____

If you have a problem contact _____ at _____.

In an emergency contact Crisis Intervention at _____.

| *The above instructions, including the effects of medications, have been reviewed with me and I understand them.* | Patient Signature: *Lewis W. Johnson* | Date: *11-10-99* |
| | Parent or Legal Guardian Signature: | Date: |
| | Staff Signature: *Elaine Howell* | Date: *11/10/99* |
| | Staff Signature: *Dennis N Jury* | Date: *11/12/99* |

Discharge Instructions
PC-240      01-99
G:\USERS\FORMS\PC-240.WPD

**G-0728**

Johnson, Lewis W.
124287
Date Of Birth: 7/4/1956
Admission Date: 10/22/1999

R. 286



283 South Butler Road
P.O. Box 550
Mount Gretna, PA 17064
(717) 273-8871
(717) 270-2452 FAX

December 13, 1999

Attn: Mr. Bill Dumas
      VA Medical Center

Dear Mr. Dumas:

Our records indicate that an Initial Evaluation for Mr. Lewis Johnson was faxed to the VA on

10/21/99 to the attention of Mr. Kent.  This letter was faxed over by Mr. Johnson's therapist here

at Philhaven.

Thank you

Sincerely,

Terry Yantz
Clinical Secretary

G-0729

R.287

*Behavioral Healthcare Services*

 

Philhaven

283 South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

## INITIAL EVALUATION / TREATMENT PLAN

**Chief Complaint:** _Pt states I cant promise I wont hurt him [ Orvin Erickson ]_

**Current Problems:** _depression mood swings impulsivity and episodes of panic_

**Mood Disorders** *(For each box checked "Y" Specify: DURATION, SEVERITY, and EFFECTS)*

| | | |
|---|---|---|
| ☐ Y ☑ N | Appetite Change | |
| ☐ Y ☑ N | Weight Gain/Loss *(# of pounds _____)* | |
| ☑ Y ☐ N | Depressed | |
| ☐ Y ☑ N | Despair | |
| ☐ Y ☑ N | Distractible | |
| ☑ Y ☐ N | Energy Change | |
| ☐ Y ☑ N | Excessive Crying | |
| ☐ Y ☑ N | Hopelessness | |
| ☐ Y ☑ N | Mania | |
| ☐ Y ☑ N | Sleep Pattern Change *(hours changed)* | |
| ☑ Y ☐ N | Other: _mood swings_ | |

**Anxiety Disorders**

| | | |
|---|---|---|
| ☐ Y ☑ N | Anxious | _episodes of panic_ |
| ☐ Y ☑ N | Chest Pain | |
| ☐ Y ☑ N | Dizziness | |
| ☐ Y ☑ N | Fear of Dying | |
| ☐ Y ☑ N | Nausea | |
| ☐ Y ☑ N | Nervousness | |
| ☐ Y ☑ N | Palpitations | |
| ☑ Y ☐ N | Panic Attacks | G-0730 |
| ☐ Y ☑ N | Paresthesia | |
| ☐ Y ☑ N | Shortness of Breath | |
| ☐ Y ☑ N | Sweating | |
| ☐ Y ☑ N | Other: _____ | |

Initial Evaluation / Treatment Plan

Patient Name:

JOHNSON, LEWIS W     R.288
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99

Patient Number:

07-99

*Other Categories*

- □ Y ☑ N   Complusions
- □ Y ☑ N   Delusions
- □ Y ☑ N   Hallucinations
- □ Y ☑ N   Obsessions
- □ Y ☑ N   Phobias
- □ Y ☑ N   Psychosis
- □ Y ☑ N   Changes in sexual behaviors.
- □ Y ☑ N   Other: _____

**Homicide/Violence Assessment:**

Have you had any homicidal or violent thoughts toward others?  (*Within the last 48 hours*)   ☑ Y   □ N
  Explain:

Have you had any violent/assaultive behaviors toward others?   (*Within the last 48 hours*)   □ Y   ☑ N
  Explain: _____

Have you ever at any time had violent/assaultive behaviors toward others?   □ Y   ☑ N
If "YES", When: _____ Explain: _____

Have you ever had a PFA filed against you? □ Y □ N   If "YES", Explain: _____
Can contract for safety?  □ Y ☑ N

**Suicidal Assessment:**

Have you experienced any suicidal thoughts?  (*Within the last 48 hours*)   □ Y ☑ N
  Explain: _____

Do you have a plan?  (*Within the last 48 hours*)   □ Y ☑ N
  Explain: _____

Have you engaged in any self harmful acts? (*Within the last 48 hours*)   □ Y ☑ N
Explain: _____

Have you <u>ever</u> attempted suicide/or self harmful acts?   □ Y ☑ N
If " YES", When: _____ Explain: _____

Can contract for safety?  □ Y ☑ N

G-0731

**Substance Abuse Assessment:** (*drugs/alcohol/tobacco/caffeine*)
Have you ever abused alcohol or other drugs? □ Y □ N
Are you currently using alcohol, illegal drugs or overusing prescription or non-prescription medication?
□ Y □ N   If "YES", Complete the Following:

| Substance | First Use | Frequency | Amount | How Used | Last Used |
|-----------|-----------|-----------|--------|----------|-----------|
| cocaine | age 16 | | | | 7 years |
| alcohol | | | | | ago |
| Heroin | | | | | |
| LSD | | | | | |
| marijuana | | | | | |

Do you use tobacco products?  ☑ Y □ N If "YES", What: *cigarettes* How much: 1 ppd
How much caffeine do you consume per day? _____

JOHNSON, LEWIS W      R.289
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99

Initial Evaluation / Treatment Plan
PC- 320OP          07.99          Patient N:

**Current Psychosocial History:** ( *work status/occupation/time on current job, current living situation and can they return, current financial pressures, source of income, grade level completed, military status, stressors*)

*pt is employed in house keeping department at VA*

**Past Psychosocial History:** (*note history of separations/divorce, client's position in family, siblings, etc*)

*Donza Melnet '78 - '82*
*3 children Lewis (17)*
*Rachel Johnson*
*children Maya (3)*
*Step-children Ratte (15) R, tzhie (19)*

**Mental Status:**

Height: ☐ short ☑ average ☐ tall    Weight: ☐ low ☑ average ☐ heavy    Gait: ☐ normal ☐ abnormal
Motor Behavior: ☑ calm ☐ restless    Eye Contact: ☑ good ☐ poor    Hygiene: ☑ good ☐ poor ☐ fair
Appearance: ☐ neat ☑ casual ☐ unkempt    Posture: ☑ poised ☐ defeated ☐ slouched

Comments:_____

Speech Quantity: ☑ normal ☐ talkative ☐ garrulous ☐ minimally responsive/nonverbal
Speech Quality: ☑ normal ☐ loud ☐ soft ☐ slow ☐ rapid ☐ slurred/dysarthric ☐ pressured ☐ hesitant

Comments:_____

Affect: (interviewer's observation) ☑ calm ☐ cheerful ☐ elated ☐ anxious ☐ depressed ☐ euphoric
☐ fearful ☐ tearful ☐ optimistic ☐ pessimistic ☐ angry ☐ neutral ☑ irritable
Mood: (client's account) ☐ euthymic ☐ anxious ☐ depressed ☐ euphoric ☑ angry ☐ other _____

Comments:_____

Estimated Fund of Information: ☐ low ☑ average ☐ high
Thought Processes: ☑ logical and coherent ☐ blocking ☐ loose associations ☐ incoherent ☐ distracted
☐ clang associations ☐ neologisms/confabulation ☐ flight of ideas ☐ perseveration ☐ evasive

Orientation: _X3_    Attention (5-digits forward/reverse): _____    Calculations: _____

Recall: _____    Remote Memory (Recent presidents): _____

General Info (days in week, seasons, # in dozen):_____

Judgement: _____

Abstraction: _____    Insight: _____

Comments:_____

Cooperative with Interview : ☑ Y    ☐ N

Strengths/Assets:

**G-0732**

_____

Initial Evaluation / Treatment Plan

PC 1200P    07-99

Patient Nai

Patient Nu

JOHNSON, LEWIS W
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99

R.290

**Assessment/Formulation:**

Lewis Johnson is an African American married 43 yo male living c̄ second wife Kathy and children Maja (3) and step-children raised by pt. Pt is employed at VA Hospital in House Keeping department.

Phase of of problems include pt inability to contact for safety c̄ fellow employee + depression pt stated fellow employee made racist slur directed at pt — "you're a white guy in black skin." Pt reports pattern of discrimination at VA Hospital since 1993. Pt states "they're discriminating against me."

Modest hx/tory reveals episodes of fear "panic. Pt takes Wellbutrin and Buspar as prescribed by Dr. Reinser. Pt reports NKDA Pt reports no other known medical conditions and pt takes no other medication pt denies any substance abuse for past 4 years. MSE reveals that pt is oriented x 3 and is casually dressed. pt's affect c̄ calm mood

**Diagnoses:** (Complete DIAGNOSTIC RECORD.  page 5)

**Treatment Plan/Recommendations:**

| Problem | Goal | Method | Target Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | G-0733 | |
| | | | |
| | | | |
| | | | |

Client Signature: _____    Date: _____

Therapist Signature: _____    Date:
*(If Applicable)*

Psychiatrist Signature: _____    Date:
*(If Applicable)*

Initial Evaluation / Treatment Plan

PC-220QR              07-99

JOHNSON, LEWIS W
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99

Patient Nam

Patient Number:

R.294

**Assessment/ Formulation:**

*[handwritten:]* Labile pt reports inability to contact for safety c̄ fellow employee. There is no evidence of hallucinations, delusions, processes appear logical, not concerned of's recent remote memory appear intact. Pt's speech is clear/coherent, pt appears to be of at least average intelligence.

G-0734

**Diagnoses:** (*Complete DIAGNOSTIC RECORD, page 5*)

**Treatment Plan/Recommendations:**

| Problem | Goal | Method | Target Date |
|---------|------|--------|-------------|
| | | | |
| | | *Refer to* | |
| | | *Phil hoven* | |
| | | *Partial* | |
| | | *Program* | |
| | | | |
| | | | |

Client Signature: _____    Date: _____

Therapist Signature: *[signature] John Swley LSW*    Date: 10/21/99

(*If Applicable*)

Psychiatrist Signature: _____    Date: _____

(*If Applicable*)

R.292

Initial Evaluation / Treatment Plan

PC- 3200P          07-99

Patient Name: |

Patient Numbe

JOHNSON, LEWIS W
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99

## DIAGNOSTIC RECORD

**DIAGNOSIS**

Check the primary areas for treatment

Axis I: Clinical Disorders
DSM-IV

Date/Initial _____  Date/Initial

☐ 312.34 Intermittent Explosive    10/21/99
☐ Disorder
☐ 300.4 Dysthymic Disorder    10/21/99
☐ 304.80 Polysubstance    10/21/99
☐ Dependence - sustained
☐ full remission
☐ R/O Depressive D/O, not
☐ otherwise specified

Axis II: Personality Disorders/Mental Retardation
DSM-IV

☐ deferred
☐

Axis III: General Medical Conditions
ICD-9-CM

☐ refer to physician
☐
☐
☐
☐

Axis IV: Psychosocial and Environmental Problems

Problems with:  ☐ Primary support group  ☐ Social environment  ☐ Educational  ☑ Occupational
☐ Housing  ☐ Economic  ☐ Access to health care services
☐ Interaction with the legal system/crime  ☐ Other psychological and environmental problems

Specify: Work stressors
_____
_____
_____
_____
_____

Axis V: Global Assessment of Functioning Scale

|  | Current | Highest | Date |
|---|---|---|---|
| Score: | 50 | | |
| Score: | | | |
| Score: | | | |
| Score: | | | |

G-0735

R.293

Patient N:
Patient N:

JOHNSON, LEWIS W
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99

**Major Presenting Problem(s):** ☑ depression  ☑ anxiety  ☐ drugs/alcohol  ☐ mania  ☑ thought disorder

☐ physical/sexual/emotional abuse  ☐ marital/family problems  ☑ behavioral problem

☐ Other: _____

**Stressors Contributing to the Problem (s):**

~~Racist~~ Demising Racid commands made to me An: a assault that Callowed.

_____

_____

_____

**Current Prescription Medications**

| Medication Name | Dose | Frequency | Duration | Last Dose | Prescribing Physician |
|---|---|---|---|---|---|
| Wellbutrin | 1 | 2ˣ day | 30 days | Nov 2 | Frank Wilsona |
| | | | | | |

**Non-Prescription Medications and herbal supplements used Regularly**

| Medication Name | Dose | Frequency | Duration | Last Dose |
|---|---|---|---|---|
| | | | | |

Allergies: _____

Explain: _____

Medications which have NOT helped in the past: _____

_____

_____

Medications which have helped in the past: _____

_____

_____

## G-0736

R.294

JOHNSON, LEWIS W
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99

Philhaven Initial Evaluation- Client Questionnaire
PC-320OPQ          03-99

Patient Name: _____
Patient Number: _____
Admission Date: _____

G:\USERS\FORMS\PC320OPQ.WPD

# CURRENT SERVICES

| Psychiatric Medication Management | Name: | | | Phone: | |
|---|---|---|---|---|---|
| | Agency: | | | City: | |
| | Last Seen: | | Duration: | | Next Appt: |
| Therapist | Name: | | | Phone: | |
| | Agency: | | | City: | |
| | Last Seen: | | Duration: | | Next Appt: |
| Primary Care Physician | Name: Earl H. Brinser | | | Phone: 272-2321 | |
| | Agency: | | | City: Lebanon | |
| | Last Seen: 10/20/99 | | Duration: | | Next Appt: |
| Children & Youth Services | Name: | | | Phone: | |
| | Agency: | | | City: | |
| | Last Seen: | | Duration: | | Next Appt: |
| MH/MR | Case Manager: | | | Phone: | |
| | Agency: | | | City: | |
| | Last Seen: | | Duration: | | Next Appt: |
| Parole or Probation Officer | Name: | | | Phone: | |
| | Agency: | | | City: | |
| | Last Seen: | | Duration: | | Next Appt: |
| School | Name: | | | Phone: | |
| | District: | | | City: | |
| Drug & Alcohol Services | Name: | | | Phone: | |
| | Agency: | | | City: | |
| | Last Seen: | | Duration: | | Next Appt: |
| Other: | Name: | | | Phone: | |
| | Agency: | | | City: | |
| | Last Seen: | | Duration: | | Next Appt: |

G-0737

R.295

Patient Name:
Patient Numbe
Admission Dat

JOHNSON, LEWIS W
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99

**History of Abuse:**

| | Physical | Sexual | Emotional | Verbal |
|---|---|---|---|---|
| Are you a survivor of abuse? | ☐ Y ☐ N | ☐ Y ☐ N | ☐ Y ☐ N | ☐ Y ☐ N |
| Have you ever been abusive? | ☐ Y ☐ N | ☐ Y ☐ N | ☑ Y ☐ N | ☑ Y ☐ N |
| Have either been reported? ☑ Y ☐ N | By Whom: _MB_ | | When: _9/4?/c_ | |

**Legal Status:**
Past or Present Criminal or Civil Charges (e.g. PFA):   ☐ Y ☑ N   If "Yes", explain: _____

**Support Systems:**
A. Describe the quality and length of your most inportant relationships? _good and caring relationship_
_with my wife and friend for 7 years._

**Past Family Mental Health:** ☐ Y ☐ N

| | | Describe: |
|---|---|---|
| Mother/Step | ☐ Y ☐ N | _____ |
| Father/Step | ☐ Y ☐ N | _____ |
| Brother/Step | ☐ Y ☐ N | _____ |
| Sister/Step | ☐ Y ☐ N | _____ |
| | ☐ Y ☐ N | _____ |
| | ☐ Y ☐ N | _____ |
| Others in home | ☐ Y ☐ N | _____ |
| | ☐ Y ☐ N | _____ |

**Past Family Drug and Alcohol History:** ☑ Y ☐ N

| | | Describe: |
|---|---|---|
| Mother/Step | ☐ Y ☐ N | _____ |
| Father/Step | ☑ Y ☐ N | _He quit drinking when he was 55. He is 78 today._ |
| Brother/Step | ☑ Y ☐ N | _Alcohol and drug use._ |
| Sister/Step | ☑ Y ☐ N | _____ |
| | ☐ Y ☐ N | _____ |
| | ☐ Y ☐ N | _____ |
| Others in home | ☐ Y ☑ N | _____ |
| | ☐ Y ☐ N | _____ |

G-0738

R.296

Patient Name:

Patient Number:

JOHNSON, LEWIS W
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99

# PAST PSYCHIATIC HISTORY

**Program:** ☑ Inpatient ☐ Partial ☐ IOP ☐ Residential ☐ In-home ☐ Outpatient ☐ Other *(specify):*
**Facility:** VA med cntr                                                    Adm. Date: March 92
**Name of provider:**                                                        Discharge Date: Nov 92
**Comments:**
     Drug + Alcohol Rehab,

**Program:** ☐ Inpatient ☐ Partial ☐ IOP ☐ Residential ☐ In-home ☐ Outpatient ☐ Other *(specify):*
**Facility:**                                                                Adm. Date:
**Name of provider:**                                                        Discharge Date:
**Comments:**

---

**Program:** ☐ Inpatient ☐ Partial ☐ IOP ☐ Residential ☐ In-home ☐ Outpatient ☐ Other *(specify):*
**Facility:**                                                                Adm. Date:
**Name of provider:**                                                        Discharge Date:
**Comments:**

---

**Program:** ☐ Inpatient ☐ Partial ☐ IOP ☐ Residential ☐ In-home ☐ Outpatient ☐ Other *(specify):*
**Facility:**                                                                Adm. Date:
**Name of provider:**                                                        Discharge Date:
**Comments:**

---

**Program:** ☐ Inpatient ☐ Partial ☐ IOP ☐ Residential ☐ In-home ☐ Outpatient ☐ Other *(specify):*
**Facility:**                                                                Adm. Date:
**Name of provider:**                                                        Discharge Date:
**Comments:**

---

**Program:** ☐ Inpatient ☐ Partial ☐ IOP ☐ Residential ☐ In-home ☐ Outpatient ☐ Other *(specify):*
**Facility:**                                                                Adm. Date:
**Name of provider:**                                                        Discharge Date:
**Comments:**

---

**What services have helped you most in the past?** _____

_____

_____

_____

_____

G-0739

R.297

Philhaven Initial Evaluation- Client Questionnaire
PC-320OPQ          03-99
G:\USERS\FORMS\PC320OPQ.WPD

Patient Name:
Patient Number
Admission Date

JOHNSON, LEWIS W
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99

# MEDICAL HISTORY

When was your last:  Complete physical exam? _____    Blood test done? _____
Please check any of the following for which you have been treated:
☐ High Blood Pressure  ☐ Diabetes Mellitus  ☐ Epilepsy  ☐ Cancer  ☐ Arthritis  ☐ Asthma
☐ Heart Disease  ☐ Thyroid Problems     ☐ Other: _____
Please list any surgeries you have had:

| Name of surgery | Date of surgery |
|---|---|
| | |
| | |
| | |
| | |

When was:  **Male:**       Last prostate exam _____

**Female:**     Last PapTest _____          Last menstrual period _____

Last breast exam _____          Do you use birth control pills? ☐ Y  ☐ N

**Below are lists of physical symptoms of the six systems of the body.  Please check any symptom that you presently experience:**

| Head, eyes, ears, nose, throat | Respiratory | Cardiovascular |
|---|---|---|
| ☐ Headaches | ☐ Shortness of Breath | ☐ Date of last EKG: _____ ☐ |
| ☐ Dizziness | ☐ Asthma | Chest Pain |
| ☐ Double Vision | ☐ Pleurisy | ☐ Heart skips beat |
| ☐ Passing Out | ☐ Pneumonia | ☐ History of heart murmurs |
| ☐ Seizures | ☐ Cough up blood | ☐ Increased heart rate |
| ☐ History of Head Injury | ☐ Chronic Cough | ☑ Episodes of "fear" - panic |
| ☑ None | ☐ Tuberculosis | ☐ Fear of dying |
| | ☑ None | ☐ None |
| **Gastrointestinal** | **Genitourinary** | **Endocrine** |
| ☐ Recent weight gain/loss | ☐ Kidney problems | ☐ Increased sweating |
| ☐ Nausea | ☐ Bladder infection | ☐ Can't tolerate heat |
| ☐ Vomiting | ☐ Urinate more than once per night | ☐ Can't tolerate cold |
| ☐ Diarrhea | ☐ Blood in urine | ☐ Extreme fatigue |
| ☐ Constipation | ☐ Pain on urination | ☐ Increased thirst |
| ☐ Jaundice (yellow skin) | ☐ Kidney stones | ☐ Increased urination |
| ☐ Liver infection | ☐ History of venereal disease | ☐ Increased appetite |
| ☐ Gall Bladder problems | ☐ None | ☑ None |
| ☑ None | | |

G-0740

R. 298

Patient Name: _____

Patient Number: _____

Admission Date: _____

JOHNSON, LEWIS W
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99



# PHILHAVEN

## Behavioral Healthcare Services

## Update: Initial Evaluation

**Chief Complaint:** "i need to deal w/ my anger problem"

**Mood Symptoms:** ↑ agitation w/ homicidal thoughts

**Anxiety Symptoms:** _____

**Psychotic Symptoms:** Denies

**Homicide/Violence Assessment** (Time frame of last 48 hours):
Have you had any homicidal or violent thoughts toward others?  ☒Y ☐N
Have you had any violent/assaultive behaviors toward others?  ☒Y ☐N
If yes to either of the above, complete Homicide/Violence Assessment Scale.  ☐ H/VA Scale completed

Comments: _____

**Suicide Assessment** (Time frame of last 48 hours):
Have you experienced any suicidal thoughts/death wishes?  ☐Y ☒N
Have you engaged in any self harmful acts?  ☐Y ☒N
If yes to either of the above, complete MSSI.  ☐ MSSI completed   Can contract for safety ☒Y ☐N

Comments: _____

**Substance Abuse Update:** Long hx of poly substance. States that he has been clean and sober for 6-7 yrs. Actively involved w/ N.A.

**Psychosocial History/Legal Status Update:** Denies legal hx.

**Other Pertinent Information:** Says that wife is supportive, but that she has very little understanding of his problems. Significant family of origin issues. Father was an abusive alcoholic.

G-0741

r. 299

Patient Name:  LEWIS W. JOHNSO
Philhaven Patient Number:        12428
Adm Date: 10/22/1999   DOB: 07/04/195

**Mental Status:**

_Height:_ ☐ short ☑ average ☐ tall    _Weight:_ ☐ low ☑ average ☐ heavy    _Gait:_ ☑ normal ☐ abnormal
_Motor Behavior:_ ☑ calm ☐ restless    _Eye Contact:_ ☑ good ☐ poor    _Hygiene:_ ☑ good ☐ poor ☐ fair
_Appearance:_ ☐ neat ☑ casual ☐ unkempt    _Posture:_ ☑ poised ☐ defeated ☐ slouched

Comments: _____

_____

_Speech Quantity:_ ☑ normal ☐ talkative ☐ garrulous ☐ minimally responsive/nonverbal
_Speech Quality:_ ☑ normal ☐ loud ☐ soft ☐ slow ☐ rapid ☐ slurred/dysarthric ☐ pressured ☐ hesitant

Comments: _____

_____

_Affect:_ (interviewer's observation) ☐ calm ☐ cheerful ☐ elated ☐ anxious ☑ depressed ☐ euphoric
☐ fearful ☐ tearful ☐ optimistic ☐ pessimistic ☑ angry ☐ neutral ☐ irritable
_Mood:_ (client's account) ☐ euthymic ☐ anxious ☑ depressed ☐ euphoric ☐ angry ☐ other _____

Comments: _____

_____

_Estimated Fund of Information:_ ☐ low ☑ average ☐ high
_Thought Processes:_ ☑ logical and coherent ☐ blocking ☐ loose associations ☐ incoherent ☐ distracted
☐ clang associations ☐ neologisms/confabulation ☐ flight of ideas ☐ perseveration ☐ evasive
☐ tangential associations    ☐ circumstantial associations

Comments: _____

_____

_Orientation:_ __X 3_____    _Attention (5 digits):_ __Good_____
_Calculations:_ __Good_____    _Judgement:_ __Good_____
_Immediate Memory:_ __Good__ _Short Term (recall of 5 min):_ _____ Remote Memory: __✓____
_General Info (days in week, seasons, # in dozen)_ _____
_Abstraction:_ _____✓_____    _Insight:_ __✓_____

Comments: _____

_____

_Cooperative with Interview :_ ☑ yes    ☐ no
☐ If impairment in memory or cognitive functioning, complete Mini-Mental Status Exam (MMSE).

**Additional Comments:** _____

_____

_____

_____ **G-0742** _

_____

_____

_____

**Interviewers Signature** (if applicable): ___Elaine Howell BS___    R.300

Patient Name:  LEWIS W. JOHNSO
Philhaven Patient Number:    12428
Adm Date: 10/22/1999  DOB: 07/04/195

43 y.o. man ! ⬤ evaluated by John Sively on ⬤ 1/99 & referred to begin AP on 1[...]
due to difficulty handling his anger.

Reports emotional problems since childhood, no psych. admissions but 5 adm[...]

**Assessment/ Formulation:**

for D & A Rehab, ran away from home repeatedly due to felt verbal & physical abuse
from father, has had difficulty managing his anger + has he feels ridiculed[...]
put down & degraded, efforts to cope by avoiding the situation; fighting with[...]
5/9 when discharged from service for his anger & fighting, then turned to use of
alcohol & drugs to help him "stuff" the feelings down. Denies [...]
alcohol or illegal drugs for 7 yrs.; used alcohol, marijuana, speed, hero[...]
cocaine — admits prior dependence or abuse of cocaine. Recently
works as a housekeeping aid at the Leb. VA Hosp but has felt "harass[...]
belittled" by a co worker (Irwin Erickson) since Aug 97 when he began in
that department. Since he stopped his D & A use reports periodic but
frequent depression, with drawal lasting a few hours after first - 3 to 4[...]
reactive to aspects of his life situation, reduced enjoyment,
normal energy, normal appetite steady wt, initial insomnia,
denies SI for years (admits ⊃ Thoughts when using D & A), HI when
angry at someone periodically "at my job" - but never acts on them
admits having HI toward his co worker, denies plan or intent[...]
but indicates that he was fearful of being provoked into a fight.
Denies S attempts. Denies HI but feels people at work are plott[...]
against him + felt bad about himself because he was black. Felt[...]
several people are belittling belittling him, trying to control how
he does things. In past after a fight - has not been remorseful, in[...]
felt hyped up.

**Diagnosis:** (Complete DIAGNOSTIC RECORD, page 4)

Drug allergies — None.
Urgent Gen. Med. Problem — None
Current meds — Buspar 5 mg BID
Wellbutrin SR 150 mg BID

AXIS I — Depressive Di[...]
— [...] Di[...]
— Alcohol Dependen[...]
— cocaine Dependen[...]

II — Possible Perso[...]
Disorder N[...]

III — No Dx

**Treatment Plan/Recommendations:**

— D/C —

— Warned about Risk for Seizures on Wellbutrin — He denies Hx for seizures or an
eating disorder — advised he needs to keep doses 8 or more hours ap[...]

— Gave Pt. my Std. Hazards Art. Warning

Recommended thorough Gen. Med Eval c̄ Labs to R/O
contributing physical factors.

We ↑ Buspar.

**Clinician Signature:** _[signature]_

**Date:** 10/22/99

R.30[...]

Patient Name:   LEWIS W. JOHNSO[...]
Philhaven Patient Number:        12428[...]
Adm Date: 10/22/1999   DOB: 07/04/195[...]

G-0743

# DIAGNOSTIC RECORD

## DIAGNOSIS

Check the primary areas for treatment

**Axis I: Clinical Disorders**

DSM-IV

| | | Date Identified | Date Discontinued |
|---|---|---|---|
| ☐ | *Depressive D/O n.o.s.* | *PAH* | |
| ☐ | *Impulse Control D/O NOS* | *PAH* | |
| ☐ | | | |
| ☐ | *Alcohol Dependence* | *PAH* | |
| ☐ | *Cocaine Dependence* | *PAH* | |
| ☐ | | | |
| ☐ | | | |
| ☐ | | | |

**Axis II: Personality Disorders/Mental Retardation**

DSM-IV

| | | | |
|---|---|---|---|
| ☐ | *Personality Disorder, NOS* | *10/25/99* | |
| ☐ | | | |

**Axis III: General Medical Conditions**

ICD-9-CM

| | | | |
|---|---|---|---|
| ☐ | *No Diagnosis* | *PAH* | |
| ☐ | | | |
| ☐ | | | |
| ☐ | | | |
| ☐ | | | |

**Axis IV: Psychosocial and Environmental Problems:**

☑ Primary support group  ☐ Social environment  ☐ Educational  ☑ Occupational  ☐ Housing
☐ Economic  ☐ Access to health care services  ☐ Interaction with the legal system/crime
☐ Other psychological and environmental problems

Specify: _____     **G-0744**

_____

_____

_____     R.302

_____

**Axis V: Global Assessment of Functioning Scale**

*57   68   62*

Current  Highest

Patient Name: LEWIS W. JOHNSO
Philhaven Patient Number:        12428
Adm Date: 10/22/1999   DOB: 07/04/195



Philhaven
283 South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

## OUTPATIENT PROGRESS NOTES

| Date | |
|------|--|
| | *Psych Nurse Mgr.* |
| 12/2/99 | Pt. requested to see nr. today — reports mild depression, denies SI or I. |
| | ideation, feels approved, eating & sleeping better, continue to think about |
| | people plotting against him at work, denies PH. Reports it is difficult |
| | to get his mind off of the work situation. Requested I complete a |
| | a QA-20a form for him as I did on 12/7/99. I explain that 5 a 8 |
| | see Report. Renewal prescription as scheduled are approved current meds. |
| | He appears approved & approval effects as felt |
| | soon & client being granted Workmans Comp. |

G-0745

Outpatient Progress Notes
PC-5750    10-99
G:\USERS\FORMS\PC-5750.WPD

Client Name: _Lewis Johnson_    R-303

Client NO: _124287_



Philhaven
283 South Butler Rd.
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

# OUTPATIENT PROGRESS NOTES

| Date | |
|---|---|
| | Psych. Med Man |
| 12/15/99 | Reports being "bent out of shape" as is on leave ō pay, depressed, nervous, worrisome, low energy, lack of enjoyment, eating at the wrong times, gaining 10 lbs since mid. Oct 99 when felt harassed at work, initial insomnia (sleep improved as no longer awakens & gets to sleep earlier), denies SI, anger, who wishes he could kill Ray Kent – human resource staff (as found out Dec 13 – he withheld medical information that would have allowed him to get paid & was directed to file the wrong claim – feels betrayed by him), feels the victim "in this whole situation" → denies plans or intentions, realizes it would be wrong to harm him "just has the thoughts" because is angry & blames him for not getting paid – denies other HI – feels improved, in more control ō his meds. Denies any hx or evidence for psychotic symptoms. Reviewed meds – made no changes – Completed for pt 2 medical statements – (1) Application for leave ō pay and (2) Disability claim form so he won't have to make premature payments – Working on issue feels unable to work at Leb. VA because of current animosity & fear for his safety, doesn't feel they care about him – Was encouraged to apply for a "negotiable transfer" to another facility. [signature] 12/15/99 |

G-0746

Client Name: Lewis Johnson

Client NO: 124287

R.304



Philhaven

283 South Butle.
P.O. Box 550
Mt. Gretna, PA  17064
(717) 273-8871

**OUTPATIENT PROGRESS NOTES**

| Date | |
|------|---|
| | Paryah Mud Man. |
| 12/7/99 | Reports not doing well for ≈1 ch do to the way the compensation officer handled his disability claim, resulting in his being on leave & pay resulting in depression, saying irritable, low energy, lack of enjoyment, overeating c̄ 10 lbs of gain, initial & middle & late insomnia (awakes at 4 AM), Si a Hi → "this is what I'm thinking - I'm going to go out there, knock off all those guys and Then myself", ōu gun, doesn't have a gun, but people he knows has guns, denies suicide immediate plan or intention - feels in control at this time & contracts for safety indicating he would call & come to the hospital as an alternative to harming himself or others, denies AH, feels people at work are plotting vs him, also feels the Police. Indicated that he had Hi toward the claim examiner, his supervisor, the police chief (PStucker), Rodney Kisecock, Denis Hecho) but denies any immediate plan. Beamed for meds. ×a cad(den) we ↑ Zoryam to 300 ·y, hs & buspar to 45 ·y/day Altered PStch 1 plu. Case pln any std disorder out warning & other inability a disability deferred the See his therapist 12/X/99 - Elaine at Phil. Lebanon. He denies the use of alcohol or cocaine since Mach 92. (completed 2 disability statements today - one for workers Comp & one for car payments) |

G-0747

Client Name: _Lewis W Johnson_

Client NO: _124287_

R-305



Philhaven

283 South Butler Road
P.O. Box 550
Mt. Gretna, PA 17064
(717) 273-8871

## OUTPATIENT PROGRESS NOTES

| Date | |
|---|---|
| | Psych Med Man. |

11/29/99 — 43 y.o. man admitted to AP from 10/22 to 11/12/99 *[illegible]* 311 Dep Dis NOS

*[illegible]* to me for OP Psych Med Man. Please

refer to phys. Section of P/E dated 10/22/99

I — *[illegible]* Control Dis NOS
Alcohol & Cocaine Dep.
II — Possible Pers Dis NOS
III — No Dx

Reports persistent depression, nervousness, worry, low energy, poor appetite, gaining weight, low enjoyment, initial & middle insomnia, denies SI; admits continued anger at the guy at work he feels "assaulted" him, still would like to hurt him, and avoids him so that he won't harm him, denies HI, plans or intentions. Feels the VA management is plotting against him because he doesn't feel they corrected the problem, only gave him "a slap on the hand", thinks they are protecting him, gives no hx or evidence for hallucinations. Feels he is handling his anger "pretty good", denies temper loss. Denies use of alcohol or cocaine *[illegible]* last use of both March 26, 1992.

Reports erectile failure since started Celexa — saw out of this over 1½ weeks ago & continues to have problems & low erection. He reports remaining on BuSpar 15 mg BID

Also reports forgetfulness for < 1 wk — forgets to do things he planned to do. He requested a trial on a different agent so we switched from Celexa to Zyprexa & BuSpar.

Gave him my s/d. *[illegible]* this warning. Reviewed instructions on use of Zyprexa including increasing dose after two to five days if not approved or limited by side effects. Discussed possible medication side effects — Plan RTC c 2 wks or sooner if needed. Reviewed *[illegible]*. He sees Dr.

*[signature]*

12/7/99  Psych.

G-0748

Client Name: Lewis W Johnson

Client NO: _____

R-306



283 S. Butler Road
P.O. Box 550
Mt. Gretna, PA 17604
(717) 273-8871

## OUTPATIENT PROGRESS NOTES

| DATE | |
|---|---|
| 10/21/99 | pt was seen for one hour of individual psychotherapy 9-10 am. Session focused on building ther peutic alliance and gathering information for clinical evaluation. pt was recommended to start Adult Partial Hospital of PhilHaven. PhilHaven will contact pt and will plan for pt to start tomorrow |
| | John Foley LSW, BCD |
| 10/21/99 | Case Management Note Spoke c̄ Mr. Kent at pt's request regarding pt's Tx |
| | John Foley LSW, BCD |

G-0749

CONFIDENTIAL — FOR PROFESSIONAL USE ONLY

"This information has been disclosed to you from record whose confidentiality is protected by State Law. State regulations limit your right make any further disclosure of this information without the prior written consent of the person to whom it pertains."

Philhav

| Patient Name | JOHNSON, LEWIS W 124287 Date Of Birth: 07/04/1956 Admission Date: 10/20/99 | R-307 |
|---|---|---|



283 S. Butler Road
P.O. Box 550
Mt. Gretna, PA 17604
(717) 273-8871

## OUTPATIENT PROGRESS NOTES

| DATE | |
|---|---|
| 11/1/99 | pt was seen for one hour of individual psychotherapy 1:30 - 2:30 pm. pt's affect & mood appropriate. pt denies suicidal/homicidal ideation for tact pt reports compliance c med Provider trustful therapeutic alliance and pt was responsive to intervention as evidenced by self disclosure. lesson focused on consolidating gains in partial program. pt reports gaining increased self-awareness and working on marital issues. Discussed transition of pt's case to partial program therapist as this writer will no longer be able to see pt. pt was in agreement c plan and pt is scheduled to see Elaine Howell |

G-0750

John Swley, LSW, BCD

CONFIDENTIAL — FOR PROFESSIONAL USE ONLY

"This information has been disclosed to you from record whose confidentiality is protected by State Law. State regulations limit your right to make any further disclosure of this information without the prior written consent of the person to whom it pertains."

Philhav

Patient Name:_____

JOHNSON, LEWIS W
124287
Date Of Birth: 07/04/1956
Admission Date: 10/20/99

R.308

43 yo man ● evaluated by John Sively on ●/99 & referred to begin AP on [illegible] due to difficulty her [illegible] his anger.

Reports emotional problems since childhood, no psych. admissions but 5 adm.

**Assessment/ Formulation:**

for Dr A Rehab, ran away from home repeatedly, due to felt verbal & physical abuse from father, has had difficulty managing his anger when he feels ridiculed, put down & degraded, efforts to cope by avoiding the situation ; fighting with [illegible] ♥ 9 when discharged from service for his anger & fighting, then turned to [illegible] alcohol & drugs to help him "stuff" the feelings down. Denies [illegible] alcohol or illegal drugs for 7 yrs; used alcohol, marijuana, speed, her[illegible] cocaine — admits prior dependence on alcohol & cocaine. [illegible] works as a housekeeping aid at the Leb. VA Hosp but has felt harassed, belittled by a co worker (Irwin Erickson) since Aug 97 when he began in that department. Since he stopped his Dr A use reports periodic but frequent depression, with drawn feeling a few hours a day, poor 3♥0 reactive to aspects of his life situation, reduced enjoyment, normal energy, normal appetite 5 lmbs wt, initial insomnia, denies SI for years (admits 3 Thoughts when using D & A), HI, when [illegible] ongry at someone periodically "all my life" — but never repetitive thoughts [illegible] clients toward his co worker, denies plan or intent [illegible] but indicates that he was fearful of being provoked into a fight. Denies S attempts. Denies HI but feels people at work are plotting against him, feels bad about himself because he was black. Feels [illegible] several people are belittling; belittling him, trying to control him he does this. In past after a fight — he was reprimanded, [illegible] [illegible]

Drug allergies — None.

AXIS I —  Depressive Dis[order]
                  — Impulse Control D[is]
                  — Alcohol depend[ence]
                  — Cocaine depend[ence]

**Diagnosis:** (Complete DIAGNOSTIC RECORD Page 4)
urgent Gen. Med. Problems None
current meds — Buspar 5 mg BID

II — Possible Person[ality]
          Disorder N[OS]

**Treatment Plan/Recommendations:** Wellbutrin SR 150 mg BID

III — No Dx

**G-0751**

— AP —

— Warned about Risk for Seizures on Wellbutrin — He denies Hx of seizure or an eating disorder — advised he needs to keep doses 8 or more hours a[part]

— Gave Pt. my Std. Hypnotics Ant. Warning

Recommended Thorough Gen. Med Eval c̄ Labs to R/o contributing physical factors.

We ♥ Buspar

**Clinician Signature:** [signature]

**Date:** 10/22/99

R-30[illegible]

Patient Name: LEWIS W. JOHNS[ON]
Philhaven Patient Number: 1242
[illegible]

DEPARTMENT OF VETERANS AFFAIRS                    Page    1
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

Date/Time Printed
A Facility                                      OCT 19, 1999@12:25
EBANON,PA
utomated VA Form 10-1393

ATE/TIME RECEIVED: OCT 19, 1999@09:30
ATE/TIME OF OFFENSE: OCT 13, 1999@08:00
NDING DATE/TIME OF OFFENSE: OCT 18, 1999@10:40
OCATION: 1-2C ELEVATOR LOBBY
EAPON USED: NONE
NVESTIGATING OFFICER: SABOL,STEPHEN J JR
ETHOD OF OPERATION:

LASSIFICATION CODE: DISTURBANCE/DISORDERLY CONDUCT

* * * * * * * * * * * * * * VICTIM DATA * * * * * * * * * * * * * * * * * *

ICTIM NAME: JOHNSON,LEWIS W
EX: MALE             RACE: BLACK
TATUS: EMPLOYEE
RIVER'S LICENSE & STATE: 18726256 PENNSYLVANIA
OME ADDRESS: 2020 SPRUCE PARK
             LEBANON,PENNSYLVANIA 17042

OME PHONE:
ORK ADDRESS: 1700 SOUTH LINCOLN AVENUE
             LEBANON,PENNSYLVANIA 17042

ORK PHONE: 4661
EDICAL TREATMENT:

* * * * * * * * * * * * * * * OFFENDER DATA * * * * * * * * * * * * * * * *

OFFENDER NAME: ERICKSON,IRVIN D
SSN: 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          DOB: NOV 21,1948           AGE: 50
EX: MALE                  RACE: CAUCASIAN            HEIGHT:
EIGHT:                    HAIR COLOR: BROWN          EYE COLOR:
KIN TONE:                 SCARS/MARKS:
TATUS: EMPLOYEE
RIVER'S LICENSE & STATE:
PERSONAL DESCRIPTION:

HOME ADDRESS: PO BOX 253
             JONESTOWN,PENNSYLVANIA 17038

HOME PHONE:
WORK ADDRESS: 1700 SOUTH LINCOLN AVENUE
             LEBANON,PENNSYLVANIA 17042

WORK PHONE: 4661
OFFENSE COMMITTED: DISORDERLY CONDUCT 1.218(b) VA REG 11            G-0752
DISPOSITION: RELEASED/NO FURTHER ACTION  CHARGING DOCUMENT:

R.310

DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

Page   2

Date/Time Printed
OCT 19, 1999@12:25

\ Facility
EBANON, PA
itomated VA Form 10-1393

* * * * * * * * * * * * * WITNESS  DATA * * * * * * * * * * * * * * * *

TINESS NAME: STECKBECK,DEAN C
ME ADDRESS: 1816 PLAZA APT.
            LEBANON, PENNSYLVANIA 17042

ME PHONE: 717-279-0788
JRK ADDRESS: 1700 SOUTH LINCOLN AVENUE
            BUILDING 2-G
            LEBANON, PENNSYLVANIA 17042

JRK PHONE: 4004

* * * * * * * * * * * * * WITNESS  DATA * * * * * * * * * * * * * * * *

TINESS NAME: YEICH,BARBARA J
ME ADDRESS: 345 SOUTH SIXTEENTH STREET
            APT#G-04
            LEBANON, PENNSYLVANIA 17042
ME PHONE: 273-0326
JRK ADDRESS: 1700 SOUTH LINCOLN AVENUE
            BUILDING 1-2A
            LEBANON, PENNSYLVANIA 17042

JRK PHONE: 4368

* * * * * * * * * * * * * WITNESS  DATA * * * * * * * * * * * * * * * *

TINESS NAME: CHANDLER,LOUIS C
ME ADDRESS: 251 NORTH RAILROAD STREET
            PALMYRA, PENNSYLVANIA 17078

ME PHONE:
JRK ADDRESS:
JRK PHONE:

* * * * * * * * * * * * * WITNESS  DATA * * * * * * * * * * * * * * * *

TINESS NAME: BURKHOLTZ,CHARLES R. JR.
JME ADDRESS: 911 MILLER STREET
            LEBANON, PENNSYLVANIA 17046
JME PHONE: 717-274-5263
VORK ADDRESS: 1700 SOUTH LINCOLN AVENUE
            POLICE DEPARTMENT
            LEBANON, PENNSYLVANIA 17042

VORK PHONE: 4005

VAS CIP WEAPON USED? NO
VAS POLICE BATON USED? NO

G-0753

R. 311

DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

Page    3

A Facility
EBANON, PA
utomated VA Form 10-1393

Date/Time Printed
OCT 19, 1999@12:25


THER AGENCY NOTIFIED


.S. ATTORNEY NOTIFIED


* * * * * * * * * * * * * * * NARRATIVE * * * * * * * * * * * * * * * * *

ORIGIN:

SGT. BURKHOLTZ RECEIVED A CALL FROM L. JOHNSON RE: RACIAL HARASSMANT.


INITIAL OBSERVATION:

NONE


INVESTIGATION:

ON 10-19-99 AT 0930 HOURS SGT BURKHOLTZ RECEIVED A CALL FROM EMS
EMPLOYEE L. JOHNSON #8509 STATING THAT EMS EMPLOYEE IRV ERICKSON #5663 WAS
MAKING RACIAL STATEMENTS AND HARASSING HIM. SGT BURKHOLTZ REQUESTED THAT L.
JOHNSON COME INTO THE POLICE STATION FOR AN INTERVIEW.

ON 10-19-99 AT 0945 HOURS I INTERVIEWED EMPLOYEE JOHNSON CONCERNING
THIS MATTER. JOHNSON STATED THAT ON 10-13-99 AT 0800 HOURS HE WAS IN BLDG#
1 SECOND FLOOR ELEVATOR LOBBY WHEN IRV ERICKSON APPROACHED HIM AND STATED "
HEY LOU, DO YOU WANT TO KNOW WHAT PEOPLE ARE SAYING ABOUT YOU ". JOHNSON
REPLIED BY SAYING "NO". ERICKSON AT THIS TIME CALLED FOR L.  CHANDLER TO
COME OVER AND LISTEN WHILE HE TOLD JOHNSON WHAT PEOPLE ARE SAYING. ERICKSON
SAID " LEWIS, THEY SAY YOU ARE A WHITE MAN IN BLACK SKIN ". JOHNSON STATED
THAT THIS MADE HIM SICK AND HE BEGAN TO SHAKE.  JOHNSON STATED THAT HE
DEPARTED THE AREA. JOHNSON THEN STATED THAT ON 10-18-99 AT 1025 HOURS HE
WAS IN BLDG# 1 THIRD FLOOR A SIDE THAT ERICKSON APPROACHED HIM AND SAID "
HEY LEWIS, I WANT TO TALK TO YOU". JOHNSON STATED THAT HE SAID " I DON'T
WANT TO TALK TO YOU ". JOHNSON SAID THAT HE BEGAN TO WALK AWAY BUT ERICKSON
CONTINUED TO FOLLOW HIM ASKING HIM TO TALK TO HIM. JOHNSON SAID THAT
ERICKSON BUMPED UP AGAINST HIM IN THE SHOULDER AREA AND CONTINUED TO FOLLOW
HIM STATING " WHY WON'T YOU TALK TO ME ".  JOHNSON STATED AT THIS TIME HE
WENT BEHIND THE NURSES STATION AND LOCKED HIMSELF IN THE BATHROOM. REPORT
OF CONTACTS ARE ATTACHED TO THIS REPORT.

ON 10-19-99 AT 1025 HOURS I INTERVIEWED BARB YEICH THE WITNESS OF
THE 10-18-99 INCIDENT ON 1-3A. YEICH STATED THAT SHE OBSERVED ERICKSON
APPROACH JOHNSON ON 1-3A. YEICH STATED THAT ERICKSON SAID "HEY LEWIS, I
WANT TO TALK TO YOU". JOHNSON REPLIED "I DON'T WANT TO TALK TO YOU". YEICH
DID OBSERVE ERICKSON FOLLOW AND CONINUE TO ASK JOHNSON TO TALK TO HIM.

G-0754

R.312

 

DEPARTMENT OF VETERANS AFFAIRS                                    Page   4
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

VA Facility                                    Date/Time Printed
LEBANON, PA                                     OCT 19, 1999@12:25
Automated VA Form 10-1393

YEICH STATED THAT JOHNSON WALKED BEHIND THE NURSES STATION AND LOCKED
HIMSELF IN THE BATHROOM. WITNESS STATEMENT IS ATTACHED TO THIS REPORT.
        ON 10-19-99 AT 1042 HOURS I APPROACHED IRV ERICKSON IN BLDG# 1
FIFTH FLOOR IN HIS OFFICE AREA. BEFORE ANY STAEMENTS WERE MADE I INFORMED
ERICKSON OF HIS RIGHTS, TO WHICH HE FULLY UNDERSTOOD. I BEGAN TO INTERVIEW
ERICKSON CONCERNING THIS MATTER. ERICKSON STATED THAT ON 10-13-99 AT 0800
HOURS HE CALLED JOHNSON OVER ONLY TO TELL HIM WHAT PEOPLE WERE SAYING ABOUT
HIM. ERICKSON STATED THAT THIS WHAT NOT HIS PERSONAL FEELINGS BUT ONLY WHAT
PEOPLE WERE SAYING. ERICKSON STATED THAT HE DID SAY "HEY LEWIS, THEY ARE
SAYING THAT YOU ARE A WHITE MAN IN BLACK SKIN". ERICKSON SAID THAT EMS
EMPLOYEE L. CHANDLER WAS THERE TO WITNESS THESE STATEMENTS.  ERICKSON
STATED THAT JOHNSON, CHANDLER AND HIMSELF WERE JOKING AROUND EARLIER THAT
MORNING. ERICKSON STATED THAT ON 10-18-99 AT 1025 HE DID IN FACT APPROACH
JOHNSON ON 1-3A ONLY TO CLEAR UP THE MISUNDERSTANDING BETWEEN THEM ON THE
STATEMENTS MADE. ERICKSON STATED THAT HE NEVER PUSHED HIS SHOULDER INTO
JOHNSON OR MADE ANY PHYSICAL CONTACT WITH JOHNSON. HE JUST WANTED TO TALK
TO JOHNSON TO CLEAR THINGS UP. SEE VOLUNTARY STATEMENT ATTACHED TO THIS
REPORT.
        ON 10-19-99 AT 1150 HOURS I INTERVIEWED L. CHANDLER CONCERNING THIS
MATTER. CHANDLER STATED THAT ERICKSON WAS ONLY TELLING JOHNSON WHAT OTHER
PEOPLE WERE SAYING ABOUT HIM. CHANDLER STATED THAT ERICKSON WASN'T VIEWING
HIS OWN PERSONAL FEELINGS ABOUT JOHNSON. SEE VOLUNTARY STATEMENT ATTACHED
TO THIS REPORT.
        AFTER HEARING THE TESTIMONY OF ALL INVOLVED AND MY INVESTIGATION, I
FIND THAT THE COMPLAINT FILED BY L. JOHNSON AGAINST I. ERICKSON IS
UNFOUNDED. NO FURTHER POLICE ACTION REQUIRED AT THIS TIME.


        DISPOSITION:


CASE CLOSED.


STEPHEN J JR. SABOL   # 2987
INVESTIGATING OFFICER


                                            G-0755


                                                    R.313

DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

PAGE:    1

Date/Time Printed
OCT 27, 1999@14:08

Facility
ANON, PA
.enated VA Form 10-1393

LOW-UP NOTES:

N 10-19-99 @ 0945 I WITNESSED OFFICER SABOL INTERVIEW EMPLOYEE LEWIS
JOHNSON ON HIS COMPLAINT AGAINST EMPLOYEE IRVIN ERICKSON FOR HARASSING,
ACIAL STATEMENTS AND HARASSMENT.
     JOHNSON STATED THAT HE WAS AFRAID OF ERICKSON AND WHAT HE MIGHT DO.
JOHNSON ALSO PROVIDED US A COPY OF TWO  STATEMENTS HE HAD PROVIDED TO THE
EO OFFICER.
     ON 10-19-99 AT 1025 HOURS I WITNESSED OFFICER SABOL INTERVIEW EMPLOYEE
ARB YEICH. YEICH TOLD OFFICER SABOL ON 10-18-99 THAT SHE OBSERVED ERICKSON
APPROACH JOHNSON ON 1-3A AT WHICH TIME SHE OVER HEARD ERICKSON SAYI WANT TO
TALK TO YOU".YEICH SAID SHE HEARD LEWIS SAY "I DO NOT WANT TO TALK TO YOU".
HE ALSO SAID SHE OBSERVED ERICKSON CONTINUE TO FOLLOW JOHNSON AND ASK
JOHNSON TO TALK TO HIM.YEICH SAID JOHNSON WALKED BEHIND THE COUNTER AND
OCKED HIMSELF IN THE BATHROOM. YEICH WAS ASKED TO PROVIDE US WITH A
STATEMENT REGARDING HER OBSERVATION. WHICH IS ATTACHED TO THIS REPORT.
     10-19-99 AT 1042 HOURS OFFICER SABOL AND MYSELF WENT TO 1-5A TO SPEAK
WITH ERICKSON. OFFICER SABOL APPROACHED ERICKSON ON 1-5 IN HIS OFFICE AREA
AND ASKED IF WE COULD TALK TO HIM. BEFORE ANY QUESTIONS WERE ASKED OF
ERICKSON OFFICER SABOL ADVISED ERICKSON MIRANDA RIGHTS ERICKSON SAID HE
FULLY UNDERSTANDS HIS RIGHTS AND WAS WILLING TO TALK TO US ABOUT THIS
INCIDENT. ERICKSON WAS COOPERATIVE.ERICKSON SAID HE WAS KIDDING AROUND AND
STATED THAT HE DID NOT MAKE ANY RACIAL SLURS.ERICKSON ALSO SAID THIS MAKES
NO BECAUSE HE WORKS WITH LEWIS CHANDLER,A BLACK MAN WHO IS HIS PARTNER.
ERICKSON ALSO STATED HE NEVER PUSHED OR MADE PHYSICAL CONTACT WITH JOHNSON.
ERICKSON ALSO PROVIDED US WITH A VOLUNTARY STATEMENT.
     ON 10-19-99 AT 1145 HOURS I OBSERVED EMPLOYEE L.CHANDLER IN BLDG 17 AND
ASKED HIM IF HE WOULD GO SEE OFFICER SABOL IN POLICE STATION. I TOLD HIM
THAT OFFICER SABOL WOULD EXPLAIN WHAT WE NEEDED DUE TO CROWDED HALLWAYS.


AN C STECKBECK    # 2683
OLLOW-UP INVESTIGATOR


**G-0756**


OLLOW-UP NOTES:

ON 10-20-99 AT APPROXIMATELY 0820 HOURS I RECEIVED A TELEPHONE CALL FROM
EMPLOYEE ROBERT DENNIS INFORMING ME THAT EMPLOYEE LEWIS W. JOHNSON WAS

R.314

DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

PAGE:    2

Date/Time Printed
OCT 27, 1999@14:08

Facility
ANON, PA
omated VA Form 10-1393

ITTING IN LOT #23 IN HIS VEHICLE REFUSING TO REPORT TO HIS WORK PLACE
ECAUSE EMPLOYEE IRVIN D. ERICKSON WAS ASSIGNED TO THE SAME BUILDING.
YSELF AND OFC. ROYAL WENT OVER TO BUILDING #23 AND OFFICER ROYAL ESCORTED
OHNSON. BECAUSE THIS IS AN ADMINISTRATIVE MATTER I CONTACTED CAROLYN
CGUIGAN, EMS SUPERVISOR WHO IN TURN CALLED FACILITIES MANAGER, IRV MURITZ.
. MEETING INVOLVING MCGUIGAN, MURITZ, EMS SUPERVISOR, RODNEY KISCADDEN,
GT. BURKHOLTZ, MYSELF, & LEWIS WAS HELD IN BUILDING #2,15A.  PER HIS
EQUEST OF LEWIS, HE WAS GRANTED A/L AND THE. NO FURTHER POLICE
NTERVENTION IS REQUIRED AND IS BEING HANDELED BY LEWIS'S SUPERVISORS
DMINISTRATIVELY......

ALD E GUY JR    # 700
LOW-UP INVESTIGATOR

LOW-UP NOTES:

N TUESDAY, OCTOBER 19, 1999AT 1000 HOURS I INTERVIEWED JOHNSON IN MY
OFFICE, ROOM 15, BLDG# 2. ALSO PRESENT WAS AFGE REPRESENTATIVE ROBERT
DENNIS. JOHNSON RELATED THAT WHILE HE WAS IN THE LOBBY OF BLDG# 1, 2ND
FLOOR, ERICKSON DID APPROACH HIM AND ASKED HIM IF HE HEARD WHAT HIS
BROTHERS WERE SAYING ABOUT HIM. AT THAT TIME ACCORDING TO JOHNSON, HE TOLD
ERICKSON HE DID NOT WANT TO HEAR IT BUT ERICKSON STATED YOUR BROTHERS ARE
SAYING YOU ARE A WHITE MAN IN A BLACK MANS SKIN. WITH THAT JOHNSON GOT ON
THE ELEVATOR AND LEFT THE AREA. JOHNSON DID STATE THAT THIS UPSET HIM
EXTREMELY. HE DID STATE THAT LATER THAT DAY, HE APPROACHED EMPLOYEE
CHANDLER AND STATED THAT SOMEONE WILL SPEAK WITH ERICKSON ABOUT HIS RECIST
REMARKS. ON THE 18TH OF OCTOBER, WHILE JOHNSON WAS ON THE 3RD FLOOR OF
BLDG# 1, WORKING AS A FILL IN, HE WAS STANDING NEAR THE NURSING STATION
WHEN HE OBSERVED ERICKSON COME ON THE UNIT. HE WATCHED ERICKSON AND LATER
OBSERVED ERICKSON LEAVE WITH A BOTTLE OF UNKNOWN SUBSTANCE. AS ERICKSON WAS
LEAVING, HE CAME UP TO JOHNSON AND STATED LOUIS I WANT TO TALK TO YOU, WHEN
HE DID HE CAME SHOULDER TO SHOULDER. JOHNSON STATED I DO NOT WANT TO TALK
TO YOU AND ATTEMPTED TO WALK AWAY, ERICKSON FOLLOWED HIM, AND ACCORDING TO
JOHNSON MADE BODY CONTACT WITH HIM. JOHNSON, FEARING FOR HIS SAFETY, WENT
INTO THE RESTROOM AND LOCKED THE DOOR. HE WAITED A SHORT WHILE AND WHEN HE
CAME OUT ERICKSON WAS GONE, JOHNSON FEARING FOR HIS SAFETY LEFT THE AREA
AND WENT HOME. JOHNOSN DID MAKE CONTACT WITH HIS SUPERVISOR ON 2 SEPARATE
OCCASSIONS TO HAVE ERICKSON REFRAIN FROM MAKING ANY CONTACT WITH HIM. SEE

G-0757

R. 315

DEPARTMENT OF VETERANS AFFAIRS                    PAGE:    3
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

Facility                                    Date/Time Printed
BANON, PA                                   OCT 27, 1999@14:08
:onated VA Form 10-1393

EMA REPORT OF CONTACTS.

DN TUESDAY, OCTOBER 19, 1999 AT 1100 HOURS I DID INTERVIEW LYNETTE BRADY.
SHE STATES THAT ERICKSON AND CHANDLER DID COME TO HER TO REPORT THIS
INCIDENT AND TO INFORM HER THAT THERE WAS NO HARM INTENDED AND TO ALSO
INFORM HER THAT JOHNSON MAY BE COMING TO SEE HER TO SEEK HER ADVICE OR FILE
A GRIEVANCE. BRADY STATES THAT JOHNSON DID COME TO HER, INFORMED HER THAT
HE HAD FILED A COMPLAINT THROUGH THE OFFICE OG RESOLUTION MANAGEMENT.
BRADY COULD NOT PROVIDE ME ANY FURTHER INFORMATION AND HAD NO FIRST HAND
KNOWLEDGE OF THE INCIDENT.

DN TUESDAY, OCTOBER 19, 1999 AT 1020 HOURS, I INTERVIEWED BARBARA YEICH IN
MY OFFICE IN ROOM 15, BLDG# 2. SHE STATES THAT ON OCTOBER 18TH, JOHNSON WAS
COVERING THE DUTIES ON HER UNIT. HE WAS TALKING WITH YEICH AT THE NURSING
AREA WHEN ERICKSON APPROACHED. SHE DID OBSERVE ERICKSON COME FACE TO FACE
WITH JOHNSON AND TELL HIM I WANT TO TALK TO YOU. SHE DID HEAR JOHNSON STATE
I DO NOT WANT TO TALK TO YOU AND ATTEMPT TO WALK AWAY. SHE DID OBSERVE
ERICKSON FOLLOW JOHNSON VERY CLOSELY, AT A CLOSE ENOUGH RANGE TO EITHER
TOUCH OR BE AGAINST JOHNSON. SHE OBSERVED JOHNSON FINALLY GO INTO THE
BATHROOM, HEARD THE BOLT CLOSE AND OBSERVED ERICKSON OUTSIDE THE DOOR AND
HOLLER ONE TIME, I WANT TO TALK TO YOU. AFTER RECEIVING NO ANSWER ERICKSON
LEFT THE NURSING STATION. SHE STATES THAT JOHNSON DID COME OUT AFTER A
SHORT TIME AND LEAVE THE WARD AREA. NEITHER EMPLOYEE MADE ANY COMMENTS TO
YEICH DURING THIS INSTANCE.

ON TUESDAY, OCTOBER 19TH, I SPOKE WITH RODNEY KISCADDEN, SUPERVISOR IN EMS,
THE ONLY INFORMATION HE COULD FURNISH IS THAT JOHNSON DID COME TO HIM ON
TWO OCCASSIONS CONCERNING THESE INCIDENTS. AFTER THE OCTOBER 18TH INCIDENT,
KISCADDEN SPOKE WITH ERICKSON AND TOLD HIM TO STAY AWAY FROM JOHNSON WHILE
ON DUTY. KISCADDEN DOES HAVE REPORT OF CONTACTS COMPLETED ON HIS
INTERVIEWS.

ON OCTOBER 19, 1999 AT 1235 HOURS I SPOKE WITH ERICKSON IN MY OFFICE
CONCERNING THESE INCIDENTS. ERICKSON STATES THAT DURING THE FIRST
CONVERSATION WHEN HE MADE THE STATEMENT TO JOHNSON, JOHNSON HAD LAUGHED
ABOUT THE INCIDENT AND DIT DID NOT SEEM TO BOTHER HIM. ERICKSON STATES HE
DID NOT MEAN ANYTHING DERAGATORY ABOUT JOHNSON, IT WAS ONLY SOMETHING HE
OVERHEARD OTHER EMPLOYEES SAYING ABOUT JOHNSON. WHEN ERICKSON APPROACHED
JOHNSON ON THE UNIT ON THE 18T, HE HAD COME DOWN FOR SOME BUFFING SPRAY AND
WHEN HE SAW JOHNSON HE WANTED TO CLEAR THE AIR THAT UNDER NO CIRCUMSTANCE
WAS HE TRYING TO INTIMADTE JOHNSON OR CAUSE HIM ANY CONCERN FOR HIS WELL
BEING. ERICKSON STATES THAT ON NUMEROUS OCCASSION JOHNSON, CHANDLER AND
ERICSKON ALONG WITH OTHER EMS EMPLOYEES JOKED CONCERNING DIFFERENT ITEMS.
ERICKSON ALSO FLATLY DENIES EVERY TOUCHING OR BUMPING JOHNSON ALTHOUH HE
DID ADMIT TO TRYING TO SEPAK WITH HIM.

G-0758

R. 316

DEPARTMENT OF VETERANS AFFAIRS
VA POLICE
UNIFORM OFFENSE REPORT
UOR# 99-10-19-0930

PAGE:    4

Date/Time Printed
OCT 27, 1999@14:08

Facility
:ANON, PA
:orated VA Form 10-1393

IN TUESDAY, OCTOBER 19, 1999 AT 1245 HOURS, I SPOKE WITH CHANDLER CONCERNING THESE INCIDENTS. CHANDLER WAS VERY UPSET THAT JOHNSON HAD IN HIS VERSION BLOWN THIS SITUATION OUT OF CONTEXT. CHANDLER STATES THAT WHEN HE AND ERICKSON WERE IN THE LOBBY, HE DID HEAR ERICKSON TELL JOHNSON WHAT HIS BROTHERS WERE SAYING AND OBSERVED JOHNSON LAUGH ABOUT IT. HE STATES THAT AT NO TIME DID JOHNSON ATTEMPT TO LEAVE THE AREA BECAUSE OF THE STATEMENT OR DID HE BECOME UPSET AT THAT TIME. HE STATES THAT HE FEELS THIS INCIDENT STEMS FROM JOHNSON NOT BEING AWARDED A MONETARY PERFORMANCE AWARD BECAUSE HE WAS OVERHEARD TO SAY WELL THE WHITE GUYS GOT ONE.   CHANDLER ALSO CORROBORATES THE REASON ERICKSON WENT TO THE 3RD FLOOR WAS TO GET A SPRAY BOTTLE USED IN WAXING.

NNIS R HERB    # 258
LLOW-UP INVESTIGATOR

G-0759

R-317

On our Abaf 3:00pm on 10/13/99 in Bld. 1 and floor lobby I was racially harassed by Eru Eerckiow.

As I was walking threw the lobby, I passed Louis Chandler heading for the freight elevator, I was now approaching Eru E. who was standing near the doors of the OR. Eru started in on me by saying this statment. "Hey Lewis do you want to hear what people are saying about you." I put up my left hand and said "NO!" "I don't want to hear it." I was about 5ft from him when I said that. He then called call for Louis C., by saying "Hey Lou, Hey Lou" "Listen, I going to tell Lewis what people are saying about him." He then put his arm and hand and in my path to slow my movment, _____ When he slow me down by blocking my path, he the said. "Lewis, people calling you a white guy with black skin." After hearing that statment, I went threw the doors leading to the freight elevator. I felt sick, I started to shake. This man has been harassing me since I been in EMS. I starting to

feel very fear-ful of losing my job. So I need
something done to stop this racial harassment.

Lewis W. Johnson
10/15/97

G-0761

R.319

**VA** Veterans Administration

# VOLUNTARY WITNESS STATEMENT

Statement of ___L. Chandler___, Date of Birth _____

and Social Security Number _____. Given on ___10-19-99___

to ___Officer SABOL___, at ___Police office.___

in reference to Uniform Offense Report Number ___99-10-19 @ 0930___

I heard Irv state that he heard that
someone said that he was "A white man
in black skin." This was not a personal opinion
against L. Johnson.

I have read each page of this statement consisting of _____ pages(s) and I certify that the information

given is true to the best of my knowledge.

**G-0762**

___Paula Chandler___
(Declarant) Signature

Date ___10-19-99___

(Witness) Signature

Date

R.320

**VA** Veterans Administration

# VOLUNTARY WITNESS STATEMENT

Statement of __YEICH, BARBARA__, Date of Birth __12/04/41__

and Social Security Number __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__. Given on __OCT. 19, 1999__

to __OFFICER SABOL__, at _____

in reference to Uniform Offense Report Number _____

On October 18, 1999 @ approx. 1025, I was sitting @ my desk on 1-3A. Lewis Johnson approached my desk to speak with me and at that time was approached by Irv Erickson who came up to the side of Lewis and said, "I want to talk to you". at that point Lewis said, "I don't have anything to say to you" and started to walk away from the desk with Irv following and the same statements were made again by both parties. Lewis turned to come down the hall with Irv following him and the same statements were made again by both parties. Lewis came to the opening at my desk with Irv following and both statements were made again. Lewis went into the bathroom and locked the door. Irv stood at the opposite end of my desk and said something to the effect — just because one of your brothers made a remark. and then he left.

I have read each page of this statement consisting of ____1____ pages(s) and I certify that the information

given is true to the best of my knowledge.

**G-0763**

_Barbara J. Yeich_
(Declarant) Signature

__10/19/99__
Date

_____
(Witness) Signature

_____
Date

R-321

page 1

**Department of Veterans Affairs**

## REPORT OF CONTACT -

*(NOTE: This form must be filled out in ink or on typewriter, as it becomes a permanent record in veterans' folders.)*

| VA OFFICE | IDENTIFICATION NOS. (C, XC, SS, XSS, V, K, etc.) |
|---|---|

LAST NAME - FIRST NAME - MIDDLE NAME OF VETERAN *(Type or print)*
Johnson Lewis

DATE OF CONTACT
10/18/99

ADDRESS OF VETERAN

TELEPHONE NO. OF VETERAN *(Include Area Code)*

PERSON CONTACTED
Erickson, Irvin

TYPE OF CONTACT *(Check)*
☒ PERSONAL  ☐ TELEPHONE

ADDRESS OF PERSON CONTACTED

TELEPHONE NO. OF PERSON CONTACTED *(Include Area Code)*

BRIEF STATEMENT OF INFORMATION REQUESTED AND GIVEN

On or about 10:25 am, 10/18/99 on ward 1-3A I was harassed by Irvin Erickson.

I was walking up the hall to my Hac closet when I was approach by Irvin Erickson. He said "Hey, Lewis I want to talk to you." I said to Irvin "I don't want to talk to you." I turned around to walk the other way and he followed me. Then he started to say as I walked pass the nurse's station. "Why don't you want to talk to me." After I passed the nurse station he caught up to me and bump me with his shoulder. saying "why don't you want to talk to me." I said "I just don't want to." So I change dirction to get him off my shoulder, but he stay on me, and kept repeating the same words, "why don't you want to talk to me. He continue to ride my

| DIVISION OR SECTION | EXECUTED BY *(Signature and title)* |
|---|---|

**G-0764**

R.322

VA FORM 119

EXISTING STOCK OF VA FORM 119, JUL 1977.

*U.S.GPO:1992-0-313-106/63725

PAGE 2

**Department of Veterans Affairs**

| REPORT OF CONTACT | VA OFFICE | IDENTIFICATION NOS. (C. XC. SS. XSS. V. K. etc.) |
|---|---|---|
| (NOTE: This form must be filled out in ink or on typewriter, as it becomes a permanent record in veterans' folders.) | | |

LAST NAME - FIRST NAME - MIDDLE NAME OF VETERAN (Type or print)
Johnson Lewis

| | DATE OF CONTACT |
|---|---|
| ADDRESS OF VETERAN | 10/18/99 |
| | TELEPHONE NO. OF VETERAN (Include Area Code) |

PERSON CONTACTED
Erickson, Irvin

TYPE OF CONTACT (Check)
☒ PERSONAL   ☐ TELEPHONE

ADDRESS OF PERSON CONTACTED

TELEPHONE NO. OF PERSON CONTACTED (Include Area Code)

BRIEF STATEMENT OF INFORMATION REQUESTED AND GIVEN

"Continue"

Shoulder until I reach the opening in the nursing station. I then kept quiet and went in the restroom and lock myself in. Barbra Ysich was sitting at the nursing station when all this was going on.

G-0765

R-323

| DIVISION OR SECTION | EXECUTED BY (Signature and title) |
|---|---|
| | Lewis N. Johnson  Housekeeping Aid |

**VA** Veterans Administration

## VOLUNTARY WITNESS STATEMENT

Statement of _Levin Erickson_ , Date of Birth _____

and Social Security Number _____. Given on _____

to _____, at _____

in reference to Uniform Offense Report Number _____

10-13-99 Lewis Johnson came down to
1-2B where Lous Chandler and I
were doing waxing. He had no reason to
be down there, so all three of us were
kidding around, and as he was leaving
I said to him what his own brother
say about him. I did not tell him that
as my point of view, only what his
own brothers say about him. I have
no ill feeling against Johnson. I do
not stalk him.

As far as 10-13-99 I aproached Mr
Johnson to explain what I said, as he
walked away from me we slightly
bumped into each other. No Mallace
was intended. I just wanted to explain
to him what was said.

I have read each page of this statement consisting of _____ pages(s) and I certify that the information

given is true to the best of my knowledge.

G-0766

_Levin Erickson_
(Declarant) Signature

_10-20-99_
Date

R.32A

_____
(Witness) Signature

_____
Date

# REPORT OF CONTACT

NOTE: This form must be filled out in ink
or on typewriter as it becomes a permanent
record in veterans' folders.

| VA OFFICE | IDENTIFICATION NOS. (C,XC,SS,XSS,V,K, etc.) |
|---|---|
| VA Medical Center<br>1700 South Lincoln Avenue<br>Lebanon, PA  17042 | |

| LAST NAME-FIRST NAME-MIDDLE NAME OF VETERAN (Type or print) | DATE OF CONTACT<br>October 18, 1999 |
|---|---|

| ADDRESS OF VETERAN | TELEPHONE NO. OF VETERAN |
|---|---|

| PERSON CONTACTED | TYPE OF CONTACT   (Check)<br><br>X  PERSONAL    ·  TELEPHONE |
|---|---|

| ADDRESS OF PERSON CONTACTED | TELEPHONE NO. OF PERSON CONTACTED |
|---|---|

BRIEF STATEMENT OF INFORMATION REQUESTED AND GIVEN

On October  18, 1999, I met with Environmental Management (EM) employee Irvin Erickson about separate harassment incidents occurring with EM employee Lewis Johnson.

Mr. Erickson told me that he did not originally make the statement "You are a white person in black skin," but only repeated that statement that was said about Mr. Johnson.

On the second incident, Mr. Erickson explained he wanted to talk to Mr. Johnson and Mr. Johnson was avoiding him and wouldn't talk to him.  They might have brushed shoulders during this incident, but Mr. Erickson would not concur this happened.

G-0767

| DIVISION OR SECTION<br><br>Operations Product Line/EM | EXECUTED BY (Signature and Title)<br>*Rodney Kiscadden*<br>RODNEY KISCADDEN<br>Acting Manager, Environmental Management |
|---|---|

R.325

Automated VA Form 119

DEA # _____

**EARL H. BRINSER, D.O.**
405 CUMBERLAND STREET
LEBANON, PA 17042
717-272-7321
PA Lic. No. OSX04430-L

NAME _____

ADDRESS _____ DATE _____

R̶

_(handwritten prescription)_

REFILL _____ TIMES PRN NR

SUBSTITUTION PERMISSIBLE _____ D.O.

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED,
THE PRESCRIBER MUST HANDWRITE BRAND NECESSARY OR
BRAND MEDICALLY NECESSARY IN THE SPACE BELOW.

01/10/97                                    01-K00946856

G-0768

R.326

DEA # _____

**EARL H. BRINSER, D.O.**
405 CUMBERLAND STREET
LEBANON, PA 17042
717-272-7321
PA LIC. NO. OS-04430-E

NAME _____

ADDRESS _____ DATE _____

B̶

SUBSTITUTION PERMISSIBLE _____ D.O.

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED,
THE PRESCRIBER MUST HANDWRITE BRAND NECESSARY OR
BRAND MEDICALLY NECESSARY IN THE SPACE BELOW.

REFILL _____ TIMES PRN NR

0V10'97                                    01-K00948656

**G-0769**

R.327

DEA # _____

**EARL H. BRINSER, D.O.**
405 CUMBERLAND STREET
LEBANON, PA 17042
717-272-7321
PA LIC. NO. OS-04430-L

NAME _____

ADDRESS _____ DATE _____

R

*Counseling Re*
*Stress, Strain*
*Fear, work Related*
*issues*

REFILL _____ TIMES PRN NR

SUBSTITUTION PERMISSIBLE _____ D.O.

IN ORDER FOR A BRAND NAME PRODUCT TO BE DISPENSED,
THE PRESCRIBER MUST HANDWRITE BRAND NECESSARY OR
BRAND MEDICALLY NECESSARY IN THE SPACE BELOW.

01/10/97 _____ 01-K00948656

**G-0770**

R. 328

# Philhaven

283 South Butler Road
P.O. Box 550
Mount Gretna, PA 17064
(717) 273-8871
(717) 270-2452 FAX

October 22, 1999

Veteran's Administration Medical Center
1700 South Lincoln Avenue
Lebanon, PA 17042

RE: Lewis Johnson

To Whom It May Concern:

Lewis Johnson was admitted to the Acute Partial Day Hospital Program at Philhaven on October 22, 1999. He will attend Monday through Friday, 9:00 a.m. to 3:00 p.m. During this time, he will be unable to report to work. As his discharge date approaches, you will be notified again, by letter, when he will be able to return to work.

If you have further questions, please feel free to call staff Monday through Friday, 8:00 a.m. to 4:30 p.m. at (717) 270-2405.

Thank you for your consideration of this client.

Sincerely,

Richard S. Pakola, M.D.
Staff Psychiatrist

efh

G-0771

R-329

*Behavioral Healthcare Services*

Attending Physician's Supplemental Report

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

OMB No. 1215-0103
Expires: 09-30-96

**For Instructions See Reverse Side**

| 1. Name of injured employee (Last, first, middle) | 2. OWCP File Number, if known |
|---|---|
| Johnson Lewis | |

| 3. Home mailing address (Include Zip code) | 4. Social Security Number |
|---|---|
| 1025 Harmony Hill Dr. Lebanon Pa. 17046 | 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 |

5. Date and hour of injury (Mo., day, year) *Felt continuous harrassment from co-worker & supervisor. 4/99 then began to experience no support position all employees are aware that done anything to correct it*

6. Period compensation is claimed as a result of pay loss (Mo., day, year)
From: 10/30/99   Through: Unknown

| 7. Date of most recent examination (Mo., day year) 11/5/99 | 8. Is employee's present condition due to the injury for which compensation is claimed? ☐ Yes ☑ No? *Condition is preexisting but aggravated by perceived harrassment at work* | 9. Is employee totally disabled for usual work? *both physically and mentally* ☑ Yes ☐ No |
|---|---|---|

| 10. Describe nature of present impairment | 11. State diagnosis | 11a. ICD-9 Code |
|---|---|---|
| Depressive D/O NOS Work related stressors | Depressive D/O NOS | DSM IV  3 1 1 |

12. What treatment is employee receiving and how often is it given?
Daily Acute Partial Program   Individual & Group
Medication   Therapy

| 13. What permanent effects, if any, are anticipated? Not Known | 14. Describe any concurrent disability employee has which is not related to this injury  None   G-0772 |
|---|---|

15. Will disability for regular work continue for 90 days or longer?
☐ Yes   ☐ No   Unknown
If no, approximately what date will employee be able to return to work? (Mo., day, year)   Unknown

16. If employee is able to resume regular work, has he or she been advised?   ☐ Yes   ☐ No
If Yes, show date employee was informed (Mo., day, year)

17. If employee is only partially disabled, show date he or she was able to perform some work and describe specific work restrictions. (i.e. limitations in stooping, bending, lifting, etc.)
*He should not work w/ same co-workers when he returns to work or there may be continuing harrassment causing crying, losing his temper, etc.*

18. If employee has been referred to another physician for consultation or treatment, give physician's name & address.
*will be advised to continue outpt. therapy upon discharge*

19. Recommendations and Prognosis
Richard S. Pakola, M.D.
283 So. Butler Rd.
Mt. Gretna, Pa. 17064

- He needs continued psychiatric treatment
- Return to work when planned should be gradual and should start in a different setting with different co-workers if possible.
- He is not ready to return to work at this t...

| 20. Address (Include Zip code) | 21. If you specialize, indicate specialty  Psychiatry |
|---|---|

22. Signature of Physician. I certify that the statements on the reverse apply to this report and are made a part hereof.
*Reviewed & partial Program nurse & therapist*
Richard S. Pakola MD

23. Date of Report (Mo., day, year)
11/5/99

**Public Burden Statement**

We estimate that it will take an average of 30 minutes to complete this collection of information, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding these estimates or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Office of IRM Policy, U.S. Department of Labor, Room N1301, 200 Constitution Avenue, N.W., Washington, D.C. 20210; and to the Office of Management and Budget, Paperwork Reduction Project (1215-0103), Washington, D.C. 20503.

**DO NOT SEND THE COMPLETED FORM TO EITHER OF THESE OFFICES**

R-330

Form CA-20a
Rev. June 1990

QUESTION #5

1).  Felt continuous harassment from co-worker since August,
1997 when he began his current position and felt supervisors
have not done anything to correct it.

2).  He felt a co-worker was assaultive on 10/18/1999, both
physically and verbally.

QUESTION #8

Condition is preexisting, but aggravated by perceived
harassment.

QUESTION #17

He should not work with same co-worker when he returns to
work or there may be risk for his becoming angry, losing his
temper, etc.

QUESTION #19

-  He needs continued psychiatric treatment.

-  Return to work, when planned, should be gradual and should
start in a different setting with different co-workers, if
possible.

-  He is not ready to return to work at this time.

G-0773

R.331

Attending Physician's Supplemental Report

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| | OMB No. 1215-0103 |
|---|---|
| **For Instructions See Reverse Side** | Expires: 09-30-96 |

**1. Name of injured employee (Last, first, middle)**
Johnson, Lewis W.

**2. OWCP File Number, if known**
03-0246931

**3. Home mailing address (Include Zip code)**
1025 Harmony Hill Dr.
Lebanon, PA 17046

**4. Social Security Number**
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

**5. Date and hour of injury**
(Mo., day, year)
Reports harassment since at his last position, feels "assaulted" by a co-worker
☐ AM
☐ PM

**6. Period compensation is claimed as a result of pay loss (Mo., day, year)**
From: 10/20/99    Through: Unknown duration

**7. Date of most recent examination (Mo., day, year)**
12/7/99

**8. Is employee's present condition due to the injury for which compensation is claimed?**
☐ Yes    ☐ No
Pre-existing but aggravated

**9. Is employee totally disabled for usual work?**
☑ Yes    ☐ No

**10. Describe nature of present impairment**
Depression
anger
fear of loss of control and attacking co-worker if he perceives harassment.

**11. State diagnosis**
DSM IV —
#319 Depressive disorder NOS
— Impulse Control Disorder NOS

**11a. ICD-9 Code**
3 1 1

**12. What treatment is employee receiving and how often is it given?**
Psychiatric medication management appointments currently weekly.

**13. What permanent effects, if any, are anticipated?**
N/A

**14. Describe any concurrent disability employee has which is not related to this injury**
N/A

**15. Will disability for regular work continue for 90 days or longer?**
☑ Yes    ☐ No
If no, approximately what date will employee be able to return to work? (Mo., day, year)
Unknown

**16. If employee is able to resume regular work, has he or she been advised?**
☐ Yes    ☑ No
If Yes, show date employee was informed
(Mo., day, year)

**17. If employee is only partially disabled, show date he or she was able to perform some work and describe specific work restrictions. (i.e. limitations in stooping, bending, lifting, etc.)**

**18. If employee has been referred to another physician for consultation or treatment, give physician's name & address.**

**19. Recommendations and Prognosis**
Prognosis is poor for return to work at the V.A. facility
See item #10

G-0774

**20. Address (Include Zip code)**
203 S. Butler Rd
Mt Gretna PA 17064

**21. If you specialize, indicate specialty**
PSYCHIATRY

**22. Signature of Physician: I certify that the statements on the reverse apply to this report and are made a part hereof.**

**23. Date of Report (Mo., day, year)**
12/7/99

R-332

**Public Burden Statement**

We estimate that it will take an average of 30 minutes to complete this collection of information, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding these estimates or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Office of IRM Policy, U.S. Department of Labor, Room N1301, 200 Constitution Avenue, N.W., Washington, D.C. 20210; and to the Office of Management and Budget, Paperwork Reduction Project (1215-0103), Washington, D.C. 20503.

**DO NOT SEND THE COMPLETED FORM TO EITHER OF THESE OFFICES**

Form CA-20a
Rev. June 199

Attending Physician's Supplemental Report

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs



**For Instructions See Reverse Side**

|  | OMB No. 1215-0103 Expires: 09-30-96 |
|---|---|

1. Name of injured employee (Last, first, middle)
Johnson Lewis W.

2. OWCP File Number, if known
030246931

3. Home mailing address (Include Zip code)
1025 Harmony Hill Dr. Lebanon, PA

4. Social Security Number
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

5. Date and hour of injury (reports when emerging 5/22ted)
(Mo., day, year) 10/15/99
☐ AM
☐ PM
co-worker made a remark
while he felt was "racial & Demeaning."

6. Period compensation is claimed as a result of pay loss (Mo., day, year)
From: 10/20    Through: Present

7. Date of most recent examination (Mo., day, year)
12/21/99

8. Is employee's present condition due to the injury for which compensation is claimed?
☑ Yes    ☐ No

9. Is employee totally disabled for usual work?
☑ Yes    ☐ No

10. Describe nature of present impairment
depression, anger, fear of loss of control over anger directed at co-workers

11. State diagnosis
DSM4 #311 Depressive disorder NOS
Impulse control disorder NOS

11a. ICD-9 Code
DSMIV #5
311
313.3

12. What treatment is employee receiving and how often is it given?
Psychiatric medication management
Individual appointments for counseling q 2 wks

13. What permanent effects, if any, are anticipated?
N.A.

14. Describe any concurrent disability employee has which is not related to this injury
N.A.

15. Will disability for regular work continue for 90 days or longer?
☑ Yes    ☐ No
If no, approximately what date will employee be able to return to work? (Mo., day, year) Unknown

16. If employee is able to resume regular work, has he or she been advised?    ☐ Yes    ☑ No
If Yes, show date employee was informed (Mo., day, year)

17. If employee is only partially disabled, show date he or she was able to perform some work and describe specific work restrictions. (i.e. limitations in stooping, bending, lifting, etc.)

18. If employee has been referred to another physician for consultation or treatment, give physician's name & address.

19. Recommendations and Prognosis
Prognosis poor for return to work at the Lebanon V.A. Facility

G-0775

20. Address (Include Zip code)
283 S. Butler Rd
Mt Gretna PA 17064

21. If you specialize, indicate specialty
PSYCHIATRY

22. Signature of Physician    I certify that the statements on the reverse apply to this report and are made a part hereof.
Richard J Phillips ?

23. Date of Report (Mo., day, year)
12/21/99

R-333

**Public Burden Statement**

We estimate that it will take an average of 30 minutes to complete this collection of information, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding these estimates or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Office of IRM Policy, U.S. Department of Labor, Room N1301, 200 Constitution Avenue, N.W., Washington, D.C. 20210; and to the Office of Management and Budget, Paperwork Reduction Project (1215-0103), Washington, D.C. 20503.

**DO NOT SEND THE COMPLETED FORM TO EITHER OF THESE OFFICES**

Form CA-20a

Claim for Compensation
On Account of Traumatic Injury
or Occupational Disease

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs



**Employee Statement**

| 1. Name of Employee    Last | First | Middle | 2. OWCP File Number |
|---|---|---|---|
| Johnson    Lewis   W. | | | 030246931 |

| 3. Social Security Number | 4. Period of wage loss for which compensation is claimed | Hours | 5. Is this a claim for a schedule award? |
|---|---|---|---|
| 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 | From mo. 12 day 1 yr. 99   Thru mo. 12 day 18 yr. 99 unknown | | ☐ Yes   ☑ No |

| 6. Has any pay been received for period shown in item 4? ☐ Yes ☑ No | 7. If yes, amount | From mo. day yr.   Thru mo. day yr. |
|---|---|---|

8. Complete this item if you worked during the period shown in item 6. Attach a separate sheet if needed.

| a. Salaried Employment, Dates & Hours Worked | Pay Rate (Per hour, day or week) | Total Amount Earned | Type Work Performed | Name & Address of Employer |
|---|---|---|---|---|
| | | | | |

| b. Commission and Self-Employment. Show all activities, whether or not income resulted from your efforts. Dates & Hours Worked | Name and Address of Business | Self-Employed ☐   Commission ☐ | Type of Activity Performed | Income Derived (Attach Explanation if Needed) |
|---|---|---|---|---|
| | | | | |

| 9. Was claim made against 3rd party? ☐ Yes ☑ No | 10. Name of 3rd party or insurance carrier |
|---|---|

| 11. Has the claim been settled? Give amount recovered. | Address |
|---|---|
| | City          State          ZIP |

| 12. Have you ever applied for or received benefits from the Veterans Administration based on disability incurred due to willful serving in the Armed Forces of the United States? ☐ Yes ☑ No   If Yes, furnish > | a. Claim number | b. Address of VA office where claim is filed | c. Nature of disability and monthly payment |
|---|---|---|---|

| 13. Have you applied for or received an annuity under the U.S. Civil Service Retirement Act or any other Federal Retirement or Disability Law? ☐ Yes ☑ No   If Yes, furnish > | a. Claim number | b. Date annuity began  mo. day yr. | c. Amount of monthly payment  $ |
|---|---|---|---|

**Dependents**

14. List your dependents

| Name | Date of Birth mo. day yr. | Relationship | Living with you? (yes/no) | Mailing Address, if different from your own |
|---|---|---|---|---|
| Richard Wilson | 11 2 79 | Step-Son | Yes | |
| Rachel Wilson | 3 20 84 | Step Daughter | Yes | G-0777 |
| Maya Johnson | 3 2 96 | Daughter | Yes | |

| 15. Support Information for above dependents  Are you making support payments for a dependent shown above? ☐ Yes ☑ No | 16. Were support payments ordered by a court?  If so, attach copy of court order. ☐ Yes ☑ No |
|---|---|

| 17. If yes, support payments are made to: Last   First   Middle | 18. Amount  | Per |
|---|---|---|
| Street          City          State          ZIP | | |

**Signature of Employee**

19. I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States, said injury not being due to willful misconduct on my part or to my intention to bring about the injury or death of myself or another, or to my intoxication. I have been disabled because of this injury and have not refused or failed to perform any work I was able to do during the period for which compensation is claimed, and every statement above is true to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both.

| Employee's signature   Lewis W. Johnson | Date (Mo., day, year)  12-7-99 | R 334 |
|---|---|---|

| 20. Employee's home mailing address (Include Zip Code)  Street 1025 Harmony Hill Dr. | City  Lebanon | State PA | ZIP 17042 |
|---|---|---|---|

Form CA-7
Rev. Sept 1991

## Statement of Official Superior

**21. Pay Rate As Of:**

| | a. Base Pay | b. Subsistence | c. Quarters | d. Other (Specify) |
|---|---|---|---|---|
| Date of Injury | $ 10.66 per hour | $ per | $ per | $ per |
| Date Employee Stopped Work | $ 10.66 per hour | $ per | $ per | $ per |

**22. If employee received additional pay, identify type and show amount**

☐ Premium Pay | per | ☐ Night Pay | per |

☐ Sunday Pay | per | ☐ Other (Identify) | per |

**23. Show work schedule for week pay stopped**
☐ Sun ☒ Mon ☒ Tue ☒ Wed ☒ Thu ☒ Fri ☐ Sat

**24. Did employee work in position for 11 months prior to injury?** ☒ Yes ☐ No

**25. If not, would position have afforded employment for 11 months but for the injury?** ☐ Yes ☐ No *N/A*

**26. Total length of federal civilian service** Yrs. Mos. *6 | 10*

## Health Benefits and Optional Life Insurance

**27. Was the employee enrolled in a Health Benefits Program at first opportunity, or for 5 years prior to the date pay stopped?** ☐ Yes ☒ No

If yes, give code

**28. Was the employee enrolled in an Optional Life Insurance Program on the date pay stopped?** ☒ Yes ☐ No

If yes, was employee enrolled in Option ☐ A ☒ B ☒ C

Ending date of the pay period in which HBS / OLI Deductions were last made? mo. day yr. *12 | 4 | 99*

If Option B, show number of multiples *X3*

## Leave and Continuation of Pay

**29. Type and inclusive dates employee received leave for any part of period since stopping work. Specify type of leave, SICK, ANNUAL, or OTHER**

| Type of Leave | From mo. day yr. | Thru mo. day yr. | Type of Leave | From mo. day yr. | Thru mo. day yr. |
|---|---|---|---|---|---|
| Type of Leave | From | Thru | Type of Leave | From | Thru |

**30. If employee received continuation of pay (COP), give dates.**

*Employee HAS NOT received COP due to controversion of claim.*

**31. Date all pay stopped** mo. day yr. *11 26 99* Hour *6 00* : ☐ AM ☐ PM

**32. Period for which compensation is claimed** From mo. day yr. *12 4 99* Thru mo. day yr. *12 18 99*

## Return to Duty

**33. Date returned to work** mo. day yr. *N/A* Hour : ☐ AM ☐ PM

**34. Work schedule when returned to work**
☐ Sun ☐ Mon ☐ Tue ☐ Wed ☐ Thu ☐ Fri ☐ Sat

**35. Did the work assignment change because of disability resulting from the injury? Describe.** ☐ Yes ☐ No

**36. Pay rate on return to work**

G-0778

$ | Per

## Certification

**37.** A supervisor who knowingly certifies to any false statement, misrepresentation, or concealment of fact, with respect to this claim may also be subject to appropriate felony criminal prosecution.

I certify that the information given above and that furnished by the employee on the reverse of this form is true to the best of my knowledge with the following exception:

Signature of supervisor *Joseph R. Stuckey Jr.* Date *8 Dec 99*

Supervisor's title *PERSONNEL MANAGEMENT SPECIALIST*

Agency name & address *DEPT. OF VETERANS AFFAIRS VA MEDICAL CENTER 1700 SOUTH LINCOLN AVE. LEBANON PA 17042* Office phone *272-6621 x 4060*

**38. If OWCP needs specific pay information the person who should be contacted is** ☐ Supervisor ☐ Other: Name *SAME AS ABOVE* Phone

R-335



**Claim for Continuing Compensation on Account of Disability**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

**Statement of Injured Employee – See Instructions on Reverse Side**

1. Name of Injured Employee (Last, first, middle)

   Johnson Lewis William

2. OWCP File Number, if known

   030246931

3. Home Mailing Address (include zip code)

   1025 Harmony Drive
   Lebanon PA 97046

4. Social Security Number

   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

5. Date and Hour of Injury (Mo., day, year)

   10-18-99    10:20  ☑ AM   ☐ PM

6. Period Compensation Is Claimed As a Result of Pay Loss (Mo., day, year) If pay loss was intermittent attach separate sheet showing dates and hours of pay loss.

   From: 12-19-99    Through: 1-1-00

7. Have you received any leave pay during the period shown in item 6?

   ☐ Yes   ☑ No   Show Inclusive Dates.   From:    Through:

   If leave use was intermittent, attach separate sheet showing dates and hours used.

8. Do you wish to repurchase leave?

   ☑ Yes   ☐ No

9. Complete this item if you worked anywhere during the period shown in item 6. Attach a separate sheet if needed.

   a. Salaried Employment.

   | Dates & Hours Worked | Pay Rate (Per hour, day or week) | Total Amount Earned | Type Work Performed | Name & Address of Employer |
   |---|---|---|---|---|
   | | | | | |

   b. Commission and Self-Employment. Show all activities, whether or not income resulted from your efforts.

   | Dates & Hours Worked | Name and Address of Business | Self-Employed ☐   Commission ☐ | Type of Activity Performed | Income Derived (Attach Explanation If Needed) |
   |---|---|---|---|---|
   | | | | | |

10. If you were only partially disabled and did not work, state reason for not working.

    G-0779

11. If, since filing your initial claim for compensation, you have applied for or received VA Benefits based on Military Service for the United States, give the following: N/A

    Claim No.    Date of Disability and Monthly Payment    Name and Address of Office Where Claim Is Filed

12. If, since filing your initial claim for compensation, you have applied for or received an annuity under the Civil Service Retirement Act or other Federal retirement or disability law, give the following: N/A

    Claim No.    Amount of Monthly Payment    Name and Address of Office Where Claim Is Filed

13. SIGNATURE OF EMPLOYEE OR PERSON ACTING ON EMPLOYEE'S BEHALF.

    Lewis W. Johnson

    Any person who knowingly makes any false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by the FECA or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment or both.

14. Date (Mo., day, year)

    12-30-99

    R-34

    Form CA-8

**Statement of Official Superior**

| | |
|---|---|
| 15. If employee has returned to work, show date and hour (Mo., day, year) ☐ AM<br><br>HAS NOT RETURNED ☐ PM | 16. Show employee's work week on return to duty, if other than Monday thru Friday<br><br>S  M  T  W  T  F  S |

| | |
|---|---|
| 17. Has employee received any pay for work, leave, subsistence, quarters or other remuneration from your agency during the period shown in item 6 on the reverse side?<br><br>☐ Yes  ☑ No | 18. If answer to item 17 is Yes, show:<br><br>Amount: $<br><br>Type of Payment:<br><br>Period: From: _____ Through: _____ |

19. If there has been any change in employee's health benefit enrollment and/or optional insurance since previous claim for compensation was submitted, please explain. (i.e. change of plan or option; if additional deductions have been made by the agency, show amount and period.)

20. Remarks

*Employee remains off duty for this period of compensation of 12-19-99 thru 1-1-00.*

21. A supervisor who knowingly certifies to any false statement misrepresentation, concealment of fact, etc., in respect to this claim may also be subject to appropriate felony criminal prosecution.

I certify that the information given above and that furnished by the employee on the reverse of this form is true to the best of my knowledge with the following exception:

**G-0780**

| 22. Signature of Official Superior | 23. Title | 24. Date (mo., day, year) |
|---|---|---|
| *Joseph R Stuckey Jr.* | Personnel Management Specialist | 12-21-99 |

**Instructions for Injured Employee**

a. Items 1 through 14 on the reverse side should be completed by the injured employee or by someone acting on the employee's behalf. The form should then be given to the official superior.

b. The injured employee should file Form CA-8 each two weeks during the period of disability unless otherwise notified by OWCP. Forms may be obtained from OWCP or the employing agency.

c. Employees are advised that fraudulent claims are punishable by a fine of not more than $10,000, or imprisonment for not more than five years, or both.

d. The employee is responsible for submitting, or arranging for the submission of medical evidence in support of this claim. The CA-20a is attached to form CA-8 for this purpose. The employee should complete items 1 - 6 on form CA-20a. The attending physician should complete items 7 through 23. The address of the appropriate OWCP office should be entered in item 3 on the reverse of the CA-20a.

**Instructions for Official Superior**

a. The official superior must complete items 15 through 24 and forward the form, and any accompanying medical report, to the appropriate OWCP office, within 5 working days of receipt from the employee.

If additonal space is required for any reply, a separate sheet of paper may be used, numbering the answers to correspond with items on the form.

**Note: Failure to submit this form properly completed with supporting medical evidence will delay payment of compensation.**

R-337

07/14/00  14:30 FAX 215 596 4265          OWCP-RO                                    ☑001

**U.S. DEPARTMENT OF LABOR**

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
170 S INDEPENDENCE MALL WEST
PHILADELPHIA PA 19106
Phone: (215) 861-5481

July 7, 2000

File Number:   030248172
Date of Injury: 10/20/1999
Employee:     Lewis Johnson

Lewis W. Johnson
1025 Harmony Hill Dr
Lebanon, PA 17046

Dear Mr. Johnson:

Your claim for compensation benefits has been disallowed for the reason stated in the enclosed copy of the compensation order. The decision was based on all evidence of record and on the assumption that all available evidence has been submitted. If you disagree with the decision, you may follow any one of the courses of action outlined on the attached appeal rights.

Further medical treatment at OWCP expense is not authorized and prior authorization, if any, is hereby terminated.

Under Office of Personnel Management (OPM) regulations, an employee who recovers from a compensable injury within one year is entitled to mandatory job restoration and is expected to apply for work with the employing Federal agency immediately upon recovery. Employees who recover more than one year after the injury are entitled to priority consideration, provided they apply for reemployment within 30 days after compensation ceases. You may obtain further information concerning restoration rights from your agency or any OPM area office (if you are a postal employee, contact your local personnel office). You should also contact your former employing agency or OPM for advice on continuing any health insurance and/or life insurance coverage.

Sincerely,

*William Broadwater*

William Broadwater
Sr. Claims Examiner

William Dumas
P O Box 1386
Lebanon, PA 17042

VETERANS ADMINISTRATION
LEBANON VETERANS HOSPITAL
VA MEDICAL CENTER
LEBANON, PA 17042

Enclosures: Compensation Order with Appeal Rights
Memorandum to the Director

G-0548

R-338

## FEDERAL EMPLOYEES' COMPENSATION ACT APPEAL RIGHTS

READ THIS NOTICE CAREFULLY AND SPECIFY CLEARLY WHICH PROCEDURE YOU WISH TO REQUEST: HEARING (WRITTEN OR ORAL); RECONSIDERATION; OR APPEALS BOARD REVIEW. You may not request two forms of appeal at the same time. Be sure to send your request to the right address.

HEARING: If your injury occurred on or after July 4, 1966 and you have not requested reconsideration, as described below, you may request an oral hearing before an OWCP representative. Such a request must be made in writing, within 30 days after the date of this decision, as determined by the postmark of your letter. At an oral hearing you will be given the opportunity to present oral testimony and written evidence in further support of your claim. The hearing will be informal and will be held at a location in your area. You may be represented at the hearing by any person authorized by you in writing.

If your injury occurred on or after July 4, 1966, and you have not requested reconsideration, you may instead request an examination of the written record by a hearing representative appointed by the Director. This examination must be requested within 30 days of the date of this decision. You will not be asked to attend or give oral testimony, but you may submit additional written evidence. You will have this review instead of an oral hearing. Any additional written evidence you want to submit must be sent with your request for review.

To protect your right to a hearing, the request for oral hearing or review of the written record must be sent to the Branch of Hearings and Review, Office of Workers' Compensation Programs, P. O. Box 37117, Washington, D. C. 20013-7117. Any request for a hearing (written or oral) must be made before any request for reconsideration or appeal of the hearing District Office (5 U.S.C. 8124(b)(1)). You will have the right to request reconsideration or appeal of the hearing representative's decision if you disagree with it.

RECONSIDERATION: If you have additional evidence which you believe is pertinent, you may request, in writing, that OWCP reconsider this decision. Such a request must be made within one year of the date of the decision, clearly state the grounds upon which reconsideration is being requested, and be accompanied by relevant evidence not previously submitted, such as medical reports or affidavits, or a legal argument not previously made. Your request for reconsideration and the new evidence you are submitting should be sent to the District Office at the address which appears on the accompanying letter. In order to ensure that you receive an independent evaluation of the evidence, your case will be reconsidered by persons other than those who made this determination.

APPEAL: If you believe that all available evidence has been submitted, you have the right to appeal to the Employees' Compensation Appeals Board, 200 Constitution Ave., N.W., Room N-2609, Washington, D. C. 20210. If you should request a hearing or reconsideration by the Office of Workers' Compensation Programs as indicated above, the 90 day period within which you may request review by the Appeals Board will run from the date of any later decision by the OWCP. For good cause shown, the Appeals Board may waive the failure to file within 90 days if application is made within one year from the date of the decision being appealed.

G-0549

R.339

**U.S. DEPARTMENT OF LABOR**      Employment Standards Administration
Office of Workers' Compensation
3535 Market St.
Philadelphia, Pennsylvania 19104

In the matter of the claim for compensation
under the Federal Employees' Compensation
Act of:

                                                    COMPENSATION ORDER

                                                    REJECTION OF CLAIM

Johnson, Lewis                                          A03-248172

Employed by: Veterans Administration
             Lebanon, PA

        Such investigation in respect to the above entitled claim
having been made as is considered necessary, and after due
consideration of such claim and reports of record this Office
makes the following:

                              FINDINGS OF FACT

1.  The above-named Federal employee filed a timely claim for
    compensation for an injury of 10/20/99.

2.  The Memorandum to the Director dated 006/27/00 is made a part
    thereof by reference.

Upon the foregoing findings of fact, it is ORDERED that this claim
for compensation be and the same is hereby DENIED for the reason
that the evidence does not support that the injury occurred in the
performance of duty.

            Given under my hand at Philadelphia,

            Pennsylvania this 7th day of July, 2000

            By Order of the Director

            By:   *William Broadwater*
                  SENIOR CLAIMS EXAMINER

**G-0550**

R.340

07/14/00   14:32 FAX 215 596 ▮▮5        OWCP-RO                                    ☒004

Memorandum to the Director

A03-248172
Johnson, Lewis

The question for determination is whether or not the injury occurred in the performance of duty.

A timely claim for compensation was filed by the claimant, a present or former employee of the Veterans' Administration in Lebanon, PA.

The claimant filed a CA-2, Notice of Occupational Illness for depression that he related to employment factors. In addition to the CA-2, the claimant filed a statement regarding his claim. Following development of the claim, the agency submitted statements of the events. The claimant mentioned events in 1995, but these do not appear to bear any relationship to the current claim.

The following allegations were noted by the claimant and the agency, which form the basis of this claim.

The following statements have been determined to be factually correct and **not considered to be in the performance of duty.**

1. Irwin Erickson approached the claimant on several occasions, and asked the claimant if he wanted to know what people were saying about him. Mr. Erickson even bumped into the claimant to get him to answer his questions. The statement that was being made by other employees was that the claimant was a white guy in black skin.
2. The claimant filed a police report on 10/19/99 when Mr Erickson showed up in his work station
3. On 10/20/99 the claimant was assigned to work in the same area as Mr. Erickson. The claimant began to cry and was advised to go home on sick leave. Prior to going home, the claimant asked to speak to the Union official and expressed that he was being forced to work in the same location as Mr. Erickson. Management reassured the Union official that Mr. Erickson would not bother the claimant.
4. The claimant was escorted to Building One by a Police Officer from the VA and the Union Official. As the Police Officer and the Union Official were about to leave, the claimant was told that Mr. Erickson would be coming to remove furniture. The claimant began to shake and asked the two men not to leave. The Union official made a phone call and asked that the claimant accompany him to Building #2., where they were met by officials, and again the claimant was reassured that he would not be bothered by Mr. Erickson, and that he could be reassigned to another building or go home on sick leave and upon his return he should meet with Mr. Erickson, talk things over, shake hands and make up.
5. The claimant did not receive an award that was given to his team members; claimant viewed this act as a prejudicial one and previously, the claimant did not receive a position in the EM service, but the claimant has not submitted any evidence to support error or abuse on the part of the employing establishment. Therefore, the claimant's perception or reaction to an administrative matter cannot be viewed as compensable. (further explanation of this issue will be mentioned later in this writing).

**The following statements have not been accepted as factually correct**

1. That the claimant saw Mr. Erickson laughing loudly and in a ridiculous manner
2. Mr. Erickson had something in his hand that appeared threatening
3. That Management purposely delayed filing his claim
4. That he was ridiculed when he asked to help the other housekeeping aides and no action was taken by management and that reprisal was taking place due to his filing the EEO complaint.
5. That the claimant was not allowed to view all of his "OWCP" file that was kept by management

The claimant filed his claim shortly after he did not receive one of the monetary awards that were given to his team members, which he felt, was racially motivated. The claimant is frustrated by his perception that he is being discriminated against. This is evidenced by his seeking help from two fact finding bodies, the EEOC, the Union (AFGE Local 1966) and the filing of form #119, Point of Contact with the Office of Veterans Affairs. The result of the Point of Contact was stated in a letter dated 11/17/99, signed by the Acting Manager, Environmental Management, to the

G-0551

R.341

claimant that the issues were addressed concerning events between Mr. Erickson and the claimant and the appropriate action was taken to ensure that it was not repeated, and that they were confident that the claimant could return to work without any concerns. As pertaining to the grievance filed for not being selected for a job in EM Service, the result of the grievance filed was that after performing an audit on the claimant's behalf, there was no discrepancy in the review or selection of the employee who was chosen for the position.
The results of the EEOC complaint has not been submitted.

The employing agency has submitted evidence that they have dealt with the situation between Mr. Erickson and the claimant sufficiently. Mr. Erickson has been advised to stay away from Mr. Erickson and the claimant's workstation has been changed so that he does not have to come in contact with Mr. Erickson. Mr. Erickson contends that he did not make the statement himself, he was just repeating what he had heard the other black workers say about the claimant. Mr. Erickson has stated that he has no ill feelings towards the claimant.

The Board has held generally, an employee's emotional reaction to an administrative or personnel matter is not covered under the FECA. But error or abuse by the employing establishment in what would otherwise be an administrative or personnel matter, or evidence that the employing establishment acted unreasonably in the administration of a personnel matter, may afford coverage. Anthony A. Zarcone, 44 ECAB (Docket No. 92-1406, issued June 9, 1993); Margreate Lublin, 44 ECAB (Docket No. 92-1883, issued September 9, 1993).

Also, the Board has held that frustration at not being promoted is not in the performance of duty. Reaction was not due to the claimant's regularly or specially assigned duties but was self-generated. ( Raymond Cordova Dkt 80-1734, 01/08/82

While the claimant believes the other employee (s) and the Employing Agency have harassed him, he has not offered any evidence to support his allegations. The employees have stated that when Mr. Erickson told the employee about what was being said about him, the claimant laughed and it was thought that the issue had ended, until the claimant made the allegations of being racially harassed. The claimant has not established any factual evidence that occurred in the performance of duty; rather, the claimant's claim is based on his perception that his peers racially harassed him. No evidence has been submitted by the claimant identifying the actual persons who made the statement that made the claimant so upset.

The Board has also held, "as the record did not establish that harassment or retaliation actually occurred, appellant failed to establish that harassment or retaliation is a compensable factor of employment. Michael Thomas Plante, 44 ECAB (Docket No. 92-820, issued February 23, 1993).

Lastly, the claimant has not submitted any evidence to support that any of the events arose out of and in the course of the employment; he has only submitted his allegations and perceptions of harassment that have not been proven to be in the performance of duty.

Recommendation: That a compensation order be issued denying the compensation benefits, based on the fact that the injury did not occur in the performance of duty.

*Rosilyn B. Harris*
Rosilyn B. Harris
Claims Examiner
06/27/00

G-0552

R.342

**U.S. Department of Labor**

Employment Standards Administration
Office of Workers' Compensation Programs
Division of Federal Employees' Compensation
Washington, D.C. 20210



File Number:

January 31, 2001                    (202) 693-0045

                                    File Number: 03-0248172

                                    Reply to: POST OFFICE BOX 37117
                                              WASHINGTON  D C  20013-7117
                                              Telephone:  (202) 693-0045
                                              Fax: (202) 693-1386

Enclosed is a copy of the transcript of the hearing which was held in connection with the above-captioned Federal Employees' Compensation Claim.  The employee's name, address, and case file number are contained in the transcript, as well as the name and address of the designated representative, if any.

While the employing agency is not a party to this hearing, it has an interest in the outcome and frequently possesses information pertinent to the issues addressed. By copy of this letter, therefore, a copy of the transcript has been provided to the employing agency in accordance with 20 CFR 10.617.  The employer is reminded that the contents of this document are <u>confidential</u> in nature and should be handled accordingly.

The employing agency will be allowed 20 calendar days (20 CFR 10.617(e)) from the date of this letter to submit comments or additional material for inclusion in the record and study by the Hearing Representative.  Any comments or additional material the agency chooses to submit for consideration should be forwarded to the Hearing Representative at the address found at the top of this letter.

Any such submission to the Hearing Representative should concurrently be forwarded to the designated representative or, in the absence of a representative, to the claimant, and the agency correspondence to the Hearing Representative should indicate that it has complied with this requirement.  Comments and/or evidence must be received within the 20-day regulatory limitation.

Participants at the hearing should carefully read the transcript.  Any significant transcription errors (such as omissions, misattribution or missing portions) should be noted and corrections referencing page and line number should be returned to this office within 20 days of the date of this correspondence.  It is not necessary to return the entire transcript.  If no significant errors are found, no further action is necessary.

ROBERT D. RAHMES
Hearing Representative  ext 30956

COPY OF TRANSCRIPT MAILED THIS DATE TO THE FOLLOWING PARTIES:

          ATTORNEY OF RECORD:_____
          CLAIMANT:_____
          EMPLOYING AGENCY:_____

G-0507    R.343

UNITED STATES DEPARTMENT OF LABOR

OFFICE OF WORKERS' COMPENSATION PROGRAMS

FEDERAL EMPLOYEES' COMPENSATION ACT

File No. 03-0248172

Claimant:            Lewis W. Johnson
                     1025 Harmony Hill Drive
                     Lebanon, PA  17046


Representative:      Pro se

Employed by:         Department of Veterans Affairs
                     Lebanon VA Medical Center
                     Personnel Services
                     Lebanon, PA  17042




                           ***

                 **TRANSCRIPT OF PROCEEDINGS**



HEARING REP:         ROBERT D. RAHMES

DATE:                January 24, 2001

PLACE:               U.S. Department of Labor
                     6th & Walnut Streets
                     Room C, Suite 690 West
                     Philadelphia, PA  19106

TIME:                2:03 p.m.

REPORTED BY:         Ralph Keffer

                     York Stenographic Services


**G-0509**

2

1                          INDEX TO WITNESSES

2

3                              DIRECT          Hearing Rep.

4

5

6      Lewis W. Johnson              4

7

8

9                              EXHIBITS

10                                        MARKED      ADMITTED

11     [None]

12

**G-0510**

York Stenographic Services, Inc.
34 North George St., York, PA 17401 - (717) 854-0077

R.345

3

1           P R O C E E D I N G S

2                   * * *

3   HEARING REPRESENTATIVE:

4           Today is January 24, 2001.  The time is 2:03

5           p.m.  This is a hearing being held in

6           connection with the claim of Lewis Johnson for

7           benefits under the Federal Employees'

8           Compensation Act.  Present today as observers

9           for the agency are Joe Stuckey and Rodney

10          Kiscadden.  The Claimant was employed as a

11          housekeeping aide with the Department of

12          Veterans Affairs on December 30, 1999.  On

13          that date, he filed Notice of Occupational

14          Disease and Claim for Compensation, contending

15          that he had sustained an emotional condition

16          which he attributed to his employment.  By a

17          Decision dated July 7, 2000, however, the

18          Office rejected the claim on the grounds that

19          the evidence of record did not establish that

20          the claimed emotional condition arose out of

21          the performance of duty.  Mr. Johnson

22          disagreed with that Decision and requested a

23          hearing before a representative of the Office

24          of Workers' Compensation Programs.  Therefore,

25          the issue at today's hearing is whether the

G-0511      R.346

4

1     Claimant sustained an emotional condition or

2     disability arising out of factors of his

3     federal employment.  Mr. Johnson, generally

4     speaking, is that your understanding of what

5     we are here to talk about today?

6 MR. JOHNSON:

7     Yes.

8 HEARING REPRESENTATIVE:

9     Since you are going to be testifying, sir,

10     would you please raise your right hand?

11        ***

12 [Witness sworn]

13        ***

14     LEWIS W. JOHNSON,

15 having been first duly sworn, was called as a witness

16 herein and was examined and testified as follows:

17        ***

18     DIRECT EXAMINATION

19 BY HEARING REPRESENTATIVE:

20    Q.   Thank you.  It looks like you have some

21 certain things prepared that you want to start off with

22 talking about today?

23    A.   Yes.  Well, why don't I just tell you

24 what actually happened.

25    Q.   Okay.  Sure.

**G-0512**

York Stenographic Services, Inc.

34 North George St., York, PA 17401 - (717) 854-0077

R.347

5

1          A.    And according to this, they said it

2     wasn't -- it has been terminated because it is not

3     considered to be in the performance of my duty.

4          Q.    Right.

5          A.    On October 13, when the comment -- when

6     Herb Erickson approached me and made the comment, it

7     wasn't placed in here, but he actually made the comment.

8     I was going from my work area -- I was walking through

9     the hall, just put my mop and bucket away, and I was

10    coming around to the elevator to empty some trash.   Herb

11    Erickson and Lewis Chandler was standing in the lobby.

12    As I was walking through the lobby, Mr. Erickson said to

13    me, Lewis, I am going to tell you what people are saying

14    to you.   I, in turn, told Mr. Erickson, I don't want to

15    hear it.   As I was walking down the hall, Mr. Erickson

16    proceeded to cut me off, and he stuck his arm in front

17    of me and stopped my walking, or he impeded my progress

18    to finish my work, to tell me that -- the comment he

19    made.   The first thing he did was he called over to Mr.

20    Chandler and told Mr. Chandler, I am going to tell Lewis

21    what people are saying about him.   I am going to tell --

22    he said it twice.   So as I am walking, he cut me off and

23    put his arm in front of and stopped me, and then made

24    the comment, people are saying that you are a white guy

25    in black skin.   At that point, I became really upset,

G-0513    R. 348

6

1   and I pushed his arm so I could go and do my job.  After

2   that, I was pretty upset.  I went and jumped in the

3   elevator and tried to finish my job I had to do.  Later

4   on that evening, I seen Mr. Chandler, and I spoke to Mr.

5   Chandler.  I said, Mr. Chandler -- I said, I want to

6   speak to you about what Erickson said to me.  So at that

7   point, I was really upset.  I didn't know what to do.

8   So the next day, I talked to Mr. Kiscadden and asked Mr.

9   Kiscadden what kind of paperwork I need to write a

10  complaint on someone.  Mr. Kiscadden told me he didn't

11  know, he would inform me later on that day.  So later on

12  that day, he gave me the paperwork, which was a

13  Thursday, and I proceeded to do a little narrative on

14  it.   And then the next day I was -- I told Mr.

15  Kiscadden I didn't have the paperwork done.  I filed an

16  initial complaint, and I was concerned about going

17  forward with this with Mr. Kiscadden.  So that weekend,

18  I thought about it, and I decided I was going to talk to

19  the EEO.  So that morning, which was Monday morning, the

20  18th, I came to work, got my assignment, and went to

21  13A -- I believe that is the site I was at.  And around

22  8:00, or by 8:00, I made the phone call to the Office of

23  Resolution in New Jersey.  About an hour after that, I

24  was working in that area, reviewing some beds to see

25  which rooms needed to be cleaned.  As I was coming to

G-0514   R 349

1    the nurse's station to talk to the secretary about these

2    rooms that needed to be cleaned, Mr. Erickson appeared

3    in the hallway.  Ms. Yike, the secretary, was there.

4    She was talking on the phone, and as I was waiting to

5    ask her about the work that I had to do or the

6    availability of these rooms.  Mr. Erickson came around

7    the corner and said he wanted to say something to me.

8    Mr. Erickson is about a good -- from here to that wall,

9    I will say 20 to 30 feet away.  He said, I want to talk

10   to you, Lewis.  And I put my hand up and said, I don't

11   want to say nothing to you, and I turned my back.  A few

12   moments later, I get this blow on my back.  Mr. Erickson

13   came up behind me and hit me with his left shoulder --

14   his right shoulder onto my left shoulder.  I stumbled

15   forward, and I proceeded to go forward with him hitting

16   me on my shoulder, yelling in my ear, why don't you want

17   to talk to me.  And this went on for 15 feet.  And then

18   I realized I was going into a dead end and I turned

19   around and I came back towards the nurse's station,

20   because I was right in front of it.  And there was an

21   opening in the nurse's station.  He was still hitting me

22   on my shoulder.  And that is when Ms. Yike looked up and

23   seen me and Mr. Erickson at the exit.  Then I went into

24   the bathroom and locked myself in -- the restroom.  And

25   he was yelling at me, saying things about my brother,

8

1    and something like that there.  I didn't hear that,

2    because I was -- I had actually lost it then at that

3    time.  I locked myself in the bathroom.  I stayed there

4    about ten minutes.  And I think Ms. Yike either knocked

5    on the door and said he was gone, or whatever.  I came

6    out and I called my office and reported what happened,

7    that Mr. Erickson had assaulted me, you know.  And I

8    called Ms. McGuigan.  She told me to come down at -- I

9    guess it was -- I don't know exactly what time, but she

10   told me to come down at a certain time and tell her

11   about it.  So I reported to her and told her what

12   happened, what occurred, and I told her I was feeling

13   sick and I wanted to go home.  And she said, well, you

14   fill out a point of contact and then you can go home.

15   And that is when I had my paper copy of the complaint I

16   was going to give Mr. Kiscadden, but I didn't.  I called

17   the EEOC and I said this is what happened on the 13th,

18   and I did a point of contact of what happened around

19   8:30 or 9:00 that morning.  And then after I gave that

20   to her, I went home.  The next morning, I came to work.

21   I didn't get no sleep that night.  I was upset and

22   depressed about what was happening with me, what was

23   going on.  And I came into work and I was just told to

24   go to my -- assigned my work area, and I went to my work

25   area.  I assumed something had occurred, because nobody

9

1    informed me about the incident.  I didn't know nothing.

2    On about 9:30, Mr. Erickson came around to my area

3    again.  I was scared, I was in fear when I seen him in

4    my area.  And then I just -- I seen him come around the

5    corner, and I just turned my head, because I was scared.

6    And then when I turned my head back, in my hat closet,

7    my door was left wide open, and I didn't see Mr.

8    Erickson.  So I assumed he was still harassing me, you

9    know.  So I walked over to my hat closet to shut the

10   door and Erickson comes out of the shower rooms

11   laughing, looking at me, and smiling, and almost

12   laughing in my face.  And that is when I called the

13   security about him harassing me.  That happened on

14   Tuesday, the 19th.  The 20th, I came into work, I

15   finished out the day.  I was really upset, and nervous,

16   and shaking, and everything.  I finished out the day and

17   I came in the next morning.  And this time, I asked Mr.

18   Kiscadden where Erickson was working at.  He told me,

19   Mr. Erickson is in Building 1.  And I told him, I cannot

20   work over there.  This guy is harassing me and

21   everything.  And I asked for sick leave.  And Mr.

22   Kiscadden proceeded to ask Ms. McGuigan, is it all right

23   for me to take sick leave.  Ms. McGuigan -- Mr.

24   Kiscadden came back and said, it is okay that you can

25   take sick leave, but we want to talk with you, so could

10

1  you have a seat here?  I was crying throughout this

2  process, because I was really scared, I was upset, and I

3  figured I need to go see my doctor.  So as a result --

4  while I was sitting there, he told me sit -- Mr.

5  Kiscadden told me to sit.  I said, Mr. Kiscadden,

6  Rodney, I want to go sit in my car, because Mr. Erickson

7  had left his work area two times and came to my area, so

8  I was afraid he was going to just walk in the office.

9  So I decided, let me sit in my car so that, you know,

10  you can all come get me if you want to have a talk,

11  because I didn't want to sit in the office like that.  I

12  just didn't trust this guy.  I was just that upset.  So

13  as a result, I called the Union, and they met me.  He

14  went to the office and talked to Mr. Kiscadden, and

15  whoever, and they said -- they asked me to go up to the

16  work area with security.  And I said, well, I will walk

17  up there with security, and I kept thinking, well, if

18  they are going to leave, this guy is going to have --

19  you know, he is in my same building.  He is going from

20  floor to floor, moving furniture, so I am going to run

21  into this guy.  So I became scared again and nervous, so

22  we went back to the office, and we sat down with a

23  couple of chiefs, Mr. Ritz, the Chief of Police, Rodney,

24  and the chief of our department, Ms. McGuigan.  And they

25  said -- they explained to me this is a serious incident

11

1    and everything, and they suggested I get moved over to

2    Building 19.  I said, I want to go see my doctor.  So as

3    a result, they said, well, Lewis Johnson -- Ms. McGuigan

4    told me that, Mr. Johnson, you can go see your doctor,

5    but when you come back, I want you and Mr. Kiscadden to

6    sit down, shake hands.  And that is the last of the

7    incident, on-the-job incident, that occurred.

8           Q.    Mr. Kiscadden or Mr. Erickson -- to shake

9    hands?

10          A.    Me and Mr. -- me and Erickson.  When I

11   come back to work, me and Erickson sit down and shake

12   hands.

13          Q.    Okay.

14          A.    And that scared me, you know, because

15   this guy, he seems to me he didn't show no remorse for

16   the comments he made to me.  He continues to ridicule

17   me.  Earlier that summer, I did have a run-in with him,

18   which I reported to Mr. Kiscadden.  We had a

19   conversation about it, and the following week, when I

20   asked Mr. Kiscadden what happened, Mr. Kiscadden said he

21   forgot to tell anybody about it.  You know, it is an

22   ongoing incident since like -- that is what happened on

23   the job as far answering this question here...

24          Q.    Okay.

25          A.    ...that it wasn't in the performance of

York Stenographic Services, Inc.

34 North George St., York, PA 17401 - (717) 854-0077

G-0519

R-354

12

1    duty.

2              Q.    All right.  Let me ask you a little

3    bit -- you said you had an earlier run-in with Mr.

4    Erickson.  What happened?

5              A.    It was when the lab was being -- we were

6    waxing the lab.  We just got a new lab put in, and I was

7    coming down the hallway, and I noticed he had a lot of

8    equipment.  So I asked him if I could help him, and he

9    proceeded to ridicule me about my work and that I can't

10   do no waxing.  He and Chandler started just getting all

11   over my case, and the only thing I did was ask them if

12   they needed any help.  And I was really upset, because

13   they told me -- I said, do you all go around telling

14   people this about me?  And they said, yeah, we tell

15   people that you can't do no work and stuff, and you

16   can't wax.  And that upset me, and that is when I

17   reported it to Rodney, Mr. Kiscadden.

18             Q.    So they were saying, basically, you were

19   unable to do certain parts of your job, or is that

20   what...

21             A.    Right.

22             Q.    But you told me they were making fun of

23   you somehow for not being able to do your job correctly

24   or...

25             A.    Yeah.  That is what they were doing.

York Stenographic Services, Inc.

34 North George St., York, PA 17401 - (717) 854-0077

G-0520

R.355

13

1          Q.    Okay.   Was that the first time you had

2     any problems with Mr. Erickson?

3          A.    No.   I wouldn't say that was the first

4     time.   When I first got the job in housekeeping, he

5     would ridicule me and another new employee, and make fun

6     of us about the work we do, about our waxing and stuff,

7     you know, because it was a big issue for the waxing to

8     be done, because they were the main ones doing the

9     waxing, and they felt that we were incompetent to wax it

10    because we came from nursing to housekeeping.   And so on

11    and off, throughout the time I was there, I got talked

12    about my ability to wax by these guys.   And in fact, you

13    know, I took a detail to do waxing and stuff for four

14    months.   I know I -- they taught me how to wax, and I

15    knew how to wax, you know.   In the process of learning

16    how to wax, I did make some mistakes.   But other than

17    that, I was -- they allowed me to do a detail to wax.

18         Q.    So as far as you were concerned, you

19    learned how to do it good enough by that four-month

20    detail?

21         A.    Well, yes.   Basically, I learned how to

22    do it the proper way, you know, with the stripping and

23    everything.   They didn't teach me that, because they

24    didn't use that technique.

25         Q.    So did you have any interactions with Mr.

G-0521

R.356

1    Erickson outside of work?  Did you know him from outside

2    of work or anything?

3            A.    No.  I don't care for Mr. Erickson that

4    much, as far as that.  You know, when I first started in

5    August, you know, we would talk about football and stuff

6    like that there.  We joked around, but as time went on,

7    I found out that he wasn't a very nice person for me to

8    be dealing with, because he did a lot of shortcuts and

9    stuff, and I am trying to learn the job, to do it right.

10   And I just, you know, bore with him.  And when I wasn't

11   with him, I didn't try to eat lunch with him.  The only

12   time I interacted with him was when I was assigned to

13   work with him.

14           Q.    Okay.  So what you are telling me, the

15   first sort of "problems" that you had with him was he

16   made fun of you because he didn't think you could do

17   waxing the way you were supposed to...

18           A.    Yeah.

19           Q.    ...so he made comments about your work.

20           A.    Yeah.

21           Q.    Okay.  Now, in October -- okay.  I was

22   trying to get a little background -- so in October, he

23   came up and said to you, you know, I want to tell you

24   what people are saying about you.

25           A.    Yes.

15

1        Q.   And you avoided him, so I was trying to

2    get a little background -- because why -- you expected

3    he was going to say something bad about you or...

4        A.   In October?

5        Q.   Yes.  You said October 13, he said,

6    Lewis, I want to tell you what people are saying about

7    you, and you said I don't want to hear it.

8        A.   Yeah.

9        Q.   Did you expect him to say something...

10        A.   Well, I didn't interact with him.  I

11    didn't even want to have small talk with him or anything

12    like that there.  When it comes to that stuff, I felt,

13    after the incident in June -- I think it was June or

14    July -- you know, I shouldn't personally have small talk

15    with him now during work stuff, you know.  And that

16    there hearsay stuff, you know, we have a policy about

17    confidential stuff, saying back and forth about people,

18    you know.  That is confidentiality, we have a policy on

19    that, and that kind of stuff I didn't need to be

20    entertained with.  And plus, it was about me, and I

21    don't want to hear it.  I wasn't open to it, especially,

22    coming from him.

23        Q.   Okay.  So you just didn't want to hear

24    any gossip or...

25        A.   That is right.

York Stenographic Services, Inc.

34 North George St., York, PA 17401 - (717) 854-0077

G-0523

R.35B

16

1    Q.    I mean, you didn't think he was

2    threatening you or anything.  Did you?

3    A.    At that time?

4    Q.    At that time.

5    A.    I don't know what he wanted to say to me.

6    I just didn't want to hear it, because it was -- he came

7    to me saying what people were saying about me.  When he

8    called me a black man -- a white guy in black skin, I

9    thought that was a derogatory racial comment to me, you

10   know, and I didn't appreciate it, because I don't

11   interact with this gentleman in that nature at that

12   time.  I didn't -- you know, I just stayed away from him

13   as much as I can, because we would just meet in the

14   morning time.  We would go our separate ways.  We would

15   get our assignments and we would just go our separate

16   ways, you know.  The only time I really interacted with

17   him was when I actually worked with him.  And they

18   didn't do that that often with us.

19   Q.    At some point, I am getting the

20   impression that you became fearful of him?

21   A.    Yes.

22   Q.    I mean, you talk about filing a complaint

23   because of the remarks that he made, but then at some

24   point, you became fearful of him.  At a later point, did

25   he threaten you, or why did you become afraid of him?

G-0524    R.359

17

1    A.    Well, it wasn't so much I became afraid

2    of him.  It wasn't that I was afraid of him, I just

3    didn't -- you know, the comments I can deal with.  It is

4    when he physically...

5        Q.    I know he was bumping you and...

6        A.    Yeah, and you know, what I was afraid of

7    because I felt like he was trying to intimidate me.  In

8    fact, I thought he was racially intimidating me to

9    coerce me into a fight, and I stopped doing that kind of

10   stuff.  I have been able to -- I am a recurring addict,

11   and I have been clean over eight years, and I have

12   learned from my past behavior, when people made racial

13   comments to me, I would react and start fighting.

14       Q.    Is Mr. Erickson white or black?

15       A.    He is a white guy.

16       Q.    He is a white guy?

17       A.    And so I have been working towards just

18   doing -- writing this guy up and, you know, be done with

19   it, you know, and let the...

20       Q.    So you thought when he made that remark

21   that there was some racial connotation to that remark?

22       A.    It was a lot of racial connotations to

23   that remark.

24       Q.    Okay.  All right.  I have got you now.

25       A.    And it was like I was just working, and

G-0525    R.360

18

1    this came from out of nowhere.  I mean, he stopped me

2    just to say that, and it is like -- you know, I don't

3    interact with him.  And it just set my head to going,

4    like, God...

5        Q.  Okay.  All right.  So we sort of got up

6    to the point where there was some talk, and management

7    became involved, and they were going to have security

8    escort you to your work station.  And at that point,

9    then you found out that Mr. Erickson was going to be

10   around -- even though they took you there, that you were

11   going to have to run into him?

12       A.  Right.

13       Q.  Okay.  What did you do at that point

14   then?  Did you leave at that point -- you left work

15   or...

16       A.  Well, what we did, once we went up there

17   and I realized -- because I had ICU area, and we had the

18   second floor, and furniture was being moved throughout

19   that building and off that second floor, you know.  That

20   has been scheduled a week or two ago, so I knew of the

21   move.  And then I actually realized that that is what he

22   is going to be doing, then I knew I was going to run

23   into him, and I felt fearful at that time.  I really

24   did, you know, because he physically assaulted me, and

25   all this stuff that happened, and I was just concerned

York Stenographic Services, Inc.

34 North George St., York, PA 17401 - (717) 854-0077

G-0526    R.361

19

1    that nothing happened.  You know, I wasn't being told

2    that, you know, Lewis, you are going to be safe, or

3    anything, you know.  Nobody is saying anything to me,

4    and there is a policy we have -- in fact, here is the

5    policy right here.  And I learned this later about the

6    policy about harassment in the workplace.  And I

7    realized that none of this stuff -- well, I don't know.

8    None of this stuff happened for me, you know.  I didn't

9    know nothing.  They didn't tell me if it was safe or if

10   anything happened to this guy when I reported it.

11   Because once he came back around to harass me, I called

12   the police.

13            Q.   Okay.  Now, he came around again -- when

14   was that?

15            A.   That Tuesday morning.

16            Q.   On that Tuesday morning?

17            A.   Yes.

18            Q.   Okay.  And you called the police and they

19   came?

20            A.   Yeah.  Well, I went to them.

21            Q.   You went to them?

22            A.   Yes.  And I explained to them what had

23   occurred the day before and the prior week, and

24   obviously, he gave a police report, his statement.  He

25   said everything did occur as I said it, to an extent,

G-0527    R-362

20

1    and they didn't do anything.  They just dropped it and

2    they didn't take no action.

3             Q.    Okay.

4             A.    I said, wow.

5             Q.    So you left work that day, though.

6    Right -- on the 20th, October 20?

7             A.    Wednesday, yes, and I went to see my

8    doctor.

9             Q.    Okay.  And you talked to your doctor.

10   Did he tell you not to go back to work or...

11            A.    Yes.  He told me not to go back to work

12   and he set up an appointment for me to see a therapist

13   the next morning.

14            Q.    Okay.  So you started going to a

15   therapist.  And how long did you get treatment like

16   that?

17            A.    Well, the therapist recommended me to the

18   hospital.  I, actually, was hospitalized.  And it was a

19   lot of -- they had a problem that dealt with, you

20   know -- because there is a lot of people in this

21   program.  They deal with all aspects of family life, and

22   interaction with others, and stuff like that,

23   relationships.

24            Q.    Okay.  How long were you hospitalized?

25            A.    About 14 days.

G-0528   R. 363

21

1    Q.    Fourteen days?

2    A.    Yes.

3    Q.    And did you get in some kind of program

4    after you came out, outpatient program, or...

5    A.    No.  I started seeing my doctor, and he

6    suggested that I am not going to go back to the VA until

7    that situation gets straightened out or they transfer

8    me.  That was on the initial papers that were sent in.

9    In fact, I was directed to put in -- see, I didn't know

10    nothing about OWCP.  I was directed by -- a Union

11    steward called me and told me to go over to Mr.

12    Stuckey's office and put in an OWCP complaint -- claim,

13    and that is what I did.  From that point on, I filled

14    out a CA-1 claim, and when I realized it should have

15    been a CA-2...

16    Q.    CA-2?

17    A.    Yes.  I didn't get that claim done until

18    December.

19    Q.    All right.

20    A.    I felt I was mislead in filing that

21    claim, because I was supposed to go to my supervisor.

22    That was supposed to be done by my supervisor, but Mr.

23    Stuckey offered to do it for me right there.  Not having

24    any knowledge of OWCP, I said, okay, I will sit down and

25    do a claim.  And we went through the process, and he

G-0529    R.364

1  explained to me -- asked me to explain what occurred.

2  And I explained to him, and he said, CA-1, and I said, I

3  guess a CA-1.  I didn't know.  I was under medication,

4  and I put in a CA-1.  And as time went on, I was

5  wondering why I hadn't heard nothing.  And he said, I

6  needed medical information, you know.  He kept asking me

7  for medical information.  Then I got a representative,

8  and he sat down with me, and we went through the

9  paperwork, and we learned that my injury was a CA-2, and

10  we asked Mr. Stuckey to allow us to put in a CA-2.  He

11  refused to allow me to put in a CA-2.  And we went to

12  the director, and the director didn't allow me to put a

13  CA-2 in.  After we learned that...

14        Q.  There was more than one single incident.

15        A.  Yes.

16        Q.  That is a CA-2.

17        A.  Yes.  And what we learned was that Mr.

18  Stuckey, or his office, received a release of

19  information for my medical records, but I was being led

20  to believe that it never came.  And we found that in my

21  folder in December.  And I didn't understand the delay,

22  and that is what the delay was -- it was one of the

23  delays, you know.  We asked Mr. Stuckey for the

24  supervisor's answer to the CA-2.  You know, we asked

25  questions for the supervisor to put in a statement, and

R.365

23

1    I never received that.  They refused to give me that

2    statement.  And we signed the CA-2 without it just so we

3    could get the claim going.  And they received it, and

4    then the same thing occurred with the CA-1.

5              Q.    Okay.  So what happened, you were in the

6    hospital and you came out.  You kept seeing the doctor,

7    I assume?

8              A.    Yes.

9              Q.    Bring me up to date since that time.  Did

10   you go back to work?

11             A.    No.  Well, what occurred was I have been

12   put on medication.  I am still, currently, taking

13   medication.  I am still seeing the doctor.  I am seeing

14   the therapist once a week.  I still have problems

15   sleeping and concentrating.  I am still a little

16   depressed.  Financially, I was -- my house almost went

17   into foreclosure.  We owe over $7,500.  Our bills are

18   behind.  We owe almost $1,000 on an electric bill.  I

19   have numerous medical bills from buying medicine and

20   stuff like that there.  In June, July, I asked my

21   doctor -- I said, could you reduce the medicine so I can

22   start back to work or I am going to lose my home.  So he

23   reduced the medication so I can return to work part-time

24   with my part-time job, because my part-time job let me

25   go back in March.  And then when I went back to them, I

York Stenographic Services, Inc.

34 North George St., York, PA 17401 - (717) 854-0077

G-0531    R.36c

24

1    was informed I could collect Unemployment, and I went

2    back to part-time.  My part-time job would actually

3    accept me back to work because, you know, we sent them a

4    letter when I am released from the hospital, from this

5    care, to let them know I am ready to return to work.

6    But the VA hasn't actually told me how safe it would be

7    for me to return to work.  Even though they have the

8    information that they need to transfer me, the only

9    thing I was told, it was safe for me to come back to

10   work.  And I felt that was just the same way that the

11   day after he assaulted me when they didn't tell me

12   nothing, because they didn't give me no conditions or

13   how I am going -- what the conditions are for me to be

14   at work -- is that guy going to be around me?  Because

15   he has the run of the hospital, you know.  And so my

16   doctors just said, well, Mr. Johnson, we will just keep

17   sending them the information, and they have the

18   information, and we will see what the Workmen's Comp

19   people do to help you out.  And so they removed me from

20   the job.

21            Q.   So you have been fired then, or

22   terminated, or...

23            A.   They sent me a letter of removal.

24            Q.   Okay.

25            A.   They asked me to go out on disability,

York Stenographic Services, Inc.

34 North George St., York, PA 17401 - (717) 854-0077

G-0532    R.367

1    but I returned to work, and I have ten years service at

2    the facility, and I wanted to continue my government

3    work, you know.

4         Q.    So you didn't put in for a disability?

5         A.    No.  I didn't put in for nothing, because

6    I was, you know, hopeful that I would return to work.  I

7    didn't do anything wrong, you know.  It was just I felt

8    like it is a hostile work environment, and my doctor

9    doesn't recommend me to go back there, personally, with

10   that guy there, because...

11        Q.    So your doctor said -- I mean, if you

12   didn't have to have contact with Mr. Erickson, you could

13   go back to work?

14        A.    Yes.

15        Q.    And what you are telling me is you don't

16   have anything guaranteeing from the VA that you wouldn't

17   have contact with him?

18        A.    Right.

19        Q.    Okay.  Now, you said you have a part-time

20   job?

21        A.    Yes.

22        Q.    And you have been working that?

23        A.    Since July.

24        Q.    Since July?

25        A.    The end of July, I started working back

1    there.

2                 Q.    What is that -- what kind of work?

3                 A.    I am just an order picker in a Sherwin

4    Williams distribution warehouse just for 16 hours a

5    week.

6                 Q.    Okay.  Do you have other things there

7    that you wanted to -- that you haven't gotten into?

8                 A.    Like I said, this -- I don't know if you

9    already have that in there or not.

10                Q.    I am not sure.  I seem to remember seeing

11   something like that.  That is the VA policy on

12   harassment?

13                A.    Yeah.  And other than that, you know --

14   well, that is all the things I have on my list that I

15   was supposed to tell you.  And you already have this

16   from my physician.

17                Q.    Yes.  I already have that one, February.

18   This is it.

19                A.    Uh-huh.

20                Q.    Okay.

21                A.    Well, they gave them -- they asked me for

22   some paperwork when I was trying to go back to work at

23   Sherwin Williams.  My doctor resubmitted this to them,

24   based on the paperwork, about my ability to go back to

25   work.  And you know, they decided to remove me instead

27

1    of making the conditions so I can return to work.  Other

2    than that, that is all.

3              Q.    That is it?  Okay.  I can't think of

4    anymore questions at this point.  I think I understand

5    the picture.  This is your chance, like I said, to get

6    on the record anything else that...

7              A.    Well, that is the list that my lawyer

8    gave me.

9                              ***

10   HEARING REPRESENTATIVE:

11             That is pretty much the things -- okay.  All

12             right.  Mr. Johnson, thank you very much.  It

13             is now 2:35, and we will close the hearing.

14                             ***

15   [Whereupon, the hearing was closed at 2:35 p.m.]

**G-0535**

York Stenographic Services, Inc.

34 North George St., York, PA 17401 - (717) 854-0077

R-370

28

C E R T I F I C A T I O N

1

2    I, Evelyn M. Smith, hereby certify that the

3    examination of the witnesses, as provided to me by Ralph

4    Keffer, the Reporter in the within case, was reduced to

5    writing by me, and that the transcript is a true record

6    of the testimony given by the witnesses.

7    I further certify that I am neither attorney, nor

8    counsel for, nor related to or employed by, any of the

9    parties in which this action is taken, and further that

10   I am not a relative or employee of any attorney or

11   counsel employed by the parties hereto or financially

12   interested in the action.

13   *Evelyn M. Smith*

14   _____

15   Evelyn M. Smith, Transcriber

16   York Stenographic Services

17

**G-0536**

York Stenographic Services, Inc.
34 North George St., York, PA 17401 - (717) 854-0077

R.371

**U.S. Department of Labor.**

Employment Standards Administration
Office of Workers' Compensation Programs
Division of Federal Employees' Compensation
Washington, D.C. 20210



File Number:

April 10, 2001

(202) 693-0045

File Number: 03-0248172
Employee: LEWIS W. JOHNSON

LEWIS W. JOHNSON
1025 HARMONY HILL DR
LEBANON, PA. 17046

Dear Mr. JOHNSON:

This is in reference to your workers' compensation claim. Pursuant to your request for a hearing, the case file was transferred to the Branch of Hearings and Review.

Your case file has been returned to the District Office at: U.S. Department of Labor, Office of Workers' Compensation Programs, 170 S. Independence Mall West, Suite 715 East, Philadelphia, PA 19106-3308.

If you disagree with the decision attached to this letter, you have the right to submit new evidence to the Office of Workers' Compensation Programs, and request reconsideration of the case or, if you have no additional evidence to present to the Office of Workers' Compensation Programs, you may appeal the decision to the Employees' Compensation Appeals Board.

RECONSIDERATION: If you have additional evidence, not previously considered, which you believe is pertinent, you may request, in writing, the OWCP reconsider this decision. Such a request must be made within one year of the date of the attached decision, clearly state the grounds upon which reconsideration is being requested, and be accompanied by relevant evidence not previously submitted, such as medical reports or affidavits, or a legal argument not previously made. Your request for reconsideration and the new evidence you are submitting should be sent to the U.S. Department of Labor, Office of Workers' Compensation Programs, 170 S. Independence Mall West, Suite 715 East, Philadelphia, PA 19106-3308. In order to ensure that you receive an independent evaluation of the evidence, your case will be reconsidered by persons other than those who made this determination.

APPEALS: If you believe that all available evidence has been submitted, you have the right to appeal to the Employees' Compensation Appeals Board. Such appeal is limited to the evidence of record, and no new evidence may be submitted. Request for appeal should be made within 90 days from the date of this decision and should be addressed to Employees' Compensation Appeals Board, 200 Constitution Ave., N.W., Room N-2609, Washington, D.C. 20210. For good cause shown, the Appeals Board may waive the failure to file within 90 days if application is made within one year from date of the decision being appealed.

Sincerely,

ROBERT D. RAHMES
Hearing Representative   ext 30956

DEPT OF VETERANS AFFAIRS
LEBANON VA MEDICAL CENTER
PERSONNEL SERVICES
LEBANON PA 17042

G-0503

CXN

HR14

R-372

<u>U.S. DEPARTMENT OF LABOR</u>

<u>Office of Workers' Compensation Programs</u>

DECISION OF THE HEARING REPRESENTATIVE

In the matter of the claim for compensation under Title 5, U.S. Code 8101 et seq. of Lewis W. Johnson, Claimant; Employed by the Dept. of Veterans Affairs. Case No. A03-248172. Hearing was held on January 24, 2001 in Philadelphia, Pennsylvania.

---

The issue is whether the claimant sustained an emotional condition or disability arising out of the performance of duty.

The claimant was employed as a housekeeping aide with the Department of Veterans Affairs. On December 30, 1999, he filed notice of occupational disease and claim for compensation, contending he sustained an emotional condition which he attributed to his employment.

By decision dated July 7, 2000, however, the Office rejected the claim, on the grounds that the evidence of record did not establish that the claimed emotional condition arose out of the performance of duty.

The claimant disagreed with that decision and requested a hearing, which was held on January 24, 2001. Present as observers for the employing agency were Joe Stuckey and Rodney Kiscadden.

Workers' compensation law does not apply to each and every injury or illness that is somehow related to an employee's employment. There are situations where an injury or illness has some connection with the employment but nevertheless does not come within the concept of workers' compensation. When disability results from an emotional reaction to regular or specially assigned work duties or a requirement imposed by the employment, the disability is compensable. Disability is not compensable, however, when it results from factors such as an employee's fear of a reduction-in-force or frustration from not being permitted to work in a particular environment or to hold a particular position.[1] An employee's emotional reaction to an administrative or personnel matter is generally not covered. Thus the Employees' Compensation Appeals Board has held that disciplinary matters consisting of letters of warning for conduct,[2] as well as determinations concerning

---

[1] <u>Lillian Cutler</u>, 28 ECAB 125.

[2] <u>Barbara J. Nicholson</u>, 45 ECAB (Docket No. 93-1025, issued

2

work environment,[3] downgrade of a position,[4] job transfers[5] or change in assignments[6] and leave matters[7] are not generally covered. The Board has held, however, that error or abuse by the employing establishment in an administrative or personnel matter, or evidence that the employing establishment acted unreasonably in an administrative or personnel matter, may afford coverage.[8]

When an employee alleges that his or her emotional condition was caused or aggravated by actions which the employee describes as constituting harassment or discrimination, to support a finding that an employee was subject to improper treatment, there must be evidence apart from the employee's own statements.[9] Mere perceptions or feelings of harassment do not constitute compensable factors of employment. A claimant must establish a factual basis for the claim by supporting his or her allegations with probative and reliable evidence.[10]

In written statements and testimony at the hearing, the claimant has identified various incidents or factors to which he attributes his emotional condition. These include not being given a monetary award that were given to other team members and not being given a desired position. These are administrative matters and a reaction to such is not compensable absent a showing of unreasonableness or abuse by the employing agency. There is no such showing in this case. The claimant also contends that he was not allowed to view materials held by management relating to his OWCP claim and that filing his claim was purposely delayed. There is insufficient independent corroborating evidence in the record, however, to substantiate these allegations. The claimant also alleges that management did not act properly in response to his complaints

---

August 1, 1994).

[1] Merritt J. Kauffman, 45 ECAB ___ (Docket no. 93-838, issued June 9, 1994).

[4] Sandra F. Powell, 45 ECAB _ (Docket No. 93-2065, issued August 26, 1994).

[5] Frederick D. Richardson, 45 ECAB _ (Docket No. 93:2179, issued February 15, 1994).

[6] James W. Griffin, 45 ECAB _ (Docket No. 93-989, issued July 19, 1994).

[7] Daryl R Davis, 45 ECAB _ (Docket No. 93-1364, issued September 23, 1994).

[8] Margreate Lublin, 44 ECAB 945, 956.

[9] Royas Lott, 34 ECAB 235.

[10] Ruthie M. Evans, 41 ECAB 416,425.

G-0505

R.374

3

against coworkers, but he has not submitted sufficient independent corroborating evidence to establish error or abuse by the employing agency.

The claimant has not submitted independent corroborating evidence sufficient to establish harassment by managers or coworkers. His EEO claims were dismissed.

The claimant alleges that he was harassed and intimidated by coworkers, particularly a white coworker who told him that other black coworkers had made statements that the claimant was a white guy in black skin. With regard to emotional claims arising under the Act, the term "harassment" is not viewed as the equivalent of "harassment" as defined or implemented by other agencies, such as the Equal Opportunity Commission, which are charged with statutory authority to investigate and evaluate such matters in the workplace. Rather, in evaluating claims for workers' compensation under the Act, the term harassment is synonymous, as generally defined, with a persistent disturbance, torment or persecution, i.e. mistreatment by co-employees or workers.[11] The evidence in this case record does not establish such a pattern of persistent behavior or a pervasively hostile work environment beyond the claimant's own professed perceptions. There is no evidence supporting the claimant's perceptions that the coworker behaved menacingly toward him. The claimant also contends that coworkers made fun of his ability to wax floors at some point, but there is no supporting evidence that this occurred nor, if it did, that it rises to the level of torment or persecution.

The evidence of record does not establish potentially compensable factors of employment, and there is therefore no need to discuss the medical evidence in the record.

The decision of the Office dated July 7, 2000 is AFFIRMED.

DATED: April 10, 2001
WASHINGTON.D.C.

ROBERT D. RAHMES
Hearing Representative
for
Director, Office of
Workers' Compensation Programs

**G-0506**

---

[11] Abe E. Scott, 45 ECAB 164.

R.375

Begin using on November 9, 1999
Previous   *Counselor's Report: Complaint Intake)* is obsolete

*Lyons Office of Resolution Management*
INITIAL INTERVIEW SHEET



| | |
|---|---|
| Date and Time of Contact | 2/15/2000 |
| Name of Counselor Assigned Case | George Irvin |
| Date Final Interview Due | |

| | |
|---|---|
| NAME OF AGGRIEVED | Lewis Johnson |
| HOME ADDRESS | 1025 Harmony Hill Drive  Lebanon, PA 17046 |
| TELEPHONE NUMBERS | HOME (717)270-0454    WORK (717)272-6621 |
| | Indicate tour of duty: |
| NAME/ADDRESS OF FACILITY | Lebanon VA Medical Center  1700 South Lincoln Avenue  Lebanon, PA 17042 |
| JOB TITLE AND GRADE/SERIES | Housekeeping Aid WG-2 |
| SERVICE | Environmental Management Services |

| TYPE OF CONTACT | | | | IDENTIFICATION OF AGGRIEVED | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Phone | e-mail | Walk-In | Mail/Fax | Employee | Former Employee | Applicant | Other | Social Security # | Vet? | Pref. Elig. |
| X | | | | X | | | | 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 | X | |

| | | | |
|---|---|---|---|
| Was contact made with another EEO Official?  If yes, who? | YES | | __NO__ | |
| Have you filed previous EEO claims?  If so, when and what was the basis and issue of the claim(s)?  98-2320- 8/11/98- Race- Black    Non-selection | YES | | __NO__ | G-0223 |
| Have you filed with MSPB? | YES | | NO | |
| Is your position covered by a bargaining unit?  If yes, which one: | YES | | NO | |
| Has a grievance been filed on this claim? | YES | | NO | |

| TITLE 5 | TITLE 38/ HYBRID T38 | FULL-TIME | PART-TIME | CAREER | PROBATION | TEMPORARY | TERM |
|---|---|---|---|---|---|---|---|
| X | | X | | | | | |

| | | |
|---|---|---|
| DO YOU WISH TO REMAIN ANONYMOUS? | YES | NO |
| DO YOU WISH TO PARTICIPATE IN MEDIATION? | YES | NO |
| DO YOU HAVE A REPRESENTATIVE? | YES | NO |
| IF YOU HAVE A REPRESENTATIVE, GIVE NAME, ADDRESS AND TELEPHONE NUMBER | William Dumas  20 Dumas Lane  Jonestown, PA 17038    Telephone- (717) 865-9401 | |

DO NOT MODIFY THIS FORM IN ANY WAY WITHOUT APPROVAL OF FM

R-376



*Lyons Office of Resolution Management*
**INITIAL INTERVIEW SHEET**
(Continued)

AGGRIEVED: Lewis Johnson
DATE OF CONTACT: 2/15/2000

**WHAT SPECIFIC INCIDENT(S) OCCURRED WITHIN THE PAST 45 DAYS. (IF ANY DATE IS MORE THAN 45 DAYS BEFORE THIS INITIAL CONTACT, EXPLAIN THE DELAY. GATHER EVIDENCE TO DETERMINE ACCEPTANCE**

CLAIM: Harassment-Aggrieved stated that the Facility failed to follow Injury Compensation for Federal Employees Publication CA-810 guidelines

DATE OF OCCURRENCE: 1/28/2000

**WHAT IS THE BASIS FOR THIS COMPLAINT?**

| | |
|---|---|
| Race (specify White, Black, Asian/Pacific Islander, American Indian, or Alaskan Native) | |
| Color (specify) | |
| Religion (specify) | |
| Sex (specify male/female) | |
| National Origin (specify Hispanic, Jewish (Israeli)) | |
| Age (give date of birth) | |
| Handicap (specific information about your disability) | EEO Case # 200H-688 |
| Reprisal (state nature of the prior EEO activity in which you engaged) | |
| Sexual Orientation | |

**WHO IS THE RESPONDING MANAGEMENT OFFICIAL? (GIVE NAME, TITLE AND TELEPHONE NUMBER)** Raymer Kent-Chief of Human Resource-(717)272-6621, Joseph Stuckey-Personnel Management Specialist-(7170272-6621 Ext.4060, Rodney Kiscadden-(717) 272-6621 Ext.4665

**WHAT REMEDY ARE YOU SEEKING?** Aggrieved's doctor does not want him working Lebanon because of postman . Aggrieved wishes to work at another VA facility or to be retrained to work in a different position in another facility within 30 miles. If Mr. Kent, Stuckey and Kiscadden violated federal law he wants the information forwarded to the Federal Authority for investigation for prosecution. Aggrieved wants all medical expenses paid.

**HOW HAVE YOU BEEN HARMED? (WHAT ALLEGED ADVERSE EMPLOYMENT RELATED MATTER(S) HAVE YOU EXPERIENCED?)** Aggrieved stated that he is financial , health , humilating to him and family if he goes back to work, he feels that hostile environment.

**G-0224**

**DO NOT MODIFY THIS FORM IN ANY WAY WITHOUT APPROVAL OF R**



Begin using on November 9, 1999
Previous ( of ...anselor's Report: Complaint Intake) is obsolete

IS THERE ANYONE WHO HAS DIRECT KNOWLEDGE OF THIS (THESE) ALLEGATIONS WHO MAY BE ABLE TO ASSIST IN RESOLUTION EFFORT?  PLEASE GIVE THEIR NAME, TITLE AND TELEPHONE NUMBER.

ADDITIONAL INFORMATION/NOTES/DOCUMENTS THAT SHOULD BE REVIEWED:

COMPLETE THIS PAGE FOR EACH CLAIM IDENTIFIED BY THE AGGRIEVED PARTY

G-0225

DO NOT MODIFY THIS FORM IN ANY WAY WITHOUT APPROVAL OF F...

R.378

03/27/00   15:32   ☎    5 6622          VAMC LEBANON          ☒008



DEPARTMENT OF VETERANS AFFAIRS
OFFICE OF RESOLUTION MANAGEMENT
151 KNOLLCROFT ROAD, BUILDING 16
LYONS, NEW JERSEY 07939-5000

Johnson
DEPOSITION
EXHIBIT # 33
4-24-02   GDm
PENGAD 1-800-631-6989

3/100/2000

Lewis Johnson
1025 Harmony Hill Drive
Lebanon, Pa 17046

SUBJECT: NOTICE OF RIGHTS AND RESPONSIBILITIES

Dear Mr. Johnson:

In regard to the EEO matter that you brought to my attention, I am required to advise you that you have certain rights and responsibilities. They are:

a. The right to remain anonymous during EEO Counseling. I will divulge your name to others only if you authorize me to do so. You should know, however, that it may be very difficult to resolve your complaint informally if you choose to remain anonymous

_____ I want to remain anonymous during counseling.

__✓__ I do NOT want to remain anonymous during counseling.

b. You have the right to a representative during the EEO complaint process including during EEO counseling. You may select anyone to represent you, as long as his/her position with VA would not represent a conflict of interest. **I cannot be your representative.**

__✓__ I want a representative. My representative will be:

Name: _William Dumas_

Address: _20 Dumas Lane_

_Towestown, PA 17038_          **G-0215**

Phone: _(717) 865-9401_

_____ I do NOT want a representative at this time. I understand I may select a representative later (or at any stage of the EEO process)

c. You have a right to have your claims addressed through the agency Alternate Dispute Resolution (ADR) program. If you choose the ADR program the counseling period will be extended to 90-calendar days. I will only gather enough information on the claim(s) and basis (es) to assist in acceptance determination in the event that an ADR resolution is not reached. I will have no further involvement in resolving the matter until I am advised of the outcome of the ADR process. If resolution is not reached I will issue you a Notice of Right to File a Discrimination Complaint. Your choice to participate in the ADR process must be in writing.

d. If you are in the bargaining unit, you may have the right to file a grievance on this matter through a union negotiated grievance procedure that accepts issues of discrimination. However, you may not file both an EEO complaint and a grievance. Whichever you file first a formal EEO complaint or a Step 1 of a grievance will be considered an election to proceed in that forum.

e. If you are disputing a matter which can be appealed to the Merit System protection Board (MSPB), you may file an EEO complaint or an MSPB appeal which will be considered an election to proceed in that forum.

f. Within thirty (30) days of your first contact with an EEO Counselor, you have the right to receive a written notice terminating counseling and informing you of the right to file a formal complaint (unless the time period has been extended by your prior written consent). You also have the right, at the conclusion of counseling, to file a formal complaint within **fifteen (15) calendar days** of receipt of the written Notice of Right to File a Discrimination Complaint from me.

g. If you allege age discrimination, you have the right to file a lawsuit in Federal District Court, without filing a formal EEO complaint. Your lawsuit must be filed within 180-calendar days of the date of the alleged discriminatory act. However, you must first notify the Equal Employment Opportunity Commission (EEOC) 1801 L Street, NW, Washington, DC, 20507 of your intent to do so, at least 30-calendar days in advance of the filing of your lawsuit.

R.379

03/27/00    15:56    ☎7█    █ 6022    VAMC LEBANON    ☎007

Agency Decision form █ epartment of Veterans Affairs, or a █ █ █ efore an Administrative judge of the EEOC after 180 days fror █ e date you file your formal complaint, o █ er completion of the investigation, whichever come first. If you request a Final Agency Decision, your request should be addressed to the EEO Officer (08G), Office of Resolution Management, 4101 South 4th Street Trafficway, Building 21, Leavenworth, Kansas 66048. If you request an EEOC hearing, your request should be addressed to the (Address of: Denver or St. Louis EEOC District Office), with a copy to the above named EEO Officer.

j.  Except for complaints of age discrimination, you have the right to file a lawsuit in Federal District court an any time 180-calendar days after filing a formal complaint or up to ninety (90) calendar days after receipt of a Final Agency Decision from VA. You may also appeal a Final Agency Decision to EEOC within thirty (30) calendar days of receipt of the decision. If you choose to appeal a Final Agency Decision to EEOC, you have the right to file a lawsuit in Federal District Court at any time after 180-calendar days from the filing of such an appeal, or up to ninety (90) calendar days after receiving an appellate decision form EEOC.

k.  If you believe that other individuals, similarly situated to you, have suffered from the same kind of discrimination, you may have the right to file a class action complaint. A class action complaint must allege that you have been individually harmed by a VA personnel management policy or practice which has similarly harmed numerous other class members. You must also allege that there are questions of fact that are common to, and typical of, the claims of the class, and that you or your representative will fairly and adequately protect the interest of the class. EEOC also requires that a class agent be represented by a qualified attorney.

l.  You have the responsibility to cooperate with VA during the processing of your complaint. If you file a formal EEO complaint, you must keep the VA informed of your current address; you must claim any certified mail sent to you; and you must cooperate with any investigator assigned to your complaint. If you eventually file an appeal with EEOC about your complaint, you must serve copies of your appeal papers on VA.

m.  If your complaint involves back pay, you have a duty to mitigate damages by actively seeking and/or retaining employment. Interim earnings or amounts, which could be earned by a complainant with reasonable diligence, generally must be deducted from back pay.

n.  If you have filed two or more complaints, the agency will consolidate them after appropriate notice to you. When a complaint has been consolidated with one or more earlier complaints, the agency shall complete its investigation within the earlier of 180 days after the filing of the last complaint or 360 days of the filing of the first complaint

o.  Finally, if a formal EEO complaint is filed you must limit your complaint to only matters raised at the counseling stage, or matters that are like or related to them (that is, matters which are directly related to those matters or which are unmistakably derived from those matters). Additionally, if you wish to amend a previously filed complaint, only matters that are like or related to the claim(s) in the pending complaint may be added.

p.  To protect your rights, discuss everything with me before you file a formal EEO complaint.

Please note that if a complaint is filed on the basis of sexual orientation, you do not have appeal rights beyond the Department of Veterans Affairs.

If you wish to discuss your rights and responsibilities further, please advise me.

_George Irvin_                                3/10/2000
George Irvin, EEO Counselor                   Date
(908) 580-3513   Fax (908) 580 3547

_Lewis W. Johnson_                            3/25/00
Lewis Johnson, Aggrieved                      3-25-00 LW
                                              Date

_Aggrieved's Representative_                  3-21-2000
Aggrieved's Representative                    Date

2                                    G-0216

R. 380

# NEGOTIATED GRIEVANCE PROCEDURES NOTICE

U. S. Equal Employment Opportunity Commission (EEOC) regulations in Title 29 CFR, Part 1614, Section 1614.105(b), require that I, as an EEO Counselor, notify you at the initial contact, as soon as possible thereafter, that 5 U.S.C. 7121(d) may apply to the alleged discriminatory act, which caused you to seek counseling.

You are alleging discrimination based upon race, color, religion, sex, national origin, age, or disability, and:

♦ You are an employee of a federal agency subject to the provisions of 5 U.S.C 7121(d), and

♦ You are covered by a collective bargaining agreement, which permits allegations of discrimination to be raised through the negotiated grievance procedures.

You may seek resolution of the alleged discrimination action by filing either:

a) A grievance under the negotiated grievance procedures. You may file the grievance before, during or after EEO counseling, but not after you file a formal discrimination complaint through EEO; or

b) A formal discrimination complaint through EEO if the matter is not resolved through EEO counseling.

If you have questions concerning the applicability of 5 U.S.C. 7121(d) to you, you should immediately contact a representative of the labor organization under which you are covered. If you have questions on counseling under 29 CFR, Part 1614, you should ask me or another EEO Counselor.

## Certification

I hereby certify that I have been informed of the applicability of 5 U.S.C. 7121(d) to my allegation(s) of discrimination. The EEO Counselor has told me the substance of 29 CFR, Section 1614.301 (printed on the second page of this form). I understand that the original or a copy of this form will be made a part of the EEO Counselor's file as evidence of the EEO Counselor's compliance with 29 CFR, Section 1614.105(b).

_Lewis W. Johnson_                           3-25-00
Lewis Johnson, Aggrieved Party               Date

_William T. Dumps_                           3-25-2000
(Aggrieved Party's Representative)           Date

_George Irvin_                               3/16/2000
George Irvin, EEO Counselor)                 Date

G-0217

R.381

03/27/00   15:29   ☎717 228 6022          VAMC LEBANON



DEPARTMENT OF VETERANS AFFAIRS
OFFICE OF RESOLUTION MANAGEMENT
LYONS, NEW JERSEY 07939

### PERMISSION TO EXTEND COUNSELING

1.  EEOC regulations provide for EEO counseling to be completed within thirty (30) calendar days of the initial contact with me. Prior to the end of the 30-day period, you may agree, in writing, to postpone the final interview and extend the counseling period for an additional period of no more than sixty (60) days. If the matter has not been resolved before the conclusion of the agreed extension, the Notice of Right to File a Discrimination Complaint will be issued.

2.  When the Agency has an established Alternative Dispute Resolution (ADR) procedure, and you agree to participate in the procedure, the pre-complaint processing period shall be no more than ninety (90) days. If the matter has not been resolved before the 90th day, the Notice of Right to File a Discrimination Complaint will be issued.

3.  I will not attempt in any way to restrain you from filing a formal complaint. I will not reveal your identity, except when authorized to do so by you, or until a formal complaint of discrimination is received involving the same matter(s) you brought to my attention.

4.  In order for you to enter into Mediation (ADR), beyond the initial 30-calendar day period, the extension must be approved in writing.

5.  Please indicate below whether your permission is granted for an extension for the period indicated:

    _____✓_____   I agree to an extension of fifteen (15) days, until 3/30/2000

    _____   I do not agree to an extension.

_____Lewis M. Johnson_____          _3-25-00_
(Lewis Johnson, Aggrieved Party)          Date

**G-0218**

R-382





DEPARTMENT OF VETERANS AFFAIRS
OFFICE OF RESOLUTION MANAGEMENT
LYONS, NEW JERSEY 07939

## ROLE AND RESPONSIBILITIES OF THE EEO COUNSELOR

1. I am an information gatherer.

2. My counseling activities are intentionally informal in order to contribute to a climate within which facts may be given freely and resolutions explored by both parties with minimum tension.

3. I talk with the principles in the dispute in a casual and non-intimidating manner.

4. As an EEO Counselor, I do not resolve complaints. My job is to assist the parties of the complaint in their efforts to reach an amicable agreement between themselves.

5. I am not a representative or an advocate of the Aggrieved Party. I do not, for example, advise the Aggrieved Party to file a complaint. (I do not advise him/her NOT to file either).

6. I do not offer opinions about the merits of the case.

7. I provide the Aggrieved Party with technical information about how the process works and about their rights and responsibilities during the process.

8. I help the Aggrieved Party explore options for resolution of the case.

9. I am not management's representative; however, I am an agent of the Office of Resolution Management (ORM).

**G-0219**

GEORGE IRVIN, EEO Counselor

R.383



DEPARTMENT OF VETERANS AFFAIRS
OFFICE OF RESOLUTION MANAGEMENT
LYONS, NEW JERSEY 07939

3/30/2000

*In reply refer to:* ORM/08E

Lewis Johnson
1025 Harmony Hill Drive
Lebanon, PA 17046

Dear Mr. Johnson:

I am closing the informal counseling on the matter you presented to this office on 2/15/2000.  Your complaint is as follows:

Basis: Reprisal

Claim: You stated that the facility failed to follow Injury Compensation for Federal Employees
       Publication CA-810 guidelines

Date of Occurrence: 1/28/2000

Resolution: You stated that your doctor does not want you working at Lebanon VAMC, because you suffer with postman's syndrome. You also stated that you wish to work at another VA facility or to be retrained to work in a different position at another VA facility within 30-mile radius. You further stated if records show that Mr. Raymer Kent, Joseph Stuckey and Rodney Kiscadden have violated any federal law concerning your OWCP claim, you want that information forwarded to the federal authorities for investigation towards prosecution. You then stated that you want all medical expenses to been paid.

Please notify me no later than 4/7/2000, If the above information is incorrect.

I am enclosing two copies of the Notice of Right to File a Discrimination Complaint (including VA Form 4939).  Please sign both copies as indicated by the "sign here tabs", retain one copy for your records and return the *ORM copy* to the following address:

> Department of Veterans Affairs
> Office of Resolution Management (08E)
> 151 Knollcroft Road, Building #16            **G-0208**
> Lyons, New Jersey 07939
> Attn:  *George Irvin*

If you decide to file a formal complaint, you have 15 calendar days from receipt of this notice in which to do so.  Please do not mail the VA Form 4939 to me; your formal complaint must be mailed to one of the addresses listed on the first page of the attached Notice of Right to File a Discrimination Complaint.

If you have any questions or need assistance, please call me on our toll free number at (888) 737-3361.

R.384



Johnson
DEPOSITION
EXHIBIT #34
4-24-02   Opm



6. You must identify each event you are protesting and provide the date on which each event occurred. Your complaint must be specific and limited to the events you discussed with me. Therefore, if there are any events that you have not discussed with me, please do so immediately. Regulations require that you provide the Department with an opportunity to resolve each event informally at EEO counseling.

7. You are entitled to representation at every stage of the complaint process. You may choose anyone to represent you, unless that person occupies a position within the VA that would create a conflict of interest. If you do select a representative, you must inform this ORM Field Office of your representative's name and business address.

8. If you are a member of the bargaining unit, you may have the right to dispute the events you discussed with me through the union grievance procedure. Regulations provide that you may file a grievance or an EEO complaint about the events in dispute, but not both. Should you file both, whichever you file first (a union grievance or an EEO complaint) will be considered your election to proceed in that forum.

9. If you are complaining about a matter which may be appealed to the Merit Systems Protection Board (MSPB), you may file an EEO complaint or an MSPB appeal, but not both. Whichever you file first (a formal EEO complaint or an MSPB appeal) will be considered your election to proceed in that forum. If I can be of further assistance to you, please advise.


Issued by:  _George Irvin_____     _3/30/2000_____
            George Irvin,  EEO Counselor           Date


Received by:  _Lewis W. Johnson_____     _4-7-00_____
              Lewis Johnson, Aggrieved              Date




**G-0209**


R.385

Z 400 655 933

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (*See reverse*)

| | |
|---|---|
| Sent to  *LEWIS JOHNSON* | |
| Street & Number  *1025 HARMONY HILL DRIVE* | |
| Post Office, State, & ZIP Code  *LEBANON, PA 17046* | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ |
| Postmark or Date | |

PS Form 3800, April 1995

**MAR 3 0 2000**

G-0213

R. 386

NOTICE OF RIGHT TO FILE 9 V935

**SENDER:**
- ☐ Complete items 1 and/or 2 for additional services.
- ☐ Complete items 3, 4a, and 4b.
- ☐ Print your name and address on the reverse of this form so that we can return this card to you.
- ☐ Attach this form to the front of the mailpiece, or on the back if space does not permit.
- ☐ Write *"Return Receipt Requested"* on the mailpiece below the article number.
- ☐ The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

3. Article Addressed to:

Lewis Johnson
1025 Harmony Hill Drive
Lebanon, PA 17046

4a. Article Number
2 400 655 973

4b. Service Type
- ☐ Registered          ☑ Certified
- ☐ Express Mail        ☐ Insured
- ☐ Return Receipt for Merchandise   ☐ COD

7. Date of Delivery
4-4-00

5. Received By: (Print Name)

8. Addressee's Address (Only if requested and fee is paid)

6. Signature (Addressee or Agent)
Lewis W. Johnson

PS Form 3811, December 1994          102595-99-B-0223     Domestic Return Receipt

*Is your RETURN ADDRESS completed on the reverse side?*

*Thank you for using Return Receipt Service.*

G-0214

R. 387

1025 Harmony Hill Drive
Lebanon, PA 17046

April 6, 2000

George Irvin, EEO Counselor
Department Of Veterans Affairs
Office Of Resolution Management
Lyons, New Jersey

Subj:  Revised Resolution

Dear Mr. Irvin.

Pursuant to our conversation on Tuesday, April 5, 2000, please find enclosed my

resolution request.  Additionally, I have omitted your reference to the 'postman syndrome'.

That term did not originate from my doctor but was an attempt by Mr. Dumas, to explain why my

doctor do not want me to return to work at the Lebanon VAMC.

Thank you in advance for your professionalism in this matter.

Sincerely,

Lewis W. Johnson

encl.:

**G-0211**

R 388




Johnson
DEPOSITION
EXHIBIT 35
4-24-02



U.S. POSTAGE
PAID
LEBANON PA
17042
APR 07 '00
**$2.98**
AMOUNT
000207S1-17

0000

UNITED STATES
POSTAL SERVICE

RETURN RECEIPT
REQUESTED

CERTIFIED MAIL

7099 3400 0002 4098 2548

Department of
Veterans Affairs
Office of Resolution Management
151 Knollcroft Road   Building 16
Lyons NJ 07939

OFFICIAL BUSINESS
Penalty for private use $300

Department of Veterans Affairs
Office of Resolution Management
151 Knollcroft Road
Building 16, 3rd Floor
Lyons NJ 07939-5000
Attn: G. Irvin

07939-5000 99

**G-0212**

R·38A



# Revised Resolution

As provided by Lewis W. Johnson:

This is the requested resolution regarding the complaint alleging Raymer Kent, Joseph Stuckey and Rodney Kiscadden, management level employees, of the Lebanon Veterans Affairs Medical Center, who conspired to prevent me from receiving workers' compensation benefits. Raymer Kent, Joseph Stuckey and Rodney Kiscadden deliberately failed to follow the procedures as set forth by Injury Compensation for Federal Employees - CA 810, Federal Employees Compensation Act and violations of the United States Code. The CEO, Charlene Szabo, at all times failed to take appropriate action to remedy the acts (situation) once informed. I am requesting the maximum allowable amount of monetary award, payment of all related expenses, including medical, retention of employment, to include transfer to a facility within twenty five miles of the Lebanon VAMC and referral to the U.S. Attorney or such other agency with similar authority should a violation of federal statutes be found, for the purpose of investigation and possible prosecution.

*Lewis W. Johnson*  4-7-00
Lewis W. Johnson

**G-0210**

R-390

Johnson
DEPOSITION
EXHIBIT #36
4-24-02 GDm



APR 13 00 01:54P    Bob Bailey    717 221 9800    P.2

# COMPLAINT OF EMPLOYMENT DISCRIMINATION

**VA Department of Veterans Affairs**

| 1. NAME (Last, first, middle initial) (Please print) | 2. MAILING ADDRESS | 3a. WORK TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| Johnson, Lewis W. | 1025 Harmony Hill Dr. Lebanon, PA 17046 | (717)-272-6621 Ext 4665 |
| | | 3b. HOME TELEPHONE NUMBER (Include Area Code) (717)270-0454 |

| 4. ARE YOU: | 5a. JOB TITLE, GRADE AND SERIES | 6. NAME AND ADDRESS OF VA FACILITY WHERE DISCRIMINATION OCCURRED |
|---|---|---|
| [X] A VA EMPLOYEE | Housekeeping Aid WG-2 | Lebanon VAMC 1700 South Lincoln Ave So. Lebanon, PA 17042 |
| [ ] AN APPLICANT FOR EMPLOYMENT | 5a. SERVICE/SECTION/PRODUCT LINE | |
| [ ] A FORMER VA EMPLOYEE | Environmental management | |

**INSTRUCTIONS:** For each employment related claim(s) that you believe was discriminatory, list the bases for your complaint: (list one or more): Race (Specify), Color (Specify), Religion (Specify), Sex (male or female), Sexual Orientation, National Origin (Specify), Age (Provide date of birth), Disability (Specify), and Reprisal (for prior EEO activity or having opposed discrimination).

| 7. BASIS | 8. ISSUE(S) (What employment related claim(s) - personnel action(s), incident(s), or event(s), that caused you to file this complaint? Briefly, describe what happened below. Use an additional sheet of paper if necessary.) | 9. DATE OF OCCURRENCE (Include the most recent date(s)) |
|---|---|---|
| See Attached | See Attached | See Attached |
| | RECEIVED APR 13 2000 | |

**10. WHAT RESOLUTION ARE YOU SEEKING?**

G-0168

| 11a. DO YOU HAVE A REPRESENTATIVE? | 11b. IF "YES," IS HE OR SHE AN ATTORNEY? | 11c. PROVIDE THE NAME, ADDRESS, AND TELEPHONE NUMBER OF YOUR REPRESENTATIVE |
|---|---|---|
| [X] YES  [ ] NO | [ ] YES  [X] NO | William Dumas 20 Dumas Lane Jonestown, PA 17038 (717)-865-9401 |

| 12a. HAVE YOU CONTACTED AN EEO COUNSELOR? | 12b. NAME OF EEO COUNSELOR | 13. DATE OF INITIAL CONTACT WITH ORM |
|---|---|---|
| [X] YES  [ ] NO | George Irvin | 2-14-00 |

**14. NOTE:** If you contacted an EEO Counselor more than 45 calendar days after the Date(s) of Occurrence, item 9 above, or if this complaint is filed more than 15 calendar days after receipt of a Notice of Right to File a Discrimination Complaint from an EEO Counselor, you must explain why you were untimely in seeking EEO counseling or in filing your EEO complaint. Provide your explanation on a separate sheet of paper.

| 15a. HAVE YOU FILED A UNION GRIEVANCE ON ANY OF THE ISSUE(S) LISTED ABOVE? | 15b. IF "YES," LIST THE ISSUE(S) AND DATE GRIEVANCE FILED | 16a. HAVE YOU FILED AN APPEAL WITH THE MERIT SYSTEM PROTECTION BOARD (MSPB) ON ANY OF THE ISSUE(S) LISTED ABOVE? | 16b. IF "YES," LIST THE ISSUE(S) AND DATE MSPB APPEAL FILED |
|---|---|---|---|
| [ ] YES  [X] NO | | [ ] YES  [X] NO | |

| 17a. HAVE YOU FILED THIS COMPLAINT WITH ANYONE ELSE? | 17b. IF "YES," PROVIDE THE NAME AND ADDRESS | |
|---|---|---|
| [ ] YES  [X] NO | | DATE FILED __4/13/00 fayetric id (. h)__ |

| 18. SIGNATURE OF COMPLAINANT (Do not print) | 19. DATE |
|---|---|
| Lewis W. Johnson | 4-12-00 |

VA FORM OCT 1998 (R) 4939

Johnson DEPOSITION EXHIBIT #39 4-24-02  GDH

R-333 R-341

Apr 13 00 01:54p        Bailey                     221 9800         p.3

## COMPLAINT OF EMPLOYMENT DISCRIMINATION
### FORM 4939

Additional sheet.

Item 7.  Basis:

  1. Reprisal and retaliation due to prior EEO activities.

   On October 18, 1999, I filed an EEO complaint of harassment, verbal harassment, stalking and assault, based on race/color against Irvin Erickson, a white Lebanon VA Medical Center employee. I also alleged that management failed to take appropriate action once informed of the on-going actions of Irvin Erickson.

  2. Race

   African-American

  3. Color

   Black

  4. Sex

   Male

   The on-going acts of harassment, verbal harassment, stalking and assault, caused me to become ill and seek medical attention. As a result, I became disabled and attempted to apply for workers' compensation benefits due to a work related illness. Lebanon VA Medical Center employees, Raymer Kent, Joseph Stuckey and Rodney Kiscadden, all white, sought to prevent and/or delay the receipt of workers' compensation benefits, by circumventing the application process, due to reprisal and retaliation.

**G-0169**

Item 8. Issue(s)

  1. On or about, October 26, 1999, I arrived in the Human Resources Offices and informed Mr. Stuckey, that I wanted to apply for workers' compensation benefits, as I was instructed by Union Representative Robert Dennis. Mr. Stuckey used trickery and deception to cause me to file a CA-1 form. Mr. Stuckey well knew that the CA-1 form was for traumatic injuries occurring during a particular shift or a given day. They, management employees caused me to believe the procedures they were using for expediting the claim were at all times procedurally correct.

R.392

Apr 13 00 01:54p        Ron Bailey

1(a).    On December 13, 1999, I was informed by Phil Haven Hospital staff that Mr. Kent was faxed an Initial Medical Evaluation and Release Of Information from my therapist, dated October 21, 1999, and as well the medical records revealed Mr. Kent discussed with my therapist on October 21, 1999, the nature of my medical problem and treatment, which caused them to know that my illness was not traumatic as would necessitate or require the filing of a CA-1, Notice of Traumatic Injury.  However, Mr. Stuckey, with the approval of Mr. Kent, used trickery and deceit to cause me to file a CA-1.

1(b)    As to the Initial Medical Evaluation, dated October 21, 1999, which was faxed to Mr. Kent.

(b)(1)  I was not provided nor informed by any agency employee, that this document had been received by them.

(b)(2)  I learned from my therapist that this document had been faxed to Mr. Kent at the VA Human Resource Office, attention to Ms. McGuiggan on December 13, 1999.

(b)(3)  Mr. Stuckey failed to provide this document to OWCP until December 29, 1999, with the filing of the CA-2 and attempted to make it appear to OWCP that this document was not obtained by him until December 28, 1999.

(b)(4)  Neither Mr. Kent nor Mr. Stuckey forwarded this document to my immediate supervisor nor my product line.

1(c).  I met with Mr. Kent on or about October 22, 1999 to present to Human Resources, medical documentation as to pending sick days and at that time we discussed the incidents involving the white employee.  As such, both Mr. Kent and Mr. Stuckey knew my work related injury did not mandate the filing of a CA-1.  In fact, Mr. Kent stated at that time, I should have been able to handle the situation due to my program of recovery.  (Twelve step recovery program).

1(d).  To further deceive me into filing the incorrect form CA-1, on October 26, 1999, Mr. Stuckey indicated that the forms would be completed while in a computer.  At this point, Mr. Stuckey deliberately failed to provide me with a two sided form CA-1 ( page 2 of the CA-1).  Page 2, of the CA-1, contains the instructions for filing of the CA-1, which federal regulations require be given the employee.

1(e).  Mr. Stuckey, by not providing me with the instructions, prevented me from taking the form directly to Rodney Kiscadden, my immediate supervisor, as per the instructions, which I would have done.

1(f).  Mr. Stuckey, who is the agency's OWCP liaison, superseded the regulations, once he took on the role as my supervisor.  Mr. Stuckey took on this role as my supervisor in order to assure that he be in the position to continue to circumvent the process.

G-0170

1(g).  On November 23, 1999, which was the day of my representatives' first visit to the Human Resource Office. we asked Mr. Stuckey to file a CA-2.  Mr. Stuckey outright refused.  Mr. Stuckey also stated there was a delay because, " Philadelphia controverted the claim."  This was the very first time I was informed the claim had been controverted in any manner.

2.  On or about November 30, 1999, my representative and I requested Mr. Stuckey to withdraw the CA-1 and to file instead a CA-2.  Mr. Stuckey refused stating, " I thought it may be the wrong form but it will not be a problem at any rate. "  Mr. Stuckey also stated after reading the reports and allegations, he controverted the claim because he felt something was amiss.  He went on to state at least he did not leave it sitting on his desk.  I learned sometime later, that in the past at least one workers' compensation claim had been held up by not being processed.

3.  On December 13, 1999 we reviewed the records and found a controversion letter written and signed by Mr. Stuckey.  We also found the Release of Information.

4.  Mr. Stuckey, selectively forwarded information to OWCP, which he felt was favorable to the agency, as evidenced by his letter and attachments to OWCP dated, December 3, 1999.

5.  Though, Mr. Stuckey alleges he was unable to obtain medical records from the treating medical facility. he had in his possession a signed Release of Information Form, dated October 21, 1999. Additionally evidence of his knowledge of this form and his need to use said form is evidenced in his letter as referenced in 4 above.

6.  Mr. Stuckey did not inform me of the need for any additional medical documentation until questioned by my representative, on November 30, 1999, where Mr. Stuckey stated. " Lewis has failed to provide me with any additional medical reports."  Mr. Stuckey also stated he had just sent a letter that morning asking me for additional medical documentation."   Mr. Stuckey had an obligation, per the regulations to inform me of the need for additional medical documentation, within ten days of the filing of the claim.

7..  I was told, by Mr. Stuckey, on October 26, 1999 to enter a confidential password on his computer system and told as such no one would be able to access nor altered the forms. However, we found this to be untrue. On December 23, 1999, I received a message on my home answering machine from Mr. Stuckey, to come in to sign a CA-2. On arrival. a Mr. Tony Augustine, Personnel Management Specialist stated Mr. Stuckey had left the CA-2 to be signed with him. After perusing the documents I refused to sign it because it did not contain all the files. in particular Rodney Kiscadden's narrative.  Several days later, December 28, 1999 we found two changes had been made to the CA-2 without my being present.

**G-0171**

7(a)    My signature was typed in and dated Dec. 20, 1999.

7(b)    My statement in item number 15 of the CA-2, ( notice was given. however ca-1 was filed erroneously on 10-18-99 as claim no. 03-0246931.) had been moved to item



number 16.  As evidence of this, we refer to the word ' notice ' of my statement as well as in the question as asked in item number 15.  I feel this change was to accomplish two goals.  First to avoid our explanation as to the erroneous filing of the CA-1 and as explanation for the omission of my narrative. ( I found on December 28, 1999. ( CA-2 form ) my narrative was missing from the records to be sent to OWCP and I insisted it be sent.  This can be proven by Mr. Stuckey's first attempt to fax these records to OWCP ).

8.  On November 30, 1999, Mr. Stuckey was again asked to withdraw the CA-1 claim and to submit a CA-2.  Mr. Stuckey refused to file the CA-2 form, stating, " I discussed this with Philadelphia and was told it was the correct claim form."

9.  On several occasions, my representative and I sent letters to Charlene Szabo, CEO, Lebanon VA and followed up with telephone calls, in an attempt to seek her assistance in this matter, prior to filing an EEO complaint.  Ms. Szabo consistently failed to follow agency guidelines to address complaints of discrimination.  Ultimately, Ms. Szabo, in a letter dated February 6, 2000 indicated there is an EEO procedure we could use.  Said letter was received the day after the EEO complaint was made, February 15, 2000. .

10.  Mr. Stuckey, in violation of the regulations, assumed the position of my immediate supervisor, by providing a narrative of the facts in a letter dated November 1, 1999 and forwarded to Department of Labor.  This letter was not based on facts or evidence and was intended to mislead OWCP.

11.  Mr. Stuckey at all times prior to November 30, 1999, refused to provide me with a CA-7 form, indicating I had to wait until a decision was made in Philadelphia.  Mr. Stuckey provided me with the CA-7 form on November 30, 1999, when requested by my representative.

12.  During a meeting with Mr. Stuckey on or about December 20, 1999, my representative was forced to resort to subterfuge in order to obtain a CA-2 from Mr. Stuckey. After obtaining the CA-2, my representative and I began the claim process by taking  the CA-2 to Rodney Kiscadden, my immediate supervisor to have it completed.

13.  After Mr. Kiscadden completed the CA-2 and sent it to Mr. Stuckey, we reviewed it and found Mr. Kiscadden's narrative missing. ( Mr. Kiscadden had began writing his narrative while in the presence of Mr. Dumas and I )  After complaining to Raymer Kent about the missing narrative and the overall problems encountered in the claim process, Mr. Kent angrily shouted, " We have done all we are going to do for you people and we will do no more. "  Due to the subject matter and manner this was said, it was obviously a derogatory statement based on our race, Black.
( Note: According to Mr. Dumas, I became visibly ill and left the office after hearing Mr. Kent's comment )

14.  I learned on January 28, 2000 that Mr. Stuckey with the apparent approval of Mr. Kent, secreted parts of the police reports and failed to forward same to OWCP, with the original CA-1.

G-0172

R.395

15. On or about December 20, 1999, during a meeting with Mr. Stuckey and Mr. Kent, we, including Mr. Dumas discussed the issues involving my complaint of harassment, verbal harassment, stalking and assault against Eric Erickson. Mr. Kent stated apparently there was a misunderstanding and they did not realize that Erickson followed me around the VA after being told not to bother me. Mr. Kent also stated they would follow up with the Lebanon VA Police to correct their apparent mistakes. Several weeks later Mr. Kent informed Mr. Dumas that he had spoken to the VA Police Chief and that there would be no follow-up.

16. On February 8, 2000, in the presence of a Mr. Earl Williams, during conversations regarding medical documents, Mr. Stuckey stated to me, " I am your acting supervisor in these matters ". A letter to Rodney Kiscadden, from me and Mr. Kiscadden's subsequent response indicate Mr. Stuckey is not my supervisor. Mr. Stuckey should not have assumed this role.

17. On or about March 3, 2000, during a meeting with Mr. Kiscadden. Mr. Kiscadden stated that when he attempted to do the workers' compensation claim form in my case, he was told that he was not involved in the process. Mr. Kiscadden stated that Mr. Stuckey showed him a document indicating that only the ' superior supervisor ' would handle these matters, with Johnson. Further, Mr. Kiscadden apologized for Mr. Stuckey " screwing up " my claim.

18. On March 3, 2000, Mr. Dumas and I arrived unexpectedly at Mr. Stuckey's office and requested to review the OWCP file as pertaining to my claim for workers' compensation benefits, which were in Mr. Stuckey's possession. Mr. Stuckey removed several documents from the file prior to allowing me to review the file. At least one of the documents clearly had my name on it. When asked to see the documents or know there contents, Mr. Stuckey refused and placed them in a desk drawer.

Lewis W. Johnson

Dated: _4/12·00_

**G-0173**





**DEPARTMENT OF VETERANS AFFAIRS**
OFFICE OF RESOLUTION MANAGEMENT
151 Knollcroft Road, Building 16
Lyons NJ 07939

MAY 1 0 2000

*EEO Hearing #*
*170-A0-8479*

*Via Certified Return Receipt & Regular Mail*

In Reply Refer To:  ORM/08E

Mr. Lewis Johnson
1025 Harmony Hill Drive
Lebanon, PA  17046

**Subj:  Final Agency Decision EEO Complaint Case Number 200H-1663 filed April 13, 2000**

1.  The purpose of this letter is to advise you of the disposition of your complaint of discrimination filed on April 13, 2000, against officials of the Department of Veterans Affairs Medical Center, Lebanon.

2.  Your formal complaint raises a claim that were treated in a disparate manner based on race (Black) and reprisal when your Office of Worker's Compensation (OWCP) Disability Claim was controverted on 1/28/2000.  In support of that claim you identify the following events:

   (a)  Human Resources staff erroneously informed you to file a CA-1 form and/or an incomplete CA-1 form (in so far as the form provided by them lacked instructions) in connection with your claim in or about October, 1999;

   (b)  Human Resources staff failed to inform you that an "Initial Medical Evaluation" form was faxed to them on October 21, 1999 by your health care provider;

   (c)  Mr. J.S., Personnel Management Specialist and the Agency's OWCP liaison, took on a role as your supervisor to undermine your OWCP claim during the period of the pendancy of your claim;

   (d)  Mr. J.S. provided an erroneous narrative of the facts to the Department of Labor on November 1, 1999;

   (e)  Mr. J.S. refused to withdraw the CA-1 form you filed and instead file a CA-2 form on or about November 30, 1999, thus holding up the processing of your claim;

   (f)  Mr. J.S. alleged he was unable to obtain medical records from your treating medical facility and did not inform you of a need for additional medical documentation.  You become aware of this omission on November 30, 1999;

G-0142    R.397
RAPP



*Johnson*
**DEPOSITION
EXHIBIT #41**
4-24-02 GDM

(g) Mr. J.S. refused to file the CA-2 form and withdraw the CA-1 form on November 30, 1999;

(h) Mr. J.S. failed to provide you with a CA-7 form prior to November 30, 1999;

(i) Mr. J.S. changed the CA-2 form without your approval in December, 1999 and did not attach all relevant files;

(j) Mr. J.S. selectively forwarded information to OWCP to the detriment of your claim on or about December 3, 1999;

(k) Human Resources staff failed to timely provide the "Initial Medical Evaluation" form to OWCP until December 29, 1999 and failed to provide this document to your supervisor;

(l) Mr. J.S. omitted a narrative from a completed CA-2 form provided to him by your immediate supervisor, Mr. R.K. in December, 1999;

(m) Mr. J.S. omitted parts of police reports from the submissions to OWCP, an omission which you learned of on January 28, 2000; and

(n) On March 3, 2000, Mr. J.S. removed several documents from your OWCP file before allowing you to review it.

3. We have determined the claim you raise does not meet procedural requirements, and is therefore DISMISSED for the following reason. EEOC regulations provide for dismissing a complaint where the complainant fails to state a claim if the subject of the complaint is a matter over which the agency had no jurisdiction or authority. In the instant complaint, the complainant fails to state a claim regarding denial of his Worker's Compensation Claim since it is a matter over which the Department of Veterans Affairs has no authority or jurisdiction. Another agency is solely responsible for the matter at issue, in this instance the Department of Labor is solely responsible for denial of a work related injury claim under the Worker's Compensation Program. The Department of Veterans Affairs lacks jurisdiction over this matter. Accordingly, your complaint is DISMISSED for failure to state a claim. Authority: 29 C.F.R. 1614.107(a) (1).

According, it is my decision to DISMISS the claim you bring forward in the instant complaint for failure to state a claim. Authority: 29 C.F.R. 1614.107 (a) (1) .

4. This constitutes the final agency decision on your discrimination complaint. If you are dissatisfied with this decision, you may appeal in accordance with the enclosed appeal rights. (Form EEOC 573) You have the right to appeal, within 30 days of receipt, a dismissal, final action or decision. Appeals may be mailed to:

<div align="center">

Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 19848
Washington, DC 20036

</div>

G-0143



Or hand delivered to:

<div align="center">

Equal Employment Opportunity Commission
Office of Federal Operations
Appellate Review Programs
1801 L Street N.W.
Washington, DC 20507

</div>

Or sent by fax to:

<div align="center">

(202) 663-7022

</div>

5. If you have any questions concerning the processing of your complaint, please contact Jessica Sedreddine, EEO Intake Specialist, at (908) 580-3507 or by fax (908) 580-3568.

*Robyn Jabenbanda/F*

ROSA C. FRANCO
Regional EEO Officer

cc: Charlene Szabo, FACHE CEO

| Z 400 655 184 | |
|---|---|
| US Postal Service **Receipt for Certified Mail** No Insurance Coverage Provided. Do not use for International Mail *(See reverse)* | |
| Sent to Lewis Johnson | |
| Street & Number 1025 Harmony Hill Dr. | |
| Post Office, State, & ZIP Code Lebanon PA 17046 | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ |
| Postmark or Date | 5-15-00 |

PS Form 3800, April 1995

**G-0144**



## APPEAL RIGHTS

This Final Agency Decision may be appealed within 30 **calendar days** of receipt of this decision. The appeal should be addressed to: **Equal Employment Opportunity Commission (EEOC), Office of Federal Operations, P.O. Box 19848, Washington, D.C. 20036.** If you decide to appeal this decision to EEOC, you should use EEOC Form 573, a copy of which is enclosed.

A copy of your appeal to the EEOC **must** also be sent to the VA Office of General Counsel at the following address: **Department of Veterans Affairs, Office of General Counsel (024), 810 Vermont Avenue, NW, Washington, D.C. 20420.**

Statements or briefs in support of your appeal must be submitted to the EEOC within 30 calendar days of the filing of the appeal. **A copy of any such statement or brief, including any statements made on EEOC's "Appellant Docketing Statement," must also be sent to the VA Office of General Counsel at the above address.** If you have an appeal with the EEOC, your appeal, and any subsequently filed statement or brief, must contain a statement certifying the date and method by which copies of these documents were served on the VA Office of General Counsel.

You should also submit a copy of the appeal to the Regional EEO Officer at the same time that you file the appeal with the EEOC at the following address: **Lyons Office of Resolution Management (08E), 151 Knollcroft Road, Building 16, Lyons, NJ 07939.**

## RIGHT TO FILE A CIVIL ACTION

You also have the right to file a civil action in an appropriate United States District Court. A civil action may be filed:

> Within 90 days of receipt of this final decision **if no appeal to EEOC has been filed; or,**

> If an appeal is filed with the EEOC, within 90 days after receipt of EEOC's final decision on your appeal; or,

> After 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC

If you file a civil action, the head of the Department of Veterans Affairs must be named as the defendant. The head of the Department of Veterans Affairs is **Mr. Togo D. West, Jr.** Mr. West's official title is **Secretary of Veterans Affairs.** Failure to provide the name and official title of the head of the Department may result in the dismissal of your case.



If you file a civil action under Title VII (discrimination due to race, color, religion, sex, national origin, or reprisal); or under the Rehabilitation Act of 1973, as amended, (discrimination due to disability), and if you do not have, or cannot afford the services of, an attorney, the Court may upon your request, appoint an attorney to represent you and permit the filing of the action without payment of fees, costs, or other security. **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action **MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS** of the date of receipt of this final agency decision or, if this decision is appealed to the EEOC, within **NINETY (90) CALENDAR DAYS** of the date of receipt of the EEOC's final decision on the appeal.

**G-0146**



# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1.  FORM NUMBER/TITLE/DATE:   EEOC Form 573, Notice of Appeal/Petition, April 1992.

2.  AUTHORITY:  42 U.S.C. §2000e-16.

3.  PRINCIPAL PURPOSE: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4.  ROUTINE USES: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.

5.  WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

**Send your appeal to:**

**The Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, D.C.  20036**

**G-0147**



F. 09

MAY-29-01 TUE 12:28





**DEPARTMENT OF VETERANS AFFAIRS**
Medical Center
1700 South Lincoln Avenue
Lebanon, PA 17042

August 4, 2000                                            In Reply Refer To:  595/N131

Lewis W. Johnson
1025 Harmony Hills Drive
Lebanon, PA  17046

SUBJ:  Request for Medical Information

1.  You have been absent from duty on leave without pay as a result of a temporary disability
since November 25, 2000.  The maximum amount of leave without pay you can receive is 1 year.
Leave without pay cannot be authorized after November 24, 2000.

2.  You have requested and approved for leave without pay through August 26, 2000.  In order
for me to make a decision concerning your continued absence from duty, and whether or not to
approve your absence, I am asking that you provide the following information about your
medical condition from your physician for review by the Employee Health Physician.

   a.  The history of the specific medical condition, including references to findings from
previous examinations, treatment, and responses to treatment;

   b.  Clinical findings from the most recent medical evaluation, including any of the following
which have already been obtained: finding of physical examination; results of laboratory tests;
the finding of mental status examinations and results of psychological tests.

   c.  Assessment of the current clinical status and plans for future treatment;

   d.  Diagnosis;

   e.  An estimate of the expected date of full or partial recovery;

   f.  An explanation of the impact of the medical condition on life activities, both on and off
the job;

   g.  Narrative explanation of the medical basis for any conclusions that you are, or are not,
expected to suffer injury or harm by carrying out, with or without accommodation, the tasks or
duties of your position of Housekeeping Aid.

R. 403



Johnson
**DEPOSITION**
**EXHIBIT #3**
4-24-02  GDM

MAY-29-01 TUE 12:28                                                                    P. 10

2.

**Lewis W. Johnson**

3.  Please understand that I am concerned for your physical well being, as well as our ability to provide continuity of care to our patients.  This information will enable us to decide appropriate current and continuing assignment of duties.  You must have your physician forward the information to the Employee Health Physician or me by August 18, 2000.  If your physician needs additional time to provide this reply, he or she should contact me directly.  A copy of your position description is attached so that you can share your duties with your physician.

4.  You may wish to consider applying for disability retirement.  Joe Stuckey, Personnel Assistant can answer any questions you have regarding disability retirement.  He can be reached at 272-6621, extension 4060.


RODNEY KISCADDEN
Hospital Housekeeping Officer

cc:
Facilities Manager (N130)
Employee Health Physician (N312)


MHELKO:jme   8/3/00      N121

R. 104

**File Copy**

P. 11

MAY-29-01 TUE 12:27

PERSONNEL SERVICES COPY

# ...TION DESCRIPTION *(Please Read Instructions on the Back)*

| | | 1. Agency Position No. |
|---|---|---|
| | | 595-2736A |

| ... for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. CSC Certification No. |
|---|---|---|---|---|
| [X] Reaescription / Reestablishment / ...planation *(Show any positions replaced)* | [ ] New [ ] Dept'l [X] Field / [ ] Other | VAMC | Lebanon, PA | |

| 7. Fair Labor Standards Act | 8. Employment/Financial Stmt Required | 9. Subject to IA Action |
|---|---|---|
| [ ] Exempt [X] Nonexempt | [ ] Yes [X] No | [X] Yes [ ] No |

| 10. Position Status | 11. Position is | 12. Sensitivity | 13. Competitive Level Code |
|---|---|---|---|
| [X] Competitive [ ] Excepted *(Specify)* | [ ] Suprvsry [ ] Managerial [X] Neither | [ ] Critical [ ] Noncritical [X] Nonsensitive | |

| | | | 14. Agency Use |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. Civil Service Commission | | | | | | |
| b. Department, Agency, or Establishment | | | | | | |
| c. Bureau | | | | | | |
| d. Field Office | Housekeeping Aid | WG | 3566 | 2 | AT | P/27/92 |
| e. Recommended by Supervisor or Initiating Office | | | | | | |

**16. Organizational Title of Position** *(if different from official title)*
Housekeeping Aid – WG-2

**17. Name of Employee** *(if vacancy, specify)*

**18. Department, Agency, or Establishment**
Department of Veterans Affairs

**c. Third Subdivision**
Environmental Management Service

**a. First Subdivision**
DM&S

**d. Fourth Subdivision**

**b. Second Subdivision**
Medical Center

**e. Fifth Subdivision**

**19. Employee Review.** This is an accurate description of the major duties and responsibilities of my position.

**Signature of Employee** *(optional)*

**Supervisory Certification.** I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

| 20. Typed Name and Title of Immediate Supervisor | Typed Name and Title of Higher-Level Supervisor or Manager *(optional)* |
|---|---|
| ARDEN G. WIMER | NEAL B. LEVENGOOD |
| Assistant Chief, EMS (137) | Chief, EMS (137) |
| Signature _____ Date 6/30/92 | Signature _____ Date Jun 30, 199_ |

**21. Classification/Job Grading Certification.** I certify that this position has been classified/graded as required by Title 5, U. S. Code, in conformance with standards published by the Civil Service Commission or, if no published standards apply directly, consistently with the most applicable published standards.

Typed Name and Title of Official Taking Action
TONY AUGUSTINE
Personnel Management Specialist

Signature _____ Date 8/31/92

**22. Standards Used in Classifying/Grading Position.**
WG 3566

Information for Employees. The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the Civil Service Commission. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the Commission.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee *(optional)* | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | AT | 7/93 | | | | | | | | |

**24. Remarks**

**25. Description of Major Duties and Responsibilities** *(see attached)*

| 3006-105 | ☆U.S. Government Printing Office: 1979—261-847/3226 | Optional Form 8 (Revised 8-77) U.S. Civil Service Commission, FPM Chap. 295 |
|---|---|---|



R-396
R-405

P. 12

HOUSEKEEPING AID - WG - 3566 -  2  (595-2736A)

1. **Primary Duties**

   Incumbent of this position cleans ward areas according to
written schedules and procedures and receives general
instructions from the Housekeeping Foreman.  Work is performed in
such areas as patient and treatment areas, clinics, laboratories,
living quarters, storerooms, offices, toilets, lounges, public
areas, stairways, corridors, and other medical center
assignments.  Incumbent operates heavy buffer and battery powered
scrubbing machines when cleaning corridors or when stripping
floors prior to the application of floor finish.  Ladders are
utilized when hanging draperies, cleaning light fixtures, high
dusting, cleaning venetian blinds and for window washing.  Other
tasks such as sweeping, mopping, disinfecting and deodorizing
lavatories, urinals and toilet bowels are also performed.  Cleans
units consisting of bed, mattress, bedside stand, patient
furniture, and overbed table upon discharge of patients.  Cleans
mirrors, sinks and water fountains.  Dusts ledges, window sills,
pipes, woodwork and dust/wash furniture Maintains an adequate
supply of toilet tissue and paper towels, paper waste baskets and
other trash receptacles, and removes trash in plastic bags to
collection points.  Occasionally removes soiled linen bags from
hampers and places in linen chutes or laundry hampers.  Maintains
daily and weekend cleaning and service supplies for area/ward
housekeeping closets.

   Notes condition of floors, wall fixtures and equipment.
Reports discrepancies and safety hazards to immediate supervisor.
Uses various types of hand tools and cleaning solutions,
including acid cleaners and ammoniated stripping solution.
Performs daily maintenance and cleaning of equipment, reports
obvious defects to immediate supervisor.

   Incumbent performs duties in the Patients' Clothing Room,
including proper placement of clothing, boxes and miscellaneous
items on shelves, racks and other storage location, prepares
packages for mailing, transporting some to the mailroom and
performs other clothing room tasks as required in relief of
Clothing Room Clerk.

   Incumbent performs duties in the Employees Uniform Room,
including issuing of employees uniforms, transporting uniforms to
laundry for alterations.  Proper placement of uniforms on shelves
or racks and other uniform room tasks as required in relief of
Uniform room Clerk.

   Incumbent may be asked to assist in on-the-job training of
WG-1 Housekeeping Aids and to guide them in completion of
specific tasks.

R-307
R.406

2

**Housekeeping Aid – WG – 3566 – 2   (595-2736A)**

2.  **Skills and Knowledge**

   Incumbent must have basic ability to follow and understand
written and oral instruction, be able to read signs, move around
well enough to work safely, lift and move objects of moderate
weight without assistance.  Assist with the movement of
furniture.  Incumbent must be able to use common cleaning tools
and vacuum cleaners and must e able to operate heavy powered
equipment such as floor buffers, auto-scrubbers and hot water
extractor and do minor maintenance on this equipment.

3.  **Responsibility**

   Incumbent is responsible to the area Housekeeping Aid Foreman
for timely, safe, effective performance of all duties.  However,
incumbent possesses general and specialized knowledge.  Work is
spot-checked for compliance with established procedures and
standards.

4.  **Physical Effort**

   Regular standing, walking, bending, objects weighing 40
pounds and moving items are required.  Incumbent works
occasionally on ladders and is subject to noise and vibrators
caused by powered equipment.

5.  **Working Conditions**

   Subject to vibrations of cleaning equipment and skin
irritation from strong solutions.  Care is required to avoid
injury when working on ladders.  Subject to dirt and disagreeable
odors.  Incumbent is regularly in contact with infectious waste.
Work is done indoors in areas that normally have adequate heat,
light and ventilation.

MAY-29-01 TUE 12:33    (7172702452)    P. 15

PHILHAVEN SERVICES    F-945 T-902 P-002    AUG 18 '00 10:46

# Philhaven

283 South Butler Road
P.O. Box 550
Mount Gretna, PA 17064
(717) 273-8871
(717) 270-2452 FAX

August 16, 2000

Rodney Kiscadden
*Hospital Housekeeping Officer*
Department of Veterans Affairs
Medical Center
1700 South Lincoln Avenue
Lebanon, PA 17042

RE: Reference # 595-N131
Lewis W. Johnson

Dear Mr. Kiscadden:

I received on today's date a request for a response to your request for medical information regarding Mr. Johnson and I am pleased to reply. A summary of his emotional problems are contained in the attached February 17, 2000 letter to Mr. Johnson. I believe this addresses most of the information you requested. It should be noted that both his alcohol and cocaine dependence did not appear to be a present problem influencing whether or not he was able to work or in fact his current psychiatric symptoms. It should also be noted that he has exhibited improvement and we were able to discontinue the use of Zyprexa. His current medication is Serzone 500 mg. at bedtime. Although improved, he remains depressed related to current financial problems and continued perceived problems in relationship to the Lebanon VA facility. He continues to think that various people there are plotting against him. Due to his improvement, he was approved to return to work as of July 18, 2000 although I initially recommended that he begin part-time work. It continues to be my recommendation that he not return to the Lebanon VA facility for employment based on his symptoms as noted in the accompanying letter.

It is hoped that this information is sufficient to your needs.

Most sincerely,

Richard S. Pakola, M.D.

RSP:smd

Enclosure

R. 408
R. 399

*Behavioral Healthcare Services*



Johnson
DEPOSITION
EXHIBIT #4
4-24-02  GDM

MAY-29-01 TUE 12:34    7172702452    PH HAVEN SERVICES    F-948  968 P-003    AUG 18 '00 10:46    P.10



# Philhaven

283 South Butler Road
P.O. Box 550
Mount Gretna, PA 17064
(717) 273-8871
(717) 270-2452 FAX

February 17, 2000

Lewis W. Johnson
1025 Harmony Hill Drive
Lebanon, PA 17046

<center>RE: File Number 030248172</center>

Dear Mr. Johnson:

You requested a comprehensive medical report defining your symptoms including my opinion as to whether exposure to incidents in your federal employment contributed to your condition. I will attempt to respond to these questions in this letter based on information you have provided to me so that you could use them in your effort to achieve benefits as appropriate either through the Veteran's Association or through workman's compensation.

You were initially seen by myself in our Acute Partial program in which you participated from 10/22/99 until 11/12/99. You followed up with me as an outpatient beginning 11/24/99.

You described emotional problems since childhood involving running away from home reportedly due to felt verbal and physical abuse from your father, chronic problems in managing anger when you feel ridiculed, put down, or degraded, problems with repetitive fighting until approximately age 19 when you were discharged from the service due to this. You noted that you then turned to both alcohol and drugs to "stuff" your feelings down. You reported using alcohol, marijuana, speed, cocaine, and heroin and admitted dependence on both alcohol and cocaine but being free of use of either alcohol or illegal drugs for seven years. You gave a history for five admissions to drug and alcohol programs. Since you have no longer resorted to drug or alcohol use, you admitted frequent depression with withdrawal from others, reactive to aspects of your life situation, reduced enjoyment, and initial insomnia. You reported difficulty handling anger with periodic homicidal ideation all your life but never acting on these thoughts.

You reported being employed since August 1997 at the Lebanon VA facility in the housekeeping department but reported feeling harassed and belittled by a particular co-worker since you began working in this department. You indicated that you made repetitive complaints about this to superiors but felt that nothing was done about it and began to feel as if your superiors and others at the VA facility were plotting against you and actually protecting the individual who you felt was harassing you. You indicated that you became more depressed with this situation and described homicidal ideation toward this particular employee after an incident in which you felt "assaulted" by him. It was these symptoms that resulted in your initial evaluation and referral to our Acute Partial program.

*Behavioral Healthcare Services*

R.409

MAY-29-01 TUE 12:36    7172702452

PHIL HAVEN SERVICES    F-946  9F2 P-004    AUG 18 '00 10:47



Lewis Johnson
2/17/00
Page 2

You have done reasonably well in your treatment at Philhaven. You are less depressed and angry but remain frustrated with thoughts that particular individuals at the VA facility are plotting against you. Your anger at times is manifested by thoughts of actually getting back at them, even homicidal thoughts. You don't feel that you can return to work in the local VA facility and fear that your anger might be provoked resulting in an aggressive outburst.

My diagnostic impression is depressive disorder, not otherwise specified; impulsive control disorder, not otherwise specified; alcohol dependence; cocaine dependence; and possible personality disorder, not otherwise specified. Your symptoms involving suspiciousness, feeling ridiculed, hassled, and thoughts that people are plotting against you suggest the potential for an underlying psychotic condition. Your current psychiatric medication includes Serzone 300 mg. and Zyprexa 5 mg. daily.

It is my opinion that you have pre-existing emotional problems involving feeling abused, having difficulty in dealing with anger, poor impulse control, fighting, use and dependence on alcohol and illegal drugs to suppress your upsetting emotions and more difficulty with depression once you no longer resorted to the use of alcohol and drugs approximately seven years ago.

I have no work history record regarding your ability to function in your housekeeping position or ability to relate to others at the workplace. It appears that there were multiple incidents during your federal employment in housekeeping at the Lebanon VA facility in which you felt mistreated by a single co-worker and that as your complaints to superiors brought no corrective action, you began to feel that they were covering up for this individual eventually thinking that they were plotting against you. The suspiciousness was further aggravated in your efforts to get sick and workman's compensation benefits as you feel that you were deceived by individuals that you spoke to there about the paperwork requirements and by their not filing the forms correctly. The specifics of what actually happened in the workplace, of course, is not known by myself and I am aware of your feeling of mistreatment, betrayal by your superiors and anger with the potential for acting on your angry feelings with physical assaultiveness and possibly even homicidal rage if placed in a situation in which you feel provoked.

It is my opinion that you do suffer pre-existing emotional problems and that specific occurrences between yourself and a fellow employee caused you to feel mistreated and that complaints to superiors requesting corrective action were perceived as being covered up. I recommend against return to work at the Lebanon VA facility in any capacity as minor provocation may result in harmful behavior. It is my opinion that your experience at the Lebanon VA facility aggravated pre-existing emotional problems to the point that you would be currently unable to be safely employed within that facility.

At this point in time you remain significantly symptomatic and your symptoms may limit gainful employment in any setting. It is hoped that eventually you can either be transferred to another

MAY-29-01 TUE 12:39    7172782452     PH? HAVEN SERVICES    F-946   P-005    AUG 18 '00 10:47

Lewis Johnson
2/17/00
Page 3



Veteran's Association facility as I do not think it wise for you to return to the Lebanon VA
facility or be offered rehabilitative services with retraining for a position outside of the Veteran's
Association.

I hope, Mr. Johnson, that the above noted information and opinion will prove helpful to yourself
in achieving appropriate benefits.

Most sincerely,

Richard S. Pakola, M.D.

RSP:smd

R. 411

MAY-29-01 TUE 12:23                                                              P. 06



**DEPARTMENT OF VETERANS AFFAIRS**
**Medical Center**
1700 South Lincoln Avenue
Lebanon, PA 17042

October 24, 2000                                        In Reply Refer To: 595/N12

Lewis W. Johnson
1025 Harmony Hill Drive
Lebanon, PA 17046

SUBJECT: Proposed Removal

1. It is proposed to remove you from your position of Housekeeping Aid WG-3566-2 and from Federal service for the following reason:

> You have been on approved leave-without-pay since November 25, 1999 due to medical problems supported by a physician statement indicating you are unable to return to VA employment. The maximum amount of LWOP authorized is one year, which has been approved through November 25, 2000. You were notified that you could apply for disability retirement, which you have not done. It is proposed to remove you from VA employment due to your inability to return to VA employment because of your current medical condition.

2. You have the right to reply to this notice orally, or in writing, or both orally and in writing, and to submit affidavits and other documentary evidence in support of your reply, showing why the charges are unfounded and any other reasons why this removal should not be effected. The evidence upon which this notice of proposed action is based will be available for your review in the Human Resources Office, Building 18, Room 105. You will be allowed 8 hours of official duty time for reviewing the evidence relied on to support the reasons in the notice, preparing a written reply, securing affidavits, and for making a personal reply. Arrangements for use of official time or requests for additional time should be made with me.

3. You will be given 14 calendar days to reply to these reasons orally or in writing or both orally and in writing , and to submit any affidavits or other documentary evidence. Your written reply should be submitted through me to the Chief Executive Officer. The Chief Executive Officer will receive your oral reply or will designate an official or officials to receive it. If you do not understand the above reasons why your removal is proposed, contact me or the Human Resources Manager for further explanation.

4. Your past employment record will be taken into account in determining proper disciplinary actions, if the above reason is sustained.

5. You may be represented by an attorney or other representative of your choice at all stages of this matter. Any representation must be designated in writing.




Johnson
**DEPOSITION**
**EXHIBIT #5**
4-24-02 Gom

MAY-29-01 TUE 12:24                                                                    P. 07

2.

Lewis W. Johnson

6. The final decision to effect the proposed action has not been made. The Chief Executive Officer, who will make the final decision, will give full and impartial consideration to your reply, if a reply is submitted.

7. If it is the decision of the Chief Executive Officer that you be removed, your removal will be effective not less than 30 calendar days from the day after the date of receipt of this notice.

8. You will be given a written decision as soon as possible after your reply has had full consideration, or 14 days from the receipt of this letter.

9. You will be retained in an active duty status during the advance notice period.

IRVIN MURITZ
Facilities Manager

cc:
Facilities Management (N138)

MHELKO:lls          10/23/00          N121

FILE COPY

P. 08

MAY-29-01 TUE 12:25

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

| 3. Article Addressed to: | 4a. Article Number |
|---|---|
| LEWIS W. JOHNSON | Z 451 203 701 |
| | **4b. Service Type** |
| 1025 HARMONY HILLS DRIVE | ☐ Registered    ☐ Insured |
| LEBANON, PA 17046 | ☐ Certified    ☐ COD |
| | ☐ Express Mail    ☒ Return Receipt for Merchandise |
| | **7. Date of Delivery** 8-10-00 |
| 5. Signature (Addressee) Lewis W. Johnson | 8. Addressee's Address (Only if requested and fee is paid) |
| 6. Signature (Agent) | |

PS Form 3811, December 1991    ☆U.S. GPO: 1993-352-714    **DOMESTIC RETURN RECEIPT**

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

MAY-29-01 TUE 12:32

P. 14

# REPORT OF CONTACT

NOTE: This form must be filled out in ink
or on typewriter as it becomes a permanent
record in veterans' folders.

| VA OFFICE | IDENTIFICATION NOS. (C,XC,SS,XSS,V,K, etc.) |
|---|---|
| VA Medical Center<br>1700 South Lincoln Avenue<br>Lebanon, PA 17042 | |

| LAST NAME-FIRST NAME-MIDDLE NAME OF VETERAN (Type or print) | DATE OF CONTACT<br>November 13, 2000 |
|---|---|
| ADDRESS OF VETERAN | TELEPHONE NO. OF VETERAN<br>717-5409170 |
| PERSON CONTACTED<br>Mura B. Mundy, Attorney for Lewis Johnson | TYPE OF CONTACT   (Check)<br>· PERSONAL   · TELEPHONE |
| ADDRESS OF PERSON CONTACTED | TELEPHONE NO. OF PERSON CONTACTED<br>717-540-9170 |

BRIEF STATEMENT OF INFORMATION REQUESTED AND GIVEN

I spoke with Mura Munday, on Monday, November 13, 2000 in regards to the certified letter that was return unclaimed by Mr. Lewis Johnson. She verified with me that she had spoke with Mr. Johnson and that he had received the letter we sent regular mail.

She was going to encourage him to apply for disability retirement and respond to the proposal removal letter.

| DIVISION OR SECTION<br>N121 | EXECUTED BY (Signature and Title)<br>Marlene H. Elko<br>Personnel Management Specialist |
|---|---|

R. 415

Automated VA Form 119

Johnson
DEPOSITION
EXHIBIT #6
4-24-02

MAY-29-01 TUE 12:23                                                                          P.05

LEWIS JOHNSON
1025 HARMONY HILL DR.
LEBANON, PA 17046

11/14/00

Dear Ms. Elko

I would like to request LWOP, entil my OWCP claim is finalized.

*Lewis W Johnson*

Lewis W. Johnson

R. 416

Johnson
DEPOSITION
EXHIBIT 47
4-24-02 GDL



**DEPARTMENT OF VETERANS AFFAIRS**
Medical Center
1700 South Lincoln Avenue
Lebanon, PA 17042

November 17, 2000                                    In Reply Refer to: 595/N00

Lewis Johnson
1025 Harmony Hill Drive
Lebanon, PA 17046

SUBJ: Removal

Dear Mr. Johnson:

1. This is in response to the letter dated October 24, 2000, in which you were given advance notice of your proposed removal. A decision has been made to remove you from employment in the Department of Veterans Affairs effective November 30, 2000, based on the following reason:

> You have been on approved leave-without-pay since November 25, 1999 due to medical problems supported by a physician statement indicating you are unable to return to VA employment. The maximum amount of LWOP authorized is one year, which has been approved through November 25, 2000. You were notified that you could apply for disability retirement, which you have not done. You are being removed from VA employment due to your inability to return to VA employment because of your current medical condition.

2. In reaching this decision, all evidence developed was carefully considered. Your written response dated November 14, 2000, indicating you were requesting LWOP until your OWCP claim was finalized was also considered. Your physician statements indicate you are unable to return to federal employment. Removing you from federal employment will not affect your appeal to OWCP on the denial of workman's compensation benefits.

3. You are entitled to appeal this action to the Merit Systems Protection Board (MSPB), or under the negotiated grievance procedure, but not both. You shall be deemed to have exercised your option to appeal this action to the MSPB, U.S. Customhouse, Second and Chestnut Streets, Philadelphia, PA 19106 or under the negotiated grievance procedure at such time as you timely initiate action to appeal to the Board or timely file a grievance in writing under the negotiated grievance procedure. If you elect to file a grievance under the negotiated grievance procedure, you will be entitled to union representation as provided for in the negotiated agreement.

4. If you appeal to that MSPB, your appeal must be in writing and must be filed with the Board no later than 30 calendar days after the effective date of this action. Any appeal to the Board must be filed either by mail or in person. Copies of the Board's appeal form and regulations are R-417 enclosed. You may be represented by an attorney or other representative of your choice.



Johnson
DEPOSITION
EXHIBIT
4-24-02

MAY-29-01 TUE 12:21                                                    P.03

2.

**Lewis Johnson**

5. A further explanation of your appeal rights may be obtained by consulting the Human Resources Offices, Building 18, Room 105.

6. If you believe that this personnel action is based on discrimination because of your race, color, religion, sex, national origin, age, or disability, you may file a complaint of discrimination with VA in accordance with EEO discrimination complaint procedures, or you may raise the issue of discrimination in connection with your appeal to the MSPB, or in connection with a grievance under the negotiated grievance procedure, as previously described. Whichever if filed first shall be considered an election by you to proceed in that matter.

7. Should you elect to file a complaint of discrimination with VA, your complaint will be processed in accordance with EEOC Regulations 29 CFR 1614. If you elect to file a complaint of discrimination, your appeal should be processed under the Department of Veterans Affairs Office of Resolution Management (ORM) discrimination complaints procedure. Your appeal must be filed within 45 days of the effective date of your termination. The appropriate ORM field office can be contacted at 1-888-737-3361, or by writing to: Department of Veterans Affairs, Office of Resolution Management, c/o VA New Jersey Health Care System, Lyons Campus, 151 Knollcroft Road, Building 16, Lyons, NJ 07939. A complaint is deemed filed on the date it is received if delivered to an appropriate agency official, or on the date postmarked if addressed to an appropriate agency official designed to receive complaints.

8. If you file a grievance under the negotiated grievance procedure, you may ask the MSPB to review the final decision of an arbitrator if you allege that this action was based, in whole or in part, on prohibited discrimination. Your request for MSPB review must be filed within 35 days after the date that the arbitrator's decision is issued or, if you received the decision more than 5 days after the date it was issued, you must file within 30 days after the date your received the decision.

CHARLEEN R. SZABO, FACHE

Chief Executive Officer

Enclosures

cc:

CEO (N00)

EMS (N137)

MHELKO:jme      11-16-00      N12

**FILE COPY**

R. 418

MAY-29-01 TUE 12:22                                                    P.04

**SENDER:**
• Complete items 1 and/or 2 for additional services.
• Complete items 3, and 4a & b.
• Print your name and address on the reverse of this form so that we can return this card to you.
• Attach this form to the front of the mailpiece, or on the back if space does not permit.
• Write "Return Receipt Requested" on the mailpiece below the article number.
• The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address

2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

LEWIS JOHNSON
1025 HARMONY HILL DRIVE
LEBANON, PA   17046

4a. Article Number
P 396 967 442

4b. Service Type
☐ Registered        ☐ Insured
☒ Certified         ☐ COD
☐ Express Mail      ☒ Return Receipt for Merchandise

7. Date of Delivery
12/2/0

5. Signature (Addressee)
_Lewis W Johnson_

6. Signature (Agent)
_Lewis W Johnson_

8. Addressee's Address (Only if requested and fee is paid)

PS Form **3811**, December 1991    ✦U.S. GPO: 1993—322-714        **DOMESTIC RETURN RECEIPT**

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

R-
R. 419

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEWIS JOHNSON,                          :
      Plaintiff                        :    No. 1:CV-00-1873
                       :
      v.                               :    (Judge McClure)
                       :
ANTHONY PRINCIPI, Acting Secretary of   :
Veterans Affairs; et al.,               :
      Defendants                       :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 12th day of June, 2002, she served a copy of the attached

## FEDERAL DEFENDANTS' RECORD IN
## SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT:

### VOLUME II

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States mail at Harrisburg, Pennsylvania.

Addressee:

Andrew J. Ostrowski, Esquire
4311 North Sixth Street
Harrisburg, PA 17110

KATE L. MERSHIMER
Assistant U.S. Attorney