ORIGINAL

FILED
HARRISBURG, PA

JUL 29 2002

MARY E. D'ANDREA, CLERK
Per_____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEWIS JOHNSON | : | CIVIL ACTION NO. 1:CV-00-1873 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | JUDGE McCLURE |
| ANTHONY PRINCIPI, | : | |
| Secretary Of Veterans Affairs, et. al., | : | |
| | : | JURY TRIAL DEMANDED |
| Defendants | : | |

### BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.  FACTUAL AND PROCEDURAL BACKGROUND

**Non-selection**

Plaintiff was a housekeeping aid at the Wage-Grade 2 level in 1998 when a vacancy announcement was posted in another WG-2 housekeeping aid position in the "extended care" section of the VA Lebanon Center. At the time, Plaintiff was one of three African-Americans out of forty-eight total employees in the housekeeping department, and there were no African-American employees assigned to extended care at the Lebanon Center. App. 24. Plaintiff had experienced prior instances of racially discriminatory behavior while employed at the Lebanon Center in the years preceding 1998. App. 30-39.

1

The practice at the Lebanon Center was for vacancies in housekeeping positions to be first made available for other housekeepers, who would be selected for the position on the basis of their seniority, before those vacancies were posted throughout the hospital. Johnson deposition; *See* deposition of Rodney Kiscadden, pp. 52-54. That process remained in effect during the time of the selection decision at issue in this case. Kiscadden, pp. 54. As it relates to Plaintiff, the housekeeping posting and selection process was to be conducted as a reassignment, with such consideration given to seniority as indicated by the master agreement and local agreement between AFGE and the VA. Deposition of Raymer Kent, pp. 20-28. Under those agreements and past practice in the VA, Lebanon, seniority should have been determinative on the selection at issue. Contrary to the Agency's representation of the significance of the Memorandum of Understanding, although that document may have been generated in connection with a RIF, the understanding simply clarified what had been the long-standing practice relative to the consideration of seniority in reassignments, and the non-selection was clearly a reassignment as applied to Plaintiff. Kent dep..

The selection of the housekeeping position at issue in this case was conducted by Alice Fidler, the head nurse on extended care. An employee who worked on the same unit as Fidler for about seven years testified that in or around 1996, he heard Fidler make a statement concerning an African-American male who had applied for a position on her floor that she "didn't want any more of them on the floor because we already had several of them on the floor and we don't need any more trouble." App. 14-20. Fidler selected a white male, Ronald Hull, for the position over Plaintiff who initially qualified for the position with a higher rating than Hull. Deposition Exhibit  Although Plaintiff initially qualified with a higher ranking than Hull, and had more seniority than Hull, Fidler employed additional subjective criteria as a basis for her decision, and gave as her justification, that

Hull would "fit in better" with the group on her floor, this despite the fact that Plaintiff had previously worked as a nurse assistant with patients at the VA.

**Retaliation (Harassment/hostile work environment)**

As indicated, Plaintiff had recorded numerous prior incidents involving racially disparate treatment and overt hostility during his employment at the VA Lebanon Center. App. 30-39. This disparate treatment continued through the non-selection as discussed above. Then, in October, 1999, Plaintiff was approached by a co-worker, Irvin Erickson, who told him that his "brothers" were saying that he was "a white man in a black man's skin", a comment which was taken by Plaintiff as being racially derogatory. Plaintiff reported this comment to the EEO office immediately. Erickson learned that Plaintiff had made a complaint about the incident and, a few days later, Erickson approached Plaintiff in the workplace. Plaintiff indicated that he did not want to speak with Erickson, and tried to get away from him; however, Erickson continued to approach Plaintiff, and proceeded to chide him and shove him with his shoulder. Plaintiff eventually locked himself in a rest room in order to escape Erickson. Plaintiff reported this incident as well.

During this same period of time, the investigation of Plaintiff's 1998 non-selection complaint was proceeding. *See e.g.* statement of Randall Houck taken on November 5, 1999. The investigation of the non-selection issue did not begin until August, 1999 and the report of the investigator was completed on December 17, 1999. App. 9-14. Defendants have asserted that Erickson was counseled in October 1999 concerning his conduct regarding Plaintiff, but there is no record of any such counseling until November, 1999. Also, despite the alleged counseling, Erickson specifically went into Plaintiff's work area, as indicated in Defendant's statement of facts and supporting materials, and was not disciplined in any manner concerning that contact with Plaintiff. Moreover,

3

although the VA has a disciplinary policy that calls for stricter disciplinary action when the conduct involves physical contact, Erickson was "disciplined", if at all, at the most minimal level. Kent dep., pp. .

Also around this same time, Plaintiff filed for worker's compensation benefits. As Defendants' statement of facts reveals, there was considerable confusion with regard to the processing of these benefits; however, several relevant things remain clear: 1) Joseph Stuckey, the individual responsible for processing claims for benefits, was responsible for "controverting" Plaintiff's initial application for benefits, although he told Plaintiff that someone in Philadelphia was responsible for this action; 2) Stuckey had access to all information that he contends was not supplied by Plaintiff, the absence of which formed the basis for his controversion, and 3) Raymer Kent, the personnel manager who was also involved with the investigation of the 1998 non-selection, specifically told Plaintiff and his representative, also a black male, that he would do nothing further for "you people" concerning the processing of Plaintiff's application for benefits. Plaintiff's application was ultimately denied, and he was eventually terminated from his employment when his sick leave without pay expired. At no time after the October, 1999 incidents concerning Erickson did any VA personnel provide Plaintiff with a reasonable assurance that effective remedial action had been taken to provide him with a safe work place.

## II. ISSUES

1. Do issues of material fact preclude summary judgment on Plaintiff's non-selection claim?

(Suggested Answer: Yes)

2. Has Plaintiff exhausted his administrative remedies regarding his retaliation and hostile work environment claims or are those claims otherwise properly before the Court?

(Suggested Answer: Yes)

3. Do issues of material fact preclude summary judgment on Plaintiff's retaliation and hostile work environment claims?

(Suggested Answer: Yes)

## III. ARGUMENT

**Standard of review**

Under the Federal Rules of Civil Procedure a party is entitled to seek summary judgment in its favor on "all or any part" of the claims that have been made. Fed. R. Civ. P. 56(b). The courts are instructed that summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986), the Court articulated the familiar standard that:

> "the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

477 U.S. at 323, 106 S. Ct. at 2553. A court may grant summary judgment "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in rule 56, is satisfied." Id..

In ruling on a Motion for Summary Judgment, this Court must review the evidence in a light most favorable to Plaintiff, to give Plaintiff the benefit of all reasonable inferences, and to resolve all doubts in favor of Plaintiff. See, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 1356 (1986). The Third Circuit has held that this standard must be "applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart v. Rutgers*, 120 F.3d 426, 431 (3d Cir. 1997). When, as in the present case, intent is an issue, the court must be cautious about granting summary judgment. *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 321 (3d. Cir. 2000). Moreover, because issues of pretext often turn on credibility, summary judgment should not be granted when such issues arise because credibility determinations are for a jury. See e.g. *Jackson*, 826 F.2d at 236.

### A. Issues of Material Fact Preclude Summary Judgment on Plaintiff's Non-selection Claim.

The issue of Plaintiff's non-selection for the housekeeping aid position in July 1998 involves allegations of disparate treatment discrimination, which are governed by the familiar burden-shifting analysis as set forth in *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792, (1973), *see Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 1097 (2000). Defendants concede that Plaintiff has established a prima facie case of discrimination, and Plaintiff will concede, for purposes of Defendants' Motion only, that Defendants have articulated a legitimate non-discriminatory reason for the non-selection. The only issue for this Court, therefore, is whether Plaintiff can demonstrate proof of pretext.

Plaintiff submits that proof of pretext is made out, in itself, through the previous indication by Alice Fidler, the person responsible for the selection decision, that she "didn't want any more of them [African-Americans] on her floor..." combined with the fact that Plaintiff was objectively more qualified for the position at least based upon the initial rating criteria used to fill the position, and had more seniority than the person selected. The latter fact is significant in light of the standing practice of offering housekeeping positions first to other housekeepers who would be selected on the basis of seniority before posting those positions. In addition, the evidence demonstrates that Fidler adopted and employed additional subjective selection criteria when the objective criteria demonstrated that Plaintiff would have been the logical choice for the position, particularly when considering the additional fact of his having more seniority. Under these circumstances, summary judgment must be denied.

7

**B. Plaintiff Has Exhausted His Administrative Remedies and His Claims in this Court Are Otherwise Timely.**

Even accepting the Defendants' factual assertions as to the timeliness of Plaintiff's retaliation and harassment claims as accurate, there is some question as to whether subsequent administrative processes were necessary to preserve his retaliation claims for resolution by this Court because some courts have held that the exhaustion of remedies doctrine does not apply when a federal complaint raises allegations of retaliation,. *See e.g., Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992).

Also, as the documents attached to Plaintiff's response demonstrate, Plaintiff had requested that the 1999 and 2000 administrative complaints (those that are the subject of Defendants' timeliness arguments) be consolidated and processed together with his 1998 complaint (which Defendants concede is timely), and the administrative judge, although giving an indication that those complaints might not be consolidated, made no further order regarding Plaintiff's request, and Plaintiff thereafter proceeded in the administrative agency to proceed as if the complaints had been consolidated. App. 1-8. Like a statute of limitations defense, the timeliness of a civil action after the issuing of a ninety day notice is subject to equitable tolling principles which, under the circumstances of this case, should apply to support the conclusion that all of Plaintiff's claims are timely in this Court.

### C. Issues of Material Fact Preclude Summary Judgment on Plaintiff's Retaliation and Hostile Work Environment Claims.

The retaliation and hostile work environment claims raised by Plaintiff deal primarily with the events beginning in October 1999 with the incident of harassment by Plaintiff's co-worker, and the Agency's response, or lack of response, to that conduct, together with the processing, or mis-processing, of Plaintiff's claim for worker's compensation benefits in November and December 1999. Although standing alone, these matters may be sufficient to raise an inference of discriminatory and retaliatory animus on the part of his employer, those matters take on much more significance when it is further considered that they occurred while his 1998 complaint was in the active investigation process.

In considering whether Plaintiff has established genuine issues of material fact concerning these claims, the record must be evaluated as a whole to decide whether Plaintiff can prove his case, because "[p]articularly in the discrimination area, it is often difficult to determine the motivations of an action and any analysis is filled with pitfalls and ambiguities.... [A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 149 (3d Cir. 1999) (quotations omitted); see also *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ( "Whether an environment is 'hostile' ... can be determined only by looking at all the circumstances."). Title VII applies to both facially neutral mistreatment and overt acts of discrimination which in sum constitute the hostile work environment. Id. at 148; see also *Aman v. Kort Furniture Rental Corp.*, 85 F.3d 1074 (3d Cir. 1995) (discussing the increased sophistication of modern violators, the obligation of courts to be "increasingly vigilant" against subtle forms of discrimination, and the importance of allowing plaintiffs to prove

9

discrimination indirectly through conduct that is "part of a complex tapestry of discrimination"). As a whole, the totality of the circumstances over time must be evaluated in determining whether a work environment is unlawfully discriminatory and/or retaliatory.

Plaintiff raised a real and substantial complaint of racial harassment by a co-worker when he reported the matters regarding Irvin Erickson in October 1999. Those issues concerned direct statements raising issues of a bias or prejudice against Plaintiff based upon his race, and further reflect a totally inappropriate response to those matters when Mr. Erickson sought Plaintiff out to "question" him concerning the basis of his complaints when Plaintiff had already done what he was supposed to do by reporting the matters to the appropriate personnel with the agency. Despite the initial statement and Erickson's "self-help" response of seeking Plaintiff out and having physical contact with him, and despite the policy statement of the agency concerning such matters, and the disciplinary sanction for such conduct, Erickson was allegedly only given "counseling" and instructed not to go near Plaintiff, although there is no record of any counseling being given until mid-November 1999 when Plaintiff began to question the lack of response to his concerns. Moreover, even after he was allegedly counseled, Erickson nonetheless went into Plaintiff's work area for what Plaintiff perceived to be the purpose of harassing him further. Although the Defendants and others may try to trivialize the initial comments made by Mr. Erickson, Plaintiff's response to those statements, and Erickson's subsequent contacts with Plaintiff, the fact is that those matters are serious, and should not be, and should not have been, trivialized by Defendants, and Defendants' response to these matters is indicative of its state of mind in matters dealing with discriminatory treatment against African-American employees.

It is also in this context that the Court must consider the matter of the processing of Plaintiff's application for worker's compensation benefits. While the ultimate decision over such matters may lie with a different agency, the fact remains that the VA retained the authority to "controvert" Plaintiff's claim, and this was done despite the fact that the agency representative, Mr. Stuckey, had immediate access to all the information relevant to the bases upon which he decided to controvert Plaintiff's claim, and, despite the fact that Plaintiff was available at all times to assist in clarifying any ambiguities that may have existed in Stuckey's mind, Stuckey acted without the knowledge of the Plaintiff to controvert and then blamed the controversion on some unknown person from Philadelphia. As indicated in Defendants' statement of facts, Kent was aware of and acquiesced in the manner in which Plaintiff's application for benefits was processed, including the controversion. Moreover, given Kent's statement to Plaintiff and his representative that he would do nothing further to help "you people", Plaintiff submits that a reasonable inference can be drawn as to whether Defendants acted toward him with a discriminatory and retaliatory animus.

## IV. CONCLUSION

For the foregoing reasons, and under the foregoing authorities, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment in its entirety.

Respectfully Submitted,

Andrew J. Ostrowski, Esquire
Pa. ID 66420
4311 North Sixth Street
Harrisburg, PA 17110
(717) 221-9500

Dated: July 29, 2002

11

## CERTIFICATE OF SERVICE

I, Andrew J. Ostrowski, Esquire, hereby certify that I have served a true and correct copy of the foregoing document, by hand-delivery, addressed as follows:

Kate Mershimer, Esquire
Office of the United States Attorney
208 Walnut Street
Harrisburg, PA 17108

By _____
Andrew J. Ostrowski, Esquire
4311 North Sixth Street
Harrisburg, PA 17110
(717) 221-9500

Dated: July 29, 2002