

# ● ORIGINAL ●

8-19-02
RW

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEWIS JOHNSON,
      **Plaintiff**

          v.

ANTHONY PRINCIPI, Secretary of Veterans Affairs;
RODNEY KISCADDEN; ALICE FIDLER;
PEG WINTERS; IRVIN ERICKSON;
RAYMER KENT; and AMERICAN FEDERATION
OF GOVERNMENT EMPLOYEES LOCAL 1966,
      **Defendants**

:    **No. 1:CV-00-1873**

:    **(Judge Jones)**

FILED
HARRISBURG, PA

AUG 1 6 2002

MARY E. D'ANDREA, CLERK
Per _____
          Deputy Clerk

## FEDERAL DEFENDANTS' REPLY BRIEF IN
## SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**THOMAS A. MARINO**
**Assistant U.S. Attorney**

**KATE L. MERSHIMER**
**Assistant U.S. Attorney**
**228 Walnut St., 2nd Fl.**
**P.O. Box 11754**
**Harrisburg, PA 17108-1754**
**717-221-4482**

**Date: August 16, 2002**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Legal Arguments Plaintiff Has Not Disputed Nor Briefed . . . . . . . . . . . . . . . . . . . . 2

Remaining Legal Defenses  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Johnson's Hostile Work Environment Claim (re Erickson) and His Retaliation Claim (re Workers Compensation Benefits) Should Be Dismissed Due to Johnson's Failure to Timely File His Federal Lawsuit Within Ninety Days of Receiving His Right to Sue Letter. . . . . . . . . . . . 3

      B.    Johnson's Termination/Constructive Discharge Claim Was Not Administratively Raised Nor Exhausted in Any Manner and, Therefore, Must Be Dismissed.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      C.    Johnson Has Failed to Offer Any Evidence to Support a Jury Verdict of Pretext Regarding His Non-Selection Claim. . . . . . . . . . . . . . . . . . . . . 11

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Local Rule 7.8 Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**CASES**                                                                                    **Page**

Brown v. General Services,
    425 U.S. 820 (1976)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

Bush v. Lucas,
    462 U.S. 367 (1983)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ezold v. Wolf, Block, Schorr and Solis Cohen,
    983 F.2d 509 (3rd Cir.1993)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Forest v. United States Postal Service,
    97 F.3d 137 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Goosby v. Johnson & Johnson Medical Inc.,
    228 F.3d 313 (3rd Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kubricki v. United States,
    829 F.Supp. 906 (E.D. Mich. 1993)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

McAdams v. Reno,
    64 F.3d 1137 (8th Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

National Railroad Passenger Corp. v. Morgan,
    122 S.Ct. 2061 (2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 9

Nealon v. Stone,
    958 F.2d 584 (4th Cir. 1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Price Waterhouse,
    490 U.S. 228 (1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Radich v. Goode,
    886 F.3d 1391 (3rd Cir. 1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Robinson v. Dalton,
    107 F.3d 1018 (3rd Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

Rush v. Scott Specialty Gases, Inc.,
    113 F.3d 476 (3rd Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Texas Department of Community Affairs v. Burdine,
    450 U.S. 248 (1981)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Winston v. Children & Youth Services,
    948 F.2d 1380 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Wisniewski v. Johns-Mansville Corp.,
    812 F.2d 81 (3rd Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Woodson v. Scott Paper Co.,
    109 F.3d 913 (3rd Cir 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**REGULATIONS**

29 C.F.R. §1613.214(a)(1)(i) (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. §1614.105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. §1614.106(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. §1614.105(a)(1) (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. §2000e-16(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## Introduction

This is an employment discrimination lawsuit filed by Lewis Johnson, a former employee of the Department of Veterans Affairs ("VA") at the Lebanon VA Medical Center.    The federal defendants[1] [hereinafter collectively referred to as the VA unless otherwise noted] previously moved for summary judgment and filed a statement of material undisputed facts ("SMF") and a comprehensive record in support of their motion and SMF.  Johnson filed an opposition brief and this brief is now filed in reply.

The government previously briefed the legal issues extensively and will not repeat them in this reply brief.  Rather, the government will summarize plaintiff's legal claims and the VA's defenses, note plaintiff's responses (if any) to the VA's summary judgment arguments, then address plaintiff's responses.

## Summary of Claims

In his employment discrimination complaint, Johnson alleged the violation of his constitutional rights, plus Title VII claims, concerning four incidences involving the VA and its employees:

1.      Non-Selection:  Alice Fidler's decision in July 1998 to select another individual, rather than Johnson, to be a Housekeeping Aid in Extended Care (19-3).

2.      Hostile Work Environment:  An October 13, 1999 racial comment made by a co-worker, Irv Erickson, and an incident a few days later involving

---

[1] The federal defendants are Anthony Principi, Secretary of Veterans Affairs, plus Raymer Kent, Alice Fidler, Rodney Kiscadden, Irvin Erickson, current or former employees of the Lebanon VA Medical Center (the "federal defendants").

a brief exchange between Johnson and Erickson, plus a few alleged bumps by Erickson.

3.    Retaliation: Alleged retaliation in the processing and "controversion" of Johnson's Workers Compensation benefits claim in late 1999.

4.    Constructive Discharge: The VA's termination of Johnson on November 30, 2000, after he had been on leave without pay for over a year and after his doctor stated that Johnson remained unable to work.

## Legal Arguments Plaintiff Has Not Disputed Nor Briefed

Preliminarily, the defendants had argued that because federal employment was at issue, Johnson could pursue his claims only under Title VII, with all other constitutional, contract, or tort claims being barred.  See Defts. Br., at 20-22. Likewise, the defendants established that the only proper party in a Title VII claim is the Secretary of the VA , Anthony Principi, sued in his official capacity, and that all other individuals should be dismissed as defendants.  Id. at 22-23. Johnson did not address, nor otherwise offer any arguments, to dispute these legal principles in the least.  Presumably, therefore, Johnson has waived and/or conceded these legal defenses.  As such, Johnson's claims proceed solely under Title VII and solely against the VA.

## Remaining Legal Defenses

As to Johnson's claims regarding the four employment matters (non-selection, hostile work environment, retaliation, and constructive discharge), the VA first submitted that Johnson had not timely nor properly administratively exhausted any of his claims except the non-selection claim. Defts. Br. at 23-27.  In the alternative,

2

the VA demonstrated that Johnson had either failed to state a claim or had not established discriminatory animus to support his hostile work environment, retaliation, or constructive discharge claims. Id., at 27-32. Last, the VA maintained that Johnson had no evidence to demonstrate that the decision to select another VA employee for the Housekeeping Aid position on Extended Care (19-3) was pretextual for race discrimination. Id., at 32-35.

Johnson has submitted certain arguments in response to these issues and the VA addresses them in turn.

**A.    Johnson's Hostile Work Environment Claim (re Erickson) and His Retaliation Claim (re Workers Compensation Benefits) Should Be Dismissed Due to Johnson's Failure to Timely File His Federal Lawsuit Within Ninety Days of Receiving His Right to Sue Letter.**

In our principal brief, we established that a federal employee **must** exhaust all administrative remedies before bringing a claim for judicial relief. See Robinson v. Dalton, 107 F.3d 1018, 1020-21 (3rd Cir. 1997); see also Defts. Br., at 23-26. Exhaustion of administrative remedies requires federal employees to both consult with an agency counselor **and** file a formal EEOC complaint *within the required time periods*. Robinson, 107 F. 3d at 1020-21 (citing pertinent EEOC regulations); see also Brown v. General Services, 425 U.S. 820, 832 (1976).

Therefore, an employee must initiated contact with an agency EEO counselor within 45 days of the allegedly discriminatory event; file a formal EEO complaint within 15 days of receipt of the notice of the right to file such a complaint; and bring an action in federal court within 90 days of receipt of notice of final agency action or

3

after 180 days from the date of filing a complaint when no decision has yet been reached.[2] 42 U.S.C. §2000e-16(c); 29 C.F.R. §§1614.105(a)(1), 1614.106(b)(2002). See also Robinson, 107 F.3d at 1020-21; McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995); 42 U.S.C. §2000e-16(c); 28 C.F.R. §§1614.105(a), 1614.106(b). Failure to meet any of these time deadlines requires the employee's claims to be dismissed. See National Railroad Passenger Corp. v. Morgan, 122 S.Ct. 2061, 2070 (2002)(strict adherence to "obviously quite short time deadlines" is a prerequisite for Title VII plaintiffs).

In addition to the above-cited cases and regulations, Johnson was specifically advised of the filing deadlines. As to both his hostile work environment claim and his retaliation claim, Johnson received a detailed notice of his appeal rights when he received the agency's final decision. Each notice stated to Johnson, with the use of capital letters and bold print, that

> the civil action **MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS** of the date of receipt of this final agency decision or, if this decision is appealed to the EEOC, within **NINETY (90) CALENDAR DAYS** of the date of receipt of the EEOC's final decision on the appeal.

R. 209, 401.[3] Thus, Johnson knew he had to have filed his federal lawsuit within 90 days of receiving the VA's final agency decisions.

---

[2] Under prior statute, the filing date of a civil action was 30 days; it presently is 90 days. Forest v. United States Postal Service, 97 F.3d 137, 139-40 (6th Cir. 1996).

[3] Other than stating that he proceeded as if the three complaints were consolidated, see text infra at 6, Johnson has admitted that he proceeded to district court as to his hostile work environment and retaliation claims following the final agency decisions. See SMF 79-83, 133-137.

4

Focusing on Johnson's hostile work environment claim regarding Erickson, Johnson received the VA's final agency decision dismissing his hostile work environment claim on May 10, 2000. SMF 81, R. 149. As to the retaliation claim involving the processing and/or disputing of Johnson's Workers Compensation claim, Johnson received the VA's final agency decision around May 11, 2000. Having failed to take an appeal to the EEOC as to either adverse agency decision, Johnson had to have filed his federal lawsuit by August 9, 2000. SMF 135, R. 151-52.

Johnson, however, did not file this lawsuit until October 24, 2000 -- more than 90 days after Johnson received each of the adverse final agency decisions. As such, both the hostile work environment claim and the retaliation claim were untimely and must be dismissed. See Robinson, 107 F.3d at 1020-21 (in context of EEOC appeal, employee must file district court action within 30 days [now 90 days] of the EEOC's decision); Kubricki v. United States, 829 F.Supp. 906 (E.D. Mich. 1993)(as a condition precedent to a Title VII action, the employee had to appeal the MSPB's adverse ruling to the EEOC or a district court within 30 days of the MSPB decision; the employee's untimely appeal to the EEOC thus prevented the employee from pursuing a discrimination claim in district court).

In response to this argument, Johnson states that he had asked the EEOC Administrative Judge to consolidate his 1999 administrative complaint (i.e., the hostile work environment claim re Erickson) and the 2000 administrative complaint (i.e., the retaliation claim re Workers Compensation benefit claims) with his non-

selection claim. Plt. Br., at 8. Johnson then goes on to state that although the Administrative Judge indicated that the three complaints might **not** be consolidated, she made no further order such that Johnson proceeded as if the complaints had all been consolidated. Id.

First, plaintiff's assertion that he made a request to consolidate the three administrative complaints is set forth in Johnson's opposition brief without any record support. There is no affidavit from plaintiff that a motion to consolidate was filed nor a copy of the alleged request to consolidate produced to this Court. As such, this Court cannot give any credence to this assertion. Radich v. Goode, 886 F.3d 1391, 1394 (3rd Cir. 1989).

Second, those documents that Johnson does reference to support his assertion, see Plt. Exh. F, Appendix of Miscellaneous Exhibits, at 1-8, reflect that the EEOC Administrative Judge had directed the parties to produce the counselor reports and formal EEO complaints to encourage settlement discussions. Id. at 4 ("These matters probably will **not** be consolidated with the above-captioned case. However, the parties are encouraged to include all pending cases in any settlement discussions/negotiations.")(emphasis added). As to that, Johnson's representative took the position that the only issue assigned to the Administrative Judge was the non-selection claim and that settlement discussions should be limited to that claim. Id. at 8.

Regardless of whether or not a motion to consolidate was contemplated or filed, however, is the fact that the three EEO complaints were **never** ordered to be

6

consolidated.  Any supposed assumptions by Johnson to act as if the complaints had been consolidated, an assumption raised *for the very first time* in his summary judgment opposition brief, did not excuse Johnson from following the applicable, *mandatory* Title VII time deadlines.

Further, the record fails to support Johnson's alleged "presumption" in the least.  First, at the July 26, 2000 EEOC administrative hearing -- the one in which Johnson claims that he had proceeded as if the cases had been consolidated -- the Administrative Law Judge noted that the hearing concerned only Johnson's case at EEOC Hearing No. 170-A0-9163X (and Agency No. 98-2320).  R. 422 (Tr. at 3).[4] That case concerned only plaintiff's non-selection claim.  On the other hand, the hostile work environment claim was at EEOC Complaint Case No. 200H-0542-99-5484 (filed 12/16/99), R. 195, 205, and the retaliation claim was at EEOC Complaint Case No. 200H-1663 (filed 4/13/00), R. 397 -- neither case which was mentioned by the Administrative Law Judge.

Next, the Administrative Law Judge stated at the very beginning of the hearing that the hearing was going to concern Johnson's formal complaint:

> in which [Johnson] alleged that he was discriminated against because of his color and race, black, Africa-American, when on July 15, 1998, he learned he was not selected for Housekeeping Aide WG-3566-2 position at the Lebanon VA Medical Center; and **that is the issue in this case**.

---

[4] The July 26, 2000 Administrative Hearing transcript is being provided by the VA in R. 420-524, Volume III, with the page numbering being consecutive to the previous two volumes of the Record filed by the VA.

R. 423 (Tr. at 4)(emphasis added). No where did the Administrative Law Judge state that the hearing would concern any other claim but the non-selection claim.

Moreover, a review of the Administrative Hearing transcript, R. 420-524, establishes that neither plaintiff nor his representative ever attempted to produce any evidence regarding his hostile work environment and retaliation claims. Indeed, plaintiff's representative himself stated that all he intended to prove was that Johnson's non-selection was due to his race; the representative stated **nothing** about trying to prove a hostile work environment or a retaliation claim. R. 427-28 (Tr. at 8-9). If Johnson truly was proceeding as if all of the claims had been consolidated, one would think that Johnson would have noted that on the record and would have submitted evidence as to these other claims. But Johnson nor his representative did neither.

In sum, Johnson cannot rely on an assumption that has no basis in fact. To permit Johnson to avoid the strict time deadlines imposed by Congress through the creative use of an "assumption" would eviscerate Congress's administrative scheme for federal employees to raise employment claims. See National Railroad Passenger Corp., 122 S.Ct. at 2070; Bush v. Lucas, 462 U.S. 367, 385-90 (1983); Brown, 425 U.S. at 829-33; Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 485 (3rd Cir. 1997)("we have no intention of shredding the 300-day limitations period by automatically allowing an employee who alleges actionable conduct occurring within that period to make claims with respect to any adverse employment actions that occurred during his or her entire period of employment."). As such, Johnson's

8

hostile work environment and retaliation claims are time-barred and should be dismissed.

Before leaving this point, we note that Johnson also makes a passing argument that some courts have held that the exhaustion of administrative remedies does not apply when a federal complaint raises allegations of retaliation. Plt. Br. at 8, citing <u>Nealon v. Stone</u>, 958 F.2d 584 (4th Cir. 1992).  Whatever value <u>Nealon</u> had in this circuit is irrelevant in light of the Supreme Court's subsequent decision in <u>National Railroad Passenger Corp.</u>, 122 S.Ct. at 2070.  In that 2002 decision, the Supreme Court made it crystal clear that <u>each</u> discrete discriminatory act constitutes a separate actionable unlawful employment practice and that each claim must be *timely presented* to the EEOC -- even though the acts allegedly are related to acts alleged in a timely EEOC charge.  <u>Id</u>. at 2072-73.  These discrete acts include termination, failure to promote, refusal to hire, suspensions, disciplinary proceedings, failure to train, and retaliatory acts.  <u>Id</u>.; <u>See</u> <u>Rush</u>, 113 F.3d at 483-85 (failure to train and failure to train were discrete acts that had to be timely presented to the EEOC).  The only exception applies to hostile work environment claims.  <u>National Railroad Passenger Corp.</u>, 122 S.Ct. at 2070.

Regardless, once a claim is presented administratively and then rejected -- even a hostile work environment claim -- the employee still must comply with the

time deadlines for filing his/her federal action, which is exactly what Johnson did **not**

do.  As such, the VA is entitled to summary judgment.[5]

### B.    Johnson's Termination/Constructive Discharge Claim Was Not Administratively Raised Nor Exhausted in Any Manner and, Therefore, Must Be Dismissed.

As to Johnson's termination/constructive discharge claim, the VA established

that Johnson never saw an EEO counselor about his claim, nor did he file a formal

EEO complaint.  See SMF 148-149.  Johnson has admitted this fact -- though he

seems to suggest he did not need to do so because he had not been given any

"reasonable assurance of his safety."  See Plt's Response to SMF 149.  While this

assertion is not correct, see R. 194 (Nov. 17, 1999 letter to Johnson indicating that

the VA had addressed the issues with the individual concerned (Erickson) and had

taken actions to ensure the matters would not be repeated), it is irrelevant to the

legal defense raised by the VA.  Indeed, Johnson cites no legal authority --

presumably because no such legal authority exists -- to support his inference that

the failure to be reasonably assured of his safety excused him from complying with

Title VII's exhaustion requirements.

---

[5] Otherwise, to oppose summary judgment, plaintiff has offered nothing more than a legal citation that a hostile work environment claim must be viewed by looking at all of the circumstances.  Johnson's hostile work environment claim, however, concerned only his assertions that Erickson's October 13, 1999 comment, and the brief exchange between Erickson and Johnson a few days later, constituted a hostile work environment based on race.  R. 195-96 (contact with EEO counselor); R. 201-207 (formal EEO complaint and agency decision).  Looking at "all of the circumstances," therefore, consists of looking at two incidences involving one employee, where that employee was told to cease having any contact with Johnson. Such does not establish a hostile work environment claim.

Additionally, no where in his opposition brief does Johnson address his termination/constructive discharge claim.  As such, Johnson has waived the claim.  See Winston v. Children & Youth Services, 948 F.2d 1380, 1385 (3rd Cir. 1991)(collecting cases); Wisniewski v. Johns-Mansville Corp., 812 F.2d 81, 88 (3rd Cir. 1987)("[a]n issue that is not addressed in an appellant's brief is deemed waived on appeal").    Regardless, as noted in the VA's principal brief, Johnson's termination/constructive discharge claim fails as a matter of law.

**C.    Johnson Has Failed to Offer Any Evidence to Support a Jury Verdict of Pretext Regarding His Non-Selection Claim.**

The only claim that Johnson did timely exhaust and file suit over was his non-selection claim.  As noted in the VA's principal brief, once the VA proffered a legitimate, nondiscriminatory reason for its selection of Hull, Johnson had to demonstrate that the proffered reason was merely a pretext for unlawful discrimination. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255-56 (1981); Goosby v. Johnson & Johnson Medical Inc., 228 F.3d 313, 319 (3rd Cir. 2000).

In this case, the VA explained that in the spring of 1998, the VA changed from providing medical services by "service lines," such as nursing services or housekeeping services, to "product lines," such as extended care.  With the change to product lines, the units were viewed as teams so that employees in different fields (such as nursing, social work, housekeeping) were now hired by the product line manager.  SMF 3.

11

Before going to "product lines," housekeeping aids had worked within the Environmental Management Service ("EMS"). When the VA switched to "product lines," however, housekeepers working on a particular unit were assigned to the product line their unit fell within and were hired by the product line manager. Only those housekeepers who worked in the common areas remained within EMS. SMF 4-5. The relevance of this change is that when Johnson applied for the Extended Care (19-3) Housekeeping Aid position, the selection was made on a competitive basis and not solely on the basis of seniority.[6]

As explained in the VA's prior brief, Defts. Br. at 3-9; SMF, ¶¶ 1-60, the Nurse Manager of Extended Care (19-3), Alice Fidler, was the decision maker. SMF 29-30, 32, 39. On July 15, 1998, Ms. Fidler selected Ronald Hull to fill the position. SMF 31, 33, 46. In making this decision, Ms. Fidler and Barbara Kohr, a Nurse Manager on the Hospice Unit who was assisted her in reviewing the applicants, focused on Hull and Johnson because they both had housekeeping experience and were trained. SMF 43-45.

Ms. Fidler selected Hull because of his experience and initiative, the latter demonstrated by his understanding of the risks of leaving broken items around patients suffering from dementia. While Johnson had previously been a nursing assistant, Hull seemed to be more patient in dealing with the demented patients. For

---

[6] The Housekeeping Aid position for Extended Care was posted under the provision of the Open and Continuance Vacancy Announcement and the VA/AFGE Master Agreement, with such positions filled competitively under Article 22 and with seniority **not** being the deciding factor. SMF 6-7, 18-20, 23.

example, the patients on her ward would do inappropriate things, such a void in a waste can. Hull would clean it up and not make any remarks while Johnson would verbalize that he thought the staff should more closely watch the patients, which could not always be done. Also, Ms. Fidler thought Hull had better people skills. In sum, Ms. Fidler thought Hull was best qualified and would fit in better with the team -- with the point of product lines being to build a team. SMF 47-49.

In making her selection, Ms. Fidler did not use race at all. Likewise, Ms. Kohr, who had assisted Ms. Fidler in the process, did not consider Johnson's race when selecting Hull. Rather, Ms. Kohr considered Hull's 17 years of experience in housekeeping, the necessity of things truly being clean and just not looking clean, and the need to communicate to accomplish his job safely. SMF 50-51.

In an unsuccessful attempt to establish pretext, Johnson first argues that the practice at the Lebanon VA Center was to fill housekeeping vacancies from other housekeepers on the basis of seniority. Plt. Br. at 2. In making this assertion, Johnson cites to pages 52 -54 of Rodney Kiscadden's deposition. (Kiscadden was the supervisor of the EMS). The pages cited by Johnson, however, actually support the VA's statement that seniority was not the key factor in the Extended Care Housekeeping Aid selection.

Specifically, Kiscadden stated that at that time, *i.e.*, the time of the Extended Care (19-3) Housekeeping Aid selection process, housekeepers were selected by the ward or unit manager because they were not part of his service (EMS) anymore. Plt. Exh. B, at 52. *Only if* the housekeeping Aid position was in the EMS unit would

13

the selection be made from other housekeepers and then on the basis of seniority. Plt. Exh. B, at 52-53. While Kiskadden did state in his deposition that the practice "now" in EMS (i.e., as of April 2002) was to select housekeepers by seniority, Kiskadden stated that when housekeeping had been divided into product lines, it was the unit manager who selected the individual. Id at. 53. Kiscadden said *nothing* that indicated that the ward or unit manager had to make selections based solely on seniority. Id. at 52-54.

Thus, Johnson's citation to a few pages of Kiscadden's deposition testimony does not refute in the least the declarations of Human Resources Manager Kent and Human Resources Specialist Flashel-Umlauf that seniority was **not** the basis on which Alice Fidler was to fill the 19-3 housekeeping position. See SMF ¶¶3-27; R. 1-6, 11-18.

Johnson also suggests pretext by stating that Johnson had a higher initial rating than Hull -- with Fidler then using "subjective criteria to rate Hull higher than Johnson -- and that Johnson had more seniority than Hull. Plt. Br. at 2. Taking the "greater seniority" claim first, Hull had 17 years of *housekeeping experience* -- more than Johnson. R. 104. As to the "higher rating" argument, this higher rating was a single point. R. 95. Moreover, the additional criteria applied by Ms. Fidler and Barbara Kohr, who assisted Ms. Fidler in the process, was based on the supervisor's evaluations, the applicants' answers to written questions about housekeeping skills and experience, and personal observations of both applicants. R. 79-87, 98-106. Such does not raise any question of pretext.

14

Last, to argue pretext, Johnson relies upon an alleged statement made by Ms. Fidler *years before* the Housekeeping Aid selection. Specifically, Randall Houck, a former subordinate of Ms. Fidler, supposedly heard Ms. Fidler say "back in the early 90's," when an employee wanted to move from Housekeeping into Nursing, that she did not want any more of them on the floor.[7] Houck took this statement to mean that she did not want him because he was black. Houck also stated that Peggy Cromer, a VA employee commented that Ms. Fidler was close to discriminating against the individual and that she should back off. SMF 52-53.

Ms. Fidler has denied ever making that statement in any form at all. Ms. Cromer cannot recall hearing Ms. Fidler making that statement; further, she did not recall Ms. Fidler making any disparaging remarks against African-Americans. Likewise, Wanda Miller, who Houck said was present when Ms. Fidler made the alleged statement, stated that she had not heard anyone, particularly Ms. Fidler, make any statements that they were trying to maintain a racial balance or that she did not want to hire too many African-Americans. Further, Ms. Kohr stated that she

_____

[7] During the EEO process, Houck gave statements twice concerning the alleged statement by Ms. Fidler. In his Novemeber 1999 EEOC deposition testimony, when asked when Ms. Fidler had made this statement, Houck responded, "Now you're asking for a lot. It was three or four years ago maybe." Plt. Exh. E, at 18. During his July 2000 EEOC hearing testimony, Houck said the statement was made "back in the early 90's." R. 125. The decision to hire Hull was made in July 1998. Thus, depending on which version of Houck's testimony is considered, Ms. Fidler's alleged statement occurred either 2½ years earlier or about 5 to 6 years earlier.

had never heard Ms. Fidler make any statements that she did not want to hire too many blacks.  SMF 54-57.

Indeed, Johnson has never seen Ms. Fidler discriminate against African-Americans or make any discriminatory statements about Johnson's race or anyone else's race and Johnson has no evidence of discriminatory animus by Ms. Fidler.  SMF 60; R. 140.  We also note that Houck stated that he never heard Ms. Fidler make any other sort of racial statement or slur other than that one comment in the distant past. Plt. Exh. E, at 18.

Thus, the only "evidence" Johnson has to hint at pretext is the single statement supposedly made by Ms. Fidler somewhere between 2½ to 5-6 years before the hiring decision.  The law is quite clear that stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process in question are rarely given great weight.  This is particularly true when the remark is temporally remote from the date of the decision.  See Price Waterhouse, 490 U.S. 228, 277 (1989)(O'Connor, Concurring)(statements by decisionmakers unrelated to the decisional process itself do not satisfy the employee's burden of showing pretext); Ezold v. Wolf, Block, Schorr and Solis Cohen, 983 F.2d 509, 545 (3rd Cir.1993)(law firm partner's discriminatory statement five years before the partnership decision too temporally remote).

Nor is there any pattern of discriminatory conduct between the statement and the selection decision to establish any sort of causal link.  See Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3rd Cir 1997)(discussing that two-year temporal

16

gap between the protected activity and the termination supported causal link due to pattern of harassment during the time period ).  Employees simply should not be able to pursue discrimination claims on the ground of pretext based upon one person's wisp of a recollection of a *single* statement *made years earlier* -- with absolutely no evidence of subsequent racial statements or actions.  In sum, Johnson has not presented any evidence upon which a *reasonable* jury could believe that Ms. Fidler's selection decision was pretextual.  Accordingly, summary judgment should be entered in favor of the VA as to the non-selection claim.

## Conclusion

For the above-stated reasons and those set forth in our principal brief, defendants request this Court to grant their motion for summary judgment.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney

KATE L. MERSHIMER
Assistant U.S. Attorney
228 Walnut St., 2nd Fl.
P.O. Box 11754
Harrisburg, PA 17108-1754
717-221-4482

Date:  August 16, 2002

17

## **Local Rule 7.8 Certificate**

I, Kate L. Mershimer, Assistant U.S. Attorney, pursuant to Local Rule 7.8(b)(2), hereby state that this brief does not exceed 5,000 words.  Specifically, the brief contains 4,440 words.

KATE L. MERSHIMER
Assistant U.S. Attorney

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEWIS JOHNSON,** | : | |
| **Plaintiff** | : | **No. 1:CV-00-1873** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| **ANTHONY PRINCIPI, Acting Secretary of** | : | |
| **Veterans Affairs; et al.,** | : | |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 16th day of August, 2002, she served a copy of the attached

### FEDERAL DEFENDANTS' REPLY BRIEF IN
### SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States mail at Harrisburg, Pennsylvania.

Addressee:

Andrew J. Ostrowski, Esquire
4311 North Sixth Street
Harrisburg, PA 17110

KATE L. MERSHIMER
Assistant U.S. Attorney