NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 03-1423

LEWIS JOHNSON,
　　　　　　　　　Appellant

v.

HERSHEL W. GOBER, Acting Secretary of Veterans Affairs;
RODNEY KISCADDEN; ALICE FIDLER; PEG WINTERS;
IRVIN ERICKSON; RAYMER KENT;
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES; Local 1966

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 00-cv-01873)
District Judge:  Hon. John E. Jones, III

Argued December 5, 2003

Before:  SLOVITER, ALITO Circuit Judges and OBERDORFER, District Judge*

(Filed:  December 18, 2003)

Andrew J. Ostrowski    (Argued)
Bailey, Stretton & Ostrowski
Harrisburg, PA 17110

　　Attorney for Appellant

---

*　　Hon. Louis F. Oberdorfer, United States District Court for the District of
　　Columbia, sitting by designation.

Thomas A. Marino
    United States Attorney
Kate L. Mershimer    (Argued)
    Assistant United States Attorney
Office of United States Attorney
    Middle District of Pennsylvania
Harrisburg, PA 17108

    Attorneys for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Lewis Johnson, a former employee of the Department of Veterans Affairs ("VA") at its Lebanon Medical Center ("Lebanon"), filed suit against the Secretary of the Veteran's Administration, employees of Lebanon and the employees' union, complaining about his non-selection for a Housekeeping Aid position in 1998, the creation of a hostile work environment, the VA's contest of his claim for Worker's Compensation benefits, and the VA's termination of his employment. He appeals from the District Court's order granting summary judgment for the defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the grant of summary judgment is plenary. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

I.

Johnson, had been employed as a Housekeeping Aid and applied for another Housekeeping Aid position in the "extended care" section of the hospital. Under the

applicable union agreement, positions designated as entry-level because of their high turn-over rate or the specific requirements of the job are placed on the "Open and Continuous" list and filled through a competitive selection process for which seniority was not the determining factor for selection.

In the spring of 1998, the VA changed its employment selection process to a new approach in which the units within the VA were viewed as "teams" and the employment decisions were to be made by a product line manager who would seek employees to foster a team environment. The Housekeeping Aid vacancy for which Johnson applied was posted on the "Open and Continuous" list in June 1998. Johnson (who is African-American), Ronald Hull, and other VA employees applied for the position. Only Johnson and Hull were then employed as Housekeeping Aids; the other applicants were from the Food Service department.

The applications were referred to Alice Fidler, the Nurse Manager and team leader of the extended care unit, who was designated as the decision maker for this vacancy. Fidler in turn sought the assistance of Barbara Kohr, a Nurse Manager in the Hospice Unit. Fidler and Kohr focused their decision on Hull and Johnson because of their previous housekeeping experience. Fidler did not consider the applicants' seniority, and, instead, focused on selecting the applicant she believed was most qualified for the position.

Fidler testified that she selected Hull because of his experience, initiative, and

understanding of patients' needs. Fidler thought Hull possessed a better ability to get along with difficult patients as well as staff members. Because the "product line" approach was to build teams on the VA staff, Fidler thought that Hull was not only more qualified but that also he would fit in better with the team than Johnson. Both Kohr and Fidler testified in their depositions that race played no role in the decisionmaking process. Nevertheless, Johnson believed that Fidler did not select him for the position because of his race.

In October 1999, a fellow Housekeeping Aid, Irv Erickson, made a racially disparaging remark to Johnson. Erickson admitted making the remark, but contended he was kidding with Johnson. A few days after the incident, Erickson heard that Johnson was going to file an Equal Employment Opportunity ("EEO") department complaint against him. In attempting to talk with Johnson about this complaint, Erickson allegedly bumped and pushed Johnson. Johnson submitted a "Report of Contact" to an EEO counselor on October 18, 1999, and on October 20, Erickson's supervisors informed him to refrain from future contact with Johnson or he would be subject to disciplinary actions. Johnson subsequently filed a complaint with the EEO claiming that Erickson's conduct constituted a hostile work environment.

On May 9, 2000, the VA sent a letter to Johnson informing him that his claim was dismissed. The VA advised Johnson that he had a right to appeal this decision to the EEOC within 30 days, or file a civil action in a District Court within 90 days. Johnson

received the VA's decision on May 10, 2000 , but did not file an EEOC appeal. Rather, Johnson filed a Title VII complaint on October 24, 2000, over two months after the deadline.

Shortly after the October 1999 incident with Erickson, Johnson went on sick leave and sought Worker's Compensation Benefits. While there was some confusion as to the filing of the paperwork because of the guidance Johnson received from the VA, the Department of Labor ultimately denied Johnson's claim. Johnson complained to an EEO counselor on February 5, 2000 that the VA failed to follow the appropriate guidelines in processing his paper work for the Worker's Compensation claim. On April 13, 2000, Johnson filed a formal complaint with the EEO.

On May 10, 2000, the VA dismissed Johnson's claim because the authority to grant Workers Compensation benefits was vested solely with the discretion of the Department of Labor. Johnson was notified by letter that he had a right to appeal to the EEOC within 30 days, or that he could file a civil action with 90 days. Johnson received this letter on or about May 11, 2000, but did not file an EEOC appeal. As noted above, he filed the lawsuit on October 24, 2000, more than five months after he received the final decision.

Johnson did not return to work after he left for sick leave subsequent to the Erickson incident, and on November 25, 1999, his sick leave ran out. On August 4, 2000, Johnson was advised by letter that he could receive a maximum of one year leave without

pay, and that year would conclude on November 24, 2000. Johnson's physician responded by letter dated August 16, 2000 that Johnson could not return to work. On October 24, 2000, the VA proposed terminating Johnson from his Housekeeping Aid position due to his medical problems, informed Johnson of this decision, and instructed him that he had fourteen days to reply.

On November 13, 2000, a Personnel Management Specialist contacted Johnson's attorney, who verified that Johnson had received the letter. On November 14, 2000, Johnson requested permission to continue his leave without pay pending his Worker's Compensation claim, but on November 17, 2000, the VA advised him that he was being removed from employment due to his medical condition and his inability to work. Johnson received the letter on December 2, 2000. This letter advised Johnson that he could appeal this decision to the Merit System Protection Board or under the negotiated grievance procedure. Johnson took neither action, nor did he see an EEO counselor to allege discrimination, retaliation, or improper termination.

## II.

**A.     Johnson's Non-Selection Claim**

The burden shifting analysis applicable to a discrimination claim as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), provides that the claimant bears the initial burden of establishing a prima facie case of discrimination by showing that plaintiff is a member of a protected class, was qualified for and rejected for the

position, and that non-members of the protected class were treated more favorably. See Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 522 (3d Cir. 1993).

Once a claimant establishes a prima facie case, the burden shifts to the employer to demonstrate a legitimate nondiscriminatory reason for the adverse employment decision. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981). Once the employer proffers a legitimate nondiscriminatory reason for its decision, the burden then shifts to the plaintiff to demonstrate that the proffered reason was a mere pretext for unlawful discrimination. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 143 (2000). Here, the District Court held that Johnson satisfied his burden of demonstrating a prima facie case, that the VA articulated legitimate nondiscriminatory reasons for its decision, and that Johnson failed to demonstrate that these reasons were a mere pretext for discrimination.

On appeal, Johnson appears to challenge the legitimacy of the VA's articulated reason for the adverse employment decision. He argues that he had more seniority than Hull and that the VA failed to award the Housekeeping Aid position to the applicant who had the most seniority. We have previously noted the limited inquiry that should be performed in evaluating the reasons put forth by the defendant. We stated, "'The question is not whether the employer made the best, or even a sound, business decision; [the ultimate inquiry] is whether the real reason is [discrimination].'" Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 647 (3d Cir. 1998) (quoting Keller v. Orix

Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997)); see also Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988) ("our inquiry . . . is not an independent assessment of how we might evaluate [an] employee").

Here, the VA presented sufficient evidence to satisfy its burden at this step of the inquiry. Despite Johnson's argument to the contrary, the VA appropriately decided that the Housekeeping Aid position would not be awarded based entirely on seniority because the Master Agreement with the union provided that a vacant Housekeeping Aid position would be placed on the "Open and Continuous" list. Because of this designation, there was nothing to preclude award of this position after considering a variety of criteria, not only seniority.

The decision on Johnson's application was made in accord with the appropriate procedures as provided in the Master Agreement. The two decision makers, Fidler and Kohr, reviewed the applicants to determine which candidate was best for the position. The selection of Hull was based on a number of criteria including Hull's seventeen years of experience in housekeeping, Hull's demeanor with patients, and his general commitment to providing a clean working environment. Thus, the District Court's conclusion that the VA satisfied its burden of demonstrating a legitimate nondiscriminatory reason for Johnson's non-selection was not erroneous.

Johnson argues that the reasons put forth were a mere pretext for discrimination. We have stated that

> To survive summary judgment when the employer has articulated a legitimate nondiscriminatory reason for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Simpson, 142 F.3d at 644 (quotations omitted) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

In support of Johnson's allegation that Fidler considered race in reaching her decision, Johnson contends that a number of years earlier Fidler made a disparaging racial remark during another employment decision involving a black applicant. Johnson alleges that Randal Houck, a former subordinate of Fidler, heard Fidler say that she did not want any more of "them" on the floor. App. at 317. Houck apparently interpreted this statement to mean that Fidler would not hire the applicant because he was African-American, but Houck could not point to the specific time period when this statement was made, but suggested the statement was made between three or four years prior to Houck's deposition which would put the statement at one and one-half to three years before Johnson's non-selection. In her deposition, Fidler denied ever making this remark. Johnson admitted that he never saw or heard Fidler act in a racially discriminatory manner towards him or other employees.

As Justice O'Connor noted, a claimant fails to satisfy his or her burden to show pretext by presenting evidence of an isolated inappropriate remark made by a decision

9

maker, unrelated to the decisionmaking process. Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring). Furthermore, this court has noted that "[s]tray remarks by non-decisionmakers or by decisionmakers related to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Ezold, 983 F.2d at 545.

In light of the isolation of this alleged remark and its failure to have any connection to Johnson's non-selection, we agree that this evidence is insufficient to establish that VA's proffered reason was a mere pretext for discrimination. We have no basis to reverse the District Court's grant of summary judgment in favor of VA on Johnson's non-selection claim, and therefore will affirm.

**B.      Johnson's Hostile Work Environment and Workers Compensation Claim**

This District Court properly concluded that Johnson waived his hostile work environment claim as well as his Workers Compensation claim by failing to file a timely appeal. We have made clear that a plaintiff in a Title VII action must "exhaust all required administrative remedies before bringing a claim for judicial relief." Robinson v. Dalton,107 F.3d 1018, 1020 (3d Cir. 1997). Thus, an employee bringing suit under Title VII must adhere to the administrative requirements. Specifically, 42 U.S.C. § 2000e-16(c) (2003) provides that a Title VII claimant must initiate an action in federal court within 90 days of the receipt of the notice of a final agency action or after 180 days from the date of filing the original cause of action when no agency decision has been reached.

Johnson failed to do so.

The EEO issued its decision on Johnson's Worker's Compensation claim on May 10, 2000. Johnson did not file an EEOC appeal, and filed his Title VII lawsuit on October 24, 2000, more than five months after he received the final agency decision.

The VA sent Johnson a letter on May 9, 2000 informing him that his hostile work environment claim had been dismissed, and advised him that he had a right to appeal this decision to the EEOC within 30 days, or file a civil action in the district court within 90 days. Johnson received the VA's decision on May 10, 2000, but did not file an EEOC appeal and rather filed the Title VII complaint on October 24, 2000, over two months after the deadline passed. Therefore, these claims were untimely.

**C.**     **Johnson's Constructive Discharge Claim**

The District Court concluded that Johnson waived his discharge related claims by failing to exhaust or even pursue his administrative remedies. An employee must seek relief by contacting the EEO within 45 days of the alleged discriminatory event, 29 C.F.R. § 1614.105 (a)(1), and filing a formal EEO complaint within 15 days of the receipt of the notice of the right to file such a complaint, 29 C.F.R. § 1614.106(b). Here, Johnson did not contact the EEO at any point, and therefore never filed a formal complaint. Thus, Johnson failed to exhaust his administrative remedies for his discharge claims, and his Title VII claim based on this ground cannot be maintained.

**D.**     **Absence of Any Basis to Excuse Untimeliness**

11

Despite failing to exhaust his administrative remedies, Johnson argues that the District Court should have excused the untimeliness of his claims. He contends first that the time requirements should be waived because his other claims would have grown out of his non-selection claim. He argues second that the District Court should have applied equitable considerations and tolled the statutory requirements in relation to his claims. We agree with the District Court that neither argument has merit. First, Johnson's hostile work environment claim and Worker's Compensation claim involve distinct factual circumstances unrelated to his non-selection claim. Second, it is also unlikely that Johnson's discharge claim would grow out of Johnson's non-selection claim.

In Rush v. Scott Speciality Gases Inc., 113 F.3d 476, 484-85 (3d Cir. 1997), we noted that a failure to promote claim and a harassment claim involved distinct and different types of conduct. Id. The same conclusion is applicable here. Johnson's discharge claim occurred nearly two years after Johnson's application for the Housekeeping Aid position, and would not, in any way, grow out of a consideration of his non-selection claim. The District Court properly concluded that Johnson's discharge claim was untimely.

Nor is equitable tolling appropriate. We have stated:

> [T]here are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or

12

her rights mistakenly in the wrong forum.

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1391-92 (3d Cir. 1994). We have recognized that "[r]unning throughout the equitable [tolling] cases is the obligation of the plaintiff to exercise due diligence to preserve his or her claim." Robinson, 107 F.3d at 1023.

Here, Johnson argues that equitable tolling was appropriate because he requested that his complaints be consolidated, and that even though the ALJ refused his request, he proceeded as if the complaints were consolidated. The District Court noted that the ALJ clearly articulated the denial of the consolidation request, and that Johnson provided no evidence that he had mistakenly believed that the complaints had in fact been consolidated. Additionally, the records from the administrative hearings on the non-selection claim show that Johnson's other claims were not under consideration. Because the record is devoid of any reasonable basis for Johnson's belief that his claims had been consolidated, we conclude he did not exercise due diligence in preserving his claims. Thus, the District Court did not err in concluding that equitable tolling was not appropriate.

## III.

Johnson not only failed to satisfy his burden of demonstrating that the VA's proffered reason for his adverse employment decision was pretext, but he also failed to exhaust his administrative remedies as required. We will therefore affirm the District

13

Court's decision granting summary judgment for the defendants.

———————————

TO THE CLERK:

                            Please file the foregoing opinion.

                            /s/ Dolores K. Sloviter
                            Circuit Judge